STEPHEN T. O'NEILL (115132)
JESSICA G. MCKINLAY (282743)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Email: oneill.stephen@dorsey.com
Email: mckinlay.jessica@dorsey.com

Attorneys for CESC PLAZA LIMITED PARTNERSHIP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:** | CASE NO. **18-50398** |
| **TECHSHOP, INC.,** | CHAPTER 7 |
| Debtor., | |

### MOTION FOR RELIEF FROM AUTOMATIC STAY, OR ALTERNATIVELY, FOR AN ORDER DETERMINING THAT THE AUTOMATIC STAY IS INAPPLICABLE

CESC Plaza Limited Partnership ("Landlord" or "CESC"), by counsel, moves for relief from the automatic stay, or alternatively, for an order determining that the automatic stay is inapplicable (the "Motion"). The Motion is based on the memorandum of points and authorities herein, the declaration of Marty Freeman and the notice of hearing on the Motion filed concurrently herewith, the pleadings and papers on file herein, and such other evidence as may be submitted orally or in writing to the Court at or before the hearing on the Motion. In support of the Motion, CESC respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The relief sought with this Motion is based upon § 362(d)(1) and (2) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Bankruptcy

Rules of the United States Bankruptcy Court for the Northern District of California (the "Local Rules").

**Factual Background and Relevant Lease/Loan Documents**

3.  Pursuant to a Lease between TechShop Arlington LLC ("TechShop Arlington") and CESC, CESC leased approximately 21,820 square feet in buildings located in Arlington, Virginia, to TechShop Arlington, located at 2031 Crystal Plaza Arcade and 2110-B Crystal Drive, Arlington, Virginia 22202 (the "Premises").

4.  TechShop Arlington is the tenant identified in the Lease. TechShop, Inc. (the "Debtor") is not a party to the Lease. TechShop Arlington is not in bankruptcy. The Debtor is the sole member of the tenant, TechShop Arlington.

5.  The term of the Lease was for a ten (10) year period expiring on the day before the tenth (10th) anniversary of the Rent Start Date (as defined in the Lease).

6.  The Lease provides for a "Landlord's Contribution" in the amount of $545,000, an "Additional Landlord's Contribution" in the amount of $854,500 (which is also evidenced by a Promissory Note in the said amount executed by TechShop Arlington in favor of Landlord (the "ALC Note")), and a "Bridge Loan" in the amount of $1,000,000 (which is also evidenced by a Promissory Note in the said amount executed by TechShop Arlington as borrower in favor of the Landlord (the "Bridge Note," together with the Lease and the ALC Note, the "CESC Plaza Debt Documents").

7.  Pursuant to the Lease, and to secure the obligations under the CESC Plaza Debt Documents, the Landlord received a security interest in the Landlord's Trade Fixtures (as defined in Section 13.8 of the Lease). To perfect its security interest, the Landlord filed a UCC Financing Statement with the Virginia State Corporation Commission on October 14, 2013, File Number 13-10-14-5516-5. Landlord was granted a first and sole lien on any trade fixtures or other goods purchased with the proceeds of the Landlord's Contribution, the Additional Landlord's Contribution (or any subsequent replacements of such trade fixtures or goods) ("Landlord's Collateral").

8.  On December 7, 2017, Landlord filed an unlawful detainer action against TechShop Arlington in the Arlington General District Court in Case No. GV17005784-00. On December 27, 2017, the Arlington General District Court entered judgment in favor of Landlord and against

TechShop Arlington in the principal amount of $1,125,481.93, plus attorney's fees of $10,972.50, plus interest at 6% per annum.

9. Before the CESC Plaza Debt Documents were executed, the Debtor had borrowed money from Autodesk, Inc. ("Autodesk"). In conjunction with the execution of the CESC Plaza Debt Documents, Landlord required that Autodesk agree that it would not have a lien on Landlord's collateral. Pursuant to the terms of an Intercreditor Agreement between Landlord and Autodesk dated October 15, 2013, Autodesk agreed not to assert any lien or security interest in any of Landlord's collateral.

10. TechShop Arlington was evicted from the Premises.

11. When TechShop Arlington was evicted from the Premises, Landlord's Collateral remained in the Premises. *See* the attached Declaration and the attached Inventory of Landlord's Collateral.

12. In addition to Landlord's Collateral, there are lockers in the Premises which contain items stored there by TechShop Arlington's customers (the "Locker Contents").

13. Landlord wishes to exercise its rights as a secured creditor against Landlord's Collateral by selling Landlord's Collateral in a commercially reasonable manner. Landlord does not believe that any of Landlord's Collateral constitutes property of the Debtor's estate. Instead, Landlord's Collateral was owned by TechShop Arlington, an entity that is not a debtor in bankruptcy.

14. Landlord also wishes to release the Locker Contents to TechShop Arlington's customers in accordance with applicable state law and upon receipt of proper verification from those customers that the Locker Contents belong to the customers. In the event the Court determines that the automatic stay is in effect with respect to the property remaining at the Premises, Landlord requests that the stay be lifted as to the Landlord's Collateral but also requests that it be permitted to turn over the Locker Contents to the Chapter 7 Trustee.

