STEPHEN T. O'NEILL (115132)
JESSICA G. MCKINLAY (282743)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Email: oneill.stephen@dorsey.com
Email: mckinlay.jessica@dorsey.com

Attorneys for CESC PLAZA LIMITED PARTNERSHIP

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

In re:

**TECHSHOP, INC.,**

                Debtor.

Case No. **18-50398**

Chapter 7

I, Marty Freeman, declare:

    I am Vice President – Commercial Property Management at JBG SMITH Properties LP, an affiliate of JBGS/OP Management Services, L.L.C., manager of CESC Plaza Limited Partnership ("CESC"), with its principal place of business at 1600 Crystal Square Arcade, Arlington, Virginia 22202, and am authorized to make this declaration on its behalf. I have personal knowledge of the facts set forth herein, except as to those matters stated on information and belief and as to those matters I believe them to be true. If called upon to testify, I could and would competently testify to the following:

    1.    Pursuant to a Lease between TechShop Arlington LLC ("TechShop Arlington") and CESC, CESC leased approximately 21,820 square feet in buildings located in Arlington, Virginia, to TechShop Arlington, located at 2031 Crystal Plaza Arcade and 2110-B Crystal Drive, Arlington, Virginia 22202 (the "Premises"). A copy of the Lease is attached hereto as **Exhibit A**.

    2.    TechShop Arlington is the tenant identified in the Lease. TechShop, Inc. (the "Debtor") is not a party to the Lease. TechShop Arlington is not in bankruptcy. The Debtor is the sole member of the tenant, TechShop Arlington.

1

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 18-50398    Doc# 37    Filed: 03/22/18    Entered: 03/22/18 16:29:11    Page 1 of 3

3. The term of the Lease was for a ten (10) year period expiring on the day before the tenth (10th) anniversary of the Rent Start Date (as defined in the Lease).

4. The Lease provides for a "Landlord's Contribution" in the amount of $545,000, an "Additional Landlord's Contribution" in the amount of $854,500 (which is also evidenced by a Promissory Note in the said amount executed by TechShop Arlington in favor of Landlord (the "ALC Note")), and a "Bridge Loan" in the amount of $1,000,000 (which is also evidenced by a Promissory Note in the said amount executed by TechShop Arlington as borrower in favor of the Landlord (the "Bridge Note," together with the Lease and the ALC Note, the "CESC Plaza Debt Documents"). Copies of the ALC Note and Bridge Note are attached hereto as **Exhibit B**.

5. Pursuant to the Lease, and to secure the obligations under the CESC Plaza Debt Documents, the Landlord received a security interest in the Landlord's Trade Fixtures (as defined in Section 13.8 of the Lease). To perfect its security interest, the Landlord filed a UCC Financing Statement with the Virginia State Corporation Commission on October 14, 2013, File Number 13-10-14-5516-5. Landlord was granted a first and sole lien on any trade fixtures or other goods purchased with the proceeds of the Landlord's Contribution, the Additional Landlord's Contribution (or any subsequent replacements of such trade fixtures or goods) ("Landlord's Collateral"). A copy of Landlord's UCC Financing Statement is attached hereto as **Exhibit C**.

6. On December 7, 2017, Landlord filed an unlawful detainer action against TechShop Arlington in the Arlington General District Court in Case No. GV17005784-00. On December 27, 2017, the Arlington General District Court entered judgment in favor of Landlord and against TechShop Arlington in the principal amount of $1,125,481.93, plus attorney's fees of $10,972.50, plus interest at 6% per annum. A copy of the docket in Case No. GV17005784-00 is attached hereto as **Exhibit D**.

7. Before the CESC Plaza Debt Documents were executed, the Debtor had borrowed money from Autodesk, Inc. ("Autodesk"). In conjunction with the execution of the CESC Plaza Debt Documents, Landlord required that Autodesk agree that it would not have a lien on Landlord's collateral. Pursuant to the terms of an Intercreditor Agreement between Landlord and Autodesk

dated October 15, 2013, Autodesk agreed not to assert any lien or security interest in any of Landlord's collateral. A copy of the Intercreditor Agreement is attached hereto as **Exhibit E**.

8. TechShop Arlington was evicted from the Premises.

9. When TechShop Arlington was evicted from the Premises, Landlord's Collateral remained in the Premises. A copy of the Inventory of Landlord's Collateral is attached hereto as **Exhibit F**.

10. In addition to Landlord's Collateral, there are lockers in the Premises which contain items stored there by TechShop Arlington's customers (the "Locker Contents").

11. Landlord wishes to exercise its rights as a secured creditor against Landlord's Collateral by selling Landlord's Collateral in a commercially reasonable manner. Landlord does not believe that any of Landlord's Collateral constitutes property of the Debtor's estate. Instead, Landlord's Collateral is owned by TechShop Arlington, an entity that is not a debtor in bankruptcy.

12. Landlord also wishes to release the Locker Contents to TechShop Arlington's customers in accordance with applicable state law and upon receipt of proper verification from those customers that the Locker Contents belong to the customers.

13. Landlord has not received any information that the Debtor or its estate have any rights under the Lease, including any rights to any of the property remaining at the Premises, including Landlord's Collateral and the Locker Contents.

I declare under penalty of perjury that the foregoing is true and correct, and if called upon to do so I could and would so testify.

Executed this 22nd day of March, 2018.

*/s/ Marty Freeman*
Marty Freeman