1  Richard A. Solomon, SBN 82923
   SOLOMON, GRINDLE, LIDSTAD & WINTRINGER, APC
2  11682 El Camino Real, Suite 250
   San Diego, California  92130
3  Telephone:  (858) 793-8500
   Facsimile:  (858) 793-8263
4
   Attorneys for Movant,
5  HITACHI CAPITAL AMERICA CORP.

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9        **NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE)**

| | |
|---|---|
| In re ) | Case No: 18-50398 |
| ) | |
| TECHSHOP. INC. ) | Chapter 7 |
| ) | |
| Debtor. ) | RS No. 001 RAS |
| ——————————————— ) | |
| ) | Judge: M. Elaine Hammond |
| HITACHI CAPITAL AMERICA CORP., ) | |
| ) | **DECLARATION OF GERRY DEVITA IN** |
| Movant, ) | **SUPPORT OF MOTION FOR RELIEF** |
| ) | **FROM AUTOMATIC STAY TO ENFORCE** |
| v. ) | **LIEN ON PERSONAL PROPERTY** |
| ) | |
| TECHSHOP, INC.; DORIS A. KAELIN, Chapter ) | Date:  May 4, 2018 |
| 7 Trustee ) | Time:  10:00 a.m. |
| ) | Dept:  3020 |
| Respondent. ) | |
| ) | |
| ——————————————— ) | |

20        I, Gerry Devita, declare:

21        1.     I am employed as a Bankruptcy Specialist for Secured Creditor and Moving Party,

22  HITACHI CAPITAL AMERICA CORP. ("HITACHI").  In that capacity, I have been charged with the

23  responsibility for handling the collection of certain contracts owned by HITACHI which have become

24  delinquent.  I am the employee of HITACHI who is primarily responsible for securing payment of

25  HITACHI's contract with the Debtor, TECHSHOP, INC. ("Debtor").

26        2.     I have custody and control of HITACHI's business records and documents relating to its

27  agreement with Debtor.  Those records were prepared in the ordinary course of HITACHI's business at

28  or near the time of the act, condition, or event of which they are related.  Such records were prepared in

Case: 18-50398   Doc# 43-2   Filed: 03/28/18   Entered: 03/28/18 14:04:29   Page 1 of
42

1 the ordinary course of business by HITACHI by a person employed by HITACHI who has personal

2 knowledge of the event being recorded and who has a business duty to HITACHI to make a record of

3 such event. The mode and method of recordation is such as to indicate its trustworthiness. I personally

4 have reviewed the file as it pertains to the Debtors prior to making this Declaration.

5     3.    On February 26, 2018, Debtor filed a voluntary petition under Chapter 7 of the

6 Bankruptcy Code.

7     4.    On or about December 10, 2015, Debtor executed and delivered to LEAF Capital

8 Funding, LLC ("LEAF") a Finance Agreement for the purchase of the equipment set forth and described

9 therein ("Agreement"). A true and correct copy of said Agreement and list of equipment ("Equipment")

10 is attached hereto, marked Exhibit "A" incorporated herein by this reference.

11     5.    Subsequent to December 10, 2015, LEAF sold the Agreement to HITACHI. A true and

12 correct copy of Schedule No. 21 dated march 18, 2016 to Master Purchase and Sale Agreement dated

13 Sept. 24, 2014 is attached hereto, marked Exhibit "B", and incorporated by this reference.

14     6.    HITACHI's interest in the Equipment has been perfected through the California

15 Secretary of State by filing a UCC1. A true and correct copy of the UCC1 is attached hereto, marked

16 Exhibit "C" incorporated herein by this reference.

17     7.    HITACHI has duly performed each and every act and thing required to be performed by it

18 under the terms of the Agreement.

19     8.    Debtor breached the terms of the Agreement by failing to make the monthly payments

20 which became due. As of October 2017, the amount owed to HITACHI under the Agreement was

21 $81,849.00 plus all attorney's fees and costs incurred by HITACHI subsequent to October 2017. A true

22 and correct copy of the Debtor's payment history is attached hereto, marked Exhibit "D" and

23 incorporated herein by this reference.

24     9.    HITACHI is informed and believes, and upon such information and belief alleges, that

25 the probable value of the Equipment is the sum of $36,750.00. Attached hereto, marked Exhibit "E" is a

26 true and correct copy of an appraisal on the Equipment.

27     10.    HITACHI is informed and believes and thereon alleges that the Equipment has no other

28 encumbrances against it.

DECLARATION OF GERRY DEVITA IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY TO
ENFORCE LIEN ON PERSONAL PROPERTY

11.     Continuation of the automatic stay of 11 U.S.C. §362(a) will work real and irreparable harm to HITACHI and such stay should be terminated in that Debtor has no equity in the Equipment; the value of the Equipment is depreciating.

12.     HITACHI does not, and has not been offered, adequate protection for its interests in the Equipment and as set forth above the passage of time will result in irreparable injury to HITACHI's equity position in the Equipment as interest, depreciation, and other expenses on the Equipment continue to accrue. If HITACHI is not allowed to sell the Equipment, HITACHI will suffer irreparable loss and damage. As a result, HITACHI requests relief from the automatic stay for cause, including, but not limited to, lack of adequate protection, lack of equity.

13.     Therefore, HITACHI requests that an Order be entered terminating the §362 automatic stay as to HITACHI to permit HITACHI to dispose of the Equipment, for reasonable attorney's fees, and for costs of suit incurred herein, and for such other and further relief as the Court deems just and proper.

If called as a witness, I could and would competently testify to all facts herein.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

Executed this ___ day of _____, 2018 at Norwalk, CT.

_____
Gerry DeVita

H:\CLIENTS\8855- Hitachi Credit America Corp\0215 - TECHSHOP\Pleadings\DeclarationRFS.wpd

3

DECLARATION OF GERRY DEVITA IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY TO ENFORCE LIEN ON PERSONAL PROPERTY



# FINANCE AGREEMENT

LENDER: LEAF Capital Funding, LLC
2005 Market Street, 14th Floor, Philadelphia, PA 19103

BORROWER: TECHSHOP, INC.
300 South 2nd St., SAN JOSE, CA 95113

DATE: December 10, 2015

PRINCIPAL AMOUNT*: $101,722.17
Borrower authorizes Lender to fund the Principal Amount directly to vendors and/or other parties in satisfaction of invoices and/or amounts payable by Borrower. Prior to any such funding, Lender may at its discretion require Borrower to confirm in writing or verbally its receipt and acceptance of the product(s) relating to the funding and all invoicing must be acceptable to Lender. Lender's obligation to disburse any portion of the Principal Amount is conditioned upon: (i) no Event of Default having occurred and remaining uncured hereunder, and (ii) Lender's receipt of all documentation deemed necessary by Lender, including but not limited to this Finance Agreement (the "Agreement").

BASE TERM: 60 MONTHS

PERIODIC PAYMENTS*: Payments are: _X_ Monthly ___ Quarterly ___ Annual
Periodic Payments are monthly unless otherwise specified.

| 60 | PAYMENTS @ | $2,108.70 |

*The Principal Amount and the Periodic Payments are subject to adjustment up or down if the amount actually advanced by Lender to or on behalf of Borrower, plus any other obligations of Borrower to Lender that are to be included in the principal amount hereof (i.e. accrued interest under a Progress Payment Agreement), is other than the stated Principal Amount above. Adjustments, if any, shall be confirmed in writing to Borrower and shall preserve Lender's economics. If the adjustment is more than ten percent (10%) of the Principal Amount, upon request, Borrower shall execute and deliver to Lender an amended and restated Finance Agreement which reflects the corrected Principal Amount and the amount of each Periodic Payment.

AMOUNT DUE AT TIME OF SIGNING THIS AGREEMENT:
(a) Total Advance Payment(s): 0 = $0.00;**
(b) A Security Deposit in the amount of: $0.00;
(c) A Documentation Fee in the amount of: $395.00.

Please provide payment in the amount of (a)+(b)+(c)=$395.00 when Borrower executes and returns this Agreement.
**If more than one month's payment is required as an Advance Payment, the additional amount will be applied on the commencement date to Periodic Payments in inverse order, starting with the last Periodic Payment.

1. COMMENCEMENT, DUE DATES, COLLATERAL. (a) This Agreement shall become binding on Borrower upon its execution thereof and on Lender upon its execution. The term of this Agreement shall commence on the date Lender first disburses all or a portion of the Principal Amount (the "Commencement Date") and the Base Term shall commence on the date specified by Lender in the month following the Commencement Date (the "Base Term Commencement Date") and shall continue until all obligations of the Borrower hereunder have been fully performed. The first Periodic Payment shall be due thirty (30) days after the Base Term Commencement Date, or as otherwise invoiced by Lender (the "First Due Date"), with the remaining Periodic Payments due on the same day of each subsequent payment period until paid in full. Lender may charge Borrower a portion of one Periodic Payment for the period from the Commencement Date until the Base Term Commencement Date (such accrued interest, the "Interim Payment"). The Interim Payment shall be due and payable as invoiced by Lender. UPON DISBURSEMENT OF ALL OR A PORTION OF THE PRINCIPAL AMOUNT, BORROWER IRREVOCABLY AUTHORIZES LENDER TO INSERT THE CORRECT PAYMENT DUE DATES and to complete or amend all documents related to this Agreement to reflect the correct due dates of all payments hereunder.

(b) To secure the prompt repayment of (i) the Periodic Payments, Interim Payment and all other amounts due hereunder (the "Payments"), and (ii) all other obligations of Borrower to Lender, whether now existing or hereafter arising (collectively, the "Indebtedness"), Borrower hereby grants to Lender a first priority security interest in the assets described in Exhibit A attached hereto, whether now owned or hereafter acquired, together with all accessories, accessions, attachments thereto, and all other substitutions, renewals, replacements and improvements and all proceeds of the foregoing, including proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations (collectively, "Collateral"). Borrower covenants to keep the Collateral free and clear of all liens and encumbrances, except for Lender's security interest therein. Borrower authorizes Lender to insert and/or correct serial numbers, VIN numbers and any other relevant information which identifies the Collateral when such information becomes available to Lender. Upon Lender's receipt of all Payments, Borrower shall own the Collateral free and clear of Lender's security interest.

