RAFFI KHATCHADOURIAN - SBN 193165
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12th Floor
Encino, California 91436-2829
(818) 501-3800 telephone
(818) 501-2985 facsimile

Attorneys for Movant/Creditor,
HANMI BANK

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

| | |
|---|---|
| In Re:<br><br>TECHSHOP, INC.,<br><br>Debtor. | CASE NO.18-50398-MEH<br><br>CHAPTER 7<br><br>R.S. No.: HRH-1<br><br>DECLARATION OF KENT L. SCHNEIDER IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY<br><br><u>Hearing:</u><br>Date: June 14, 2018<br>Time: 1:00 p.m.<br>Courtroom: 3020<br>Judge: Hon. M. Elaine Hammond<br>Address: 280 South First Street<br>San Jose, CA 95113 |

I, KENT L. SCHNEIDER, declare as follows:

1. I am employed by HANMI BANK (hereinafter "HANMI" or "Creditor"), a secured creditor of Debtor herein, as a Collection Manager in its Commercial Equipment Leasing Division. In such capacity, I have custody and control of the business records as they relate to the subject accounts herein and I am very familiar with the manner in which those records was compiled.

2. The records of my employer are made in the ordinary course of business by persons who have a business duty to my employer to make such records. The records was made at or near the time of the occurrence of the event or events of which they are a record. I have personally reviewed my employer's records as they relate to the obligation herein.

3. On or about August 7, 2015, Debtor and its affiliates, Techshop Austin, LLC, TechShop Phoenix, LLC, Techshop Detroit LLC and Techshop San Jose LLC, executed four separate Equipment Financing Agreements, identified with account numbers ending in 5202, 6457, 6458 and 6459 (the "Agreements"), in favor of HANMI BANK's predecessor in interest, Banc of California, N.A., to finance their purchase of certain equipment as identified in the exhibits to the Agreements. True and correct copies of the Agreements and supporting documents are attached respectively hereto as Exhibits "1" through "4," and incorporated herein by this reference as though fully set forth.

4. The Agreements were secured by the specific collateral identified in the attachments to each Agreement (collectively the "Collateral"). Movant's predecessor in interest perfected its security interest therein by filing UCC Financing Statements with the California Secretary of State. True and correct copies of the UCC Financing Statements are collectively attached hereto as Exhibit "5" and incorporated herein by this reference as though fully set forth.

5. Theretofore and thereafter, Movant and its predecessor in interest performed each, every, and all of the obligations and duties on its part to be performed under the terms of the Agreements.

6. All rights, title and interest in the Agreements and the Collateral were subsequently assigned to HANMI BANK, as evidenced by the Assignment and Assumption Agreement and Bill of Sale, a true and correct copy of the relevant portions of which is attached hereto as Exhibit "6" and incorporated herein by this reference as though fully set forth.

7. On or about November 20, 2017, Debtor defaulted under the terms of the Agreements by failing to make the payments due and owing thereunder. Debtor has not made any further payment to Movant.

8. The amounts currently owing to HANMI BANK pursuant to the Agreements are as follows:

As to Agreement ending in 5202:     $6,566.09

As to Agreement ending in 6457:     $9,640.15

As to Agreement ending in 6458:     $5,886.87

As to Agreement ending in 6459:     $6,616.06

9. Movant requires relief from the automatic stay in order to exercise its state law remedies, including recovering and selling the Collateral.

10. Debtor listed Banc of California both in its Schedule G and Amended Schedule D, and indicated the value of the Collateral is $0.00. True and correct copies of relevant portions of Debtor's original and amended Schedules are attached hereto collectively as Exhibit "7" and incorporated herein in full by reference.

11. There is therefore no equity in the Collateral for the Debtor or the Estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of May, 2018, at Irvine, California.

KENT L. SCHNEIDER

# EXHIBIT "1"


EQUIPMENT FINANCING AGREEMENT

Agreement #[redacted]-6459

| "BORROWER" | "SUPPLIER" |
|---|---|
| FULL LEGAL NAME Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible<br>BILLING ADDRESS 300 S 2nd Street<br>CITY San Jose STATE CA ZIP 95113<br>CONTACT Mark R. Hatch TELEPHONE 408-916-4144 | See Exhibit "A" Attached Hereto and Made A Part Hereof |

| FULL DESCRIPTION OF PROPERTY INCLUDING MODEL, AND SERIAL NUMBERS SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF | EQUIPMENT COST SEE DISBURSEMENT OF AUTHORIZATION ATTACHED HERETO AND MADE A PART HEREOF |
|---|---|
| PROPERTY LOCATION (IF DIFFERS FROM BILLING ADDRESS)<br>Street Address: 120 Sundance Pkwy #350<br>City: Round Rock<br>State: TX Zip: 78681 County: | INITIAL PAYMENT (CHECK FOR THIS AMOUNT MUST ACCOMPANY AGREEMENT)<br>FIRST PAYMENT $571.41<br>LAST PAYMENT $571.41<br>LOAN FEE $348.75 |
| TERM OF LOAN AND PAYMENTS INITIAL PAYMENT DATE 10/20/2015 ("Base Term Commencement Date")<br>60 PAYMENTS OF $571.41 | **TOTAL AMOUNT DUE: $1,491.57** |

TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")

Borrower and Secured Party agree as follows:

1. SECURITY INTEREST: Borrower hereby grants Secured Party a security under the Uniform Commercial Code in the above personal property (collectively the "Collateral" and individually an "Item" or "Item of Collateral"). Such security interest is granted to secure performance by Borrower of its obligations thereunder and under any other present or future agreement with Secured Party. Borrower shall insure that such security interest is and shall remain a sole first lien security interest. **BORROWER HEREBY AUTHORIZES SECURED PARTY TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS SECURED PARTY OR ITS DESIGNEE AS BORROWER'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON BORROWER'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.**

2. PAYMENTS: Borrower shall repay Secured Party the above Total of Payments in the number of monthly installments of the amount indicated above. The initial installment payment shall be deemed due as of the date indicated above and subsequent installment payments shall be due on the same day of each month thereafter until paid. A pro-rata portion of the installment payment based on a daily charge of one-thirtieth (1/30) of the installment payment calculated from the Commencement Date (as designated on the Delivery and Acceptance Certificate) to Base Term Commencement Date shall be due and payable at the payment commencement date. All other amounts due thereunder shall be due upon Borrower's receipt of Secured Party's invoice therefor. Advance payments shall be applied to the last installment payments in reverse order until exhausted; provided that if there is a default, any payments under this agreement may be applied to Borrower's obligations to Secured Party in such order as Secured Party chooses.

3. NO AGENCY. BORROWER ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY, MANUFACTURER, DISTRIBUTOR, WHOLESALER, BROKER OR ANY OTHER PERSON OR ENTITY NOR ANY AGENT OF ANY OF THE FOREGOING PERSONS OR ENTITIES (collectively "Supplier") IS AN AGENT OF SECURED PARTY AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND SECURED PARTY OR AFFECT BORROWERS DUTY TO PAY THE INSTALLMENT PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS THEREUNDER.

4. NON CANCELABLE AGREEMENT; THERE SHALL BE NO PREPAYMENT OR OFFSET TO THE TERMS OF THIS AGREEMENT AND THE PAYMENTS DUE HEREUNDER AND THIS AGREEMENT IS NON CANCELABLE BY BORROWER FOR ANY REASON WHATSOEVER. BORROWER MAY REPAY THE INSTALLMENT PAYMENTS ONLY IN ACCORDANCE HEREWITH.

5. FINANCING. THIS AGREEMENT IS SOLELY AN EQUIPMENT FINANCING AGREEMENT. SEE ALL PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS AGREEMENT.

**SECURED PARTY MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE.** BORROWER AGREES THAT BORROWER HAS SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON BORROWER'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY SECURED PARTY. SECURED PARTY DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF SECURED PARTY AND NOTHING THE SUPPLIER STATES CAN AFFECT BORROWER'S OBLIGATION UNDER THE AGREEMENT. BORROWER WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER. This Agreement is effective only upon execution by an authorized officer of Secured Party following Borrower's execution hereof, and upon execution Secured Party shall fund the Equipment Cost/Advanced. Borrower hereby authorizes Secured Party to Disburse the Equipment Cost/Advance as indicated on the attached Disbursement Authorization. Secured Party reserves the right to pay the applicable portion of the Equipment Cost/Advance jointly to any party not specified in the preceding sentence with a security interest in an Item of Collateral.

6. LOCATION; INSPECTION; USE. Borrower shall keep, or, as to an Item which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Borrower's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Secured Party. Upon request, Borrower shall advise Secured Party as to the exact location of an Item of Collateral. Secured Party may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner and in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturers' instructions and warranty requirements.

7. ALTERATIONS; SECURITY INTEREST COVERAGE. Without Secured Party's prior written consent, Borrower shall not make any alterations, additions or improvements to an Item of Collateral which detracts from its economic value or functional utility. All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Secured Party's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Borrower will not make any replacements or substitutions without Secured Party's prior written consent.

8. MAINTENANCE. Borrower shall maintain the Collateral in good repair, condition and working order. Borrower shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Borrower will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

9. LOSS AND DAMAGE; CASUALTY VALUE. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Borrower shall give Secured Party prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Secured Party to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Borrower shall cause the Equipment to be replaced and shall immediately provide Secured Party with information necessary to perfect Secured Party's security interest in the replacement Equipment, or shall pay Secured Party the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future installment payment due with respect to such Item discounted at five percent (5%) per annum simple interest from the date due to the date of such payment.

