| | |
|---|---|
| 1 | Ann McFarland Draper (SBN 065669) |
| 2 | courts@draperlaw.net |
|   | **Draper Law Offices** |
| 3 | 75 Broadway, Suite 202 |
|   | San Francisco, California 94111 |
| 4 | Tel:  (415) 989-5620 |
| 5 | **Attorneys for Objector Dan Rasure** |

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**
**San Jose Division**

| | |
|---|---|
| In Re: | Case No.: 18-50398 MEH |
|  | **Chapter 7** |
| TECHSHOP, INC. | **OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING** |
| Debtor. | **Hearing Requested** |

DAN RASURE ("Rasure") hereby objects to the *Application For Authority to Employ Special Counsel on Contingency Fee Basis (Parrish Law Offices)* (the "Application") (Docket No. 80), and requests a hearing thereon. In support of his objection and request for hearing, Rasure, by and through his undersigned counsel, states as follows:

1. This Court has jurisdiction to hear the above-referenced Objection.

2. The Application and Objection relate to employment of special counsel on a contingency fee basis to represent the Trustee in a pre-petition trademark infringement action entitled *TechShop, Inc., vs. Dan Rasure, et al*, Case No. 4:18-cv-01044 HDG (the "TM Action").

3. The TM Action was filed February 16, 2018. Rasure is a defendant in the TM Action. Rasure and the two entity-defendants in the TM Action were served with Summons and Complaint on February 22, 2018.

*In Re Techshop, Inc., Debtor*  Case No. 18-50398  - 1
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398   Doc# 107   Filed: 05/29/18   Entered: 05/29/18 23:45:28   Page 1 of 13

4. This case was commenced on February 26, 2018, when Debtor TechShop, Inc. ("Debtor") filed its voluntary petition under Chapter 7 together with its schedules of assets and liabilities and its statement of financial affairs, which have since been amended several times.

5. Doris A. Kaelin is the Trustee in Bankruptcy of Debtor's estate.

6. On March 16, 2018, the Court issued its *Order Authorizing Employment of Counsel (Rincon Law LLP)* (Docket No. 24) to assist in all matters arising in or related to this Chapter 7 proceeding.

7. The Application was filed May 9, 2018, together with a notice and opportunity for hearing on the Application. See *Notice and Opportunity For Hearing on Trustee's Application for Order Authorizing Special Counsel on Contingency Fee Basis (Parrish Law Offices)* (the "Notice and Opportunity") (Docket No. 81).

8. Rasure is a creditor of this estate. As such, Rasure has standing to be heard with regard to the above-referenced Objection.

9. When originally filed, this case appeared to be a "no asset" case. See *Notice of Chapter 7 Bankruptcy Case* issued February 27, 2018 (Docket No. 4), which stated at Item 8 that "No property appears to be available to pay creditors." On April 27, 2018, the Trustee filed a Notice stating that it now appears that there may be sufficient assets available for the payment of a dividend to creditors. See *Trustee's Request for Notice of Possible Dividend* (Docket No. 71). No information has been given as to the potential magnitude of the funds, although the *Notice and Opportunity* states that the "Debtor's estate does not have any unencumbered funds on hand." See *Notice and Opportunity* (Docket No. 81, 5th paragraph).

10. The *Notice and Opportunity* also states that "costs could be prohibitive," and that the proposed special counsel is willing to "advance certain costs" but neither the *Notice and Opportunity* nor the *Application* says what costs will be advanced and what costs will be paid by the Trustee regardless of whether there is a recovery. This is not something that should be left for the attorneys to work out later. If the funds of this estate are exhausted with litigation expenses that do not result in a net monetary recovery to the estate, Rasure and other creditors cannot expect to recover on their claims.

*In Re Techshop, Inc., Debtor* Case No. 18-50398 - 2
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398   Doc# 107   Filed: 05/29/18   Entered: 05/29/18 23:45:28   Page 2 of 13

11. Prior to November 2017, Debtor had operated ten makerspace workshop facilities in the United States, where it made tools and equipment available and offered classes. Debtor had also obtained two federal service mark registrations, each for the term TECHSHOP as a word mark without claim to any particular font, style, size or color as a feature of the mark. One of the registrations was in Class 35 (business services) and Class 41 (educational services); the other was in Class 40 (treatment of materials). Rasure, through counsel, believes that the registrations are invalid, have not been maintained, and that the federal registrations are subject to cancellation on a number of grounds.

