David Balter, State Bar No. 212027
Marissa E. Buck, State Bar No. 293373
DICKENSON, PEATMAN & FOGARTY
A Professional Corporation
1455 First Street, Suite 301
Napa, California 94559
Telephone: (707) 252-7122
Facsimile: (707) 255-6876
dbalter@dpf-law.com
mbuck@dpf-law.com

Chris Kuhner, State Bar No. 173291
Kornfield, Nyberg, Bendes, Kuhner & Little, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
c.kuhner@kornfieldlaw.com

Attorneys for Creditor and Interested Party
Wantin Living Trust, dated March 2, 1999

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>TECHSHOP, INC.,<br><br>        Debtor. | Case No. 18-50398 MEH<br><br>Chapter 7<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ORDER CONFIRMING NO STAY IS IN EFFECT, OR ALTERNATIVELY RELIEF FROM THE AUTOMATIC STAY**<br><br>Date:<br>Time:<br>Place:   Courtroom 3020<br>           280 S. 1st Street<br>           San Jose, CA<br>Judge:  Hon. M. Elaine Hammond |

Creditor Wantin Living Trust, dated March 2, 1999 ("Creditor,") respectfully submits the following memorandum of points and authorities in support of its Motion for an Order Confirming no Stay is in Effect, or Alternatively for Relief From Automatic Stay (the "Motion.")

# I. FACTUAL BACKGROUND

Creditor owns the commercial real property commonly known as 2415 Bay Rd., Redwood City, California 94063 (the "Property,") which is managed by CDI Development and Realty, Inc. (Declaration of Harry Price ("Price Decl.,") ¶¶ 1-2.) Debtor is Techshop, Inc. and according to Section 15.1 of Debtor's Schedule A/B, Debtor owns 100% of the membership interest in TechShop Menlo Park, LLC, also known as TechShop Mid-Peninsula, LLC ("Tenant.")

In on around January 2015, Creditor and Tenant entered into a written lease for the Property. (Price Decl., ¶ 3, Exh. A.) Creditor has never had a direct contractual relationship with Debtor and there was no guaranty signed by Debtor, or any individual principal of the Tenant or Debtor. (Price Decl., ¶ 3.)

In or around January 2016, Tenant began having issues paying rent and continued to have issues making complete, timely rent payments throughout 2016 and 2017. (Price Decl., ¶ 4.) By September 2017, Tenant owed Creditor approximately $300,000.00 in unpaid rent, late fees, and interest. (Id.) In exchange for Creditor agreeing to terminate the lease and forgive the amount due, Tenant entered into a new month-to-month lease that would terminate upon non-payment of rent for any month. (Id.) Tenant paid rent for October 2017 in full but failed to pay rent for November 2017, thus the lease was terminated. (Price Decl., ¶¶ 4-5.) Shortly thereafter, Tenant vacated the Property and Creditor received notice from Debtor that all TechShop locations were closing and the company was going out of business. (Price Decl., ¶ 5.)

After Creditor took back possession of the Property, Creditor discovered Tenant had abandoned most of its fixtures and various other items of personal property, including: metal and wood working equipment and supplies; computers, servers, printers, phones, and other electronic equipment; various hand tools, nuts, bolts, and screws; 3D printers; desks, chairs, filing cabinets, and other storage cabinets; and various vehicles and automobile parts including a "TechShop" pick-up truck. (Price Decl., ¶ 6.) ("Abandoned Property") Creditor created a photo inventory of the Abandoned Property. (Id.)

On January 29, 2018, pursuant to California law, Creditor sent Tenant a letter and Notice

MEMORANDUM OF POINTS AND AUTHORITIES 2

Case: 18-50398    Doc# 114    Filed: 06/04/18    Entered: 06/04/18 10:28:22    Page 2 of 10

of Abandonment of Personal Property ("Notice") and also posted the Notice at the Property.[1] (Price Decl., ¶ 8, Exh. C.) The Notice gave Tenant until February 18, 2018 to claim the Abandoned Property and pay the reasonable costs of storage. (Id.)

Some of Tenant's employees claimed small personal items left in lockers on the Property, and Debtor's Chairman, James Newton, requested a key to the Property in order to assist employees in recovering their personal property. (Price Decl., ¶ 9-10.) However, after certain items went missing from the Property that were not accounted for, Creditor was unable to contact Mr. Newton and thus changed the locks in an abundance of caution. (Price Decl., ¶ 10.)

On February 26, 2018, Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code and initiated the above-titled bankruptcy case. As of the date of the bankruptcy filing, reasonable storage costs in the amount of approximately $90,500.00 had accrued and are secured by the Abandoned Property. (Price Decl., ¶ 11.) Reasonable storage costs continue to accrue in the amount of $22,642.00 per month and will total $158,494.00 as of May 31, 2018. (Id.)