### The Debtor's Bankruptcy Case

15. The Debtor filed its Voluntary Petition on February 26, 2018. In conjunction therewith, it filed its Schedules of Assets and Liabilities [Dkt Nos 1-2] (as amended, the "Schedules").

Subsequently on March 16, the Debtor filed amendments to Schedule D [Dkt. No. 22] and Schedule G [Dkt. No. 21].

16. Among other things, the Schedules:

    a. Include CESC on Schedule E/F for notice purposes only;

    b. Do not include the Lease anywhere, including on Schedules A and G;

    c. State that (i) the Debtor holds a 100% ownership interest in TechShop Arlington; (ii) with respect to TechShop Arlington's book value: "liabilities exceed assets. Thus valued at $1"; and (iii) with respect to TechShop Arlington's location: "lost leasehold interest." [Schedule A, Part 4, No. 15.5].

    d. Value the Debtor's furniture, fixtures, equipment, or collectibles at $30,573.01 and states that they are located at "various Techshop LLC subsidiaries." [Schedule A, Part 7, Nos. 38-41].

    e. Do not list TechShop Arlington, or any other entity, as a co-debtor on Schedule H.

**Basis for Relief**

17. The automatic stay is inapplicable as to the Landlord and the Landlord's Collateral. The Debtor does not have an ownership interest in Landlord's Collateral or the Locker Contents. Indeed, the Debtor's Schedules exclude Landlord and the Lease. They also do not list TechShop Arlington as a co-debtor. The Lease and the CESC Plaza Debt Documents are between Landlord and TechShop Arlington only, and the Debtor is not a party to any such documents. Landlord has not received any information that the Debtor or its estate have any rights under the Lease, including any rights to any of the property remaining at the Premises, including Landlord's Collateral and the Locker Contents.

18. However, in an abundance of caution, Landlord seeks an order determining the automatic stay is inapplicable or, in the alternative, terminating the automatic stay to allow Landlord to dispose of Landlord's Collateral and to dispose of or turn over the Locker Contents..

19. To the extent the automatic stay is applicable, the Court should grant relief under 11 U.S.C. § 362(d)(1) for "cause," which includes a lack of adequate protection. As set forth above, Landlord has a perfected security interest in Landlord's Collateral, Landlord is owed more than $1.1

million. TechShop Arlington defaulted under the Lease and the CESC Plaza Debt Documents, and Landlord continues to receive no payment or any remedy under such documents. Further, in view of the fact that a Chapter 7 Trustee is administering this case, there is no expectation for any payments or any adequate protection.

20. Moreover, TechShop Arlington was evicted from the Premises and has no interest in the Lease. Indeed, the Debtor's Schedules state that TechShop Arlington "lost [its] leasehold interest." Accordingly, the property remaining at the Premises, including the Landlord's Collateral, is abandoned with no use or protection, while it continues to depreciate in value.

21. In addition, to the extent the automatic stay is applicable, the Court also should grant relief pursuant to 11 U.S.C. § 362(d)(2) on the basis that the Debtor does not have any equity in Landlord's Collateral and Landlord's Collateral is not necessary to an effective reorganization. As a threshold matter, the Debtor does not even own an interest in Landlord's Collateral. Moreover, the current fair market value of Landlord's Collateral is substantially less than the current secured indebtedness on Landlord's Collateral. The Debtor undoubtedly agrees. Debtor's Schedule A values <u>*all*</u> of Debtor's furniture, equipment, fixtures and collectibles *in aggregate*, in the amount of $30,573.01. Therefore, there could be no equity in Landlord's Collateral, to the extent it comprises estate property.

22. Even assuming, <u>*arguendo*</u>, the Debtor held some beneficial interest in Landlord's Collateral by virtue of its ownership interest in TechShop Arlington, it would be prohibited from receiving any distribution on account of its interest from TechShop Arlington prior to satisfying its obligations to Landlord. *See* Virginia Limited Liablity Act § 13.1-1035(A)(1). Indeed, the Debtor would be subject to liability for receiving such a distribution. Id. at § 13.1-1035.

23. Finally, chapter 7 of the Bankruptcy Code does not provide for any reorganization of a debtor so even if Landlord's Collateral was owned by the Debtor, it is not necessary to an effective reorganization.

WHEREFORE, for these reasons, including any other reasons presented at oral argument, Landlord respectfully requests that the Court enter an Order declaring that the automatic stay is inapplicable to Landlord's Collateral and the Locker Contents, or alternatively, grant relief from the

automatic stay to allow Landlord to exercise its secured creditor rights against Landlord's Collateral and to allow Landlord to turn over the Locker Contents to the Chapter 7 Trustee administering this case.

Dated: March 22, 2018                             DORSEY & WHITNEY LLP

By: */s/ Jessica G. McKinlay*
    Jessica G. McKinlay
    Attorneys for CESC Plaza Limited Partnership