2. PAYMENTS. Borrower's obligation to pay the Payments shall be absolute and unconditional and is not subject to any termination, cancellation, abatement, set-off, defense or counterclaim for any reason whatsoever. If Borrower is more than one person or entity, all of Borrower's obligations hereunder shall be joint and several. All Payments shall be made to Lender at its address specified above (or such other place as Lender may direct in writing) without notice or demand therefor, and all Payments shall be applied first to accrued and unpaid interest and other amounts payable hereunder and the balance to unpaid principal. Interest shall be computed on the basis of a year consisting of twelve months of thirty days each. Until all indebtedness shall have been paid in full, the security interest in the Collateral granted hereby shall remain in full force and effect. Whenever any Payment is not made by Borrower when due hereunder and such failure continues for five (5) days thereafter, Borrower agrees to pay to Lender an amount equal to seven and one half percent (7.5%) of such delayed Payment, but only to the extent permitted by law. Except as specifically provided herein, Borrower may not prepay any portion of this Agreement. Notwithstanding any other provision in this Agreement, nothing herein shall authorize or permit the payment of interest by Borrower where the same would be prohibited by any applicable law or would violate the applicable usury law. In any such event, this Agreement shall automatically be deemed amended to permit interest charges at an amount equal to, but not greater than, the maximum permitted by law. Unless specifically financed hereunder and included in the Principal Amount, Payments do not include taxes allocable to the Products, as defined in Section 14. Borrower shall file and pay when due any and all taxes and government fees, charges, penalties and interest related to the Products, this Agreement and the Payments and shall immediately reimburse Lender for all such amounts paid by Lender on behalf of Borrower. Each check by phone payment made by Borrower to Lender shall be subject to a fee of $25.00 and any check returned without payment shall be subject to a documentation fee equal to the amount specified above, or if not so specified, the greater of either $250.00 or 0.5% of the total of the Principal Amount, which amount shall be invoiced and payable along with the first Payment hereunder.

3. ASSIGNMENT. BORROWER MAY NOT ASSIGN THIS AGREEMENT OR THE RIGHTS AND/OR OBLIGATIONS HEREUNDER, NOR SHALL THE BORROWER LEASE OR LEND THE COLLATERAL OR SUBMIT IT TO BE USED BY ANYONE OTHER THAN BORROWER'S EMPLOYEES WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER. Lender may at any time assign all or part of any interest in this Agreement and moneys to become due to Lender hereunder and the Collateral. In such an event, all of Lender's rights, powers and privileges contained herein so assigned shall inure to the benefit of and may be exercised by or on behalf of such assignee, but the assignee shall not be liable for or be required to perform any of Lender's obligations to Borrower. The right of the assignee to the payment of assigned Payments and performance of all Borrower's obligations and the right to exercise any and all of Lender's rights hereunder shall not be subject to any defense, counterclaim or set-off which the Borrower may have or assert against the Lender, and the Borrower hereby agrees that it will not assert any such defenses, set-offs, counterclaims and claims against the assignee.

4. EVENTS OF DEFAULT. The term "Event of Default" shall mean any one or more of the following: (a) Borrower shall fail to make any Payment as it becomes due hereunder and such failure is not cured within 10 days; or (b) Borrower shall fail to perform or observe any of the covenants set forth in Paragraph 9; or (c) Borrower shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by it hereunder and such failure is not cured within 15 days after written notice to Lender to Borrower; or (d) Borrower or any guarantor of Borrower's obligations (each a "Guarantor") shall commence or be subject to any action for relief under any existing or future law of any jurisdiction, relating to bankruptcy, insolvency, reorganization or relief of debtors; or (e) Borrower or any Guarantor shall die, or if an entity, cease to exist, dissolve itself or be terminated; or (f) Any representation or warranty made by Borrower herein or otherwise furnished Lender in connection with this Agreement shall prove at any time to have been untrue or misleading in any material respect; or (g) Borrower or any Guarantor defaults with respect to any other indebtedness for borrowed money, lease, installment sale or guaranty obligation, or fails to comply with any financial covenant related thereto, in each case when any applicable grace period for such obligation has expired and the creditor has commenced to exercise any remedy; or (h) Lender shall reasonably deem itself insecure as a result of a material adverse change in Borrower's financial condition or operations or a change in the ownership of Borrower or any Guarantor; or (i) Borrower or any Guarantor shall fail to maintain in good standing any license necessary to conduct its business.

5. REMEDIES. Upon the occurrence of any Event of Default, Lender may declare this Agreement to be in default and exercise any one or more of the following remedies: (a) declare the Termination Amount, as defined in Section 6 hereof, to be immediately due and payable without notice or demand, (b) charge Borrower interest on all moneys due Lender at the rate of one and one half percent (1.5%) per month or the maximum rate permitted by law, whichever is less, from the date of default until paid in full, (c) require Borrower to assemble all Collateral at Borrower's expense, at a place reasonably designated by Lender, (d) remove any physical obstructions for removal of the Collateral from the place where the Collateral is located and take possession of any or all items of Collateral, without demand or notice, wherever same may be located, and (e) without liability to Borrower, cause all data and other information stored on hard drives and other media storage devices to be securely overwritten and destroyed beyond recovery (such process being referred to as "Data Erasure"). Borrower hereby waives any and all damages occasioned by such retaking, except to the extent that such damage is caused by Lender's gross negligence or willful misconduct. Lender may, at its option, use, ship, store or repair all Collateral so removed and shall sell, lease or otherwise dispose of any

Case: 18-50398   Doc# 43-2   Filed: 03/28/18   Entered: 03/28/18 14:04:29   Page 4 of 42

such Collateral at a private or public sale. In the event Lender disposes of the Collateral, Lender shall give Borrower credit for any sums received by Lender from the sale or lease of the Collateral after deduction of the expenses of sale or lease. Borrower shall also be liable for and shall pay to Lender (i) all expenses incurred by Lender in connection with the enforcement of any of Lender's remedies, including all expenses of repossessing, storing, shipping, repairing and selling the Collateral, and (ii) Lender's reasonable attorney's fees and expenses, whether such fees and expenses arise in connection with a bankruptcy proceeding of Borrower and/ or any Guarantor, or otherwise. All remedies of Lender hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of the Lender to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Agreement.

6. TERMINATION AMOUNT. Borrower may not elect to prepay or otherwise terminate this Agreement without the prior written consent of Lender. In the case of a required prepayment pursuant to Sections 5 or 8, Borrower shall pay Lender an amount equal to: (a) all amounts then due, including but not limited to, any due but not yet paid Periodic Payments, Interim Payment, late charges, and other amounts due as of the date of prepayment (the "Current Balance"); plus (b) the remaining Periodic Payments, discounted to the date of prepayment at 3% per annum (collectively, the "Termination Amount").

7. UCC FILINGS AND FINANCIAL STATEMENTS. Borrower hereby irrevocably authorizes Lender and appoints Lender as Borrower's attorney-in-fact, with full power of substitution, to execute and/or file (on behalf of Borrower if necessary) such financing statements, continuations, assignments, amendments and/or other documents which Lender deems reasonably necessary to protect and continue Lender's right, title and interest hereunder and with respect to the Collateral. Borrower agrees to reimburse Lender for Lender's expenses incurred in preparing and filing all financing statements and for Lender's other documentation costs. Borrower agrees to submit audited financial statements or tax returns if its financial statements are unaudited within 120 days from the end of its fiscal year and Borrower warrants to Lender that all financial statements furnished and to be furnished have been and will be prepared in accordance with generally accepted accounting principles, are an accurate reflection of Borrower's financial condition and that there has been no material adverse change in the financial condition of Borrower or any Guarantor since the dates of preparation and submission of the financial statements to Lender. Lender may from time to time require a site inspection to verify the condition and/or existence of the Collateral and Borrower shall reimburse Lender's reasonable costs as invoiced. If Borrower requests administrative services from Lender, Borrower shall pay Lender's then applicable fee, if any, for such services.

8. LOSS OR DAMAGE. Borrower hereby assumes and shall bear the entire risk of loss (including theft and requisition of use) or destruction of or damage to the Collateral from any and every cause whatsoever, whether or not insured. No such loss or damage shall relieve Borrower from any obligation under this Agreement, which shall continue in full force and effect. In the event of damage to or loss or destruction of the Collateral (or any item thereof), Borrower shall promptly notify Lender in writing of such fact and shall, at the option of Lender: (a) place the same in good repair, condition and working order, or (b) replace the Collateral with like collateral acceptable to Lender and grant Lender a first priority security interest in such replacement collateral, or (c) pay to Lender the Termination Amount (or, at Lender's sole option, a prorata portion thereof if less than all of the Collateral is destroyed), whereupon the principal balance of this Agreement shall be reduced accordingly.

9. INSURANCE. Until all of the Indebtedness has been paid in full, Borrower shall obtain, maintain and keep the Collateral insured against all risks of loss or damage from every cause whatsoever, in an amount not less than the Termination Amount. Lender, its successors or assigns, shall be the named loss payee with respect to insurance for damage to the Collateral. Lender may require Borrower to obtain, provide evidence of and/or cause Lender to be entitled to the benefits of liability insurance, professional liability insurance, disability insurance and/or key man life insurance. Borrower shall pay all premiums for such insurance and shall deliver to Lender the original policy or policies of insurance, certificates of insurance, or other evidence satisfactory to Lender evidencing the insurance required thereby, along with proof, satisfactory to Lender, of the payment of the premiums for such insurance policies. The proceeds of all insurance policies required hereunder shall be paid directly to Lender. Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. If Borrower fails to maintain insurance satisfactory to Lender or fails to timely provide proof of such insurance, Lender has the option, but not the obligation, to secure insurance from a carrier of its choosing in such forms and amounts as Lender deems reasonable to protect its interests. If Lender secures insurance on the Collateral, it will not name Borrower as an insured party, Borrower's interests may not be fully protected, and Borrower will reimburse Lender the premium which may be higher than the premium Borrower would pay if Borrower obtained insurance, and which may result in a profit to Lender through an investment in reinsurance. If Borrower is current in all of Borrower's obligations under this Agreement at the time of loss, any insurance proceeds received will be applied, at Lender's option, to repair or replace the Products, or to pay Lender the Termination Amount.

10. BORROWER'S COVENANTS, REPRESENTATIONS AND WARRANTIES. Borrower hereby represents, warrants and covenants to Lender as of the date hereof: (a) Borrower is organized and validly existing under the laws of the state of its

organization, with adequate power and capacity to enter into this Agreement and any other documents required to be delivered in connection herewith (hereinafter "Documents") and Borrower is duly qualified and licensed to do business wherever necessary to carry on its present business, including all states where the Collateral is to be located; (b) the Documents have been duly authorized, executed and delivered by Borrower and constitute valid, legal and binding agreements, enforceable in accordance with their terms; (c) no approval, consent or withholding of objections is required from any federal, state or local governmental authority or instrumentality with respect to the entry into or performance by Borrower of the Documents, except such as have already been obtained; (d) the entry into and performance by Borrower of the Documents will not (i) violate any judgment, order, law or regulation applicable to Borrower or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any item of Collateral pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument to which Borrower is a party; (e) there are no suits or proceedings pending or threatened in court or before any regulatory commission, board or other administrative governmental agency against or affecting Borrower, which may have a material adverse effect on the ability of Borrower to fulfill its obligations hereunder; (f) Borrower shall not: (i) enter into any transaction of merger or consolidation in which it is not the surviving entity or sell, transfer or otherwise dispose of all or substantially all of its assets or (ii) change its name or (iii) permit any change of more than twenty percent (20%) in the ownership of the Borrower.