10. TITLING. If requested by Secured Party, Borrower shall cause an Item of Collateral subject to title registration laws to be titled as directed by Secured Party. Borrower shall advise Secured Party promptly as to any necessary retitling. Borrower shall cause all documents of title to be furnished Secured Party within sixty (60) days of the date of any titling effected by Borrower.

| (SECURED PARTY) Banc of California, N.A. | (BORROWER) Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible |
|---|---|
| By: [signature] | By: [signature]<br>Mark R. Hatch, CEO of Techshop, Inc.<br>By: [signature]<br>Mark R. Hatch, Member of Techshop Austin, LLC |
| DATE: 9/23/15 | DATE: 8/7/15 |

Case: 18-50398 Doc# 105 Filed: 05/23/18 Entered: 05/23/18 10:00:37 Page 5 of 33

11. TAXES AND FEES. Borrower agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees relating to this Agreement or the Collateral. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You further agree to pay us any loan fee as set forth above on the date the first payment due. You also acknowledge that in addition to the payments required to be made hereunder, we may assess and you may be required to pay additional taxes and/or fees. **Such fees may not only cover our costs they may also include a profit.**

12. INSURANCE Collateral Protection and Insurance: You agree to keep the Collateral fully insured against loss with us as loss payee in an amount not less than the replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an insured on the policy. You agree to provide us certificates binders, or other evidence of insurance acceptable to us, before this Agreement begins and within thirty (30) days thereafter provide us with the policies of insurance Should you fail to furnish insurance as set forth herein in the type and amounts requested, we may force place insurance and then charge you the amount of the forced placed insurance plus 20% to reflect our cost of funds and administrative costs. We shall be reimbursed within ten (10) days after an invoice is sent to you in the event that we had to force place insurance.

13. SECURED PARTY'S PAYMENT. If Borrower fails to perform any of its obligations hereunder, Secured Party may perform such obligation, and Borrower shall (a) reimburse Secured Party the cost of such performance and (b) pay Secured Party the service charge contemplated in paragraph 20.

14. INDEMNITY. Borrower shall indemnify, defend and hold Secured Party harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Secured Party related to this Agreement and Secured Party's protection of its Collateral. While it is not anticipated that Secured Party shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

15. DEFAULT. Any of the following constitutes an event of default hereunder; (a) Borrower's failure to pay any amount due hereunder, within five (5) days of when due; (b) Borrower's default in performing any other obligation hereunder or under any agreement between Borrower and Secured Party; (c) death or judicial declaration of competency of Borrower, if an individual; (d) the filing by or against Borrower of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of Borrowers, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Borrower , appointment of a receiver or trustee for Borrower or for any Borrower's assets, institution by or against Borrower of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Borrower, Borrower's cessation of active business affairs or the making by Borrower of a transfer of a material portion of Borrower's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) s to a guarantor of other surety of Borrower's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Borrower; (h) Borrower's default under any loan, lease, or agreement providing financial accommodation with a third party or (i) Secured Party shall in good faith deem itself insecure as a result of a material adverse change in Borrower's financial condition or otherwise.

16. REMEDIES. Upon the occurrence of an event of default, Secured Party shall have the right, options, duties and remedies of a secured party, and Borrower shall have the rights and duties of a debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Secured Party may: (a) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Borrower; (b) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (c) require Borrower to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (d) upon notice to Borrower required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Secured Party's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Borrower hereunder with Borrower remaining liable for any deficiency and with any excess being returned to Borrower or (e) utilize any other remedy available under the Uniform Commercial code or otherwise to Secured Party. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Secured Party may if permitted by law bid and become the purchaser at any such sale. Secured Party may conduct any public or private sale from Borrower's premises or location without any charge by Borrower.

17. LITIGATION AND OTHER EXPENSES. Borrower shall pay Secured Party its costs and expenses not offset as provided in paragraph 16, including repossession and attorneys' fees and court costs, incurred by Secured Party in enforcing this Agreement and in protecting its Collateral whether in State, Federal or Bankruptcy Court or other judicial or non-judicial tribunal including mediation, arbitration or judicial reference proceeding. This obligation includes the payment of such amounts whether an action is filed.

18. ASSIGNMENT. Without the prior written consent of Secured Party, Borrower shall not sell, finance or create or allow any lien other than Secured Party's security interest against an Item of Collateral or assign any of Borrower's obligations hereunder. Borrower's obligations are not assignable by operation of law. Secured Party may assign, pledge or otherwise transfer any of its rights but none of its obligations hereunder without notice to Borrower. If Borrower is given notice of any such assignment, Borrower shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice regardless of whether Borrower acknowledges the assignment or not. The rights of an assignee to amounts due hereunder shall be free of any claims, offsets, actions or causes of action, or defense Borrower may have against Secured Party, and Borrower agrees not to assert against an assignee any claim or defense which Borrower may have against Secured Party.
Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

19. MARKINGS; PERSONAL PROPERTY. Borrower shall mark the Collateral or its location as requested by Secured Party to indicate Secured Party's security interest. As between the parties the Collateral shall at all times be deemed personal. Borrower will provide Secured Party any real property waivers requested by Secured Party as to the real property where an Item of Collateral is or is to be located including, but not limited to, landlord's waivers and mortgagee waivers.

20. LATE PAYMENT. If Borrower fails to pay any amount to be paid hereunder within five (5) days of when due, Borrower will pay Secured Party (a) a late charge of 10% of the payment which is late or if less, the maximum charge allowed by law, (b) amounts Secured Party pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

21. ADDITIONAL DOCUMENTS. Borrower shall provide to Secured Party such financing statements and similar documents as Secured Party shall request. Borrower authorizes Secured Party where permitted by law to make filings of such documents without Borrower's signature. Borrower further shall furnish Secured Party (a) a fiscal year-end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Secured Party may request. Borrower shall reimburse Secured Party for all search and filing fees incurred by Secured Party related hereto.

22. NOTICES. Notices shall be in writing, and sufficient if mailed to the party involved, United States mail first class postage prepaid, at its respective address set forth above or at such other address as such party may provide on notice in accordance herewith. Notice so given shall be effective when mailed. Borrower shall promptly notify Secured Party of any change in Borrower's address.

23. GENERAL. This Agreement constitutes the entire agreement of the parties as to the subject matter and Borrower authorizes Secured Party to amend or insert in this agreement any serial numbers and other identification data about the Collateral, as well as any other omitted factual matters. Borrower shall not amend, alter or change the agreement without a written agreement signed by the parties. Any waiver by Secured Party must be in writing, and forbearance shall not constitute a waiver. Whenever the context of this Agreement requires, the neuter includes the masculine or feminine and the singular includes the plural. If there is more than one Borrower named in this agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. This Agreement shall be governed by the law of the State of California. Venue for any action related to this agreement shall be in an appropriate court in Orange County, California where this Agreement was entered into and made to be performed. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Borrower shall survive the release of the security interest in the Collateral.

24. BORROWER'S WARRANTIES. BORROWER CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH BORROWER HAS SUBMITTED, OR WILL SUBMIT, TO SECURED PARTY IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY BORROWER AND UPON EXECUTION BY BORROWER SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY BORROWER IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY SECURED PARTY NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF BORROWER WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. BORROWER FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME SECURED PARTY FUNDS THE TOTAL ADVANCE BE OWNED BY BORROWER FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

25. USED EQUIPMENT: If any equipment is used, Borrower unconditionally agrees: (a) Borrower finances the Equipment as is" and expressly acknowledges that the equipment is used and not new. Secured Party, NOT BEING THE VENDOR OF THE EQUIPMENT, NOR THE VENDOR'S AGENT, MAKES TO BORROWER NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED OF MERCHANTABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO: THE CONDITION, SAFENESS, USABILITY, REPAIR OR DESIGN OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; THE QUAILITY OR CAPACITY OF THE EQUIPMENT; THE WORKMANSHIP IN THE EQUIPMENT; THAT THE EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT PERTAINING THERETO; AND ANY GUARANTY OR WARRANTY AGAINST PATENT INFRINGEMENT OR LATENT DEFECTS. (b) Secured Party is not responsible or liable for any direct, indirect, incidental or consequential damages or losses resulting from any cause whatsoever, including but not limited to; breach of warranty; the installation, operation or use of the Equipment or any products manufactured thereby, or delay or failure to deliver any item of Equipment. Borrower agrees to settle all such claims directly with Vendor and will not set up against Borrower's obligations to Secured Party any such claims as a defense, counterclaim, setoff, or otherwise.

26. **If this document was sent electronically.** I hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached documents will make all alterations or revisions non-binding and void.

EFA#[redacted]6459

INITIAL ____
INITIAL ____

 ## EXHIBIT "A" FOR AGREEMENT NO.: [redacted]-6458

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number [redacted]-6458

Vendor Name: FormLabs, Inc.
Street Address: 35 Medford St., Suite 201
City, State and Zip: Somerville MA 02143
Vendor Phone: 617-932-5227
Vendor Invoice Number: 100011777

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| 4 | White Resin | |
| 4 | Black Resin | |
| 1 | Form 1+ Complete Package with Clear Resin, Ford 1+ 3D Printer, Form Finish Kit | TSCO-20150730-04 |
| 12 | Resin Tanks | |
| 4 | Grey Resin | |
| 4 | Castable Resin | |
| 3 | Clear Resin | |
| 4 | Flexible Resin | |
| 1 | Formlabs Pro Service Plan | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc

By: [signature]
Mark R. Hatch, Member of Techshop Austin, LLC

Date: 9/21/2015


## EXHIBIT "A" FOR AGREEMENT NO.: [redacted]-5202

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number: [redacted]-5202

Vendor Name: Kaeser Compressors
Street Address: 46771 Fremont Blvd.
City, State and Zip: Fremont, CA 94538
Vendor Phone: 510-770-0200
Vendor Invoice Number: 910839984

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| 1 | SM 10 125 psi SCB TriVolt. US | |
| 1 | Filtered Separator KFS-60 | |
| 1 | KCF-25 Condensate Treatment System | |
| 1 | Condensate Manifold Compact | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: Techshop, Inc, and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc.