12. Debtor's *Schedule D* shows that it had obtained over $18 Million (characterized as secured loans) from Autodesk, Inc. ("Autodesk") and over $2.5 Million in financing from Lowe's Companies, Inc. (apparently for supplying some of the equipment used at Debtor's ten U.S. locations). See *Schedule D* (Docket No. 1, page 15. Debtor's schedules also list more than $16 Million in general unsecured claims. See *Summary of Assets and Liabilities* (Docket No. 1, page 6). Rasure believes that the unsecured claims include a substantial amount of loans (typically $25,000) made by individual small investors who also obtained lifetime memberships as part of the investment package.

13. Debtor's *Statement of Financial Affairs* shows gross annual revenues of $2,069,189.73 in 2017 and $1,952,679.31 in 2016. See *Statement of Financial Affairs* (Docket No. 1, page 22).

14. Despite this substantial funding and sizeable annual revenues, Debtor was not paying its instruction staff as early as 2015 and was insolvent before 2017; by late 2017 Debtor was unable to continue operating its workshop locations or corporate offices.

15. On November 15, 2017, Debtor publicly announced that it was closing all ten of its U.S. locations and its small corporate group effective 8AM on November 15, and that it would be filing for bankruptcy under Chapter 7. Within a few hours thereafter, Debtor had in fact shut down all ten of its U.S. locations and corporate offices and had ceased all operations, but Debtor waited over three months before actually filing its bankruptcy case.

*In Re Techshop, Inc., Debtor*     Case No. 18-50398    - 3
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398    Doc# 107    Filed: 05/29/18    Entered: 05/29/18 23:45:28    Page 3 of 13

16. After debtor had shut down, Rasure approached Debtor and separately approached its principal creditor (Autodesk), indicating his interest in a possible deal that would enable him to reopen some of the former U.S. locations under new ownership and management. Between November 17 and November 30, 2017, Rasure engaged in intensive negotiations with Debtor's CEO (Dan Woods) and Chairman (Jim Newton), which resulted in a Memorandum of Understanding ("MOU") on November 30, 2017, setting forth a summary of principal deal terms. The negotiations leading up to the MOU were conducted in a very short time frame, and Rasure had not yet formed the new entity for the acquisition. While the MOU was being negotiated, the acquiring entity was initially referred to as "New Co" but Rasure, Woods, Newton and Debtor's corporate counsel in Oregon began using the moniker "TechShop 2.0" to refer to the to-be-formed entity.

17. When the MOU document was ready for execution, Debtor's outside director (Doug Busch) demanded that the acquiring entity in the contract be officially formed before the MOU was signed. In the early hours of December 1, 2017, Rasure caused the formation of a Kansas limited liability company under the name "TechShop 2.0 LLC".

18. The MOU was signed on the morning of December 1, 2017. Debtor (through Dan Woods) immediately issued public announcements (via Facebook, Twitter and an online magazine that served the "maker" community) regarding the Rasure transaction, in a manner that made it clear that the "group called TechShop 2.0" was different from TechShop.

19. At no time between November 17, 2017 and service of the TM Action on February 22, 2018, did Debtor, Newton or Woods object to Rasure's use of the moniker "TechShop 2.0" or formation of entities under the "TechShop 2.0" name. To the contrary, Debtor, Newton and Woods consented to, acquiesced in, and ratified Rasure's use of the moniker and business name "TechShop 2.0."

20. At the time the MOU was signed, the transaction was contemplated to close on or shortly after December 21, 2017.

21. Between November 17 and December 12, Debtor and two of its officers (Newton and Woods) fraudulently deceived Rasure into advancing over $34,000 of the purchase funds to

*In Re Techshop, Inc., Debtor*                                  Case No. 18-50398     - 4
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398     Doc# 107     Filed: 05/29/18     Entered: 05/29/18 23:45:28     Page 4 of 13

pay urgently overdue bills for Debtor's employee health insurance, cloud services, attorneys, and social media person, including providing his credit card information to Google to be used for ongoing automatic charges for Debtor's cloud services and email accounts, although Rasure had not authorized use of the card for ongoing charges of any type. The wires were used in the transfer of funds as well as to make misrepresentations.