After Debtor filed for bankruptcy, Creditor's attorney discovered three potential lien holders that have filed UCC Financing Statements naming Tenant as the debtor and claiming an ownership in certain property. Declaration of Marissa Buck ("Buck Decl.,") ¶ 3, Exhs. B-D.) Creditor has not yet sent a copy of the Notice to these lien holders because to the extent there is currently a stay in place, Creditor does not wish to violate such stay. (Buck Decl., ¶ 4.)

Both Creditor and its attorney reached out to the Chapter 7 Trustee and her attorney regarding the Abandoned Property and discussed alternatives to motion practice and the instant Motion. (Price Decl., ¶ 12; Buck Decl., ¶ 2.) The Trustee is aware of this Motion and Creditor is informed and believes that the Trustee does not oppose this Motion. (Buck Decl., ¶ 2.)

Creditor cannot, at reasonable cost, dismantle, move and store the many tools, equipment and machinery abandoned at the Property, many of which are large, heavy and fragile enough to

---

[1] Although the Tenant vacated the Property in November, Creditor did not send the Notice until the end of January because Creditor had entered into negotiations regarding the possible sale of TechShop's interest, along with the lease of the Property, at Debtor's request to try to find someone to lease the Property along with the Abandoned Property left by Tenant. However, such negotiations were not successful. (Price Decl., ¶ 7.)

require specialized expertise and equipment to safely uninstall and remove.  Creditor also cannot lease the entire Property while the Abandoned Property is inside as it takes up approximately 60% of the space inside the Property.  Given the foregoing, Creditor has suffered and continues to suffer damages arising from and relating to its inability to re-let the Property. (Price Decl., ¶ 13.)  Creditor has also had to incur additional costs to install an alarm system to protect the Property and the Abandoned Property therein. (Price Decl., ¶ 14.)

Although the Abandoned Property appears not to be property of this bankruptcy estate, in order to mitigate any further losses and out of an abundance of caution, Creditor seeks permission from the Court to re-locate certain items of the Abandoned Property consisting of hardware supplies and miscellaneous equipment to the east side of the Property, in order to do repairs on the approximately 67,000 square feet on the west end of the Property to prepare that space for lease to a new tenant while awaiting completion of the sale of the Abandoned Property by public auction. (Price Decl., ¶ 15.)

Creditor has taken no further action to dispossess itself of the Abandoned Property and continues to store it all at the Property, which imposes substantial burden on Creditor as it is unable to re-let the entire Property costing Creditor tens of thousands of dollars per month. (Price Decl., ¶ 16.)  Accordingly, Creditor seeks relief to continue the process of dispossessing itself of the Abandoned Property by turnover to secured lien holders, public auction or disposal pursuant to applicable law.

## II.     ARGUMENT

### A.     Creditor Has No Facts That Suggest or Evidence Debtor's Legal Interest in the Personal Property Abandoned by Tenant

The bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, the bankruptcy estate does <u>not</u> include any property in which the debtor has no equitable or legal interest. March, Ahart, & Sharpiro, Cal. Prac. Guide: Bankruptcy (The Rutter Group 2014), ¶ 6:41.

As mentioned above, Creditor's lease was with Tenant, not Debtor; Creditor and Debtor had no direct contractual relationship. Moreover, the following information obtained from

Debtor's schedules suggests that Debtor has no legal or equitable interest in the Abandoned Property:

- Section 15.1 of Debtor's Schedule A/B states that Debtor's interest in Tenant is valueless in that Tenant's liabilities exceed its assets and is valueless;
- Sections 39-50 of Debtor's Schedule A/B does not identify any particular furniture, equipment or machinery in which it purports to have an interest that is located at the Property. Creditor has no information that suggests Debtor, as opposed to Tenant, has any interest in any of the Abandoned Property;
- Debtor's only real assets are software and intellectual property, as well as a lawsuit arising out of a dispute over said intellectual property;
- Neither Tenant nor any other "subsidiary" of Debtor is listed as a co-debtor in Schedule H, and no motion has been brought to extend co-debtor protection to any subsidiary entity.

Additionally, each UCC lien discovered by Creditor during its investigation names Tenant, not Debtor, as the organization responsible for the secured debt, which also evidences that it was Tenant who financed acquisition of, and holds ownership to, the Abandoned Property listed in the liens. (See Buck Decl., Exhs. B-D.)