11. MISCELLANEOUS. Borrower agrees to execute or obtain and deliver to Lender at Lender's request such additional documents as Lender may reasonably deem necessary to protect Lender's interest in the Collateral and this Agreement. Any Security Deposit shall be held by and applied by Lender at its discretion to cure any Event of Default hereunder. Upon the satisfaction in full of all of the Indebtedness, Lender shall return any unapplied portion of the Security Deposit without interest. A facsimile copy of this Agreement with facsimile signatures may be treated as an original and will be admissible as evidence of this Agreement.

12. CHOICE OF LAW. This Agreement shall be binding and effective when accepted by Lender, shall be deemed to have been made in Pennsylvania and, except for local filing requirements, shall be governed by and construed in accordance with the laws (except for the laws relating to conflict of law) of the Commonwealth of Pennsylvania. Borrower hereby consents to and agrees that personal jurisdiction over Borrower and subject matter jurisdiction over the Collateral shall be with the courts of the Commonwealth of Pennsylvania or the Eastern Federal District Court for the Eastern District of Pennsylvania. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION BROUGHT IN CONNECTION WITH THIS AGREEMENT.

13. INDEMNITY. Borrower agrees to indemnify and hold harmless Lender, and its agents, employees and assigns from and against any liability, damage or loss of any nature (including attorneys' fees) arising out of, or resulting from this Agreement and claims of any nature arising out of the selection, purchase, delivery, acceptance, rejection, use, operation, ownership, return or disposition of the Collateral, or Data Erasure.

14. WAIVERS. Borrower hereby waives against Lender as a precondition for payment hereunder each of the following: any demand for payment, filing of claims with any court, and proceeding to enforce provisions of the Indebtedness or any guaranty thereof against any other party or collateral and all protests, presentment, notice or demand whatsoever. Borrower shall not be discharged from its obligations hereunder or with respect to the Indebtedness except by payment in full of all amounts due and to become due and the performance of all other obligations with respect thereto. Borrower hereby acknowledges and agrees that with respect to any products being financed with the proceeds of the Principal Amount hereof ("Products"): Borrower has selected the Products and the vendor thereof; LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND; LENDER IS NOT RESPONSIBLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OR ANY INJURY TO BORROWER OR ANY THIRD PARTY OR PROPERTY CAUSED BY THE PRODUCTS. Borrower shall continue to pay and perform its obligations hereunder notwithstanding any breach by the manufacturer or supplier of the Products.

15. ENTIRE AGREEMENT; NON-WAIVER; SEVERABILITY. This Agreement contains the entire agreement and understanding between Borrower and Lender or relating to the subject matter hereof. No agreements or understandings shall be binding on the parties hereto unless set forth in writing and signed by the parties. Time is of the essence in this Agreement. Any provision of this Agreement held unenforceable in any jurisdiction shall be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.

BORROWER: TECHSHOP INC.

BY: _____

PRINT NAME: Mark Hatch

TITLE: CEO

E-MAIL ADDRESS: TSCorp.Accounting@TechShop.com

TAX ID NUMBER: _____

LEAF CAPITAL FUNDING, LLC

BY: _____

PRINT NAME: Samuel Sharyuo

TITLE: VP Operations

Case: 18-50398   Doc# 43-2   Filed: 03/28/18   Entered: 03/28/18 14:04:29   Page 5 of 42



2005 Market Street • 15th Floor • Philadelphia, PA 19103  Phone: 800-819-5556 • Fax: 215-640-6329

January 29, 2016

Techshop, Inc.
300 South 2nd St.
San Jose, CA 95113
100-3298588-001

Dear Borrower:

Thank you for choosing LEAF.

This notification is hereby made part of that certain Finance Agreement by & between LEAF Capital Funding, LLC as lender and AFJ Custom Paving, Inc. as Borrower.

> 1. The Principal Amount shall be amended to: $98,654.87.  2. The Monthly Payments shall beamended to: 60 @ $2,045.12.  3. The Amount on the Pay Proceeds and Authorization toDisburse Funds shall be amended to: $ 52,993.00 to be paid to Haas Automation Inc., and$4,358.25 to be paid to Formlabs Inc, and $6,154.48 to be paid to Laguna Tools Inc., and$29,995. 00 to be paid to Epilog Laser, and $5,154.14 to be paid to Oneida Air Syst ems. 4. The Exhibit A shall be amended to: (1) VF-2 VMC 30" x 16" x 20"; (1) VF-24AXBL 4th-AxisDrive and Wiring; (1) Form 2 Complete Package with Black Resin; (1) Pro Service Plan; (1)Bandsaw - 3000 Series 18" 4HP Motor 15" Resaw; (1) Cyclone Micron Bags 10HP 220V/3ph;(1) Fusion32- 120W Laser Engraver; (1) Rotary - Fusion Rim Style; (1) Grid, Vector, AS M w/Packaging; (1) 7.5HP SYSTEM 3PH DD 23" 8/09; (1) PLENUM & FIL TER KIT 7.5/15 DD; (1)STAND FOR 7.5HP DD DOUBLE DRUM; (1) SPLI TTER KIT 10" W/ 55GL STEEL.

All other terms and conditions of the Finance Agreement shall remain unchanged.

Respectfully,

Documentation Specialist

Case: 18-50398   Doc# 43-2   Filed: 03/28/18   Entered: 03/28/18 14:04:29   Page 6 of 42

 **⊘LEAF**

## Addendum To Agreement

**Reference: Application No. 329858**

This Addendum is made part of the Agreement related to the above referenced application number ("**Agreement**") between **LEAF Capital Funding, LLC** ("**LEAF**") and **TECHSHOP, INC.** ("**Customer**"). Capitalized terms used but not defined will have the meaning given to them in the Agreement. If there is any conflict between the terms of this Addendum and the terms of the Agreement, the terms of this Addendum will control and prevail.

1. The Principal Amount shall be amended to: $98,654.87.  2. The Monthly Payments shall be amended to: 60 @ $2,045.12.  3. The Amount on the Pay Proceeds and Authorization to Disburse Funds shall be amended to: $52,993.00 to be paid to Haas Automation Inc., and $4,358.25 to be paid to Formlabs Inc, and $6,154.48 to be paid to Laguna Tools Inc., and $29,995.00 to be paid to Epilog Laser, and $5,154.14 to be paid to Oneida Air Systems.

4. The Exhibit A shall be amended to: (1) VF-2 VMC 30" x 16" x 20"; (1) VF-24AXBL 4th-Axis Drive and Wiring; (1) Form 2 Complete Package with Black Resin; (1) Pro Service Plan; (1) Bandsaw - 3000 Series 18" 4HP Motor 15" Resaw; (1) Cyclone Micron Bags 10HP 220V/3ph; (1) Fusion32-120W Laser Engraver; (1) Rotary - Fusion Rim Style; (1) Grid, Vector, ASM w/ Packaging; (1) 7.5HP SYSTEM 3PH DD 23" 8/09; (1) PLENUM & FILTER KIT 7.5/15 DD; (1) STAND FOR 7.5HP DD DOUBLE DRUM; (1) SPLITTER KIT 10" W/ 55GL STEEL.

This Addendum supplements and amends the Agreement only to the extent and in the manner set forth, and in all other respects, the Agreement will remain in full force and effect.

| CUSTOMER: TECHSHOP, INC. | LEAF CAPITAL FUNDING, LLC |
|---|---|
| By: *[signature]* | By: *Sandra Shaydria* |
| Print Name: <u>Mark Hatch</u> | Print Name: _____ |
| Title: <u>CEO</u>    1/28/2016 | Title: _____ VP Operations |
| Date: _____ | Date: _____ |

Page 1 of 1                                    SAD01 11-6-2013 App=329858

## EXHIBIT A
## TO
## FINANCE AGREEMENT

### Collateral Description

**Location:**   300 South 2nd St., San Jose, CA 95113

Please refer to the attached Haas Automation Inc. price lists Material TL-1 and Material TM-1P, 4 pages in total.

(1) Form 1+ Complete Package w/ Black Resin; (1) Pro Service Plan

(1) Bandsaw - 3000 Series 18" 4HP Motor 15" Resaw

Please refer to the attached Epilog Laser quote #F32-120 MS dated 11/20/15, 1 page.

The Collateral includes, but is not limited to the foregoing.

Borrower: TECHSHOP, INC.

BY: _____

PRINT NAME: Mark Hatch

TITLE: CEO

DATE: 12/15/15

**LEAF Capital Funding, LLC**

BY: _____

PRINT NAME: _____

TITLE: VP Operations

DATE: 12/21/2015

F10 9-25-2015 App=329858

Case: 18-50398   Doc# 43-2   Filed: 03/28/18   Entered: 03/28/18 14:04:29   Page 8 of 42

 **Haas Factory Outlet**
A Division of Lance Company

3599 Marshall Lane    Bensalem, PA  19020
Phone:  (215) 245-5500 - Fax:  (215) 245-6180



DATE:  1/22/2016
INVOICE #  1222016

**Bill To:**
TECHSHOP, INC.
300 SOUTH 2ND STREET
SAN JOSE, CA 95113

**Ship To:**
TECHSHOP, INC.
300 SOUTH 2ND STREET
SAN JOSE, CA 95113

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | ACCT NO. | TERMS |
|---|---|---|---|---|---|
| 5 | | 01.22.2016 | KAISER | | NET 15 |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| 1 | HAAS VF-2 VERTICAL MACHINING CENTER INCLUDING: 4TH AXIS DRIVE AND WIRING, TECHNIKS TOOLING, FREIGHT, KURT VISES, HAAS SIMULATOR, 2ND YEAR EXTENDED WARRANTY  SERIAL NUMBER 1128837 | $ 52,993.00 | $ 52,993.00 |

|  | SUBTOTAL | $ 52,993.00 |
|---|---|---|
|  | LESS DEPOSIT | |
|  | TOTAL DUE | $ 52,993.00 |



## Haas Automation Inc.
## US Customer Price List

| Material | | List Price | Currency |
|---|---|---|---|
| **TM-1P** | | **35,995.00** | **USD** |

Toolroom Mill with Tool Changer; 30" x 12" x 16" (762 x 305 x 406 mm), 40 taper, 7.5 hp (5.6 kW) vector drive, 6000 rpm, full enclosure, 10-station automatic tool changer, Intuitive Programming System, 1 MB program memory, memory lock keyswitch, 15" color LCD monitor and USB port and 20-gallon (76 liter) flood coolant system.