By: [signature]
Mark R. Hatch, Member of Techshop Austin, LLC

Date: Aug 7, 2015


BANC OF CALIFORNIA

## EXHIBIT "A" FOR AGREEMENT NO.: [redacted]-5202

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number: [redacted]-5202

Vendor Name: Rio Grande
Street Address: 7500 Bluewater Road N.W.
City, State and Zip: Albuquerque, NM 87121
Vendor Phone: 800-545-6566
Vendor Invoice Number: 91165596

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| 1 | Casting Machine, J2R Series IV CE MDL | J2RCES40368 |
| 1 | KIT, J2R Series IV Start Up , 220V | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc.

By: [signature]
Mark R. Hatch, Member of Techshop Austin, LLC



**LIMITED LIABILITY COMPANY RESOLUTION**
**AUTHORIZING LEASE OR EQUIPMENT FINANCE AGREEMENT**

**AGREEMENT NUMBER:** [redacted]-6459

The undersigned hereby certifies that they are all the members of TECHSHOP AUSTIN, LLC, a Limited Liability Company ("LLC") existing and organized under the laws of the State of Texas, which LLC is presently in good standing under the laws of such State and is duly qualified to conduct its business within the State of Texas that the following is a true, accurate and compared transcript of resolutions duly adopted at a meeting of the members, and that the proceedings were in accordance with the LLC Operating Agreement of said LLC, and that said resolutions have not been amended, rescinded, modified or revoked, and are in full force and effect:

"**RESOLVED,** that each of the members, whose name appears below is hereby authorized and empowered in the name and on behalf of this LLC to enter into, execute and deliver a Lease or Equipment Finance Agreement or any other credit documentation between BANC OF CALIFORNIA, N.A. (hereinafter called "Lessor" or "Secured Party") as Lessor or Secured Party and this LLC as Lessee or Borrower and providing for the leasing or financing to this LLC of equipment and further providing for this LLC to indemnify said Lessor or Secured Party against certain occurrences, and to enter into, execute and deliver any Schedules which are now attached thereto as part thereof and any Schedules executed from time to time hereafter which may hereafter become a part thereof:

X [signature] — Mark R. Hatch, Member
Member (s) Please Print Name & Title

X ______________________ — ______________________
Member (s) Please Print Name & Title

X ______________________ — ______________________
Member (s) Please Print Name & Title

**FURTHER RESOLVED,** that each designated member of this LLC is hereby authorized to do and perform all other acts and deeds that may be requisite or necessary to carry fully into effect the foregoing resolution; and

**FURTHER RESOLVED,** that said Lessor or Secured Party is authorized to rely upon the aforesaid resolutions in all regards and for all purposes.

DATED AND EXECUTED THIS 5 day of August, 2015.

X [signature]
Daniel B. Woods, Member
Sole Member and/or Authorizing Member

Case: 18-50398 Doc# 105 Filed: 05/23/18 Entered: 05/23/18 10:00:37 Page 10 of 33



BANC OF
CALIFORNIA

Resolution Authorization to Execute Documents

Agreement No.: [redacted]6459

Mark R. Hatch is authorized for and on behalf of Techshop, Inc. to finance equipment from Banc of California, N.A..

This authorization includes, but is not limited to, signing all required documents and giving verbal verification of receipt of the equipment, and of the terms and conditions of the Agreement in order to commence the Agreement.

Techshop, Inc.

Signature

Daniel B. Woods
Print Name

COO
Title

8/7/15
Date

 BANC OF
CALIFORNIA

Equipment Financing Agreement No [redacted] 6459

Secured Party:
Banc of California, N.A.
18500 Von Karman Ave., Ste. 1100
Irvine, CA 92612

Borrower: Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible

300 S 2nd Street
San Jose, CA 95113

Collateral: See Exhibit "A" Attached Hereto and Made A Part Hereof

## DISBURSEMENT AUTHORIZATION

The term **"Collateral"** when used herein refers to the Collateral under the Equipment Financing Agreement referenced above (the **"Agreement"**), the term **"Secured Party"** refers to Banc of California, N.A. and its successors and assigns, and the term **"Borrower"** refers to the Borrower referenced above. Borrower agrees that a signed faxed version of this Disbursement Authorization shall be deemed to be of the same force and effect as an original of a manually signed Disbursement Authorization.

Please accept these instructions as your authorization to disburse the Total Advance under the Agreement by sending a check or wire to the Payees designated below:

| Payee Name | Amount |
|---|---|
| KAESER COMPRESSORS, INC. | $10,031.53 |
| RIO GRANDE, INC. | $9,052.50 |
| FORMLABS INC. | $6,479.59 |
| Texas Comptroller | $1,281.10 |

Borrower hereby acknowledges that it has read and understood the terms and conditions of the Agreement and affirms that it has executed the Agreement. Borrower acknowledges that the Agreement is NON-CANCELABLE for any reason until all of Borrower's obligations under the Agreement have been fulfilled. Borrower understands that upon disbursement of the Total Advance by Secured Party in accordance with these instructions, Secured Party shall have satisfactorily and fully performed all of its obligations under the Agreement, and Borrower shall be fully bound by all terms and conditions of the Agreement including but not limited to, the timely payment of all Monthly Payments when due. Borrower acknowledges Secured Party has NO RESPONSIBILITY AS TO THE SATISFACTORY DELIVERY, INSTALLATION, PERFORMANCE, OR MAINTENANCE of the Collateral. In reliance upon Borrower's execution of this Disbursement Authorization, Secured Party will disburse the Total Advance to the supplier(s). Borrower's Monthly Payments under the Agreement will commence per Paragraph 2 of the Agreement.

Borrower: Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible

The undersigned affirms that he/she is duly authorized to execute this authorization on behalf of Borrower.

By: ______________________
Mark R. Hatch, CEO of Techshop, Inc.

By: ______________________
Mark R. Hatch, Member of Techshop Austin, LLC

A COPY OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.


BANC OF
CALIFORNIA

## DELIVERY AND ACCEPTANCE CERTIFICATE

Agreement #: [redacted]-6459

See Exhibit "A" Attached Hereto and Made A Part Hereof

By signing below, you, the Borrower, agree:

A) That all Equipment described in the Agreement identified above has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes of the Agreement; and
B) That we, Banc of California, N.A., are authorized to purchase the Equipment and start billing you under the Agreement as set forth in Section 2.
C) That Borrower's obligations under the Agreement are valid and enforceable and that Borrower's unconditional payment obligation shall commence immediately.
D) That upon execution, the Commencement Date set forth in the Agreement shall be in force and effect.

A COPY OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

Date of Acceptance: 9/15/2015

Agreement#: [redacted]-6459

Borrower: Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible

By: ______________________
Mark R. Hatch, CEO of Techshop, Inc.

By: ______________________
Mark R. Hatch, Member of Techshop Austin, LLC

I hereby authorize Mike Hilberman, CFO to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement [redacted]-6459 in my absence.



REQUEST FOR CERTIFICATE OF INSURANCE

(THIS FORM IS FOR THE CUSTOMER TO APPROVE AND FORWARD TO HIS INSURER)

DATE:

TO: CUSTOMER'S INSURANCE AGENT
Name of Agency: Micheletti Insurance
Agent: Brian Stenhouse
Address: 99 Almaden Blvd Suite 800 San Jose CA 95113
Phone Number: 408 578 2905
Fax Number: 408 297 4949

Description of item(s) to be insured:
See Exhibit "A"
Or attach invoice or quote

Insurable Value: $27,397.92

We have entered into a Lease Agreement or Finance Agreement with Banc of California, N.A. for the above described item(s). The insurance policy must include a provision for the following requirements:

COMPREHENSIVE GENERAL LIABILITY/PROPERTY DAMAGE COVERAGE

Endorsement should read as follows:

Loss Payee and Additional Insured
Banc of California, N.A., ITS SUCCESSORS AND/OR ASSIGNS
18500 Von Karman Ave., Ste. 1100
Irvine, CA 92612

Limits should be no less than $500,000/$500,000
Maximum deductible should be no more than $2,500

I authorize the above agent to immediately place the insurance coverage required for the described item(s). Please issue a binder of insurance to the above named Additional Insured and Loss Payee by return mail and place it with the original insurance policy or endorsement within 120 days.

This certificate should indicate the following: "It is agreed that Banc of California, N.A. will be notified in writing 10 days prior to cancellation or other material change in the conditions of this policy".

Agreement Number [redacted]-6459
Lessee / Borrower: Techshop, Inc. and Techshop Austin, LLC,
as co-borrowers, jointly and severally responsible
Street: 300 S 2nd Street
City, State, Zip: San Jose, CA 95113

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc.
By: [signature]
Mark R. Hatch, Member of Techshop Austin, LLC

## ADDENDUM TO EQUIPMENT FINANCE AGREEMENT NO. [redacted]6459 BETWEEN Banc of California, N.A. AS SECURED PARTY AND Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible AS BORROWER.

Borrower acknowledges that the equipment may be purchased for cash or it may be financed. By signing the Agreement and this Addendum, Borrower acknowledges that Borrower has chosen to finance the equipment from Secured Party for the term and rate agreed to on this Agreement. Both parties intend to comply with all applicable state laws. If it is determined that payments under this Agreement result in an interest payment in excess of that allowed by law, then any excess interest collected will be applied to the repayment of principal and interest will be charged at the highest rate allowed by law. In no event will Secured Party charge or receive or will Borrower pay any amounts in excess of the legal amount.