22. Debtor unilaterally terminated Rasure's transaction on December 12, 2017, only hours after Rasure had advanced $1,100 for Debtor's social media person. Debtor did not refund any of the monies that it had tricked Rasure into advancing, nor did it offer to do so.

23. Although the MOU was dead, Rasure continued to explore ways in which to operate maker spaces in some of Debtor's former shop locations. Debtor briefly returned to the negotiating table in late December 2017 and January, but the discussions were not fruitful.

24. Rasure decided to move forward with opening a makerspace in San Francisco and negotiated with The Hearst Corporation for lease of the workshop premises at 926 Howard Street from the building's landlord 5M Project LLC (owned by The Hearst Corporation). 926 Howard Street is the location at which Debtor's subsidiary TechShop SOMA LLC had formerly operated a makerspace. Before signing the lease, Rasure caused the formation of a second Kansas limited liability company under the name "TechShop 2.0 San Francisco LLC," which leased 926 Howard Street premises and the equipment abandoned there by Debtor's subsidiary. The entity later changed its name to TheShop dot Build San Fran LLC ("Build SF").

25. Rasure and Build SF commenced cleaning up the premises, repaired and refurbished (and in some cases replaced) the tools and equipment, and announced their intention to open the San Francisco workspace facility at 926 Howard. A news article published in the San Francisco Chronicle on February 14, 2018, announcing the opening and stated "TechShop 2.0 is entirely separate from TechShop."

26. In response to this public announcement, Woods wrote a letter to The Hearst Corporation's representative (Dave Byers), Rasure and "TechShop 2.0 LLC" stating: that there was no agreement or contractual relationship between Rasure and Debtor or its TechShop SOMA LLC subsidiary; that Debtor intended to file a Chapter 7 bankruptcy shortly; and that Rasure had

*In Re Techshop, Inc., Debtor*                                                                                                                                            Case No. 18-50398    - 5
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398    Doc# 107    Filed: 05/29/18    Entered: 05/29/18 23:45:28    Page 5 of 13

no rights to possession or use any machinery, tools, signage, trademarks, data or other assets of Debtor or its TechShop SOMA LLC subsidiary. However, at no time prior to service of the TM Action did Newton, Woods or Debtor express any objection to Rasure's use of the name "TechShop 2.0" or suggest that "TechShop 2.0" infringed any of Debtor's marks.

27. Within two days after the news article, Rasure and Build SF stopped using "TechShop 2.0" as a business name and started the process of changing the name to "The Shop dot Build." There was considerable ill will associated with the "TechShop" name, as well as negative publicity and social media activity in the maker community, including complaints about TechShop's failure to pay instructors, about TechShop's signing up members and obtaining loans and investments from the maker community without disclosing that it was insolvent, and about TechShop's shutting down without warning. For example, TechShop's location at the Brooklyn Army Terminal had just opened on October 19, 2017 – less than a month before TechShop shut down on November 15, 2017. Press surrounding the Brooklyn opening states that New York City invested $5.3 Million in TechShop's Brooklyn space.

28. There were no profits during the very short period in which the "TechShop 2.0" name was used.

29. The Application is accompanied by the Declaration of James Pistorino, a partner in the Parrish Law Offices and the attorney who prepared and filed the TM Action, which discloses the following:

- That Mr. Pistorino asked the trustee to retain his firm (Declaration, ¶7)
- That Mr. Pistorino was a member of Debtor's Redwood City facility, which closed its doors on or about November 15, 2017 (Declaration, ¶8)
- That starting January 15, 2018, Mr. Pistorino was on the Board of Maker Nexus, Inc., a non-profit corporation looking to establish a maker shop, and that he resigned his position on the board of Maker Nexis on or about February 15, 2018

Rasure believes that the disclosures are incomplete, in the following particulars:

*In Re Techshop, Inc., Debtor*  Case No. 18-50398    - 6
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398    Doc# 107    Filed: 05/29/18    Entered: 05/29/18 23:45:28    Page 6 of 13

- ♦ Mr. Pistorino does not disclose the type of TechShop membership he had or the extent to which he has a claim for cancellation or the prepaid portion of his membership and services that were terminated when Debtor shut down its operations.

- ♦ Mr. Pistorino does not disclose whether he was an investor, lender or creditor of Debtor's subsidiary TechShop Mid-Peninsula LLC or whether he provided any funding to assist in opening Debtor's former Redwood City location.