Therefore, all available information and evidence supports a finding that Tenant, not Debtor, owns the Abandoned Property. Additionally, Debtor received the Notice from Creditor and has not claimed any of the Abandoned Property in response. Debtor's CEO, Dan Woods, and its Chairman, James Newton, were both in communication with Creditor regarding the Abandoned Property, thus Debtor is fully on notice and has not claimed any legal interest in the Abandoned Property. Debtor merely assisted with allowing employees of Tenant to retrieve personal belongings from lockers on the Property, but has not claimed that any of the AbandonedProperty belonged to Debtor. (See Price Decl., ¶¶ 5, 7 ,8-10.)  Finally, Creditor has communicated with the Chapter 7 trustee and her counsel and believes that the trustee will not oppose this Motion.

Accordingly, Creditor respectfully submits that the stay does not apply to the Abandoned Property and requests the Court enter an order confirming the same.

//

//

//

**B. In the Event the Court Finds the Stay Applies, Relief From Stay is Appropriate to Permit Creditor to Complete the Process of Dispossessing Itself of the Abandoned Property**

 1. California Civil Code Section 1993, et seq. Governs a Landlord's Lawful Disposition of Abandoned Personal Property

California landlord-tenant law governs the duties of a landlord regarding a commercial tenant's abandoned personal property. Creditor was in the process of complying with the statutory procedure outlined in California Civil Code Section 1993 et seq. when the bankruptcy case was filed. Creditor seeks relief from the automatic stay so that it may complete this process free from any risk that doing so will violate the automatic stay.

Civil Code section 1993 et seq. provides an "optional procedure for the disposition of property that remains on the premises after a tenancy of commercial real property has terminated and the premises have been vacated by the tenant." (Cal. Civ. Code, § 1993.02.) Landlords who comply with this procedure are not liable with respect to that property as to any person to whom notice was given. (Cal. Civ. Code, § 1993.08.) The optional procedure is outlined in Sections 1993.03-1993.06, and includes providing written notices to the tenant and possible owners and lien holders discovered by the landlord after completing a reasonable investigation. The notices, if mailed, give the notified persons 18 days to contact the landlord regarding reclamation. (Cal. Civ. Code §1993.03(b).)

Generally, a landlord may recover reasonable storage costs of the property abandoned upon the landlord regaining possession of commercial premises. If the landlord stores the personal property on the premises, the cost of storage is the fair rental value of the space reasonably required for the storage for the term of the storage. (Cal. Civ. Code § 1990(c).) Any

person that makes claim to the abandoned property is required to pay the reasonable storage cost for that property as a condition to its release. (Cal. Civ. Code §1993.05.)

In the event no person makes claim to the abandoned property, and assuming the value of the property exceeds certain limits, the landlord is required to sell the property at public auction. (Cal. Civ. Code §1993.07.) Certain notice procedures apply prior to auctioning the abandoned property. (Id.) Ultimately, a commercial landlord may elect to follow this procedure in order to avail itself of the liability shield provided by California Civil Code Section 1993.08, which protects the landlord against liability for its disposition or release of the abandoned property as against the tenant, all parties that received notice, and all other parties absent exceptional circumstances. (Cal. Civ. Code §1993.08.)

### 2. Creditor Elected to Follow the Procedure Under California Civil Code Section 1993 et seq.

Creditor elected to avail itself of the liability shield available under California Civil Code Section 1993.08. Creditor took several steps in accordance with this procedure prior to the Debtor's bankruptcy filing, including: (a) completing an inventory of the Abandoned Property; (b) sending notice to reclaim the Abandoned Property to Tenant on January 29, 2018; (c) posting the Notice on the Property on January 29, 2018; (d) releasing certain items of personal property to claimants, namely Tenant's former employees; (e) communicating with Debtor with regarding to the Abandoned Property; and (f) investigating the existence of owners other than the Tenant and possible lien holders.

The time for Tenant and Debtor to notify Creditor of an intent to reclaim any of the Abandoned Property expired on February 18, 2018. (Price Decl., ¶ 8, Exh. C.) Creditor has not yet sent the Notice to the lien holders discovered in its investigation due to the bankruptcy stay, but will do so as soon as the stay is no longer in effect, to the extent it applies here. (Buck Decl., ¶ 4.)

Creditor has taken no further action to dispossess itself of the Abandoned Property and continues to store it all at the Property, which imposes substantial burden on Creditor as it is

unable to re-let the entire Property costing Creditor tens of thousands of dollars per month. (Price Decl., ¶ 16.)

   3.  Creditor Has an Involuntary Lien on the Abandoned Property Which Arises by Operation of Law

California courts have construed a landlord's entitlement to reimbursement of storage costs as a "special lien on the property dependent on possession." The lien is discharged by payment of reasonable storage charges and may be enforced after the time period for reclamation has run. *See Gray v. Whitmore,* 17 Cal.App.3d 1, 16-17 [citing Code of Civil Procedure §1774]; *see also In re Kaufman,* 315 B.R. 858, 863-64, fn. 7 (Bankr. N.D. Cal. 2004).