### Standard Features

| | | | |
|---|---|---|---|
| Spindle | 6000-rpm Spindle, 40 taper, belt drive, 7.5 hp (5.6 kW) vector drive | | |
| Options | Coolant Pump Kit, 1/4 hp (188 W), 20-gallon (76 liter) tank | | |
| Control Options | Intuitive Programming System | | |
| Options | Lifting Provision; built-in attachment points for lifting the machine | | |
| Warranty | 1-Year Standard Warranty | | |
| Tool Changer | 10-Station Automatic Tool Changer | | |
| Options | Work Light | | |

### Additional Axis

| | | | |
|---|---|---|---|
| 4AXD | 4th-Axis Drive and Wiring | 1,995.00 | USD |
| 5AXD | 5th-Axis Drive and Wiring (4th-axis drive not included) | 6,195.00 | USD |

### Probe System

| | | | |
|---|---|---|---|
| WIPS-R | Wireless Intuitive Probing System; Renishaw | 5,495.00 | USD |

### Options

| | | | |
|---|---|---|---|
| AUGER | Chip Auger | 2,595.00 | USD |
| CPK-HF | High-Flow Coolant Pump Kit, 3/4 hp (0.6 kW), 20-gallon (76 liter) tank. | 695.00 | USD |
| EXPACK | Export Packaging | 1,295.00 | USD |
| P-COOL | Programmable Coolant Nozzle. Coolant system is required. | 1,595.00 | USD |

### Transformer

| | | | |
|---|---|---|---|
| *HV-ISO-XFRMR | Internal High-Voltage Isolated Transformer for 380-480V operation. | 2,495.00 | USD |

### Control Options

| | | | |
|---|---|---|---|
| 8M | 8 Spare M Functions | 1,395.00 | USD |
| COORD | Coordinate Rotation and Scaling | 1,395.00 | USD |
| EPFDM | Early Power Failure Detection Module | 795.00 | USD |
| ETHERNET | Ethernet Interface | 1,595.00 | USD |
| EXPANDED-MEMORY | 750 MB Expanded Memory | 1,895.00 | USD |
| HSM | High-Speed Machining | 2,595.00 | USD |

TM-1P

* Not available for field installation



# Haas Automation Inc.
## US Customer Price List

| Material | | List Price | Currency |
|---|---|---|---|

## Control Options

| | | | |
|---|---|---|---|
| RTAP-3 | Rigid Tapping | 1,395.00 | USD |
| SO | Spindle Orientation | 895.00 | USD |
| VQC | Visual Quick Code | 695.00 | USD |

## Workholding

| | | | |
|---|---|---|---|
| MC10 | 10" (254 mm) Manual 3-Jaw Scroll Chuck; hard top reversible jaws, A2-6 mount; 2500 rpm max. rating, 3.0" (76 mm) through bore. | 1,495.00 | USD |
| MC8-6 | 8" (203 mm) Manual 3-Jaw Scroll Chuck; hard top reversible jaws, A2-6 mount; 3500 rpm max. rating, 2.3" (58 mm) through bore. | 1,295.00 | USD |

## Tooling

| | | | |
|---|---|---|---|
| TLTID-1 | 1.0" ID Boring Bar Holder for tool turret | 395.00 | USD |
| TLTMID-25 | 25 mm ID Boring Bar Holder for tool turret | 395.00 | USD |
| TP20 | Quick-Change Tool Post; 2 position, 4 each 20 mm turn/face, 1 each 25 mm boring bar holder and T-nut | 995.00 | USD |
| TP3/4 | Quick-Change Tool Post; 2 position, 4 each 3/4" turn/face, 1 each 1.0" boring bar holder and T-nut | 995.00 | USD |

## Warranty

| | | | |
|---|---|---|---|
| ESW-1-YEAR | 1-Year Extended Warranty (includes 1-year standard warranty) | 1,695.00 | USD |

TL-1

* Not available for field installation

Case: 18-50398   Doc# 43-2   Filed: 03/28/18   Entered: 03/28/18 14:04:29   Page 11 of 42



## Haas Automation Inc.
## US Customer Price List 

| Material | | List Price | Currency |
|---|---|---|---|
| **TL-1** | | **29,995.00** | **USD** |

CNC Toolroom Lathe; 16" x 30" (406 x 762 mm) max capacity, chip enclosure, 20" (508 mm) swing, 12 hp (8.9 kW) vector drive, 2000 rpm, A2-6 spindle, Intuitive Programming System, coolant pump, 1 MB program memory, memory lock keyswitch, 15" color LCD monitor and USB port. No workholding, toolpost, or toolholders included.

### Standard Features

| | | | |
|---|---|---|---|
| Spindle | 2000-rpm Spindle, 12 hp (8.9 kW), A2-6 spindle nose, 3.0" (76 mm) spindle bore, belt drive | | |
| Accessories | Air Blow Gun with hose and bracket | | |
| Options | Coolant Pump Kit, 1/4 hp (186 W), 20-gallon (76 liter) tank | | |
| Options | Chip Enclosure | | |
| Control Options | Intuitive Programming System | | |
| Warranty | 1-Year Standard Warranty | | |
| Options | Work Light | | |
| Turret | Cross-Slide, Tooling Ready | | |

### Spindle

| | | | |
|---|---|---|---|
| *3K-12HP-A2-6 | 3000-rpm Spindle, 12 hp (8.9 kW), A2-6 spindle nose, 3.0" (76 mm) spindle bore, belt drive | 1,995.00 | USD |

### Turret

| | | | |
|---|---|---|---|
| TT | 4-Station Automatic Tool Turret for 3/4" (20 mm) turning tools | 4,995.00 | USD |

### Options

| | | | |
|---|---|---|---|
| EXPACK | Export Packaging | 1,295.00 | USD |
| MTS | Manual Tailstock, MT4 manual quill | 1,995.00 | USD |
| SR-5 | Manual Steadyrest, 5" (127 mm) max diameter | 1,395.00 | USD |

### Transformer

| | | | |
|---|---|---|---|
| *HV-ISO-XFRMR | Internal High-Voltage Isolated Transformer for 380-480V operation. | 2,495.00 | USD |

### Control Options

| | | | |
|---|---|---|---|
| 8M | 8 Spare M Functions | 1,395.00 | USD |
| EPFDM | Early Power Failure Detection Module | 795.00 | USD |
| ETHERNET | Ethernet Interface | 1,595.00 | USD |
| EXPANDED-MEMORY | 750 MB Expanded Memory | 1,695.00 | USD |
| MACRO | User-Definable Macros | 2,595.00 | USD |
| MFININ | M-Code/MFIN Cable Assembly | 295.00 | USD |
| RJH-C | Remote Jog Handle with Color LCD | 1,295.00 | USD |

TL-1

\* Not available for field installation



# Haas Automation Inc.
## US Customer Price List

| Material | | List Price | Currency |
|---|---|---|---|
| **Control Options** | | | |
| MACRO | User-Definable Macros | 2,595.00 | USD |
| MFININ | M-Code/MFIN Cable Assembly | 295.00 | USD |
| RJH-C | Remote Jog Handle with Color LCD | 1,295.00 | USD |
| RTAP-3 | Rigid Tapping | 1,395.00 | USD |
| SO | Spindle Orientation | 895.00 | USD |
| VQC | Visual Quick Code | 695.00 | USD |
| **Tooling** | | | |
| PS24BT | 24 Pull Studs, BT40 | 495.00 | USD |
| PS24CT | 24 Pull Studs, CT40 | 495.00 | USD |
| PS24E | 24 Pull Studs, DIN 69-871 | 495.00 | USD |
| **Warranty** | | | |
| ESW-1-YEAR | 1-Year Extended Warranty (includes 1-year standard warranty) | 6,195.00 | USD |

TM-1P

* Not available for field installation

 

Formlabs Inc
35 Medford St
Ste 1
Somerville, MA 02143

## Invoice
Order# 100025015
Date: Jan 28, 2016

| Sold to: | Ship to: |
|---|---|
| Techshop, Inc. | Techshop, Inc. |
| 300 South 2nd Street | 300 South 2nd Street |
| San Jose, CA 95113 | San Jose, CA 95113 |
| United States | United States |
| T: (650) 521-9027 | T: (650) 521-9027 |

| Payment Method | Shipping Method: |
|---|---|
| Pay by Check | |
| Delivery Make Check payable to: Formlabs | |
| Send Check to: | |
| Formlabs Inc. 35 Medford Street, Suite 201 | |
| Somerville, MA 02143 (Please reference | |
| your order number to make sure your order | |
| is processed as soon as possible.) | |

| Products | SKU | Price | Qty | Tax | Subtotal |
|---|---|---|---|---|---|
| Formlabs Pro Service Plan | SVC-PP-01 | $499.00 | 1 | $0.00 | $499.00 |
| Form 2 Complete Package with Black Resin | F2-PKG-B | $3,499.00 | 1 | $279.92 | $3,499.00 |

|  |  |
|---|---|
| Subtotal: | $3,998.00 |
| Tax: | $279.92 |
| Shipping & Handling: | $80.33 |
| Grand Total: | $4,358.25 |

Quote
| | |
|---|---|
| Quote Number | 00007662 |
| Expiration Date | 11/30/2015 |



www.formlabs.com

| | | | |
|---|---|---|---|
| Prepared By | Ford Fraker | Contact Name | Justin Leathers |
| Phone | (617) 702-8459 📞 | | |
| Email | ford@formlabs.com | | |

| | | | |
|---|---|---|---|
| Bill To Name | Techshop, Inc. | Ship To Name | Techshop, Inc |
| Bill To | 120 Independence Dr<br>MenloPark,CA 94025<br>United States | Ship To | 120 Independence Dr<br>MenloPark, CA 94025<br>United States |

| Product | Sales Price | Quantity | Subtotal |
|---|---|---|---|
| Form 1+ Complete Package w/ Black Resin | USD 2,799.00 | 1.00 | USD 2,799.00 |
| Pro Service Plan | USD 499.00 | 1.00 | USD 499.00 |

| | |
|---|---|
| Subtotal | USD 3,298.00 |
| Shipping and Handling | USD 53.91 |
| Tax | USD 223.92 |
| Grand Total | USD 3,575.83 |

Shipping and tax on this quote are estimated.

Please contact our team at (617) 702-8476 for exact amounts before submitting payment.