CONSENT TO LAW, JURISDICTION AND VENUE. The subject Agreement shall be deemed fully executed and performed in the state of Secured Party's or its Assignee's principal place of business and shall be governed by and construed in accordance with the law thereof. If the Secured Party or its Assignee shall bring any judicial proceeding in relation to any matter arising under the Agreement and/or this guaranty, the undersigned hereby irrevocably agrees that any such matter may be adjudged or determined in any court or courts in the state of the Secured Party's or its Assignee's principal place of business, or any U.S. federal court sitting in the state of the Secured Party's or its Assignee's principal place of business, or in any court or courts in Borrower's state of residence, or in any other court having jurisdiction over the Borrower or assets of the Borrower, all at the sole election of the Secured Party. The undersigned hereby irrevocably submits generally and unconditionally to the jurisdiction of any such court so elected by Secured Party or its Assignee in relation to such matters

Secured Party: Banc of California, N.A.

By: [signature]

Title: VP of Operations

Date: 9/23/15

Borrower: Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible

By: [signature]

Mark R. Hatch, CEO of Techshop, Inc.

By: Mark R. Hatch, Member of Techshop Austin, LLC

Date: 8/7/15

PERSONAL GUARANTY

The undersigned guarantors, jointly and severally, unconditionally guarantee to Secured Party and Secured Party's assigns the prompt payment of all sums due under this Agreement and any future Agreements entered into between Secured Party and Borrower. The undersigned (1) acknowledges that this is a guaranty of payment and not of collect; (2) waive all notices, including protest, presentment and demand and any and all defenses otherwise available to a guarantor; (3) agree this Guaranty shall be binding upon the estate, heirs and successors of the undersigned, and shall inure to the benefit of the successors and assigns the Secured Party. It is not necessary for us to proceed first against the Borrower before enforcing this Guaranty. The undersigned expressly consents to the personal jurisdiction and venue of any court provided for in paragraph 24 of Agreement, including the state and federal courts in California, and further agrees to pay all costs, expenses and attorney's fees incurred by Secured Party in the enforcement of the Agreement and this Guaranty.

Guarantor: N/A

X X X X X X X X X X

Signature

X X X X X X X X X X

Address

X X X X X X X X X

City State Zip

Guarantor: N/A

X X X X X X X X X X X

Signature

X X X X X X X X X X X

Address

X X X X X X X X X X

City State Zip

A COPY OF THIS ADDENDUM WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

## ADDENDUM TO EQUIPMENT FINANCE AGREEMENT NO. -6459

**BETWEEN** Banc of California, N.A. **AS SECURED PARTY**

**AND** Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible **AS BORROWER.**

The parties have entered into the above-referenced Equipment Finance Agreement for the finance of equipment more fully described in said Agreement. In recognition of the changes to the Finance Agreement, the parties hereby wish to amend said Finance Agreement as set forth below:

The Monthly Payment Amount Shall now Read: $559.87

The First Payment Shall now read $559.87

The Last Payment Shall now read $559.87

The Total Amount Due shall now read $1,468.50

By signing this Addendum, Borrower acknowledges the above changes to the Finance Agreement and authorizes Secured Party to make such changes.

Secured Party: Banc of California, N.A.

By: [signature]

Title: VP of Operations

Date: 9/23/15

Borrower: Techshop, Inc. and Techshop Austin, LLC, as co-borrowers, jointly and severally responsible

By: [signature]

Title: Mark R. Hatch, CEO of Techshop, Inc./ Member of Techshop Austin, LLC

By: [signature]

Title: Mark R. Hatch, CEO of Techshop, Inc./ Member of Techshop Austin, LLC

Date: 9/21/2015

A COPY OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

# EXHIBIT "2"

Case: 18-50398 Doc# 105 Filed: 05/23/18 Entered: 05/23/18 10:00:37 Page 17 of 33



C458

# EQUIPMENT FINANCING AGREEMENT

Agreement # [redacted]-6458

| "BORROWER" | "SUPPLIER" |
|---|---|
| FULL LEGAL NAME Techshop, Inc.and Techshop Phoenix, LLC, as co-borrowers, jointly and severally responsible<br>BILLING ADDRESS 300 S 2nd Street<br>CITY San Jose STATE CA ZIP 95113<br>CONTACT Mark R. Hatch TELEPHONE 408-916-4144 | See Exhibit "A" Attached Hereto and Made A Part Hereof |

| FULL DESCRIPTION OF PROPERTY INCLUDING MODEL, AND SERIAL NUMBERS | EQUIPMENT COST |
|---|---|
| SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF | SEE DISBURSEMENT OF AUTHORIZATION ATTACHED HERETO AND MADE A PART HEREOF |
| PROPERTY LOCATION (IF DIFFERS FROM BILLING ADDRESS)<br>Street Address: 249 E Chicago St<br>City: Chandler<br>State: AZ Zip: 85225 County: Maricopa<br>TERM OF LOAN AND PAYMENTS INITIAL PAYMENT DATE 10/20/2015 ("Base Term Commencement Date")<br>60 PAYMENTS OF $361.33 | INITIAL PAYMENT (CHECK FOR THIS AMOUNT MUST ACCOMPANY AGREEMENT).<br>FIRST PAYMENT $361.33<br>LAST PAYMENT $361.33<br>LOAN FEE $348.75<br>**TOTAL AMOUNT DUE: $1,071.41** |

## TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")

Borrower and Secured Party agree as follows:

1. SECURITY INTEREST: Borrower hereby grants Secured Party a security under the Uniform Commercial Code in the above personal property (collectively the "Collateral" and individually an "Item" or "Item of Collateral"). Such security interest is granted to secure performance by Borrower of its obligations thereunder and under any other present or future agreement with Secured Party. Borrower shall insure that such security interest is and shall remain a sole first lien security interest. **BORROWER HEREBY AUTHORIZES SECURED PARTY TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS SECURED PARTY OR ITS DESIGNEE AS BORROWER'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON BORROWER'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.**

2. PAYMENTS: Borrower shall repay Secured Party the above Total of Payments in the number of monthly installments of the amount indicated above. The initial installment payment shall be deemed due as of the date indicated above and subsequent installment payments shall be due on the same day of each month thereafter until paid. A pro-rata portion of the installment payment based on a daily charge of one-thirtieth (1/30) of the installment payment calculated from the Commencement Date (as designated on the Delivery and Acceptance Certificate) to Base Term Commencement Date shall be due and payable at the payment commencement date. All other amounts due thereunder shall be due upon Borrower's receipt of Secured Party's invoice therefor. Advance payments shall be applied to the last installment payments in reverse order until exhausted; provided that if there is a default, any payments under this agreement may be applied to Borrower's obligations to Secured Party in such order as Secured Party chooses.

3. NO AGENCY. BORROWER ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY, MANUFACTURER, DISTRIBUTOR, WHOLESALER, BROKER OR ANY OTHER PERSON OR ENTITY NOR ANY AGENT OF ANY OF THE FOREGOING PERSONS OR ENTITIES (collectively "Supplier") IS AN AGENT OF SECURED PARTY AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND SECURED PARTY OR AFFECT BORROWERS DUTY TO PAY THE INSTALLMENT PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS THEREUNDER.

4. NON CANCELABLE AGREEMENT: THERE SHALL BE NO PREPAYMENT OR OFFSET TO THE TERMS OF THIS AGREEMENT AND THE PAYMENTS DUE HEREUNDER AND THIS AGREEMENT IS NON CANCELABLE BY BORROWER FOR ANY REASON WHATSOEVER: BORROWER MAY REPAY THE INSTALLMENT PAYMENTS ONLY IN ACCORDANCE HEREWITH.

5. FINANCING. THIS AGREEMENT IS SOLELY AN EQUIPMENT FINANCING AGREEMENT. SEE ALL PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS AGREEMENT.

**SECURED PARTY MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE.** BORROWER AGREES THAT BORROWER HAS SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON BORROWER'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY SECURED PARTY. SECURED PARTY DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF SECURED PARTY AND NOTHING THE SUPPLIER STATES CAN AFFECT BORROWER'S OBLIGATION UNDER THE AGREEMENT. BORROWER WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER. This Agreement is effective only upon execution by an authorized officer of Secured Party following Borrower's execution hereof, and upon execution Secured Party shall fund the Equipment Cost/Advanced. Borrower hereby authorizes Secured Party to Disburse the Equipment Cost/Advance as indicated on the attached Disbursement Authorization. Secured Party reserves the right to pay the applicable portion of the Equipment Cost/Advance jointly to any party not specified in the proceding sentence with a security interest in an Item of Collateral.

6. LOCATION; INSPECTION; USE. Borrower shall keep, or, as to an item which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Borrower's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Secured Party. Upon request, Borrower shall advise Secured Party as to the exact location of an Item of Collateral. Secured Party may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner and in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturers' instructions and warranty requirements.

7. ALTERATIONS; SECURITY INTEREST COVERAGE. Without Secured Party's prior written consent, Borrower shall not make any alterations, additions or improvements to an Item of Collateral which detracts from its economic value or functional utility. All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Secured Party's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Borrower will not make any replacements or substitutions without Secured Party's prior written consent.

8. MAINTENANCE. Borrower shall maintain the Collateral in good repair, condition and working order. Borrower shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Borrower will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

9. LOSS AND DAMAGE; CASUALTY VALUE. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Borrower shall give Secured Party prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Secured Party to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Borrower shall cause the Equipment to be replaced and shall immediately provide Secured Party with information necessary to perfect Secured Party's security interest in the replacement Equipment, or shall pay Secured Party the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future installment payment due with respect to such Item discounted at five percent (5%) per annum simple interest from the date due to the date of such payment.