- ♦ Mr. Pistorino does not disclose that he was also the CFO and a founder of Maker Nexis, Inc. and that he was also involved in the Facebook groups (TechShop Orphans and Maker Orphans) from which it arose.

- ♦ Mr. Pistorino does not disclose the extent to which Maker Nexis, Inc. was actively opposed to Rasure's interest in opening a maker space in the mid-Peninsula or San Jose, the extent to which he is aligned with Maker Nexis, Inc. on those points, whether the filing of the TM Action was directly or indirectly supported by the Board of Maker Nexis, Inc., whether his resignation from Maker Nexis, Inc. was to avoid the appearance of a conflict, or the manner and extent to which Maker Nexis, Inc. is impacted by Rasure's new maker space in San Jose.

30. Rasure requests that the Trustee and proposed special counsel appear and be examined regarding eligibility for employment, clarification of the terms of the proposed fee arrangement and inconsistencies between the fee agreement and the Application, and the anticipated costs, benefits and risks to the estate's funds of the proposed employment.

## LEGAL ARGUMENT

31. The Supreme Court has repeatedly stressed that the plain language of the Bankruptcy Code must be applied as written, even if the result is harsh. See, e.g., *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) ["Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."]; *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ["when the statute's

*In Re Techshop, Inc., Debtor*    Case No. 18-50398    - 7
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398    Doc# 107    Filed: 05/29/18    Entered: 05/29/18 23:45:28    Page 7 of 13

language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms"] (internal quotation marks omitted).

### A. Parrish Law Offices Does Not Meet Conflict of Interest Requirements

32. 11 U.S.C. §327(a) imposes two separate conflict of interest limitations. The proposed professional must not hold or represent an interest adverse to the estate; and must be a disinterested person. The requirements of §327(a) are mandatory and nonwaivable. See *In re Granite Partners, L.P.* (BC SD NY 1998) 219 BR 22, 34 (collecting cases); *In re Congoleum Corp.* 426 F3d 675, 692 (3rd Cir. 2005).

33. Parrish Law Offices is not eligible to serve as special counsel under 11 U.S.C. §327(a), (c) and (e) because its partner, Mr. Pistorino, is not disinterested and holds an adverse interest due to his service as a founder, board member and officer of Maker Nexis, Inc. The timing of Mr. Pistorino's resignation from Maker Nexis, Inc. ("on or about" the day prior to filing of the TM Action) is suspicious.

34. Regardless of his official position, Mr. Pistorino appears to be aligned with Maker Nexis, Inc., which has been trying to open a maker space facility that but has been adversely impacted by the availability of the and Francisco and San Jose facilities being operated by Rasure and his entities. Although adverse interest is not defined in the Code, it includes possessing a predisposition under circumstances that could render it a bias against the estate. See *In re Sundance Self Storage-El Dorado LP* 482 Bankr.Rptr. 613, 625-626 (BC ED CA 2012); *In re Lee* 94 Bankr.Rptr. 172, 177 (BC CD CA 1988); *In re Perry* 194 Bankr.Rptr. 875, 878-879 (ED CA 1996); see also *Matter of AFI Holding, Inc.,* 530 F3d 832, 845 (9th Cir. 2008). Rasure believes that Mr. Pistorino's alignment with Maker Space, Inc. is not consistent with the best interests of the estate and rises to an adverse interest.

35. The Court should conduct a hearing to inquire, for purposes of §327(c) as to whether there is an actual conflict of interest.

*In Re Techshop, Inc., Debtor*     Case No. 18-50398    - 8
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398    Doc# 107    Filed: 05/29/18    Entered: 05/29/18 23:45:28    Page 8 of 13

36. The court should also conduct a hearing to inquire, for purposes of §327(e) as to whether Mr. Pistorino or his firm holds any interest adverse to the Debtor or to the estate with respect to the trademark matters on which employment is sought.

**B. The Application Lacks "Best Interest Of The Estate" Analysis And Showing**

37. 11 U.S.C. §327(e) permits the Trustee to employ as special counsel an attorney who has previously represented the Debtor if, *inter alia*, it "is in the best interest of the estate…" Here, the Application is devoid of facts or explanation to support the "best interest" prong of eligibility.