Here, Creditor has a pre-petition storage lien. It is noteworthy that Creditor, as a holder of a valid prepetition possessory lien, does not violate the automatic stay by refusing to return possession of the encumbered property to Debtor without receiving a tender of the accrued storage costs. *In re Kaufman, supra,* at 863.

There is now due and owing to Creditor pre-petition reasonable storage costs of at least $90,500.00, which continue to accrue in the amount of $22,642.00 per month. (Price Decl., ¶ 11.) To the extent bankruptcy estate or the Debtor claim an ownership interest in the Abandoned Property located at the Property, the bankruptcy estate or the Debtor will be required to tender payment of the reasonable storage costs prior to Creditor having any turnover obligation, with the only exception being a court order instructing such a turnover. Given the substantial expense in removing the large machinery and other items, the bankruptcy estate or the Debtor will have to fund the expense of removal as well, which is unlikely given the lack of liquid resources listed in the Debtor's schedules.

   4.  Sufficient Cause Exists for the Court to Lift the Automatic Stay and Relief is Otherwise Appropriate Under 11 U.S.C. § 362(d)(2)

Under 11 U.S.C. § 362(d)(2), the Court has the authority to terminate or modify the automatics stay for "cause," which includes but is not limited to "lack of adequate protection." Other grounds constituting cause are determined on a case-by-case basis. See March, Ahart & Shapiro, Cal. Prac. Guide: Bankruptcy (The Rutter Group 2017) Part II: Relief From Automatic Stay, ¶¶ 8:1060-8:1061.

As stated above, Creditor has a pre-petition possessory lien in the amount of at least $90,500.00. All the evidence and known facts establish that the Debtor has no interest in the Abandoned Property. However, if Debtor has some interest in the Abandoned Property, a review of the scheduled values of Debtor's assets clearly shows that the furniture, equipment and machinery listed are worth less than the amount of the pre-petition storage costs. Debtor's total assets, including the speculative intellectual property, is greatly exceeded by the stated secured liabilities, all of which suggests that this will be a case where no assets are available for liquidation and distribution to unsecured creditors. The equipment is also subject to numerous UCC liens that exceed the value of the collateral as stated by Debtor.

Therefore, there is sufficient cause to grant relief from stay, as well as sufficient evidence to find that the Debtor has no legal interest or equity in the AProperty. Thus, relief is appropriate under 11 U.S.C. § 362(d)(2).

Furthermore, granting the relief requested will not prejudice Debtor or the bankruptcy estate. If the bankruptcy estate or the Debtor does have any residual interest in the Abandoned Property, it will be protected. After Creditor receives all reasonable storage costs and the costs of sale, any excess amounts from the public auction will be deposited with the County Treasurer as required by the California Civil Code. (See Cal. Civ. Code § 1993.07(c)(1).) The owner of the Abandoned Property may apply to the County for the remaining balance within a year. (Id. at (c)(2).) Thus, the Trustee or the Debtor (if abandoned) can apply to the County for this balance if necessary.

As an alternative to the procedure outlined in Cal. Civ. Code §1993.07(c)(l), and if so ordered by the Court, Creditor is willing to deposit any excess proceeds over and above the amount of the pre-petition storage lien with the Trustee for administration consistent with the Bankruptcy Code and further orders of the Court.

MEMORANDUM OF POINTS AND AUTHORITIES                                9

### C. Cause Exists to Waive The Stay Provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3)

Federal Rule of Bankruptcy Procedure ('FRBP") 4001(a)(3) provides as follows:

> **(3) Stay of Order.** An order granting a motion for relief an automatic saty made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.

As described in detail above, cause exists to waive the stay provisions of FRBP 4001(a)(3) based on the ongoing damages accruing to Creditor relating to the storage and maintenance of the Abandoned Property and the fact that neither the Debtor or the bankruptcy estate has an interest in the Abandoned Property. Furthermore, if the bankruptcy estate does have an interest in the Abandon Property, waiving the stay provisions of FRBP 4001(a)(3) will result in expediting the disposition of the Abandoned Property and reduce and mitigate the claim Creditor has against the bankruptcy estate.

### III. CONCLUSION

Based on the foregoing, Creditor respectfully requests that the Court enter an order confirming that no stay is in effect, or alternatively, an order granting Creditor relief from the stay to proceed with disposing of the Abandoned Property.

Dated: June 1, 2018  KORNFIELD, NYBERG, BENDES, KUHNER & LITTLE, P.C.

BY: /S/ CHRIS D. KUHNER
  Chris Kuhner
  Attorneys for Creditor