Formlabs, Inc., 35 Medford St. Suite 201, Somerville MA 02143, United States
www.formlabs.com



# Invoice

Laguna Alton Parkway
2072 Alton Parkway
Irvine CA 92606
949 474 1200 or 800 234 1976
www.lagunatools.com
Tax ID # 93 1083116 93-1083116

| | |
|---|---|
| **Date** | 1/18/2016 |
| **Invoice #** | 24255 |
| **Expires** | |
| **Sales Rep** | Timothy Lory |
| **Ship Via** | Best Method |
| **Promise Date** | |

**Bill To**
Techshop, Inc
300 South 2nd Street
San Jose CA 95113

**Ship To**
Techshop, Inc
300 South 2nd Street
San Jose CA 95113

| Qua. | Item # | Description | Tax | Rate | Amount |
|---|---|---|---|---|---|
| 1 | MBAND184... | Bandsaw - 3000 Series 18" 4HP Motor 15" Resaw. | Yes | 2,299.00 | 1,839.20 |
| 1 | Best Method | Best method of Shipping | | 175.00 | 175.00 |

| | |
|---|---|
| **Subtotal** | 2,014.20 |
| **Total Tax (CA_ORANGE CO_AHXW_3 8.0%)** | 147.14 |
| **Total** | $2,161.34 |

This Sale Agreement is a legal contract between the Customer and Laguna Tools Inc., The Customer accepts this Sale Agreement by making a purchase and/or by placing an order. This Agreement will be governed by and construed in accordance with the substantive laws of California, notwithstanding any conflict of law principles. Defective merchandise must be returned with an authorized RMA (Return Merchandise Authorization)



# Invoice

Laguna Alton Parkway
2072 Alton Parkway
Irvine CA 92606
949 474 1200 cr 800 234 1976
www.lagunatools.com
Tax ID # 93 1083116 93-1083116

| | |
|---|---|
| Date | 1/20/2016 |
| Invoice # | 27097 |

| | |
|---|---|
| **Expires** | |
| **Sales Rep** | Timothy Lory |
| **Ship Via** | Best Method |
| **Promise Date** | |

**Bill To**

Techshop, Inc
300 South 2nd Street
San Jose CA 95113

**Ship To**

Techshop, Inc
300 South 2nd Street
San Jose CA 95113

| Qua | Item # | Description | Tax | Rate | Amount |
|---|---|---|---|---|---|
| 1 | MDC1300-0... | Cyclone Micron Bags 10HP 220V/3ph | Yes | 4,499.00 | 3,599.20 |
| 1 | Best Method | Best method of Shipping | | 393.94 | 393.94 |

| | |
|---|---|
| **Total** | **$3,993.14** |

This Sale Agreement is a legal contract between the Customer and Laguna Tools Inc., The Customer accepts this Sale Agreement by making a purchase and/or by placing an order. This Agreement will be governed by and construed in accordance with the substantive laws of California, notwithstanding any conflict of law principles. Defective merchandise must be returned with an authorized RMA (Return Merchandise Authorization)



## EPILOG LASER
16371 Table Mountain Pkwy / Golden, Colorado 80403-1826
Phone 303-277-1188 - FAX 303-277-9669
www.epiloglaser.com

**Quotation**

20November15 F32-120 MS

| Customer: | Ship to: |
|---|---|
| TechShop, Inc.<br>120 Independence Dr<br>Menlo Park, CA 94025 | TechShop, Inc.<br>120 Independence Dr<br>Menlo Park, CA 94025 |

Date: November 20th, 2015

| | Description | MSRP | Sale Price |
|---|---|---|---|
| 1 | Fusion 32, 120 Watt Laser Engraver | $45,995.00 | $29,995.00 |
| | Serial Number 13120-1408663220 | | |
| | Already in Tech Shop's Possession | | |
| 1 | Rim Style Rotary Attachment | $1,495.00 | $0.00 |
| 1 | Vector Cutting Grid | $550.00 | $0.00 |
| 1 | 2 Year Factory Parts Warranty** | $4,560.00 | $0.00 |
| | **The warranty covers *ALL* parts in the | | |
| | machine, no exclusions - No labor | | |
| | | | |
| | The Fusion 32 comes standard with: | | |
| | * 32" x 20" Active Engraving and Cutting Area | | |
| | * "Mac" and Windows Compatible Print Driver | | |
| | * Internal LED Lighting | | |
| | * Air Assist (Compressor not included) | | |
| | * Radiance High Energy Optics | | |
| | * Red Dot Pointer | | |
| | * Epilog Job Management Software | | |
| | * Epilog Laser Dashboard Print Driver | | |
| | * All Purpose 2" Focus Lens | | |
| | * Variable Resolution to 1200 DPI | | |
| | * Relocatable X-Y Home | | |
| | * 128 MB RAM | | |
| | * And Much, Much More! | | |
| | | | |
| | Payment Due Upon Receipt | | |
| | | | |
| | **  Made in the USA ** | | |
| | | | |
| | | Sub Total | $29,995.00 |
| | | Shipping | N/A |
| | Accepted: _____ | TOTAL | $29,995.00 |

## EPILOG CORPORATION
### L A S E R

16371 Table Mountain Parkway
Golden, CO 80403
Phone: 303-277-1188
FAX: 303-277-9669
www.epiloglaser.com

INVOICE

| | |
|---|---|
| Customer | EP200 |
| Invoice | 115177 |
| Invoice Date | 1/20/2016 |
| Due Date | 1/20/2016 |
| Page Number | 1 |

B
I
L
L

T
O

TechShop, Inc.
Attn: Justin Leathers

300 South 2nd Street

San Jose, CA 95113
USA

S
H
I
P

T
O

TechShop, Inc.
Attn: Justin Leathers

300 South 2nd Street

San Jose, CA 95113
USA

| Purchase Order | Ship Via | Terms |
|---|---|---|
| F32-120 MS | | Upon Receipt |

| Date Shipped | Sales Order | Buyer | Salesperson |
|---|---|---|---|
| | | Mike Dean | Epilog |

| Item/Description | Quantity | Unit | Unit Price | Total Price |
|---|---|---|---|---|
| Fusion 32-120W Laser Engraver | 1 | | 29,995.00 | 29,995.00 |
| *Purchase of loaner machine in TechShop's possession | | | | |
| Rotary - Fusion Rim Style | 1 | | 1,495.00 | 1,495.00 |
| Special Discount | 1 | | (1,495.00) | (1,495.00) |
| Grid, Vector, ASM w/Packaging | 1 | | 550.00 | 550.00 |
| Special Discount | 1 | | (550.00) | (550.00) |

2 Year Warranty

Serial Number: 13120-1408663220

| Subtotal: | Invoice Discount: | Total: |
|---|---|---|
| $29,995.00 | 0.00 | $29,995.00 |

Currency: USD

```
                    ******** INVOICE   ********
ONEIDA AIR SYSTEMS
1001 WEST FAYETTE ST
SYRACUSE, NY 13204                          PAGE:   1
PHONE: 800-732-4065
FAX: 315-476-5151                           ORDER   1036880

                                DATED:    01/20/2016

BILL TO:                        SHIP TO:
TechShop, Inc                   TechShop, Inc
300 S 2nd St                    300 S 2nd St


San Jose, CA 95113              San Jose, CA 95113
US                              US
```

| Quantity | UOM | Item | Description | Unit Price | Extended |
|---|---|---|---|---|---|
| 1 | EA | XXK070323 | 7.5HP SYSTEM 3PH DD 23" 8/09 | 2,303.77 | $2,303.77 |
| 1 | EA | FXK020007 | PLENUM & FILTER KIT 7.5/15 DD | 1,190.30 | $1,190.30 |
| 1 | EA | STZ070002 | STAND FOR 7.5HP DD DOUBLE DRUM KIT ITKIT ITEM ** | $562.00 | $562.00 |
| 1 | EA | SEK551010 | SPLITTER KIT 10" W/ 55GL STEEL DRUMS DRUMS | $374.45 | $374.45 |
| 723 | EA | MSS900000 | FREIGHT SHIPPING & HANDLING | $1.00 | $723.62 |

**CUSTOMER NUMBER** 980208 **TERMS** Credit Card PreAuthed

```
**FL & NY RESIDENTS MUST ADD SALES TAX     TOTAL :    $5,154.14
```

THIS EQUIPMENT IS INTENDED FOR USE WITH WOOD DUST ONLY.  FOLLOW ALL APPLICABLE
FEDERAL, STATE, LOCAL, AND NFPA CODES    WHEN INSTALLING.  QUANTITIES ARE
ESTIMATES.  UN-USED ITEMS (EXCEPT FLEX  HOSE & CUSTOM PARTS) MAY BE RETURNED
WITHIN 30 DAYS OF PURCHASE FOR A  REFUND, SUBJECT TO A 25% RESTOCK FEE.
KITS MUST BE RETURNED IN FULL (ALL COMPONENTS) FOR CREDIT.  BEFORE
INSTALLING OR OPERATING THE EQUIPMENT,  READ THE OWNER'S MANUAL.

Exhibit "B"

**SCHEDULE No. 21**
**Dated March 18, 2016**
**To Master Purchase and Sale Agreement**
**dated as of September 24, 2014 (the "*Agreement*")**
**Between**
**Hitachi Capital America Corp.**
**and**
**LEAF Capital Funding, LLC**

This Schedule No. 21 ("*Schedule*") is dated this 18ᵗʰ day of March, 2016 (the "*Closing Date*") to the Agreement, by and between LEAF Capital Funding, LLC as seller (the "*Seller*"), and HITACHI CAPITAL AMERICA CORP. as purchaser ("*HCAC*").

Seller and HCAC have entered into the Agreement, pursuant to which Seller agreed to sell and assign, and HCAC agreed to purchase from Seller, all of the Seller's right, title and interest in and to the Interest, as defined in, and upon the terms and conditions more particularly set forth in, the Agreement and as such Interests is further described in this Schedule and Annex A attached hereto. Pursuant to this Schedule, Seller hereby sells, assigns, transfers and conveys the Interests hereinafter set forth to HCAC, pursuant to the terms of the Agreement, all of which terms and conditions are hereby incorporated by reference, including all of the pertinent definitions provided therein, and subject to the Collection and Paying Agency Agreement.

Obligor:        Those Obligors set forth on Annex A hereto.

Paper:          The Paper set forth on Annex A hereto.

Payments:    The aggregate unpaid monthly payments payable on the tenth day of each month, in the number of installments, commencing on the date, ending on the date and each in the amounts set forth on Annex A hereto.

Discount Rate: 3.30%          Schedule Purchase Price:        $23,202,425.36

Additional Provisions:

1.        The attached Annex A including all exhibits thereto is incorporated herein by this reference.

2.        Notwithstanding any provisions of the Agreement to the contrary, Seller shall on or before April 1, 2016 deliver to HCAC, the originals of all Paper (including the applicable original chattel paper) and all other documents required to be delivered by Seller pursuant to Article III., Section 1.(c)(i) through (iii) of the Agreement (the "*Documentation*"). Upon receipt thereof, HCAC shall have ninety (90) days in which to review the Documentation to verify its conformity to the provisions of the Agreement and this Schedule No. 21. In the event Seller is unable to deliver the requisite Documentation on or before April 1, 2016 (or such later date as HCAC may agree to in writing), or HCAC shall, after its review, advise Seller that any Documentation with respect to any Interest does not conform to the provisions of the Agreement, Seller shall, within ten (10) business days of receipt of notice thereof from HCAC, repay the Purchase Price related to any such Interest, plus interest accrued thereon (calculated at the Discount Rate), from the Closing Date through the date of repayment.