10. TITLING. If requested by Secured Party, Borrower shall cause an Item of Collateral subject to title registration laws to be titled as directed by Secured Party. Borrower shall advise Secured Party promptly as to any necessary retitling. Borrower shall cause all documents of title to be furnished Secured Party within sixty (60) days of the date of any titling effected by Borrower.

| (SECURED PARTY) Banc of California, N.A. | Borrower; Techshop, Inc. and Techshop Phoenix, LLC, as co-borrowers, jointly and severally responsible |
|---|---|
| By: [signature] | By: [signature] |
| | Mark R. Hatch, CEO of Techshop, Inc |
| | By: [signature] Mark R. Hatch, Member of Techshop Phoenix, LLC |
| DATE: 9/23/15 | DATE: Aug 7, 2015 |

Case: 18-50398 Doc# 105 Filed: 05/23/18 Entered: 05/23/18 10:00:37 Page 18 of 33

11. TAXES AND FEES, Borrower agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees relating to this Agreement or the Collateral. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You further agree to pay us any loan fee as set forth above on the date the first payment due. You also acknowledge that in addition to the payments required to be made hereunder, we may assess and you may be required to pay additional taxes and/or fees. **Such fees may not only cover our costs they may also include a profit.**

12. INSURANCE Collateral Protection and Insurance: You agree to keep the Collateral fully insured against loss with us as loss payee in an amount not less than the replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an insured on the policy. You agree to provide us certificates binders, or other evidence of insurance acceptable to us, before this Agreement begins and within thirty (30) days thereafter provide us with the policies of insurance Should you fail to furnish insurance as set forth herein in the type and amounts requested, we may force place insurance and then charge you the amount of the forced placed insurance plus 20% to reflect our cost of funds and administrative costs. We shall be reimbursed within ten (10) days after an invoice is sent to you in the event that we had to force place insurance.

13. SECURED PARTY'S PAYMENT, If Borrower fails to perform any of its obligations hereunder, Secured Party may perform such obligation, and Borrower shall (a) reimburse Secured Party the cost of such performance and (b) pay Secured Party the service charge contemplated in paragraph 20.

14. INDEMNITY. Borrower shall indemnify, defend and hold Secured Party harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Secured Party related to this Agreement and Secured Party's protection of its Collateral. While it is not anticipated that Secured Party shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

15. DEFAULT. Any of the following constitutes an event of default hereunder: (a) Borrower's failure to pay any amount due hereunder, within five (5) days of when due; (b) Borrower's default in performing any other obligation hereunder or under any agreement between Borrower and Secured Party; (c) death or judicial declaration of competency of Borrower, if an individual; (d) the filing by or against Borrower of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of Borrowers, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Borrower , appointment of a receiver or trustee for Borrower or for any Borrower's assets, institution by or against Borrower of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Borrower, Borrower's cessation of active business affairs or the making by Borrower of a transfer of a material portion of Borrower's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) s to a guarantor of other surety of Borrower's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Borrower; (h) Borrower's default under any loan, lease, or agreement providing financial accommodation with a third party or (i) Secured Party shall in good faith deem itself insecure as a result of a material adverse change in Borrower's financial condition or otherwise.

16. REMEDIES. Upon the occurrence of an event of default, Secured Party shall have the right, options, duties and remedies of a secured party, and Borrower shall have the rights and duties of a debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Secured Party may: (a) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Borrower; (b) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (c) require Borrower to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (d) upon notice to Borrower required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Secured Party's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Borrower hereunder with Borrower remaining liable for any deficiency and with any excess being returned to Borrower or (e) utilize any other remedy available under the Uniform Commercial code or otherwise to Secured Party. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Secured Party may if permitted by law bid and become the purchaser at any such sale. Secured Party may conduct any public or private sale from Borrower's premises or location without any charge by Borrower.

17. LITIGATION AND OTHER EXPENSES. Borrower shall pay Secured Party its costs and expenses not offset as provided in paragraph 16, including repossession and attorneys' fees and court costs, incurred by Secured Party in enforcing this Agreement and in protecting its Collateral whether in State, Federal or Bankruptcy Court or other judicial or non-judicial tribunal including mediation, arbitration or judicial reference proceeding. This obligation includes the payment of such amounts whether an action is filed.

18. ASSIGNMENT. Without the prior written consent of Secured Party, Borrower shall not sell, finance or create or allow any lien other than Secured Party's security interest against an Item of Collateral or assign any of Borrower's obligations hereunder. Borrower's obligations are not assignable by operation of law. Secured Party may assign, pledge or otherwise transfer any of its rights but none of its obligations hereunder without notice to Borrower. If Borrower is given notice of any such assignment, Borrower shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice regardless of whether Borrower acknowledges the assignment or not. The rights of an assignee to amounts due hereunder shall be free of any claims, offsets, actions or causes of action, or defense Borrower may have against Secured Party, and Borrower agrees not to assert against an assignee any claim or defense which Borrower may have against Secured Party.
Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

19. MARKINGS; PERSONAL PROPERTY. Borrower shall mark the Collateral or its location as requested by Secured Party to indicate Secured Party's security interest. As between the parties the Collateral shall at all times be deemed personal. Borrower will provide Secured Party any real property waivers requested by Secured Party as to the real property where an Item of Collateral is or is to be located including, but not limited to, landlord's waivers and mortgagee waivers.

20. LATE PAYMENT. If Borrower fails to pay any amount to be paid hereunder within five (5) days of when due, Borrower will pay Secured Party (a) a late charge of 10% of the payment which is late or if less, the maximum charge allowed by law, (b) amounts Secured Party pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

21. ADDITIONAL DOCUMENTS. Borrower shall provide to Secured Party such financing statements and similar documents as Secured Party shall request. Borrower authorizes Secured Party where permitted by law to make filings of such documents without Borrower's signature. Borrower further shall furnish Secured Party (a) a fiscal year-end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Secured Party may request. Borrower shall reimburse Secured Party for all search and filing fees incurred by Secured Party related hereto.

22. NOTICES. Notices shall be in writing, and sufficient if mailed to the party involved, United States mail first class postage prepaid, at its respective address set forth above or at such other address as such party may provide on notice in accordance herewith. Notice so given shall be effective when mailed. Borrower shall promptly notify Secured Party of any change in Borrower's address.

23. GENERAL. This Agreement constitutes the entire agreement of the parties as to the subject matter and Borrower authorizes Secured Party to amend or insert in this agreement any serial numbers and other identification data about the Collateral, as well as any other omitted factual matters. Borrower shall not amend, alter or change the agreement without a written agreement signed by the parties. Any waiver by Secured Party must be in writing, and forbearance shall not constitute a waiver. Whenever the context of this Agreement requires, the neuter includes the masculine or feminine and the singular includes the plural. If there is more than one Borrower named in this agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. This Agreement shall be governed by the law of the State of California. Venue for any action related to this agreement shall be in an appropriate court in Orange County, California where this Agreement was entered into and made to be performed. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Borrower shall survive the release of the security interest in the Collateral.

24. BORROWER'S WARRANTIES. BORROWER CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH BORROWER HAS SUBMITTED, OR WILL SUBMIT, TO SECURED PARTY IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY BORROWER AND UPON EXECUTION BY BORROWER SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY BORROWER IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY SECURED PARTY NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF BORROWER WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. BORROWER FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME SECURED PARTY FUNDS THE TOTAL ADVANCE BE OWNED BY BORROWER FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

25. USED EQUIPMENT: If any equipment is used, Borrower unconditionally agrees: (a) Borrower finances the Equipment as is" and expressly acknowledges that the equipment is used and not new. Secured Party, NOT BEING THE VENDOR OF THE EQUIPMENT, NOR THE VENDOR'S AGENT, MAKES TO BORROWER NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED OF MERCHANTABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO: THE CONDITION, SAFENESS, USABILITY, REPAIR OR DESIGN OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; THE QUAILITY OR CAPACITY OF THE EQUIPMENT; THE WORKMANSHIP IN THE EQUIPMENT; THAT THE EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT PERTAINING THERETO; AND ANY GUARANTY OR WARRANTY AGAINST PATENT INFRINGEMENT OR LATENT DEFECTS. (b) Secured Party is not responsible or liable for any direct, indirect, incidental or consequential damages or losses resulting from any cause whatsoever, including but not limited to; breach of warranty; the installation, operation or use of the Equipment or any products manufactured thereby, or delay or failure to deliver any Item of Equipment. Borrower agrees to settle all such claims directly with Vendor and will not set up against Borrower's obligations to Secured Party any such claims as a defense, counterclaim, setoff, or otherwise.

**26. If this document was sent electronically, I hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached Documents will make all alterations or revisions non-binding and void.**

EFA[redacted]-6458

INITIAL INITIAL

 ## EXHIBIT "A" FOR AGREEMENT NO.: [redacted]-6458

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number: [redacted]-6458

Vendor Name: FormLabs, Inc.
Street Address: 35 Medford St., Suite 201
City, State and Zip: Somerville MA 02143
Vendor Phone: 617-932-5227
Vendor Invoice Number: 100011776

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| 4 | White Resin | |
| 4 | Black Resin | |
| 1 | Factory Reconditioned Form 1+ Package with Clear Resin | |
| 1 | Clear Resin | |
| 12 | Resin Tanks | |
| 4 | Grey Resin | |
| 4 | Castable Resin | |
| 3 | Clear Resin | |
| 4 | Flexible Resin | |
| 1 | Formlabs Pro Service Plan | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: Techshop, Inc. and Techshop Phoenix, LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc.