38. The Trustee implies, but does not state, the she has determined it appropriate to continue prosecution of the TM Action filed pre-petition. However, there is no discussion of the merits of the action or the potential financial gain. The Application should contain such information, as well as an analysis of the potential economic gain, the expenses of litigation, and any risks of proceeding, but the Application is silent on these issues. In a trademark case, it is not enough to suggest that the contingency fee arrangement makes this a "no brainer;" there are other considerations. The following are some of the factors that should be considered in making a cost/benefit analysis to determine whether the proposed employment is in the best interest of the estate.

    A. <u>Related Defense Costs That Will Result From The TM Action</u>. When the time comes to Answer, the defendants in the TM Action will also assert counterclaims. These include claims for cancellation of the Debtor's federal registrations as well as monetary counterclaims against Debtor, Woods and Newton for fraud and wire fraud in extracting the $34,000+ from Rasure. Although the Trustee (having stipulated to relief from stay) is aware that these counterclaims will be asserted, the Application is silent as to what law firm will defend the counterclaims. If Parrish Law Offices, the question arises as whether it will be hourly (and at what rate) or whether Parrish Law Offices will defend the counterclaims as part of its contingency fee services. There is also no discussion in the Application as to whether the estate will provide a defense for Woods or Newton on the

*In Re Techshop, Inc., Debtor*      Case No. 18-50398      - 9
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND
REQUEST FOR HEARING

fraud and wire fraud claims. These are all events that the Trustee and Parrish Law Offices were aware of when the Application was filed, but have not mentioned in the Application. The Trustee and its proposed special counsel must address these issues in analyzing what is in the best interests of the estate.

B. <u>The Cost of Proving Infringement</u>. Debtor will have a high burden of to establish its infringement claim in this case. The Defendants in the TM Action were not using the identical mark, and Debtor (as Plaintiff) will have to establish that the name "TechShop 2.0" is so similar to "TechShop" as to be likely to cause confusion as to the source of the services; such a showing is difficult and typically involves experts and surveys, which are expensive. The Application is vague on how costs will be funded, and is silent how much the costs will be. Defendants in the TM Action will also present a number of affirmative defenses – including that Debtor consented to, acquiesced in, and ratified use of the name "TechShop 2.0" – and even made announcements in the press and social media postings – but did not notify Defendants that Debtor objected to them using "TechShop 2.0" until it served the lawsuit on February 22, 2018.

C. <u>The Potential Range of Recovery is Low</u>. Although Debtor's Schedules value its trademarks at $5 Million (based on a purported "comparable sale"), the value listed for the TM Action is "unknown." See *Schedule A/B* (Docket No 1, pages 11, 13). The Application is silent on the estate's potential financial gain from prosecuting the TM Action. Defendants will vigorously dispute liability, but even if it turns out that infringement is shown, the potential recovery will be small. The usual measure of damages for trademark infringement is disgorgement of profits. However, the period in which the potentially infringing mark was used is only a few days, and there were no profits; thus there will be nothing to disgorge and no recovery by the estate. Moreover, even if there were a recovery, Rasure has offsets in the form of pre-petition counterclaims for recovery of the $34,000+ in monies, making it even more unlikely that the estate will obtain a net monetary recovery from the TM Action.

*In Re Techshop, Inc., Debtor*     Case No. 18-50398    - 10
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398    Doc# 107    Filed: 05/29/18    Entered: 05/29/18 23:45:28    Page 10 of 13

D. <u>Attorney's Fees to Debtor</u>. In trademark cases, attorneys fees are available only in "exceptional cases." Here, the underlying facts suggest consent, which would make an "exceptional case" finding unlikely, and therefore the net economic benefit to the estate, if any, would be lower.

E. <u>Attorney's Fees Award Against Debtor</u>. The TM Defendants will seek an exceptional case attorney's fee award both for defense of the infringement claims and for cancellation of the marks. Any award of attorney's fees, as well as costs of suit, will be an administrative expense, and as such will further exhaust the limited assets available to pay creditors claims. The Application needs to be augmented to address how such an adverse award of fees and costs would be handled and the potential impact on the estate and the likelihood of the unsecured creditors obtaining any recovery.

**C. The Application and The Fee Agreement Are Inconsistent and Incomplete**

39. The Application and the proposed Fee Agreement are inconsistent on several important economic points, each of which affects the economics to the estate and should be resolved before any employment is approved.