3.        In order to induce HCAC to purchase certain of the Paper which does not contain an ink signature (the "*Non-Ink Paper*"), Seller does hereby agree that in the event a court of competent jurisdiction determines that (i) the Non-Ink Paper is not original Paper, or (ii) any Paper required to constitute chattel paper in accordance with Article III, Section I (c) of the Master Agreement does not constitute "chattel paper" under the applicable Uniform

Case: 18-50398    Doc# 43-2    Filed: 03/28/18    Entered: 03/28/18 14:04:29    Page 22 of 42

Commercial Code, and as a direct result of such determination HCAC is not entitled to receive the payments due thereunder, then Seller shall indemnify, protect, defend and hold HCAC, its successors and assigns, harmless from and against any and all claims, loss, damage, cost, injury or expense, including without limitation, reasonable attorneys' fees, incurred or suffered by HCAC resulting from HCAC's not receiving the original (including, chattel paper originals) of any such item of Paper.

4.  With respect to any Paper subject to non-appropriation cancellation rights having a Purchase Price in excess of $100,000, including, but not limited to the Paper identified on Annex B hereto, Seller does hereby agree that in the event the requisite appropriations are not authorized for such Paper, Seller shall, on the Distribution Date (as defined in the Collection and Paying Agency Agreement) immediately following the date on which Seller or Purchaser shall become aware of such non-appropriation of funds, repurchase such Paper for an amount equal to the aggregate remaining unpaid Payments due under such Paper for the remaining term, discounted to its present value calculated using the Discount Rate.

5.  Seller expressly acknowledges and agrees that the indemnities set forth in Section 3 and 4 hereof are in addition to, and not in any way a limitation of, the indemnities set forth in the Agreement.

This Schedule, when executed, shall constitute a binding Purchase and Sale Agreement as to the Interests described herein between Seller and HCAC.

IN WITNESS WHEREOF, the parties have caused this Schedule No. 21 to be executed under seal as of the day and year first above written.

LEAF CAPITAL FUNDING, LLC
Seller

By: _____

Name:  Miles Herman
Title:   EVP & COO

HITACHI CAPITAL AMERICA CORP.
Purchaser

By: _____

Name:
Title:
James M. Giaimo
Vice President
Structured Credit & Operations

The undersigned Servicer does hereby acknowledge that the Interests herein conveyed are to be serviced under the Collection and Paying Agency Agreement dated as of September 24, 2014, among Seller, Purchaser and Servicer, and does hereby covenant and agree to perform its obligations under the Collection and Paying Agency Agreement in accordance with its terms and the terms hereof (including, without limitation Section 4 hereof), and hereby represents and warrants that all of the statements, agreement, covenants, representations and warranties set forth in the Collection and Paying Agency Agreement are true and correct as if made on the date hereof.

LEAF COMMERCIAL CAPITAL, INC.
Servicer

By: _____

Name:  Miles Herman
Title:   President & COO

MEI 19594763v.1

| Customer Name | Contract # | Aggregate unpaid Payments | Rem Term | Residual |
|---|---|---|---|---|
| Chemence, Inc. | | 83,638.24 | 56 | - |
| PREMIER FACILITY MANAGEMENT CORP. | | 70,442.66 | 47 | - |
| Rentapen, LLC | | 88,714.17 | 59 | - |
| Pallet Distributors Inc | | 104,325.70 | 67 | 1.00 |
| Leather in Chicago | | 91,588.80 | 58 | - |
| Decisive Testing, Inc. | | 45,645.04 | 28 | - |
| Destin Machine, Inc. | | 93,877.86 | 57 | - |
| IBBX INTERNATIONAL FORWARDING CORP. | | 58,112.95 | 35 | 1.00 |
| Visual Success Corporation | | 94,270.55 | 55 | - |
| Romd, Inc. | | 102,142.06 | 58 | - |
| Healthy Solutions, LLC | | 102,611.86 | 58 | - |
| Fireball Entertainment, Inc. | | 106,596.48 | 53 | - |
| Podiatry Associates, P.C. | | 96,049.25 | 58 | - |
| Torenti Laboratory, Inc. | | 105,144.72 | 55 | - |
| Chemence, Inc. | | 100,109.35 | 57 | - |
| Monkeyland Audio, Inc. | | 104,091.69 | 59 | - |
| Volunteer Center for Santa Cruz County | | 108,716.94 | 59 | 1.00 |
| OPUS INTERACTIVE, INC. | | 67,015.44 | 36 | - |
| Zoom Management, Inc. & Zoom Care, P.C. | | 61,699.20 | 32 | - |
| Dealers Supply Company | | 108,577.28 | 56 | 1.00 |
| TECHSHOP, INC. | | 120,662.08 | 59 | - |
| PAVER DECOR MASONRY, INC. | | 118,741.08 | 58 | - |
| GREGORY DAVIS, DMD, P.C. | | 122,642.16 | 58 | - |
| Viatech Publishing Solutions Inc | | 48,143.03 | 41 | - |
| Helton, Inc. | | 116,228.52 | 54 | - |
| Quality Tool & Gear Inc | | 127,463.60 | 59 | 1.00 |
| Mountain Village Grocery, Inc. | | 128,574.57 | 59 | - |
| Gch, Inc. | | 132,586.80 | 60 | - |
| Lux Bakery, Inc. | | 117,914.40 | 53 | - |
| Copy Shop, Inc. | | 120,929.22 | 54 | - |
| MEDEUTA, LLC | | 130,182.16 | 58 | 1.00 |
| L.H. Marshall Company | | 127,956.45 | 57 | - |
| ADVENTURE PARK, U.S.A., LLC | | 130,527.84 | 54 | - |
| Gem Rentals, Inc. | | 146,922.10 | 65 | 1.00 |
| Schafer Fisheries Inc. | | 125,297.70 | 55 | - |
| Bolder Enterprises, LLC | | 124,406.36 | 52 | - |
| Hann Funeral Home LTD. | | 143,853.00 | 60 | - |
| Lane Dunn & Associates, Inc. | | 134,672.72 | 56 | - |
| Sawyer Signs, LLC | | 53,337.90 | 22 | 1.00 |
| Allied Telecom Group LLC | | 132,875.64 | 54 | - |
| Crawford's Fresh World, Inc. | | 84,990.51 | 33 | 1.00 |
| Wired or Wireless Inc | | 115,976.70 | 45 | - |
| Viatech Publishing Solutions Inc | | 149,841.84 | 58 | 1.00 |
| Nor-Cal Pipeline Services | | 120,917.90 | 46 | - |
| Clinical Research Laboratories, Inc. | | 160,654.80 | 60 | - |
| Tudor Arm Master Soloteanti LLC | | 147,599.10 | 55 | - |
| THE VERTEX COMPANIES, INC. | | 143,416.94 | 53 | - |
| Papa Bepp, LLC | | 114,394.92 | 42 | - |
| WORKOUT CLUB & WELLNESS CENTER, INC. | | 134,753.76 | 48 | - |
| Critchfield Meats, Inc. | | 156,014.64 | 54 | - |
| Mid-States Tool and Machine Inc. | | 168,985.90 | 58 | - |
| Personalized Prints, Inc. | | 100,831.08 | 34 | - |
| Doral Creamery, LLC | | 137,024.80 | 46 | - |
| AE REC "LLC" | | 134,541.00 | 44 | - |
| CAREER NETWORKS INSTITUTE, INC | | 146,951.55 | 45 | - |
| Central Oregon Eyecare, P.C. | | 112,729.38 | 34 | 1.00 |
| NMC Global Corporation | | 193,353.48 | 54 | - |
| | | 109,519.20 | 30 | 1.00 |

SIGN HERE

Exhibit "C"

# iLien Cover Page

Date Printed: 02/16/2016

Debtor:
TECHSHOP, INC.
300 South 2nd St.
San Jose, CA 95113

LEASE NUMBER: 3298588-001
CITY OF FILER: Philadelphia
CUSTOMER NAME: Techshop, Inc.
NAME OF FILER:
Ref5:
Ref6:
Ref7:
Law Firm Bill Code:

iLien File #: 61018158
Order Confirmation #: 52316873

UserID: 227402
UserName: SARAH MORTENSEN
Number of Collateral Pages Attached: 0

Transaction Type: Collateral Amendment
Jurisdiction: CA, Secretary of State



# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**CT Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 1675080536
File Date : 01-Feb-2016

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)  11286 - LEAF Commercial

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

52316873
CALI

File with: Secretary of State, CA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE NUMBER
157500521460  12/21/2015  SS CA

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in Item 13

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

7 CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☒ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☒ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:
The following items of equipment:

(1) VF2
VMC 30" x 16" x 20"&#894; (1) VF24AXBL
4thAxis
Drive and Wiring&#894; (1) Form 2 Complete Package with Black Resin&#894; (1) Pro Service Plan&#894; (1)
Bandsaw 3000
Series 18" 4HP Motor 15" Resaw&#894; (1) Cyclone Micron Bags 10HP 220V/3ph&#894;

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LEAF Capital Funding, LLC and/or Its Assigns | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: TECHSHOP, INC.
52316873       3298588-001                                    Philadelphia

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form

157500521460  12/21/2015  SS CA

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME

LEAF Capital Funding, LLC and/or Its Assigns

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

OR

13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

(1) Fusion32120W
Laser Engraver&#894; (1) Rotary Fusion
Rim Style&#894; (1) Grid, Vector, ASM w/
Packaging&#894; (1) 7.5HP SYSTEM 3PH DD 23" 8/09&#894; (1) PLENUM & FILTER KIT 7.5/15 DD&#894; (1)
STAND FOR 7.5HP DD DOUBLE DRUM&#894; (1) SPLITTER KIT 10" W/ 55GL STEEL

In addition, the collateral also shall include all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins).

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing

17. Description of real estate:

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

18. MISCELLANEOUS: 52316873-CA-0  11286 - LEAF Commercial Capi    LEAF Capital Funding, LLC and/or Its    File with: Secretary of State, CA    3298588-001  Philadelphia

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 11286 - LEAF Commercial

| CT Lien Solutions
| P.O. Box 29071
| Glendale, CA 91209-9071

51742428

CALI

File with: Secretary of State, CA

**CT Lien Solutions**
Representation of filing

**This filing is Completed**
File Number : 157500521460
File Date : 21-Dec-2015

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| TECHSHOP, INC. | | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 300 South 2nd St. | San Jose | CA | 95113 | USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LEAF Capital Funding, LLC and/or Its Assigns | | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2005 Market Street, 14th Floor | Philadelphia | PA | 19103 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
The following items of equipment:

(1) Form 1+ Complete Package w/ Black Resin; (1) Pro Service Plan, (1) Bandsaw - 3000 Series 18" 4HP Motor 15" Resaw, Laser Engraver described on Epilog Laser quote #F32-120 MS dated 11/20/15, 1 page, CNC toolroom Lathe

In addition, the collateral also shall include all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins).