By: [signature]
Mark R. Hatch, Member of Techshop Phoenix, LLC

Date: 9/21/2015

 **EXHIBIT "A" FOR AGREEMENT NO.: [redacted]-6458**

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number: [redacted]-6458

Vendor Name: Rio Grande
Street Address: 7500 Bluewater Rd. N.W.
City, State and Zip: Albuquerque, NM 87121
Vendor Phone: 800-545-6566
Vendor Invoice Number: 91167800

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| 1 | Casting Machine, J2R Series IV CE MDL | J2RCB546273 |
| 1 | Kit, J2R Series IV Start Up , 220V | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: Techshop, Inc. and Techshop Phoenix, LLC, as co-borrowers, jointly and severally responsible

By: ______________________
Mark R. Hatch, CEO of Techshop, Inc.

By: ______________________
Mark R. Hatch, Member of Techshop Phoenix, LLC


BANC OF
CALIFORNIA

**DELIVERY AND ACCEPTANCE CERTIFICATE**

Agreement #[redacted]-6458

See Exhibit "A" Attached Hereto and Made A Part Hereof

By signing below, you, the Borrower, agree:

A) That all Equipment described in the Agreement identified above has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes of the Agreement; and
B) That we, Banc of California, N.A., are authorized to purchase the Equipment and start billing you under the Agreement as set forth in Section 2.
C) That Borrower's obligations under the Agreement are valid and enforceable and that Borrower's unconditional payment obligation shall commence immediately.
D) That upon execution, the Commencement Date set forth in the Agreement shall be in force and effect.

A COPY OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

Date of Acceptance: 9/15/2015

Agreement#: [redacted]6458

Borrower: Techshop, Inc. and Techshop Phoenix, LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc.

By: [signature]
Mark R. Hatch, Member of Techshop Phoenix, LLC

I hereby authorize Mike Hilberman, CFO to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement #741-BRO-6458 in my absence.

ADDENDUM TO EQUIPMENT FINANCE AGREEMENT NO. [redacted]5458

BETWEEN Banc of California, N.A. AS SECURED PARTY

AND Techshop, Inc. and Techshop Phoenix, LLC, as co-borrowers, jointly and severally responsible AS BORROWER.

The parties have entered into the above-referenced Equipment Finance Agreement for the finance of equipment more fully described in said Agreement. In recognition of the changes to the Finance Agreement, the parties hereby wish to amend said Finance Agreement as set forth below:

The Monthly Payment Amount Shall now Read: $349.67

The First Payment Shall now read $349.67

The Last Payment Shall now read $349.67

The Total Amount Due shall now read $1,048.10

By signing this Addendum, Borrower acknowledges the above changes to the Finance Agreement and authorizes Secured Party to make such changes.

Secured Party: Banc of California, N.A.

By: [signature]

Title: VP of Operations

Date: 9/23/15

Borrower: Techshop, Inc. and Techshop Phoenix, LLC, as co-borrowers, jointly and severally responsible

By: [signature]

Title: Mark R. Hatch, CEO of Techshop, Inc./ Member of Techshop Phoenix, LLC

By: [signature]

Title: Mark R. Hatch, CEO of Techshop, Inc./ Member of Techshop Phoenix, LLC

Date: 9/21/2015

A COPY OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.

INVOICE

RIO GRANDE
A Berkshire Hathaway Company
www.riogrande.com

Orders & Customer Service: 800.545.6566
Email: info@riogrande.com

Hello, TIFFANI MASCARELLA. Thank you for your order!
Do you follow The Studio, Rio's blog?
Join fellow jewelers at riograndeblog.com

Market Price Silver: $15.27 Gold:$ 1108.25 Platinum: $983.00 Palladium: $613.00 Federal Tax ID: 85-0164903

| Item | Description | Ordered | Shipped | Unit | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 710040CH | CASTING MACH, J2R SERIES IV CE MDL<br>Serial #: J2RCB-34-0373 | 1.000 | 1.000 | EA | 7,150.00 | 7,150.00 |
| 710239220 | KIT, J2R SERIES IV START-UP, 220V | 1.000 | 1.000 | EA | 1,725.00 | 1,725.00 |

We buy gold and silver, visit www.riogrande.com/scrap.

| | |
|---|---|
| Subtotal | $8,875.00 |
| Tax | $0.00 |
| Shipping | $201.42 |
| Insurance and Handling | (Included) |
| TOTAL: | $9,076.42 |

Please make check payable to Rio Grande and mail to:

Rio Grande
7500 Bluewater Rd. N.W.
Albuquerque, NM 87121

This address is for payments only.
Please see reverse for merchandise returns.

BILL TO:
TECHSHOP
249 E CHICAGO ST
CHANDLER, AZ 85225 US

**Method of Payment:**
Net due in 30 days
**$9,076.42 due on 09/10/2015**
Please retain a copy of this invoice. You will not receive one with your statement.

Thank You!

Page 1 of 1

TECHSHOP
Customer: 5100158152
Invoice#: 91167800

Sharing your passion for making Jewelry. Products. Service. Knowledge.

**formlabs**

Formlabs Inc
35 Medford St
Ste 1
Somerville, MA
02143

## Invoice

Order # [illegible] | Invoice # [illegible]

Order Date: Aug 13, 201[illegible] | Invoice Date: Aug 13, 2015

| Sold to: | Ship to: |
|---|---|
| Techshop, Inc<br>405 El Camino Real Box#606<br>Menlo Park,<br>California, 94025<br>United States<br>T: 925-406-4774 | Techshop Phoenix, LLC (Chandler)<br>249 E Chicago Street Chandler,<br>Arizona, 85225<br>United States<br>T: 925-406-4774 |

| Payment Method: | Shipping Method: |
|---|---|
| Net 0<br>Due Date: Aug 13, 2015<br>Purchase Order Number: TSCO-20150730-07 | Shipping Option(s) - FEDEX Ground Delivery<br><br>(Total Shipping Charges $125.91) |

| Products | SKU | Price | Qty | Tax | Subtotal |
|---|---|---|---|---|---|
| White Resin | RS-W-01 | $149.00 | 4 | $0.00 | $596.00 |
| Black Resin | RS-B-01 | $149.00 | 4 | $0.00 | $596.00 |
| Form 1+ Complete Package w/ Clear Resin | F1-P-PKG-C | | | | |
| *Form 1+ 3D Printer* | | | | | |
| Form 1+ 3D Printer | | $3,000.00 | 1 | $0.00 | $3,000.00 |
| *Form Finish Kit* | | | | | |
| Form Finish Kit | | $150.00 | 1 | $0.00 | $150.00 |
| *Clear Resin 1L* | | | | | |
| Clear Resin | | $149.00 | 1 | $0.00 | $149.00 |
| Resin Tank | RT-02 | $59.00 | 12 | $0.00 | $708.00 |
| Grey Resin | RS-GPGR-02 | $149.00 | 4 | $0.00 | $596.00 |
| Castable Resin | RS-CABL-01 | $149.00 | 4 | $0.00 | $596.00 |
| Clear Resin | RS-GPCL-02 | $149.00 | 3 | $0.00 | $447.00 |
| Flexible Resin | RS-FLGR-01 | $99.00 | 4 | $0.00 | $396.00 |
| Formlabs Pro Service Plan | SVC-PP-01 | $499.00 | 1 | $0.00 | $499.00 |

| | |
|---|---|
| Subtotal: | $7,733.00 |
| Discount (Techshop Discount): | -$1,382.35 |
| Shipping & Handling: | $125.91 |
| Grand Total: | $6,476.56 |

Notes

Case: 18-50398 Doc# 105 Filed: 05/23/18 Entered: 05/23/18 10:00:37 Page 25 of 33

INVOICE

RIO GRANDE
A Berkshire Hathaway Company
www.riogrande.com

Orders & Customer Service: 800.545.6566
Email: info@riogrande.com

**Hello, TIFFANI MASCARELLA. Thank you for your order!**
Do you follow The Studio, Rio's blog?
Join fellow jewelers at riograndeblog.com

**Market Price Silver: $15.27 Gold:$ 1108.25 Platinum: $983.00 Palladium: $613.00** Federal Tax ID: 85-0164903

| Item | Description | Ordered | Shipped | Unit | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 710040CB | CASTING MACH, J2R SERIES IV CE MDL<br>Serial #: J2RCB-94-0373 | 1.000 | 1.000 | BA | 7,150.00 | 7,150.00 |
| 710239220 | KIT, J2R SERIES IV START-UP, 220V | 1.000 | 1.000 | BA | 1,725.00 | 1,725.00 |

We buy gold and silver, visit www.riogrande.com/scrap.

| | |
|---|---|
| Subtotal | $8,875.00 |
| Tax | $0.00 |
| Shipping | $201.42 |
| Insurance and Handling | (Included) |
| **TOTAL:** | **$9,076.42** |

Please make check payable to Rio Grande and mail to:

**Rio Grande**
7500 Bluewater Rd. N.W.
Albuquerque, NM 87121

**BILL TO:**
TECHSHOP
249 E CHICAGO ST
CHANDLER, AZ 85225 US

**Method of Payment:**
Net due in 30 days
**$9,076.42 due on 09/10/2015**
Please retain a copy of this invoice. You will not receive one with your statement.

This address is for payments only.
Please see reverse for merchandise returns.