A. <u>Pre-Petition Services</u>. Clearly pre-petition legal services were rendered in the TM Action because the action was filed pre-petition and some investigation of the facts and law must have been done before filing. However, both the Application and the proposed Fee Agreement are silent regarding whether any compensation for the pre-petition services was paid or is owed. Does the Parrish Law Offices or Mr. Pistorino have a claim for pre-petition services? If so, in in what amount? Is any pre-petition claim being waived? Was any payment made by any person pre-petition? If so, whom and in what amount? Is Parrish Law Offices holding any retainer or deposit? Alternatively, are the pre-petition services being rolled into the proposed new contingency arrangement? These details need to be clarified before the matter is heard.

B. <u>Costs of Suit</u>. The Application indicates that proposed special counsel will advance "certain" of the costs and be reimbursed from the recovery, but it does not say

*In Re Techshop, Inc., Debtor*     Case No. 18-50398     - 11
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398    Doc# 107    Filed: 05/29/18    Entered: 05/29/18 23:45:28    Page 11 of 13

which costs it will advance. *Application*, ¶6, at 2:14-16 ("Law Firm is willing to … advance certain costs to be reimbursed from any economic recovery.") The proposed Fee Agreement, however, provides that the Trustee will reimburse costs of suit. *Fee Agreement* (attached to the *Application*), ¶4, lines 2-3 ("If no recovery is obtained, Client will be obligated to pay only for costs, disbursements and expenses…"), ¶6 ("Client understands that … a deposit for costs may be required before the expenditure is made by Attorney"), ¶6.A. (prevailing party and court-ordered fees and costs are "the sole responsibility of Client"). This is important because costs could be substantial and the estate has limited resources. These inconsistencies should be resolved prior to approval of employment and additional information should be provided so that the Court has a complete picture of the economic impact of the proposed employment. Moreover, to the extent the estate must pay such fees and costs regardless of the recovery, the obligation to do so would be an administrative claim. The Application is silent as to the potential magnitude of the costs, which could substantial. Proving the likelihood of confusion as to the source of the services often involves expert witnesses and surveys, both of which can easily exceed the potential recovery here. E-discovery can also be costly. The Trustee and proposed special counsel should appear at hearing to be examined on these issues.

        C.      <u>Calculation of the Contingency Fee for Non-Monetary Recovery</u>. The Application states that net recovery on which the contingency fee is calculated includes "the reasonable value of any non-monetary recovery." No information or examples are provided as to what such non-monetary recoveries might be or how they would be valued. The proposed special counsel should appear and be examined on these topics. Moreover, in the event the Court approves employment, the order should provide that valuation of any non-monetary recovery should be subject to Court approval. In addition, paying a contingency fee to pursue a non-monetary recovery that the estate cannot monetize is not in the best interests of the estate. Here there is no cap limiting the contingency fee in relation to the net monetary recovery, creating the possibility that assigning a high value to a non-monetary recovery could result in a contingency fee that exhausts the revenues

*In Re Techshop, Inc., Debtor*      Case No. 18-50398     - 12
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398     Doc# 107     Filed: 05/29/18     Entered: 05/29/18 23:45:28     Page 12 of 13

otherwise available for distribution to creditors. This risk is not discussed in the Application papers and should be explained by the Trustee and the proposed special counsel, and a contingency award in such circumstances may not be in the best interest of the estate.

### D. Other Objections

40. Rasure is informed that a number of individual creditors and interested parties have submitted objections to this Application to the Trustee or her counsel but, being unrepresented and/or not local, have not successfully filed their objections. Rasure requests that the Trustee report on these objections and submit them to the Court.

## CONCLUSION

41. Objector Dan Rasure leaves the Applicant to its burden, and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual investigation or discovery.

WHEREFORE, Rasure requests that this Court issue an order denying the Application and/or granting such other relief as this Court deems appropriate, fair and just.

DATED: May 29, 2018

DRAPER LAW OFFICES

_____/s/ Ann McFarland Draper_____
Signature of Attorney of Record

Ann McFarland Draper (SBN 065669)
DRAPER LAW OFFICES
75 Broadway Suite 202
San Francisco, CA 94111

*In Re Techshop, Inc., Debtor*  Case No. 18-50398  - 13
OBJECTION TO EMPLOYMENT OF SPECIAL COUNSEL (PARRISH LAW OFFICES); AND REQUEST FOR HEARING

Case: 18-50398   Doc# 107   Filed: 05/29/18   Entered: 05/29/18 23:45:28   Page 13 of 13