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, Item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
51742428        3298588-001        Philadelphia

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282



# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER** (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

**B. E-MAIL CONTACT AT FILER** (optional)
CLS-CTLE_Glendale_Customer_Service@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)    11286 - LEAF Commercial

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

52316873

CALI

File with: Secretary of State, CA

1675080536

02/01/2016 17:00

FILED
CALIFORNIA
SECRETARY OF STATE

SOS

53278600002   UCC 3 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
157500521460   12/21/2015   SS CA

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:    AND   Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | | | |
|---|---|---|---|
| 6a. ORGANIZATION'S NAME | | | |
| OR  6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | | | |
|---|---|---|---|
| 7a. ORGANIZATION'S NAME | | | |
| OR  7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☒ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☒ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:
The following items of equipment:

(1) VF2
VMC 30" x 16" > 20"&#894; (1) VF24AXBL
4thAxis
Drive and Wiring &#894; (1) Form 2 Complete Package with Black Resin&#894; (1) Pro Service Plan&#894; (1)
Bancsaw 3000
Series 18" 4HP Motor 15" Resaw&#894; (1) Cyclone Micron Bags 10HP 220V/3ph&#894;

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | | | |
|---|---|---|---|
| 9a. ORGANIZATION'S NAME   LEAF Capital Funding, LLC and/or Its Assigns | | | |
| OR  9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor Name: TECHSHOP, INC.
52316873          3298588-001                                    Philadelphia

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS

11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as Item 1a on Amendment form

157500521460  12/21/2015  SS CA

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT: Same as Item 9 on Amendment form

12a. ORGANIZATION'S NAME

LEAF Capital Funding, LLC and/or Its Assigns

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

13. Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction Item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

OR

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

14. ADDITIONAL SPACE FOR ITEM 8 (Collateral):

(1) Fusion32120W
(1) Laser Engraver&#894; (1) Rotary Fusion
Rim Style&#894; (1) Grid, Vector, ASM w/
Packaging&#894; (1) 7.5HP SYSTEM 3PH DD 23" 8/09&#894; (1) PLENUM & FILTER KIT 7.5/15 DD&#894; (1)
STAND FOR 7.5HP DD DOUBLE DRUM&#894; (1) SPLITTER KIT 10" W/ 55GL STEEL

In addition, the collateral also shall include all parts, accessories, accessions and attachments thereto, and all replacements, substitutions and exchanges (including trade-ins).

15. This FINANCING STATEMENT AMENDMENT:

☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

16. Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

17. Description of real estate:

18. MISCELLANEOUS: 52316273-CA-0  11266 - LEAF Commercial Capi        LEAF Capital Funding, LLC and/or Its        File with: Secretary of State, CA        3296383-001  Philadelphia

532786000002

Exhibit "D"

```
CMAINT.11                        Lease Contract Inquiry              03/19/2018
                                 Payment History Inquiry
   Contract.  ██████████         TECHSHOP, INC.

         Trans     Type   Check/Memo  Date Due   Date Rcvd   Amount Rcvd    Tot Rental
   0601) 9567494   Stand  43523       09/20/17   09/29/17      2,335.75       2,335.75
   0602) 9505773   Stand  43492       08/20/17   09/07/17      2,070.12       2,070.12
   0603) 9444775   Over   43470       07/20/17   08/16/17      2,045.12       2,045.12
   0604) 9426996   Over   43417                  06/29/17        381.76
   0605) 9426884   Corrt  43417       07/20/17   06/29/17       -381.76        -381.76
   0606) 9309145   Stand  43417       07/20/17   06/29/17        381.76         381.76
   0607) 9242812   Stand  43355       03/20/17   06/07/17      4,343.62       4,090.24
   0608) 9166458   Over   43338       04/20/17   05/04/17      2,045.12       2,045.12
   0609) 9090613   Over   43299       09/20/16   04/11/17      2,373.63       2,045.12
   0610) 9017774   Over   56520       12/20/16   03/20/17      2,080.12       2,035.12
   0611) 8884408   Stand  43244       01/20/17   01/31/17      2,055.12       2,055.12
   0612) 8780534   Retn   43194       09/20/16   12/22/16     -2,194.78      -2,184.78
   0613) 8775123   Stand  43184       09/20/16   12/22/16      2,194.78       2,184.78
   0614) 8753759   Over   43237       10/20/16   12/15/16      4,423.28       4,090.24
   0615) 8622046   Stand  43126       10/20/16   10/25/16      2,045.12       2,045.12
   0616) 8588146   Stand  43100       09/20/16   10/14/16      1,862.11       1,862.11
   Selection  █                                                More...
```

```
1.20   Caps Num  @(011,21)   Printer  Capture   09:22  Help: F1
```

```
CMAINT.11                        Lease Contract Inquiry              03/19/2018
                                 Payment History Inquiry
   Contract.  ██████████         TECHSHOP, INC.

         Trans     Type   Check/Memo  Date Due   Date Rcvd   Amount Rcvd    Tot Rental
   0617) 9406833   Stand  42996       08/20/16   08/04/16      2,045.12       2,045.12
   0618) 9336093   Over   42965       07/20/16   07/05/16      2,045.12       2,045.12
   0619) 8301661   Over   42937       06/20/16   06/22/16      2,045.12       2,045.12
   0620) 8276287   Over   42910       06/20/16   06/14/16        336.39         183.01
   0621) 8172404   Over   42848       05/20/16   04/30/16      2,045.12       2,045.12
   0622) 8160412   Over   42829                  04/25/16        183.01
   0623) 8147687   Over   42815       04/20/16   04/19/16      1,650.12       1,650.12
   0624) 8090761   Over   42771       03/20/16   03/29/16      2,440.12       2,440.12
   0625) 8018637   Over   42741       02/20/16   02/29/16      2,440.12       2,045.12
   0626) Summary Totals

   Selection  █                                                End of List
```

```
1.20   Caps Num  @(011,21)   Printer  Capture   09:24  Help: F1
```

Exhibit "E"



42 ROCKLAND DRIVE
JERICHO, NY 11753 USA

WWW.MONTROSEGLOBAL.COM

TELEPHONE (516) 935-0200
FAX (516) 935-0400

DESKTOP APPRAISAL
OF EQUIPMENT
AT

# TECHSHOP, INC
# 300 S. 2ND STREET
# SAN JOSE, CA 95113

FOR

# HITACHI CAPITAL AMERICA CORPORATION

### 800 CONNECTICUT AVENUE
### NORWALK, CT 06854
### ATTN: GERRY DE VITA

Report Date: 03/22/2018

## TABLE OF CONTENTS

| | |
|---|---|
| Table of Contents | Page 1 |
| General Information & Definitions | Page 2 |
| Approach to Value | Page 2 |
| Definition of Values | Page 3 |
| Limiting Conditions | Page 4 & 5 |
| Certification Statement | Page 5 |
| Recapitulation | Page 6 |
| Listing of Assets | Page 7 & 8 |
| Photographs | None |



**Appraisals * Inspections * Remarketing * Consulting * Recovery * Storage**

TECHSHOP INC

*COPYRIGHT: MONTROSE GLOBAL ASSETS, INC.*



42 ROCKLAND DRIVE
JERICHO, NY 11753 USA

WWW.MONTROSEGLOBAL.COM

TELEPHONE (516) 935-0200
FAX (516) 935-0400

## PURPOSE OF APPRAISAL

The purpose of this appraisal is to estimate the Orderly Liquidation Value (OLV)
and Forced Liquidation Value (FLV)
The results are reported in this study. The assets are appraised as free and clear, without liens or encumbrances unless
otherwise noted.

## FUNCTION OF APPRAISAL

The function of this report is to serve as a value guideline. There are proper uses for appraisal concepts. However, a
particular individual, company or organization may determine that the concept fits a particular need and, therefore,
could use it in a way that would be typically improper. It is up to the user to determine if the concept is proper for its
purpose, as it is clearly defined and should be understood.

## METHOD

Montrose Global Assets, Inc. **(MGA)** received an inventory listing and no photographs of the said equipment to be used
as a basis for this appraisal.

## APPROACH TO VALUE

In estimating value, the appraiser has considered the following approaches in arriving at indicators of value. Market,
Cost, and Income are the three traditional approaches to value.

**MARKET APPROACH:** This method uses recent sales and offered prices of similar assets in order to arrive at an indication
of the most probable selling price of the asset being appraised. The market is an established means of buying and selling
of assets. These channels include Auctions, Dealers, Public and Private Sales.

**COST APPROACH:** This method uses, as an estimate, the present replacement cost of the assets less accrued depreciation.
Depreciation includes loss of value due to physical deterioration, lack of new function ability, depressed market for that
specified industry, ease of operation, availability of spares, etc. These factors are generally characterized as "negative
external forces". The cost approach is primarily used as a secondary approach of value, because it often does not take
into consideration the loss of value due to liquidation conditions.

**INCOME APPROACH:** This method is not normally used under the Liquidation Concept; usually used for custom and rare
machinery and equipment. A market analysis may be made to ascertain current demand and marketability in appraising
the value of this type of equipment.

 **CAGA**
CERTIFIED
APPRAISER **Appraisals * Inspections * Remarketing * Consulting * Recovery * Storage** 

TECHSHOP INC                    *COPYRIGHT: MONTROSE GLOBAL ASSETS, INC.*



42 ROCKLAND DRIVE
JERICHO, NY 11753 USA

WWW.MONTROSEGLOBAL.COM

TELEPHONE (516) 935-0200
FAX (516) 935-0400

## DEFINITIONS OF VALUES

**ORDERLY LIQUIDATION VALUE (OLV):** A professional opinion of the estimated most probable price expressed in terms of cash in U.S. dollars which the subject equipment could typically realize at a privately negotiated sale, properly advertised and professionally managed, by a seller obligated to sell over an extended period of time, **usually within six to twelve months**, as of the effective date of the appraisal. Further, the ability of the asset group to draw sufficient prospective buyers to insure competitive offers is considered. All assets are to be sold on a piecemeal basis "as is" with purchasers responsible for removal of assets at their own risk and expense. Any deletions or additions to the total assets appraised could change the psychological and/or monetary appeal necessary to gain the price indicated.

**FORCED LIQUIDATION VALUE (AUCTION) (FLV):** A professional opinion of the estimated most probable price expressed in terms of cash in U.S. dollars which could typically be realized at a properly advertised and conducted public auction sale, held under forced sale conditions and under present day economic trends, as of the effective date of the appraisal report. Conclusions taken into consideration are physical location, difficulty of removal, physical condition, adaptability, specialization, marketability, overall appearance and psychological appeal. Further, the ability of the asset group to draw sufficient prospective buyers to insure competitive offers is considered. All assets are to be sold on a piecemeal basis "as is" with purchasers responsible for removal of assets at their own risk and expense. Any deletions or additions to the total assets appraised could change the psychological and or monetary appeal necessary to gain the price indicated.