**Thank You!**

**TECHSHOP**
**Customer:** 5100158152
Invoice#: 91167800

**Page 1 of 1**

Sharing your passion for making jewelry. Products. Service. Know-how

# formlabs

Formlabs Inc
35 Medford St
Ste 1
Somerville, MA
02143

## Invoice

Order # [illegible]
Order Date: Aug 13, 2015 [illegible]

Invoice # [illegible]
Invoice Date: Aug 13 2015

| Sold To: | Ship To: |
|---|---|
| Techshop, Inc<br>405 El Camino Real Box#606<br>Menlo Park,<br>California, 94025<br>United States<br>T: 925-406-4774 | Techshop Phoenix, LLC (Chandler)<br>249 E Chicago Street Chandler,<br>Arizona, 85225<br>United States<br>T: 925-406-4774 |

| Payment Method: | Shipping Method: |
|---|---|
| Net 0<br>Due Date: Aug 13, 2015<br>Purchase Order Number: TSCO-20150730-07 | Shipping Option(s) - FEDEX Ground Delivery<br><br>(Total Shipping Charges $125,91) |

| Products | SKU | Price | Qty | Tax | Subtotal |
|---|---|---|---|---|---|
| White Resin | RS-W-01 | $149.00 | 4 | $0,00 | $596,00 |
| Black Resin | RS-B-01 | $149.00 | 4 | $0,00 | $596,00 |
| Form 1+ Complete Package w/ Clear Resin | F1-P-PKG-C | | | | |
| *Form 1+ 3D Printer* | | | | | |
| Form 1+ 3D Printer | | $3,000.00 | 1 | $0.00 | $3,000.00 |
| *Form Finish Kit* | | | | | |
| Form Finish Kit | | $150.00 | 1 | $0.00 | $150.00 |
| *Clear Resin 1L* | | | | | |
| Clear Resin | | $149.00 | 1 | $0.00 | $149.00 |
| Resin Tank | RT-02 | $59.00 | 12 | $0.00 | $708.00 |
| Grey Resin | RS-GPGR-02 | $149.00 | 4 | $0.00 | $596.00 |
| Castable Resin | RS-CABL-01 | $149.00 | 4 | $0.00 | $596.00 |
| Clear Resin | RS-GPCL-02 | $149.00 | 3 | $0.00 | $447.00 |
| Flexible Resin | RS-FLGR-01 | $99.00 | 4 | $0.00 | $396.00 |
| Formlabs Pro Service Plan | SVC-PP-01 | $499.00 | 1 | $0.00 | $499.00 |

| | |
|---|---|
| Subtotal: | $7,733.00 |
| Discount (Techshop Discount): | -$1,382.35 |
| Shipping & Handling: | $125.91 |
| Grand Total: | $6,476.56 |

Notes

# EXHIBIT "3"



G457

EQUIPMENT FINANCING AGREEMENT

Agreement # [redacted]6457

| "BORROWER" | "SUPPLIER" |
|---|---|
| FULL LEGAL NAME Techshop, Inc. and Techshop Detroit LLC, as co-borrowers, jointly and severally responsible<br>BILLING ADDRESS 300 S 2nd Street<br>CITY San Jose STATE CA ZIP 95113<br>CONTACT Mark R. Hatch TELEPHONE 408-916-4144 | See Exhibit "A" Attached Hereto and Made A Part Hereof |

| FULL DESCRIPTION OF PROPERTY INCLUDING MODEL, AND SERIAL NUMBERS<br>SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF | EQUIPMENT COST<br>SEE DISBURSEMENT OF ~~AUTHORIZATION ATTACHED HERETO~~ AND MADE A PART HEREOF |
|---|---|
| PROPERTY LOCATION (IF DIFFERS FROM BILLING ADDRESS)<br>Street Address: 800 Republic Dr<br>City: Allen Park<br>State: MI Zip: 48101 County: | INITIAL PAYMENT<br>(CHECK FOR THIS AMOUNT MUST ACCOMPANY AGREEMENT) |
| TERM OF LOAN AND PAYMENTS INITIAL PAYMENT DATE 10/20/2015 ("Base Term Commencement Date")<br>60 PAYMENTS OF $549.05 | FIRST PAYMENT $549.05<br>LAST PAYMENT $549.05<br>LOAN FEE $348.75<br>TOTAL AMOUNT DUE: $1,446.85 |

TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")

Borrower and Secured Party agree as follows:

1. SECURITY INTEREST: Borrower hereby grants Secured Party a security under the Uniform Commercial Code in the above personal property (collectively the "Collateral" and individually an "Item" or "Item of Collateral"). Such security interest is granted to secure performance by Borrower of its obligations thereunder and under any other present or future agreement with Secured Party. Borrower shall insure that such security interest is and shall remain a sole first lien security interest. **BORROWER HEREBY AUTHORIZES SECURED PARTY TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS SECURED PARTY OR ITS DESIGNEE AS BORROWER'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON BORROWER'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.**

2. PAYMENTS: Borrower shall repay Secured Party the above Total of Payments in the number of monthly installments of the amount indicated above. The initial installment payment shall be deemed due as of the date indicated above and subsequent installment payments shall be due on the same day of each month thereafter until paid. A pro-rata portion of the installment payment based on a daily charge of one-thirtieth (1/30) of the installment payment calculated from the Commencement Date (as designated on the Delivery and Acceptance Certificate) to Base Term Commencement Date shall be due and payable at the payment commencement date. All other amounts due thereunder shall be due upon Borrower's receipt of Secured Party's invoice therefor. Advance payments shall be applied to the last installment payments in reverse order until exhausted; provided that if there is a default, any payments under this agreement may be applied to Borrower's obligations to Secured Party in such order as Secured Party chooses.

3. NO AGENCY. BORROWER ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY, MANUFACTURER, DISTRIBUTOR, WHOLESALER, BROKER OR ANY OTHER PERSON OR ENTITY NOR ANY AGENT OF ANY OF THE FOREGOING PERSONS OR ENTITIES (collectively "Supplier") IS AN AGENT OF SECURED PARTY AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND SECURED PARTY OR AFFECT BORROWERS DUTY TO PAY THE INSTALLMENT PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS THEREUNDER.

4. NON CANCELABLE AGREEMENT: THERE SHALL BE NO PREPAYMENT OR OFFSET TO THE TERMS OF THIS AGREEMENT AND THE PAYMENTS DUE HEREUNDER AND THIS AGREEMENT IS NON CANCELABLE BY BORROWER FOR ANY REASON WHATSOEVER. BORROWER MAY REPAY THE INSTALLMENT PAYMENTS ONLY IN ACCORDANCE HEREWITH.

5. FINANCING. THIS AGREEMENT IS SOLELY AN EQUIPMENT FINANCING AGREEMENT. SEE ALL PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS AGREEMENT.

**SECURED PARTY MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE.** BORROWER AGREES THAT BORROWER HAS SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON BORROWER'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY SECURED PARTY. SECURED PARTY DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. THE SUPPLIER IS NOT AN AGENT OF SECURED PARTY AND NOTHING THE SUPPLIER STATES CAN AFFECT BORROWER'S OBLIGATION UNDER THE AGREEMENT. BORROWER WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER. This Agreement is effective only upon execution by an authorized officer of Secured Party following Borrower's execution hereof, and upon execution Secured Party shall fund the Equipment Cost/Advanced. Borrower hereby authorizes Secured Party to Disburse the Equipment Cost/Advance as indicated on the attached Disbursement Authorization. Secured Party reserves the right to pay the applicable portion of the Equipment Cost/Advance jointly to any party not specified in the preceding sentence with a security interest in an Item of Collateral.

6. LOCATION; INSPECTION; USE. Borrower shall keep, or, as to an Item which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Borrower's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Secured Party. Upon request, Borrower shall advise Secured Party as to the exact location of an Item of Collateral. Secured Party may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner and in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturers' instructions and warranty requirements.

7. ALTERATIONS; SECURITY INTEREST COVERAGE. Without Secured Party's prior written consent, Borrower shall not make any alterations, additions or improvements to an Item of Collateral which detracts from its economic value or functional utility. All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Secured Party's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Borrower will not make any replacements or substitutions without Secured Party's prior written consent.

8. MAINTENANCE. Borrower shall maintain the Collateral in good repair, condition and working order. Borrower shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Borrower will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

9. LOSS AND DAMAGE; CASUALTY VALUE. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Borrower shall give Secured Party prompt notice thereof and shall thereafter place the Item in good repair, condition and working order, provided, however, that if such Item is determined by Secured Party to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Borrower shall cause the Equipment to be replaced and shall immediately provide Secured Party with information necessary to perfect Secured Party's security interest in the replacement Equipment, or shall pay Secured Party the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future installment payment due with respect to such Item discounted at five percent (5%) per annum simple interest from the date due to the date of such payment.

10. TITLING. If requested by Secured Party, Borrower shall cause an Item of Collateral subject to title registration laws to be titled as directed by Secured Party. Borrower shall advise Secured Party promptly as to any necessary retitling. Borrower shall cause all documents of title to be furnished Secured Party within sixty (60) days of the date of any titling effected by Borrower.

(SECURED PARTY) Banc of California, N.A.

By: [signature]

DATE: 9/23/15

(BORROWER) Techshop, Inc. and Techshop Detroit LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc.

By: [signature]
Mark R. Hatch, Member of Techshop Detroit LLC

DATE: Aug 7 2015

Case: 18-50398 Doc# 105 Filed: 05/23/18 Entered: 05/23/18 10:00:37 Page 29 of 33

11. TAXES AND FEES. Borrower agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees relating to this Agreement or the Collateral. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You further agree to pay us any loan fee as set forth above on the date the first payment due. You also acknowledge that in addition to the payments required to be made hereunder, we may assess and you may be required to pay additional taxes and/or fees. **Such fees may not only cover our costs they may also include a profit.**

12. INSURANCE Collateral Protection and Insurance: You agree to keep the Collateral fully insured against loss with us as loss payee in an amount not less than the replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an insured on the policy. You agree to provide us certificates binders, or other evidence of insurance acceptable to us, before this Agreement begins and within thirty (30) days thereafter provide us with the policies of insurance Should you fail to furnish insurance as set forth herein in the type and amounts requested, we may force place insurance and then charge you the amount of the forced placed insurance plus 20% to reflect our cost of funds and administrative costs. We shall be reimbursed within ten (10) days after an invoice is sent to you in the event that we had to force place insurance.