**Appraisals * Inspections * Remarketing * Consulting * Recovery * Storage**

$\oplus$ NEFA

TECHSHOP INC          *COPYRIGHT: MONTROSE GLOBAL ASSETS, INC.*



42 ROCKLAND DRIVE
JERICHO, NY 11753 USA

WWW.MONTROSEGLOBAL.COM

TELEPHONE (516) 935-0200
FAX (516) 935-0400

## LIMITING CONDITIONS

The following equipment has been appraised as if free and clear of all liens and encumbrances. MGA assumes no responsibility for the title or liabilities against the equipment appraised.

This appraisal is made at the request of the party for his/her use only. It is not an indication, or report of, any title or ownership.

The conclusions of the appraiser are based upon multiple factors. Any deletions or additions to the equipment appraised could substantially change the values.

Possession of any copy of this report does not include the right of publication without the written consent of MGA.

This report in its entirety or any part hereof, including the identity of the appraiser, or of MGA, shall not be made public by any means whatsoever, without the written consent of MGA.

No changes to this report may be made by anyone other than the appraiser who signed this report. If any changes are made, then this appraisal report is invalid.

In most cases assets are itemized, although certain areas require a group estimate, in which case the listings are shown in the quantity column as "Misc." or "Lot" This is usually done in nominal value areas that require general descriptions, or in areas where difficulty of access for total description would require additional time and effort not justified for these said items.

This appraiser reserves all rights to recall all copies of this report to correct any omission or error.

No responsibility is taken for changes in Market Conditions and no obligation is assumed to revise this report without adequate compensation, time, and procedural requirements that allow due diligence to reflect events or conditions that take place subsequent to the date of this report.

Photographs used in this report are an additional help in compiling this report. Any lack of photographs for any reason should not create any liability for MGA.

Some equipment, due to location and / or quantity, may have differing values assigned with the consideration that even though similar, condition could be better or worse than the other identical pieces. The concept of value causes these adjustments to be made, as well as location, removal and installation.

MGA is rendering a professional service in connection with this appraisal and no obligation to provide further information, or liability, is hereby assumed. In no event shall the liability of MGA or any of its agents or employees, with respect to this appraisal exceed the amount of the appraisal fees paid

No consideration is given to additional value that might be obtained because of goodwill, product line, foundations, and installation costs, going concern or other elements of value that may or may not be produced at a sale but cannot be foreseen by an appraiser. Physical condition has been determined by either physical inspection and / or the advice of persons we determined to have specific knowledge of the item in question. Any unknown conditions existing at the time of appraisal could alter the value.

The consideration paid for which this report is issued represents all services rendered for this appraisal report only. In the case of a desktop appraisal, efforts have been made to determine the relative condition of the assets or an assumption of *their condition* has been made

Any future services requested will be subject to a separate statement at standard rates. In the event that the appraiser is subpoenaed to testify in any form of legal proceedings concerning the subject of this report, such testimony shall constitute future services.

TECHSHOP INC                          *COPYRIGHT: MONTROSE GLOBAL ASSETS, INC.*



42 ROCKLAND DRIVE
JERICHO, NY 11753 USA

WWW.MONTROSEGLOBAL.COM

TELEPHONE (516) 935-0200
FAX (516) 935-0400

### LIMITING CONDITIONS (cont.)

The valuation contained in this appraisal is valid only on the effective date of value. No representation is made regarding past or future value. Constantly changing market conditions may require a reappraisal and updated valuation at any time in the future. It shall be the obligation of the client to request this reappraisal.

The fee for this appraisal is not contingent upon the value or the conclusions reported and, neither the appraiser nor any official of MGA has any financial interest in the property appraised.

Information, estimates, and opinions furnished and obtained has been assumed to be reliable.

In assessing the Orderly Liquidation Value (OLV) and Forced Liquidation Value (FLV) for this equipment, Values were derived based on the reported condition, previous sales, Internet Research, Dealer prices, and Auction Results.

### CERTIFICATION STATEMENT

I certify that, to the best of my knowledge and belief:

The statements of fact contained in this appraisal report are true and correct.

I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved.

I have performed no services as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three year period immediately preceding the acceptance of this assignment.

I have no bias with respect to the property that is the subject of this report or to the parties involved in this assignment.

My engagement in this assignment was not contingent upon developing or reporting predetermined results.

Fees received for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice (USPAP)*

I have not made a personal inspection of the property that is the subject of this report.

No one provided significant personal property appraisal assistance to the person signing this certification unless so stated.

The report analysis, opinion and conclusions are limited only by the reported assumptions and limiting conditions, and is an unbiased professional analyses.

Montrose Global Assets, Inc. are Appraisers, Inspectors and Consultants. Their only additional interest in these assets would be to offer remarketing or auction services.

MGA is in compliance with United States Small Business Administration updated appraisal regulations as cited in SOP 5010 S (H), as of May 1, 2015, Chapter 3, Page 284.

David McMillan, CMEA, CAGA



**Appraisals * Inspections * Remarketing * Consulting * Recovery * Storage** 

TECHSHOP INC                    *COPYRIGHT: MONTROSE GLOBAL ASSETS, INC.*



42 ROCKLAND DRIVE
JERICHO, NY 11753 USA

WWW.MONTROSEGLOBAL.COM

TELEPHONE (516) 935-0200
FAX (516) 935-0400

# RECAPITULATION
# TECHSHOP, INC
# 300 S. 2ND STREET
# SAN JOSE, CA 95113

Effective Date
March 22nd, 2018

## ORDERLY LIQUIDATION VALUE (OLV)

## $36,750.00

Thirty Six Thousand, Seven Hundred and Fifty Dollars and No Cents.

## FORCED LIQUIDATION VALUE (FLV)

## $22,850.00

Twenty Two Thousand, Eight Hundred and Fifty Dollars and No Cents.



**CAGA**
CERTIFIED
APPRAISER

**Appraisals * Inspections * Remarketing * Consulting * Recovery * Storage**



TECHSHOP INC          *COPYRIGHT: MONTROSE GLOBAL ASSETS, INC.*



42 ROCKLAND DRIVE
JERICHO, NY 11753 USA

WWW.MONTROSEGLOBAL.COM

TELEPHONE (516) 935-0200
FAX (516) 935-0400

## LISTING OF MACHINERY & EQUIPMENT

**THE EQUIPMENT IS APPRAISED ON AN "AS IS, WHERE IS" BASIS. NO TRANSPORTATION, INSTALLATION, IN ASSESSING THE ORDERLY LIQUIDATION VALUE (OLV) & FORCED LIQUIDATION VALUE (FLV) FOR THIS EQUIPMENT, VALUES WERE DERIVED BASED ON THE PRESUMED CONDITION, PREVIOUS SALES, INTERNET RESEARCH AND DEALER PRICES.**

Orderly Liquidation Value (OLV) and Forced Liquidation Value (FLV) are as follows:

**ALL EQUIPMENT IN THIS REPORT IS DATED 2016, WITH A REMAINING USEFUL LIFE OF 8 YEARS**

| EQUIPMENT: | OLV | FLV |
|---|---|---|
| **ITEM 1:** | | |
| **HAAS VF-2 VERTICAL MACHINING CENTER** <br> INCLUDES: 4TH AXIS DRIVE & WIRING, TECHNIKS TOOLING, <br> KURT VISES, HAAS SIMULATOR | $20,000.00 | $12,000.00 |
| **ITEM 2:** | | |
| **FUSION 32 LASER ENGRAVER** <br> S/N # 13120-1408663220, INCLUDES: RIM STYLE ROTARY ATTACHMENT, <br> VECTOR CUTTING GRID, INTERNAL LED LIGHTING, AIR ASSIST, <br> 32" x 20" ACTIVE ENGRAVING & CUTTING AREA, PRINT DRIVER, <br> RADIENCE HIGH ENERGY OPTICS, RED DOT POINTER, <br> EPILOG JOB MANAGEMENT SOFTWARE & LASER DASHBOARD PRINT DRIVER, <br> ALL PURPOSE 2" FOCUS LENS, VARIABLE RESOLUTION TO 1200 DPI, <br> RELOCATABLE X-Y HOME, 128 MB RAM, ROTARY – FUSION RIM STYLE. | $12,000.00 | $8,000.00 |
| **ITEM 3:** | | |
| **LAGUNA LT18 3000 SERIES BANDSAW** <br> 18" W502080 MBAND184200, INCLUDES: <br> EASY-TILT CAST IRON TABLE, 18" DIA. CAST IRON FLYWHEEL, <br> FOOT BRAKE WITH MICRO SWITCH, RACK & PINION UPPER GUIDE, <br> RACK & PINION TABLE TILT, QUICK RELEASE TENSION, <br> CAST IRON 20" X 20" TABLE, MOTOR: 4 HP LEESON 220V, SINGLE PHASE, <br> TWO 4" DUST PORTS. | $1,250.00 | $750.00 |
| **ITEM 4:** | | |
| **ONEIDA DUST COLLECTING SYSTEM** <br> MODEL XXK070323, 7.5HP DIRECT DRIVE CYCLONE SYSTEM <br> INCLUDES: PLENUM & FILTER KIT, STAND FOR DOUBLE DRUM, <br> SPLITTER KIT. | $2,000.00 | $1,200.00 |

TECHSHOP INC                    *COPYRIGHT: MONTROSE GLOBAL ASSETS, INC.*

**EQUIPMENT (CONT.):**                                                    OLV          FLV

ITEM 5:
**FORMLABS FORM 2 3-D PRINTER**                                    $1,500.00     $900.00
COMPLETE PACKAGE WITH BLACK RESIN

### TOYAL OLV = $36,750.00

### TOTAL FLV = $22,850.00

Appraised by: David McMillan CMEA, CAGA, Engineer, City & Guilds of London. March 22nd, 2018
Reviewed by: Arthur Muchnick, President.

THE INFORMATION IN THIS APPRAISAL IS FOR THE EXCLUSIVE USE OF CLIENT PER THE AGREEMENT BETWEEN MONTROSE GLOBAL ASSETS INC. AND CLIENT. MONTROSE GLOBAL ASSETS INC. ACCEPTS NO LIABILITY AS THE RESULT OF ANY THIRD PARTY'S RELIANCE ON THE INFORMATION CONTAINED IN THIS REPORT.

 **CAGA**
CERTIFIED
APPRAISER
**Appraisals * Inspections * Remarketing * Consulting * Recovery * Storage**          

TECHSHOP INC                    *COPYRIGHT: MONTROSE GLOBAL ASSETS, INC.*