13. SECURED PARTY'S PAYMENT. If Borrower fails to perform any of its obligations hereunder, Secured Party may perform such obligation, and Borrower shall (a) reimburse Secured Party the cost of such performance and (b) pay Secured Party the service charge contemplated in paragraph 20.

14. INDEMNITY. Borrower shall indemnify, defend and hold Secured Party harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Secured Party related to this Agreement and Secured Party's protection of its Collateral. While it is not anticipated that Secured Party shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

15. DEFAULT. Any of the following constitutes an event of default hereunder: (a) Borrower's failure to pay any amount due hereunder, within five (5) days of when due; (b) Borrower's default in performing any other obligation hereunder or under any agreement between Borrower and Secured Party; (c) death or judicial declaration of competency of Borrower, if an individual; (d) the filing by or against Borrower of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of Borrowers, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Borrower , appointment of a receiver or trustee for Borrower or for any Borrower's assets, institution by or against Borrower of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Borrower, Borrower's cessation of active business affairs or the making by Borrower of a transfer of a material portion of Borrower's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) s to a guarantor of other surety of Borrower's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Borrower; (h) Borrower's default under any loan, lease, or agreement providing financial accommodation with a third party or (i) Secured Party shall in good faith deem itself insecure as a result of a material adverse change in Borrower's financial condition or otherwise.

16. REMEDIES. Upon the occurrence of an event of default, Secured Party shall have the right, options, duties and remedies of a secured party, and Borrower shall have the rights and duties of a debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Secured Party may: (a) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Borrower; (b) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (c) require Borrower to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (d) upon notice to Borrower required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Secured Party's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Borrower hereunder with Borrower remaining liable for any deficiency and with any excess being returned to Borrower or (e) utilize any other remedy available under the Uniform Commercial code or otherwise to Secured Party. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Secured Party may if permitted by law bid and become the purchaser at any such sale. Secured Party may conduct any public or private sale from Borrower's premises or location without any charge by Borrower.

17. LITIGATION AND OTHER EXPENSES. Borrower shall pay Secured Party its costs and expenses not offset as provided in paragraph 16, including repossession and attorneys' fees and court costs, incurred by Secured Party in enforcing this Agreement and in protecting its Collateral whether in State, Federal or Bankruptcy Court or other judicial or non-judicial tribunal including mediation, arbitration or judicial reference proceeding. This obligation includes the payment of such amounts whether an action is filed.

18. ASSIGNMENT. Without the prior written consent of Secured Party, Borrower shall not sell, finance or create or allow any lien other than Secured Party's security interest against an item of Collateral or assign any of Borrower's obligations hereunder. Borrower's obligations are not assignable by operation of law. Secured Party may assign, pledge or otherwise transfer any of its rights but none of its obligations hereunder without notice to Borrower. If Borrower is given notice of any such assignment, Borrower shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice regardless of whether Borrower acknowledges the assignment or not. The rights of an assignee to amounts due hereunder shall be free of any claims, offsets, actions or causes of action, or defense Borrower may have against Secured Party, and Borrower agrees not to assert against an assignee any claim or defense which Borrower may have against Secured Party.
Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

19. MARKINGS; PERSONAL PROPERTY. Borrower shall mark the Collateral or its location as requested by Secured Party to indicate Secured Party's security interest. As between the parties the Collateral shall at all times be deemed personal. Borrower will provide Secured Party any real property waivers requested by Secured Party as to the real property where an Item of Collateral is or is to be located including, but not limited to, landlord's waivers and mortgagee waivers.

20. LATE PAYMENT. If Borrower fails to pay any amount to be paid hereunder within five (5) days of when due, Borrower will pay Secured Party (a) a late charge of 10% of the payment which is late or if less, the maximum charge allowed by law, (b) amounts Secured Party pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

21. ADDITIONAL DOCUMENTS. Borrower shall provide to Secured Party such financing statements and similar documents as Secured Party shall request. Borrower authorizes Secured Party where permitted by law to make filings of such documents without Borrower's signature. Borrower further shall furnish Secured Party (a) a fiscal year-end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Secured Party may request. Borrower shall reimburse Secured Party for all search and filing fees incurred by Secured Party related hereto.

22. NOTICES. Notices shall be in writing, and sufficient if mailed to the party involved, United States mail first class postage prepaid, at its respective address set forth above or at such other address as such party may provide on notice in accordance herewith. Notice so given shall be effective when mailed. Borrower shall promptly notify Secured Party of any change in Borrower's address.

23. GENERAL. This Agreement constitutes the entire agreement of the parties as to the subject matter and Borrower authorizes Secured Party to amend or insert in this agreement any serial numbers and other identification data about the Collateral, as well as any other omitted factual matters. Borrower shall not amend, alter or change the agreement without a written agreement signed by the parties. Any waiver by Secured Party must be in writing, and forbearance shall not constitute a waiver. Whenever the context of this Agreement requires, the neuter includes the masculine or feminine and the singular includes the plural. If there is more than one Borrower named in this agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. This Agreement shall be governed by the law of the State of California. Venue for any action related to this agreement shall be in an appropriate court in Orange County, California where this Agreement was entered into and made to be performed. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Borrower shall survive the release of the security interest in the Collateral.

24. BORROWER'S WARRANTIES. BORROWER CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH BORROWER HAS SUBMITTED, OR WILL SUBMIT, TO SECURED PARTY IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY BORROWER AND UPON EXECUTION BY BORROWER SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY BORROWER IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY SECURED PARTY NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF BORROWER WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. BORROWER FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME SECURED PARTY FUNDS THE TOTAL ADVANCE BE OWNED BY BORROWER FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

25. USED EQUIPMENT; If any equipment is used, Borrower unconditionally agrees: (a) Borrower finances the Equipment as is" and expressly acknowledges that the equipment is used and not new. Secured Party, NOT BEING THE VENDOR OF THE EQUIPMENT, NOR THE VENDOR'S AGENT, MAKES TO BORROWER NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED OF MERCHANTABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO: THE CONDITION, SAFENESS, USABILITY, REPAIR OR DESIGN OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; THE QUAILITY OR CAPACITY OF THE EQUIPMENT; THE WORKMANSHIP IN THE EQUIPMENT; THAT THE EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT PERTAINING THERETO; AND ANY GUARANTY OR WARRANTY AGAINST PATENT INFRINGEMENT OR LATENT DEFECTS. (b) Secured Party is not responsible or liable for any direct, indirect, incidental or consequential damages or losses resulting from any cause whatsoever, including but not limited to; breach of warranty; the installation, operation or use of the Equipment or any products manufactured thereby, or delay or failure to deliver any item of Equipment. Borrower agrees to settle all such claims directly with Vendor and will not set up against Borrower's obligations to Secured Party any such claims as a defense, counterclaim, setoff, or otherwise.

**26. If this document was sent electronically. I hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached Documents will make all alterations or revisions non-binding and void.**

EFA# [redacted]6457

INITIAL

INITIAL

Case: 18-50398 Doc# 105 Filed: 05/23/18 Entered: 05/23/18 10:00:37 Page 30 of 33

 BANC OF
CALIFORNIA

**EXHIBIT "A" FOR AGREEMENT NO.: [redacted]-6457**

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number: [redacted]-6457

Vendor Name: KAESER COMPRESSORS, INC.
Street Address: 46771 Fremont Blvd
City, State and Zip: Fremont, CA 94538
Vendor Phone: 510-770-0200
Vendor Invoice Number: 910839985

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| 1 | SM 10 125 psi SCB TriVolt. US | 1772 |
| 1 | Filtered Separator KFS-60 | |
| 1 | KCF-25 Condensate Treatment System | 4587 |
| 1 | Condensate Manifold Compact | 1513 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: Techshop, Inc. and Techshop Detroit LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc.
By: [signature]
Mark R. Hatch, Member of Techshop Detroit LLC
Date: Aug 7, 2015

 BANC OF
CALIFORNIA

**EXHIBIT "A" FOR AGREEMENT NO.: [redacted]6457**

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number: [redacted]6457

Vendor Name: LAGUNA TOOLS, INC.
Street Address: 2072 Alton Pkwy
City, State and Zip: Irvine, CA 92606
Vendor Phone: 949-474-1200
Vendor Invoice Number: 96348

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| 1 | 8" Parallelogram Joint ShearTec II | |
| 1 | 16" Planer ShearTec II | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: Techshop, Inc. and Techshop Detroit LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc.
By: [signature]
Mark R. Hatch, Member of Techshop Detroit LLC
Date: Aug 7, 2015


BANC OF
CALIFORNIA

**EXHIBIT "A" FOR AGREEMENT NO.: [redacted]-6457**

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number: [redacted]-6457

Vendor Name: Edwards Manufacturing Company of Albert Lea
Street Address: 1107 Sykes St
City, State and Zip: Albert Lea, MN 56007
Vendor Phone: 507-373-8206
Vendor Invoice Number:

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| 1 | 55 Ton Ironworker – 3 phase, 230 volt | 08030151W55 |
| 1 | Punch and Die Starter Set | |
| 1 | Gauge Table Kit | |
| 1 | Brake – 10" w/4-way Die | |
| 2 | Accessory LED Light | |
| 1 | Coper/Notcher 5ST | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: Techshop, Inc and Techshop Detroit LLC, as co-borrowers, jointly and severally responsible

By: [signature]
Mark R. Hatch, CEO of Techshop, Inc
By: [signature]
Mark R. Hatch, Member of Techshop Detroit LLC
Date: 9/21/2015

3 of 3