claims or liability occurring prior to such expiration or sooner termination and the date Tenant vacates possession of the Leased Premises.

## ARTICLE 11
## DAMAGE TO LEASED PREMISES

11.1 **Landlord's Duty to Restore**: Except as set forth above, if the Leased Premises are damaged by any peril after the Delivery Date of this Lease, Landlord shall restore the Leased Premises unless the Lease is terminated by Landlord pursuant to this Article. All insurance proceeds available from fire and property damage insurance carried by Landlord pursuant to Article 9 shall be paid to and become the property of Landlord. If this Lease is terminated pursuant to this Article then all insurance proceeds available from insurance carried by Tenant which covers loss to property that is Landlord's property or would become Landlord's property on the termination of this Lease shall be paid to and become the property of Landlord. If this Lease is not so terminated, then upon receipt of the insurance proceeds (if the loss is covered by insurance) and the issuance of all necessary governmental permits, Landlord shall commence and diligently prosecute to completion the restoration of the Leased Premises, to the extent then allowed by Law, to substantially the same condition in which the Leased Premises were immediately prior to such damage. Landlord's obligation to restore shall be limited to the Leased Premises as they existed as of the Delivery Date, excluding any Tenant Improvements, Leasehold Improvements, Trade Fixtures, and/or personal property constructed or installed by Tenant in the Leased Premises. Tenant shall forthwith replace or fully repair all Tenant Improvements, Leasehold Improvements and Trade Fixtures installed by Tenant and existing at the time of such damage or destruction.

11.2 **Landlord's Right to Terminate**: Landlord shall have the option to terminate this Lease in the event any of the following occurs, which option may be exercised only by delivery to Tenant of a written notice of election to terminate, not later than thirty (30) days after receipt of a written notice from Tenant, following such damage, requesting Landlord's election:

A. The Leased Premises or Building is damaged by any peril either (i) covered by the type of insurance Landlord is required to carry pursuant to Article 9 or (ii) covered by valid and collectible insurance actually carried by Landlord and in force at the time of such damage or destruction, to such an extent that the reasonable time to restore the Leased Premises exceeds one hundred eighty (180) days.

B. The Leased Premises or the Building is damaged by any peril both (i) not fully covered by the type of insurance Landlord is required to carry pursuant to Article 9 and (ii) not fully covered by valid and collectible insurance actually carried by Landlord and in force at the time of such damage or destruction, unless Tenant elects to pay to Landlord the uninsured amount necessary to fully restore the Leased Premises or Building, in which case the Lease shall not terminate. Such election by Tenant must be made, in writing, within ten (10) days of notice from Landlord that some or all of the damage is uninsured and Tenant must deposit with Landlord the full amount of the estimated uninsured damage within ten (10) days of receipt of Landlord's estimate(s), and following completion Tenant shall immediately pay the deficiency or shall be credited the overpayment, as appropriate, based upon the actual restoration costs and payments made by Tenant.

C. The Leased Premises are damaged by any peril during the last Six (6) months of the Lease Term to such an extent that the reasonable time to restore the Leased Premises exceeds Sixty (60) days provided, however, that Landlord may not terminate this Lease pursuant to this subparagraph if Tenant, at the time of such damage, has an express written option to further extend the term of this Lease for a period of at least two (2) years and Tenant exercises such option to so further extend the Lease Term within ten (10) days following the date of such damage, or

Case: 18-50398    Doc# 135    Filed: 07/26/18    Entered: 07/26/18 16:20:39    Page 1 of 15

D. The Building is damaged by any peril and, because of the Laws then in force, (i) may not be restored at reasonable cost to substantially the same condition in which it was prior to such damage, (ii) may not be used for the same use being made thereof before such damage whether or not restored as required by this Article, or (iii) such damage is not fully covered by insurance then in effect or required to be maintained by Landlord as set forth herein.

11.3 **Tenant's Right to Terminate**: If the Leased Premises are damaged by any peril and Landlord does not elect to terminate this Lease or is not entitled to terminate this Lease pursuant to this Article, then as soon as reasonably practicable, following Tenant's written request for the same, Landlord shall furnish Tenant with the written opinion of Landlord's architect or construction consultant as to when the restoration work required of Landlord may be completed. Should the Leased Premises be reasonably unsuitable for Tenant's continued use of the same as a result of such damage, Tenant shall have the option to terminate this Lease in the event any of the following occurs, which option may be exercised only by delivery to Landlord of a written notice of election to terminate within ten (10) days after Tenant receives from Landlord the estimate of the time needed to complete such restoration:

A. The Leased Premises are damaged by any peril and, in the reasonable opinion of Landlord's architect or construction consultant, the restoration of the Leased Premises cannot be substantially completed within one hundred eighty (180) days after the date of such damage, or

B. The Leased Premises are damaged by any peril within one hundred eighty (180) days of the last day of the Lease Term (and an option to extend, if any, has not been exercised), and, in the reasonable opinion of Landlord's architect or construction consultant, the restoration of the Leased Premises cannot be substantially completed within sixty (60) days after the date of such damage.

11.4 **Abatement of Rent**: In the event of damage to the Leased Premises which does not result in the termination of this Lease, the Base Monthly Rent shall be temporarily abated during the period of restoration based upon the ratio of the square footage of the Leased Premises in proportion to the square footage of the portion of the Leased Premises damaged or destroyed. Tenant shall not be entitled to any compensation from Landlord for loss of Tenant's property or loss to Tenant's business caused by such damage or restoration. Tenant hereby waives the provisions of Section 1932, Subdivision 2, and Section 1933, Subdivision 4, of the California Civil Code, and the provisions of any similar law, hereinafter enacted.

## ARTICLE 12
## CONDEMNATION

12.1 **Taking of Leased Premises**: For purposes of this Lease, the term "Condemnation" shall mean (a) any taking by the exercise of the power of eminent domain, whether by legal proceedings or otherwise, (b) a voluntary sale or transfer by Landlord to any condemnor under threat of condemnation or while legal proceedings for condemnation are pending, or (c) any taking by inverse condemnation. Landlord shall have the right to terminate this lease if (i) all or substantially all of the Building is taken by Condemnation, (ii) all or substantially all of the Leased Premises is taken by Condemnation or (iii) a portion of the Building is taken by condemnation and it is not feasible to repair or reconstruct the remaining portion of the Building which includes the Leased Premises. If all or any part of the Leased Premises are taken by Condemnation and the Leased Premises cannot be reconstructed within a reasonable period of time and thereby made reasonably suitable for Tenant's continued occupancy for the Permitted Use, then Tenant shall have the option to terminate this Lease. Any such option to terminate by either Landlord or Tenant must be exercised within a reasonable period of time, not to exceed 20 days

20

after notice of the taking, to be effective as of the date that possession of the Leased Premises is taken by the condemnor.

    12.2   **Restoration Following the Taking**: If any part of the Leased Premises or any Common Area is taken by Condemnation and this Lease is not terminated, then Landlord shall make such repairs and alterations that are reasonably necessary to make that which is not taken a complete architectural unit, but Landlord shall not be obligated to (a) spend more than the amount of any condemnation award recovered by Landlord for such restoration to the Leased Premises, or (b) deviate significantly from the work originally required to construct the Leased Premises.

    12.3   **Abatement of Rent**: Except in the case of a temporary taking, if any portion of the Leased Premises is taken by Condemnation and this Lease is not terminated, then as of the date possession is taken, the Base Monthly Rent shall be reduced in the same proportion that the square footage of that part of the Leased Premises so taken (less any addition thereto by reason of any reconstruction) bears to the original square footage of the Leased Premises.

    12.4   **Temporary Taking**: If any portion of the Leased Premises is temporarily taken by Condemnation for a period which does not extend beyond the natural expiration of the Lease Term, such taking materially and adversely affects Tenant's ability to use the Leased Premises for the Permitted Use, and such taking is to continue for a period of One Hundred and Eight (180) days or longer, then Tenant shall have the option to terminate this Lease, effective on the date possession is taken by the condemnor, so long as notice is provided of such termination within 20 days of knowledge of such taking.

    12.5   **Division of Condemnation Award**: Any award made as a result of any condemnation of the Leased Premises or any Common Area shall belong to and be paid to Landlord, and Tenant hereby assigns to Landlord all of its right, title and interest in any such award, provided, however, that Tenant shall be entitled to receive any Condemnation award that is made directly to Tenant (a) for the taking of personal property or Trade Fixtures belonging to Tenant or (b) for Tenant's moving costs. The rights of Landlord and Tenant regarding any Condemnation shall be determined as provided in this Article, and Tenant hereby waives the provisions of Section 1265.130 of the California Code of Civil Procedure allowing either party to petition the Supreme Court to terminate this Lease in the event of a partial taking of the Leased Premises.

## ARTICLE 13
## DEFAULTS AND REMEDIES

    13.1   **Events of Tenant's Default**: Tenant shall be in default of this Lease, allowing Landlord to pursue any of the remedies set forth below or any other remedies afforded by law or equity, if any of the following events occur:

    A.   Tenant fails to pay any payment obligation (Base Monthly Rent, Additional Rent and/or any other monetary payments due hereunder) when due, and such failure continues for more than three (3) days after written notice thereof from Landlord, except that Landlord shall only be required to give one (1) such notice in any calendar year, and after any such notice is given any failure by Tenant in such calendar year to pay Base Monthly Rent, Additional Rent or any other amounts due hereunder when due shall itself constitute an event of default, without the requirement of notice from Landlord of such failure;

    B.   Tenant fails to perform any term, covenant, or condition of this Lease, except those payment obligations referred to in the immediately preceding subparagraph, and Tenant fails to cure such

21

default within twenty (20) days after delivery of written notice from Landlord informing Tenant of such default; provided, however, that if such failure cannot reasonably be cured with such twenty (20) day period, Tenant shall not be in default if Tenant commences cure within said twenty (20) day period and thereafter diligently prosecutes such cure;

      C.      Tenant makes an assignment, sublease, or other Transfer in violation of Article 14;

      D.      Tenant makes a general assignment of its assets for the benefit of its creditors;

      E.      Tenant has indicated that it is insolvent or is unable to pay its obligations (including, without limitation, all rent due under this Lease) as they become due;

      F.      There occurs an attachment of execution on, the appointment of a custodian or receiver with respect to, or other judicial seizure of (i) substantially all of Tenant's assets, (ii) any property of Tenant essential to the conduct of Tenant's business in the Leased Premises, or (iii) the leasehold created by this Lease, and Tenant fails to obtain a return or release of such property within thirty (30) days thereafter or prior to sale or other disposition, whichever is earlier;

      G.      Tenant vacates the Leased Premises for more than thirty (30) days during any calendar year during the Lease Term or Tenant abandons the Leased Premises;

      H.      A court makes or enters any decree or order with respect to Tenant or Tenant submits to or seeks a decree or order (or a petition or pleading is filed in connection therewith) which: (i) grants or constitutes (or seeks) an order for relief, appointment of a trustee, or confirmation of a reorganization plan under the bankruptcy laws of the United States; (ii) approves as properly filed (or seeks such approval of) a petition seeking liquidation or reorganization under said bankruptcy laws or any other debtor's relief law or statute of the United States or any state thereof, or (iii) otherwise directs (or seeks) the winding up or liquidation of Tenant; provided, however that if any such petition, decree or order is not voluntarily filed or made by Tenant, that Tenant shall not be in default until such petition, decree or order remains undischarged for a period of sixty (60) days; or

      I.      Tenant's failure to execute and deliver any documents required to be executed and delivered by Tenant under Sections 16.2C and/or 16.5 below within the time periods required therein.

    13.2  **Landlord's Remedies**:  In the event of any default by Tenant, Landlord shall have the following remedies, in addition to all other rights and remedies provided by any Law or otherwise provided in this Lease, to which Landlord may resort cumulatively, or in the alternative.

      A.      Landlord may keep this Lease in effect and enforce by an action at law or in equity all of its rights and remedies under this Lease, including (i) the right to recover the rent and other sums as they become due by appropriate legal action, (ii) the remedies of injunctive relief and special performance to compel Tenant to perform its obligations under this Lease, and (iii) the right to cause a receiver to be appointed to administer and manage the Leased Premises. It is expressly agreed that the remedies herein include the remedies provided in Civil Code Section 1951.4 or any successor statute, such that Landlord may continue this Lease in effect after Tenant's breach and abandonment and recover rent as it becomes due, so long as this Lease provides that Tenant may sublet or assign its rights hereunder subject only to reasonable limitations.

      B.      Landlord may make any payment or perform any obligation of Tenant. All sums paid by Landlord and all necessary costs of such performance by Landlord with interest at the Agreed

Interest Rate from the date the sum is paid by Landlord until Landlord is reimbursed by Tenant, shall be reimbursed to Landlord on demand by Landlord. Landlord shall have the same rights and remedies in the event of nonpayment of such amounts by Tenant as in the case of failure by Tenant in the payment of rent and the same shall be deemed additional rent hereunder.

        C.        Landlord may, at Landlord's election, enter the Leased Premises and re-lease them, or any part of them, to third parties for Tenant's account. Tenant shall be liable immediately to Landlord for all costs Landlord incurs in re-leasing the Leased Premises, including broker's commissions, expenses of altering and preparing the Leased Premises required by the re-leasing, and like costs. Reletting may be for a period shorter or longer than the remaining term of this Lease. Tenant shall pay to Landlord the rent and other sums due under this Lease on the date rent is due, less the rent and other sums Landlord received from any re-leasing. No act by Landlord allowed by this subparagraph shall terminate this Lease unless Landlord notifies Tenant in writing that Landlord elects to terminate this Lease. Notwithstanding any re-leasing without termination, Landlord may later elect to terminate this Lease because of the default by Tenant.

        D.        In the event Tenant breaches this Lease, this Lease shall not terminate and Tenant shall continue to be entitled to possession of the Leased Premises, unless Landlord gives Tenant written notice of its election to so terminate this Lease, which Landlord may do at the time of such breach and abandonment or at any time thereafter and which shall cause this Lease to terminate, regardless of whether Landlord has theretofore exercised any other of its remedies. No act by or on behalf of Landlord intended to mitigate the adverse effect of such breach shall constitute a termination of Tenant's right to possession unless Landlord gives Tenant written notice of termination. Should Landlord not terminate this Lease by giving Tenant written notice, Landlord may enforce all its rights and remedies under this Lease including the right to recover the rent as it becomes due under the Lease as provided in California Civil Code Section 1951.4, or any successor statute.

        E.        Landlord may, at Landlord's election, terminate this Lease by giving Tenant written notice of termination, in which event this Lease shall terminate on the date set forth for termination in such notice. No act by or on behalf of Landlord intended to mitigate the adverse effect of Tenant's default shall constitute a termination of the Lease or Tenant's right to possession unless Landlord gives Tenant written notice of termination, nor shall such act impose upon Landlord any obligation, or be deemed Landlord's agreement, to obtain another tenant for the Leased Premises. Any such termination shall not relieve Tenant from the payment of any sums then due Landlord or from any claim for damages resulting from Tenant's default. Following termination of the Lease, and without prejudice to any other remedies Landlord may have, Landlord may then or any time thereafter (i) reenter the Leased Premises upon surrender by Tenant or expel or remove Tenant therefrom together with any other persons occupying it, using such legal proceedings as are then available, (ii) repossess and use the Leased Premises or re-lease it or any part thereof for such term, at such rent, and upon such other terms and conditions as Landlord in its sole discretion may determine, and (iii) remove all property of Tenant therefrom at Tenant's expense in accordance with Article 15.

        F.        In the event Landlord terminates this Lease, Landlord shall be entitled, at Landlord's election, to damages in an amount as set forth in California Civil Code Section 1951.2, or any successor statute. For purposes of computing damages pursuant to said Section 1951.2, (i) the Agreed Interest Rate shall be used where permitted, and (ii) rent due under this Lease shall include the Base Monthly Rent and the Additional Rent, determined on a monthly basis where necessary to compute such damages. Such damages shall include without limitation

(1) The worth at the time of award of the unpaid rent which had been earned at the time of termination;

(2) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided;

(3) The worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of the award exceeds the amount of such rental loss that Tenant proves could be reasonably avoided, computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%); and

(4) Any other amount necessary to compensate Landlord for all detriment proximately caused by Tenant's failure to perform Tenant's obligations under this Lease, or which in the ordinary course of things would be likely to result therefrom, including without limitation, the following: (a) expenses for cleaning, repairing or restoring the Leased Premises; (b) expenses for altering, remodeling or otherwise improving the Leased Premises for the purpose of re-leasing, including installation of leasehold improvements (whether such installation be funded by a reduction of rent, direct payment or allowance to a new tenant, or otherwise), (c) broker's fees, advertising costs and other expenses of re-leasing the Leased Premises; (d) costs of carrying the Leased Premises, such as taxes, insurance premiums, utilities, and security precautions; (e) expenses in retaking possession of the Leased Premises; and (f) attorney's fees and court costs incurred by Landlord in retaking possession of the Leased Premises and in releasing the Leased Premises or otherwise incurred as a result of Tenant's default.

G. Nothing in this paragraph shall limit Landlord's right to indemnification from Tenant as provided in Article 10.

H. Tenant agrees that any notice given by Landlord pursuant to Section 13.1 of this Lease shall satisfy the requirements for notice under California Code of Civil Procedure Section 1161, and Landlord shall not be required to give any additional notice in order to be entitled to commence an unlawful detainer proceeding. Should Landlord prepare any notice to Tenant for failure to pay rent, additional rent or perform any other obligation under the Lease, Tenant shall pay to Landlord, without any further notice from Landlord, the additional sum of $450.00 which the parties hereby agree represents a fair and reasonable estimate of the costs Landlord will incur by reason of preparing such notice.

13.3 **Landlord's Default and Tenant's Remedies**: In the event Landlord fails to perform any of its obligations under this Lease and fails to cure such default within thirty (30) days after written notice from Tenant specifying the nature of such default where such default could reasonably be cured within said thirty (30) day period, or fails to commence such cure within said thirty (30) day period and thereafter continuously, with due diligence, prosecutes such cure to completion where such default could not reasonably be cured within said thirty (30) day period, then Tenant shall have the following remedies only:

A. Tenant may proceed in law or in equity to compel Landlord to perform its obligations; and

B. If Tenant provides notice to Landlord of an event or circumstance that requires the action of Landlord with respect to the repairs or maintenance within Landlord's obligations pursuant to Section 6.2 above, and Landlord fails to provide such action as required by the terms of this Lease within a commercially reasonable time, then Tenant may take the required action if: (i) Tenant delivers to

24

Landlord an additional written notice advising Landlord that Tenant intends to take the required action if Landlord does not begin the required repair or maintenance within ten (10) days (or such shorter time period as may be commercially reasonable, in the event of an emergency) after the written notice; and (ii) Landlord fails to begin the required work within this ten-day (10-day) period (or such shorter time period as may be commercially reasonable, in the event of an emergency) or if Landlord thereafter fails to diligently proceed with the work necessary or appropriate to complete such repair or maintenance. If such action was required under the terms of this Lease to be taken by Landlord, Tenant shall be entitled to prompt reimbursement by Landlord of Tenant's reasonable costs and expenses in taking such action plus interest at the Agreed Rate. Landlord's obligation to reimburse Tenant shall survive expiration or earlier termination of this Lease. If any action taken by Tenant will affect any portion of the Building systems, structural integrity of the Building or exterior appearance of the Building, Tenant shall use only the contractor used by Landlord in the Building for such work, unless that contractor is unwilling or unable to perform the work, in which event Tenant may use the services of another qualified contractor that normally and regularly performs similar work in comparable first-class buildings. Tenant shall take no action pertaining to or affecting any portion of the Building systems that will adversely affect the enjoyment, possession, or other rights of any other tenant in the Building.

            C.      For any default by Landlord which materially interferes with Tenants quiet use and enjoyment of the Leased Premises for the Permitted Use and with respect to which the cost to cure, as reasonably estimated by Tenant, exceeds $300,000.00, if Tenant provides notice to Landlord of such default, and Landlord fails to provide such action as required by the terms of this Lease within a commercially reasonable time, then Tenant may terminate this Lease if: (i) Tenant delivers to Landlord an additional written notice advising Landlord that Tenant intends to terminate this Lease if Landlord does not begin the cure of such default within thirty (30) days (or such shorter time period as may be commercially reasonable, in the event of an emergency) after the written notice; and (ii) Landlord fails to begin the required action to cure such default within this thirty-day (30-day) period (or such shorter time period as may be commercially reasonable, in the event of an emergency) or if Landlord thereafter fails to diligently proceed to cure such default.

Tenant waives the provisions of Sections 1932(1), 1941 and 1942 of the California Civil Code and/or any similar or successor law regarding Tenant's right to terminate this Lease or to make repairs and deduct the expenses of such repairs from the rent due under the Lease. Without limiting the foregoing, Tenant waives any and all rights to assert constructive eviction. Tenant hereby waives any right of redemption or relief from forfeiture under the laws of the State of California, or under any other present or future law, including the provisions of Sections 1174 and 1179 of the California Code of Civil Procedure and/or any similar or successor law.

      13.4    **Waiver**: One party's consent to or approval of any act by the other party requiring the first party's consent or approval shall not be deemed to waive or render unnecessary the first party's consent to or approval of any subsequent similar act by the other party. The receipt of acceptance by Landlord of any rent with or without knowledge of the breach of any provision hereof shall not be deemed a waiver of any such breach unless such waiver is in writing and signed by Landlord. No delay or omission in the exercise of any right or remedy accruing to either party upon any breach by the other party under this Lease shall impair such right or remedy or be construed as a waiver of any such breach theretofore or hereafter occurring. The waiver by either party of any breach of any provision of the Lease shall not be deemed to be a waiver of any subsequent breach of the same or of any other provisions herein contained.

25

Case: 18-50398   Doc# 135   Filed: 07/26/18   Entered: 07/26/18 16:20:39   Page 7 of 15

# ARTICLE 14
## ASSIGNMENT AND SUBLETTING

14.1 **By Tenant**: The following provisions shall apply to any assignment, subletting or other transfer by Tenant or any subtenant or assignee or other successor in interest of the original Tenant (collectively referred to in this paragraph as "Tenant"):

    A. Tenant shall not do any of the following (collectively referred to herein as "Transfer"), whether voluntarily, involuntarily, or by operation of law, without the prior written consent of Landlord, which consent shall not be unreasonably withheld: (i) assign or otherwise transfer its interest in this Lease or in the Leased Premises; (ii) sublet all or any part of the Leased Premises or allow it to be sublet, occupied, or used by any person or entity other than Tenant; (iii) transfer any right appurtenant to this Lease or the Leased Premises; (iv) mortgage or encumber the Lease (or otherwise use the Lease as a security device) in any manner; or (v) terminate or materially amend or modify an assignment, sublease or other transfer that has been previously approved by Landlord. Tenant shall reimburse Landlord for all reasonable costs and attorney's fees incurred by Landlord in connection with the processing and/or documentation of any requested Transfer, whether or not Landlord's consent is granted. Any Transfer so approved by Landlord shall not be effective until Tenant has paid all such costs and attorneys' fees to Landlord and delivered to Landlord an executed counterpart of the document evidencing the Transfer which (i) is in form approved by Landlord, (ii) contains the same terms and conditions as stated in Tenant's notice given to Landlord pursuant to subparagraph B, below, and (iii) contains the agreement of the proposed Transferee to assume all obligations of Tenant related to the Transfer arising after the effective date of such Transfer and to remain jointly and severally liable therefor with Tenant. Any attempted Transfer without Landlord's consent shall constitute a default by Tenant and shall be voidable at Landlord's option. Landlord's consent to any one Transfer shall not constitute a waiver of the provisions of this paragraph as to any subsequent transfer nor a consent to any subsequent Transfer. No Transfer, even with the consent of Landlord, shall relieve Tenant of its personal and primary obligation to pay the rent and to perform all of the other obligations to be performed by Tenant hereunder. The acceptance of rent by Landlord from any person shall not be deemed to be a waiver by Landlord of any provision of this Lease nor to be a consent to any Transfer. Notwithstanding the foregoing or anything else to the contrary contained in this Lease, Landlord acknowledges that Tenant's business model includes subleasing storage spaces, offices and work areas within the Leased Premises, and as such, Tenant shall have the right to sublease or license space in accordance with Tenant's standard business practices ("**Permitted Subleases**") without the need to first obtain Landlord's prior written consent in connection with the same; provided, however, Tenant shall be responsible for ensuring that any sublessees and/or licensees under Permitted Subleases do not violate any of the rules, regulations, restrictions and/or other requirements imposed by this Lease. No Permitted Sublease shall be deemed to be a "Transfer" for purposes of this Lease and the provisions of this Section 14.1 shall not apply to Permitted Subleases.

    B. Tenant shall give Landlord at least thirty (30) days prior written notice of any desired Transfer and of the proposed terms of such Transfer including but not limited to (i) the name and legal composition of the proposed Transferee; (ii) an audited financial statement, if available, or an unaudited financial statement if an audited statement is not available, of the Transferee prepared in accordance with generally accepted accounting principles for a period ending not more than one year prior to the proposed effective date of the Transfer; (iii) the nature of the proposed Transferee's business to be carried on in the Leased Premises; (iv) all consideration to be given on account of the Transfer; (v) a current financial statement of Tenant and (vi) such other information as may be requested by Landlord. Tenant's notice shall not be deemed to have been served or given until such time as Tenant has provided Landlord with all information required by this subparagraph.

26

Case: 18-50398    Doc# 135    Filed: 07/26/18    Entered: 07/26/18 16:20:39    Page 8 of 15

C. In the event that Tenant seeks to make any Transfer, Landlord shall have the right to withhold its consent to such Transfer, as permitted pursuant to this Article, or to exercise any of the rights set forth in this subparagraph, by giving Tenant written notice of its election within thirty (30) days after Tenant's notice of intent to Transfer has been given to Landlord. Without otherwise limiting the criteria upon which Landlord may withhold its consent to any proposed Transfer, (i) if Landlord withholds its consent where the proposed Transferee's net worth (according to generally accepted accounting principles) is less than the greater of (a) the net worth of Tenant and Guarantors (collectively) immediately prior to the Transfer, or (b) the net worth of Tenant and Guarantors (collectively) as of the Delivery Date, such withholding of consent shall be presumptively reasonable, and (ii) if Landlord withholds its consent where the proposed Transferee has not demonstrated its ability to operate and maintain a first class retail business in accordance with the Applicable Standard, such withholding of consent shall be presumptively reasonable. The following rights are in addition to Landlord's right to withhold its consent to any Transfer and may be exercised by Landlord in its sole discretion without limiting Landlord in the exercise of any other right or remedy which Landlord may have.

(1) Landlord may terminate this Lease or, in the case of a sublease of less than all of the Leased Premises, terminate this Lease as to that part of the Leased Premises proposed to be so sublet, either (i) on the condition that the proposed Transferee immediately enter into a direct Lease of the Leased Premises with Landlord (or, in the case of a partial sublease, a lease of the portion proposed to be so sublet) on the same terms and conditions contained in Tenant's notice, or (ii) so that Landlord is thereafter free to lease the Leased Premises (or, in the case of a partial sublease, the portion proposed to be so sublet) to whomever it pleases on whatever terms are acceptable to Landlord. In the event Landlord elects to so terminate this Lease, then (i) if such termination is conditioned upon the execution of a lease between the Landlord and the proposed Transferee, Tenant's obligations under this Lease shall not be terminated until such Transferee executes a new lease with Landlord, enters into possession, and commences the payment of rent, and (ii) if Landlord elects simply to terminate this Lease (or, in the case of partial sublease, terminate this Lease as to the portion to be so sublet), the Lease shall so terminate in its entirety (or as to the space to be so sublet) fifteen (15) days after Landlord has notified Tenant in writing of such election. Upon such termination, Tenant shall be released from any further obligation under this Lease if it is terminated in its entirety, or shall be released from any further obligation under the Lease with respect to the space proposed to be sublet in the case of a proposed partial sublease. In the case of a partial termination of the Lease, the Base Monthly Rent shall be reduced to an amount which bears the same relationship to the original amount thereof as the area of that part of the Leased Premises which remains subject to the Lease bears to the original area of the Leased Premises. Landlord and Tenant shall execute a cancellation and release with respect to the Lease to effect such termination.

(2) Landlord may elect to permit Tenant to so assign the Lease or sublease such part of the Leased Premises, in which event Tenant may do so, but without being released of its liability for the performance of all of its obligations under the Lease. If Tenant assigns its interest in this Lease in accordance with this subparagraph (2), then Tenant shall pay to Landlord One Hundred percent (100%) of all consideration received by Tenant with respect to the assignment of this Lease over and above the assignee's agreement to assume the obligations of Tenant under this Lease. If Tenant sublets all or part of the Leased Premises, then Tenant shall pay to Landlord One Hundred percent (100%) of the positive difference, if any, between (i) all rent and other consideration paid by the subtenant to Tenant, less (ii) all rent paid by Tenant to Landlord pursuant to this Lease which is allocable to the area so sublet; provided, however, that the foregoing requirement shall not apply to any Permitted Sublease (it being agreed that Tenant may retain all profits arising from Permitted Subleases). Such amount shall be paid to Landlord on the same basis, whether periodic or in lump sum, that such rent and other consideration is paid to Tenant by its subtenant. Tenant's obligations under this subparagraph shall survive any assignment or sublease, and Tenant's failure to perform its obligations under this subparagraph shall be a default under

27

this Lease. If Landlord so elects all such excess rent payments shall be made directly from the transferee to Landlord. At the time Tenant makes any payment to Landlord required by this subparagraph, Tenant shall deliver an itemized statement of the method by which the amount to which Landlord is entitled was calculated, certified by Tenant as true and correct. Landlord shall have the right to inspect Tenant's and the transferee's books and records relating to the payments due pursuant to this subparagraph. Upon request therefore, Tenant and the transferee shall deliver to Landlord copies of all bills, invoices, or other documents upon which its calculations are based. Landlord may condition its approval of Transfer upon obtaining a certification from both Tenant and the proposed Transferee of all amounts that are to be paid to Tenant in connection with such Transfer. As used herein, the term "consideration" shall mean any consideration of any kind received, or to be received, by Tenant as a result of the Transfer, if such sums are related to Tenant's interest in this Lease or in the Leased Premises.

    D. If Tenant is a corporation or limited liability company, any dissolution, merger, consolidation, or other reorganization of Tenant, or the sale or transfer in the aggregate over the Lease Term of a controlling percentage of the capital stock or membership interests of Tenant, shall be deemed a voluntary assignment of Tenant's interest in this Lease, provided, however, that the foregoing shall not apply to a corporation the capital stock of which is publicly traded. The phrase "controlling percentage" includes, but is not limited to, the ownership of and the right to vote stock or membership interests possessing more than fifty percent (50%) of the total combined voting power of all classes of Tenant's capital stock or memberships interests issued, outstanding and entitled to vote for the election of directors. If Tenant is a partnership, any withdrawal or substitution (whether voluntary, involuntary, or by operation of law and whether occurring at one time or over a period of time) of any partner(s) owning twenty-five percent (25%) or more (cumulatively) of any interest in the capital or profits of the partnership, or the dissolution of the partnership, shall be deemed a voluntary assignment of Tenant's interest in this Lease. In the event of a transaction covered by the terms of this Subsection D, the transferee or assignee (or the parent of the company into which Tenant is merged or which merges into Tenant) shall assume all obligations of Tenant under this Lease.

    E. Tenant irrevocably assigns to Landlord, as security for Tenant's obligations under this Lease, all rent or other consideration not otherwise payable to Landlord by reason of any Transfer. Landlord, as assignee of Tenant, or a receiver for Tenant appointed on Landlord's application, may collect such rent or other consideration and apply it toward Tenant's obligation under this Lease, provided, however, that until occurrence of any default by Tenant, Tenant shall have the right to collect such rent or other consideration.

  14.2 **By Landlord**: Landlord and its successors in interest shall have the right to transfer their interest in the Leased Premises and the Property at any time and to any person or entity. In the event of any such transfer, the Landlord originally named herein (and in the case of any subsequent transfer, the transferor) from the date of such transfer, (a) shall be automatically relieved, without any further act by any other person or entity, of all liability for the performance of the obligations of the Landlord hereunder which may accrue after the date of such transfer, and (b) shall be relieved of all liability for the performance of the obligations of the Landlord hereunder which have accrued before the date of transfer if its transferee agrees to assume and be bound by the terms of this Lease and to perform all obligations of the Landlord hereunder. As used herein, the term "Landlord" shall mean the Landlord originally named herein, but following any transfer of its interest in the Leased Premises and the Property, the term "Landlord" shall thereafter mean the transferee of such interest.

28

# ARTICLE 15
# TERMINATION

15.1 **Surrender of the Leased Premises**: Immediately prior to the expiration or upon the earlier termination of this Lease, Tenant shall remove all Tenant's Trade Fixtures and other personal property (unless the same are subject to a lien of Landlord and Landlord elects to have such property remain), repair all damage caused by the installation and removal of such property, and vacate and surrender the Leased Premises to Landlord immediately upon expiration or the earlier termination in the same condition as existed at the Delivery Date, reasonable wear tear excepted (however reasonable wear tear excepted shall not include wear and tear that would have been avoided by prudent maintenance practices), with (a) the Leased Premises clean and free of debris and with all interior walls cleaned, (b) all holes in walls and floors which were made or caused by Tenant repaired, (c) all equipment and other utility components servicing the Leased Premises which Tenant is obligated to maintain pursuant to Section 6.1 in good operating order and repair, and (d) the Leased Premises in otherwise broom clean condition; all to the reasonable satisfaction of Landlord. If Landlord so requests, either before or after the expiration or earlier termination of this Lease, Tenant shall prior to the expiration or earlier termination of this Lease or within ten (10) days of Landlord's request, whichever is later: (a) remove any Leasehold Improvements designated by Landlord, (b) repair all damage caused by such removal, and (c) restore the Leased Premises to the condition existing prior to the time such removed Leasehold Improvements were initially installed. In the alternative, Landlord may elect that Tenant pay to Landlord the amount to so restore the Leased Premises to the condition required by Landlord hereunder. Landlord may hire independent contractors to inspect any systems for which Tenant was responsible for the purpose of determining whether they have been properly maintained by Tenant, and Tenant shall pay the cost thereof within ten (10) days after receipt of a statement therefor from Landlord. If the Leased Premises are not so surrendered at the expiration or earlier termination of this Lease, Tenant shall be liable to Landlord for all costs incurred by Landlord in returning the Leased Premises to the required condition, plus interest on all costs incurred at the Agreed Interest Rate. Notwithstanding anything herein to the contrary, Tenant shall not be required to remove the initial approved Tenant Improvements or any other Leasehold Improvements approved by Landlord where Landlord has indicated that such Leasehold Improvements need not be removed in connection with the approval thereof. Tenant shall indemnify Landlord against loss or liability resulting from delay by Tenant in so surrendering the Leased Premises, including, without limitation, any claims made by any succeeding tenant or losses to Landlord due to lost opportunities to lease to succeeding tenants. Any personal property of Tenant or any other person left on the Leased Premises after Tenant has abandoned, vacated, or surrendered the Leased Premises shall be deemed to be abandoned and Landlord may dispose of such property in accordance with the provisions of California Civil Code Sections 1980 et seq., or any successor statute.

15.2 **Holding Over**: This Lease shall terminate without further notice at the expiration of the Lease Term. Any holding over by Tenant after expiration of the Lease Term without Landlord's written consent shall not constitute a renewal or extension of the Lease or give Tenant any rights in or to the Leased Premises. Any holding over after such expiration with the consent of Landlord shall be construed to be a tenancy from month to month on the same terms and conditions herein specified except as expressly agreed to the contrary by Landlord and Tenant in writing. In any event, with respect to any holding over after such expiration, with or without Landlord's consent, the Base Month Rent shall be increased to an amount equal to one hundred fifty percent (150%) of the Base Monthly Rent last in effect unless otherwise expressly agreed in writing between Landlord and Tenant.

# ARTICLE 16
## GENERAL PROVISIONS

16.1 **Landlord's Right to Enter**: Landlord and its agents may enter the Leased Premises at any reasonable time (after attempting to arrange an appointment with the tenant) for the purpose of (a) inspecting the same, (b) posting notices of nonresponsibility, (c) supplying any service to be provided by Landlord to Tenant, if applicable, (d) showing the Leased Premises to prospective purchasers, mortgagees or tenants, (e) making necessary alterations, additions or repairs, if applicable, (f) performing Tenant's obligations when Tenant has failed to do so, (g) placing upon the Leased Premises ordinary "for lease" or "for sale" signs, (h) attending to an emergency, and/or (i) accessing and making use of the remainder of the basement storage area that is not being leased to Tenant under this Lease. For each of the aforesaid purposes, Landlord may enter the Leased Premises by means of a master key, and Landlord shall have the right to use any means Landlord may deem necessary to enter the Leased Premises in an emergency.

16.2 **Subordination**: The following provisions shall govern the relationship of this Lease to any underlying lease, mortgage or deed of trust which now or hereafter affects the Property, and any renewal, modification, consolidation, replacement, or extension thereof (a "Security Instrument").

    A. This Lease is subject and subordinate to all Security Instruments existing as of the date of this Lease. However, if any Lender so elects at any time, this Lease shall become prior and superior to any such Security Instrument. Landlord shall use good faith efforts to obtain from any existing Lender an agreement not to disturb Tenant's quiet possession of the Leased Premises so long as Tenant is not in default and performs all of its obligations under this Lease, unless this Lease otherwise terminates pursuant to its terms.

    B. At Landlord's election, this Lease shall become subject and subordinate to any Security Instrument created after the date of this Lease. Notwithstanding such subordination, Tenant's right to quiet possession of the Leased Premises shall not be disturbed so long as Tenant is not in default and performs all of its obligations under this Lease, unless this Lease otherwise terminates pursuant to its terms.

    C. Within ten (10) business days of a written request for the same by Landlord, Tenant shall execute any document or instrument reasonably required by Landlord or any Lender to make this Lease either prior or subordinate to a Security Instrument, which may include such other matters as the Lender customarily requires in connection with such agreements, including provisions that the Lender not be liable for (i) the return of the Security Deposit unless the Lender receives it from Landlord, and (ii) any defaults on the part of Landlord occurring prior to the time the Lender takes possession of the Property in connection with the enforcement of its Security Instrument. Tenant's failure to execute any such document or instrument shall constitute a default by Tenant.

16.3 **Tenant's Attornment**: Tenant shall attorn (a) to any purchaser of the Leased Premises at any foreclosure sale or private sale conducted pursuant to any security instrument encumbering the Property, (b) to any grantee or transferee designated in any deed given in lieu of foreclosure, or (c) to the lessor under any underlying ground lease should such ground lease be terminated.

16.4 **Mortgagee Protection**: In the event of any default on the part of Landlord, Tenant will give notice by certified mail to any Lender whose name has been provided to Tenant and shall offer such Lender a reasonable opportunity to cure the default, including time to obtain possession of the Leased Premises by power of sale or judicial foreclosure or other appropriate legal proceedings, if such should prove necessary to effect a cure.

30

16.5 **Estoppel Certificates and Financial Statements**: Tenant agrees, following any request by Landlord, to promptly (and in no event greater than ten (10) calendar days) execute and deliver to Landlord an estoppel certificate upon which Landlord and others it designates may rely (a) certifying that this Lease is unmodified and in full force and effect, or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect, (b) stating the date to which the rent and other charges are paid in advance, if any, (c) acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord hereunder, or if there are uncured defaults on the part of Landlord, stating the nature of such uncured defaults and (d) certifying such other information about this Lease as may be reasonably required by Landlord. Tenant's failure to deliver an estoppel certificate within ten (10) days after delivery of Landlord's request therefore shall be a conclusive admission by Tenant that, all matters so requested by Landlord are true and accurate. At any time during the Lease Term, Tenant shall, upon ten (10) days' prior written notice from Landlord, provide Tenant's most recent financial statement and financial statements covering the twenty-four (24) months prior to the date of such most recent financial statement to any existing Lender or to any potential Lender or buyer of the Property. Unless audited financials are available, such statements shall be unaudited "GAAP" compliant financials in the same form as the financial information Tenant customarily provides to its investors.

16.6 **Notices**: Except as provided in any applicable unlawful detainer statutes, in which Landlord may either elect that this notice provision shall apply or the notice provision under the applicable unlawful detainer statute shall apply; any notice required or desired to be given regarding this Lease shall be in writing and may be personally served, or in lieu of personal service, may be given by certified mail return receipt requested or by e-mail with confirmation of delivery to the recipient (and provided that a copy of any email notice shall be sent out the same day via Federal Express Overnight or other nationally recognized overnight courier guarantying next day delivery). If given by mail, such notice shall be deemed to have been given (a) on the third business day after mailing if such notice was deposited in the United States mail, first class certified mail return receipt requested, postage prepaid, addressed to the party to be served at its address first above set forth and (b) in all other cases when actually received. Either party may change its address by giving notice of same in accordance with this paragraph.

16.7 **Attorneys' Fees**: In the event either party shall bring any action or legal proceeding, or otherwise incur any legal fees, for an alleged breach of any provision of this Lease, to recover rent, to terminate this Lease or to otherwise enforce, protect or establish any term or covenant of this Lease or right of either party, the prevailing or party not in violation of this Lease shall be entitled to recover, reasonable attorneys' fees and court costs from the other. Tenant shall reimburse Landlord on demand for all reasonable legal, engineering, and other professional services expenses incurred by Landlord in connection with all requests by Tenant or any lender of Tenant for consent, waiver or approval of any kind. In addition, in the event Landlord is required to retain the services of an attorney to enforce the terms of the Lease, including, but not limited to, issuing 3-day notices to pay rent or quit or other notices of default, then, even if no legal action is commenced by Landlord in connection therewith, Tenant shall reimburse Landlord upon written demand for the reasonable costs and expenses of such attorney.

16.8 **Corporate Authority**: If Tenant is a corporation (or a partnership, LLC or other entity), each individual executing this Lease on behalf of said entity represents and warrants he or she is duly authorized to execute and deliver this Lease on behalf of said entity in accordance with the organizational documents of said entity and that this Lease is binding upon said entity in accordance with its terms. If Tenant is a corporation or LLC, Tenant shall, within ten (10) days after request by Landlord, deliver to Landlord a certified copy of the resolution of the board of directors or members of said corporation or LLC authorizing or ratifying the execution of this Lease.

31

16.9    **Additional Definitions**: Any term that is given a special meaning by any provision in this Lease shall have such meaning when used in this Lease or any addendum or amendment hereto. As used herein, the following terms shall have the following meanings:

        A.    **Agreed Interest Rate**: The term "Agreed Interest Rate" shall mean an interest rate equal to the lesser of eight percent (8%) per annum or the maximum applicable rate permitted by Law.

        B.    **Effective Date**: The term "Effective Date" shall mean the reference date of this Lease appearing above.

        C.    **Laws**: The term "Law" or "Laws" shall mean all laws, rules, regulations, ordinances, directives, covenants, easements, and restrictions of record, permits, the requirements of any applicable fire insurance underwriter or rating bureau, relating in any manner to the Leased Premises (including but not limited to matters pertaining to (a) industrial hygiene, (b) environmental conditions on, in, under, or about the Leased Premises, including soil and groundwater conditions, and (c) the use, generation, manufacture, production, installation, maintenance, removal, transportation, storage, spill, or release of any Hazardous Substance), now in effect or which may hereafter come into effect.

        D.    **Leasehold Improvements**: The term "Leasehold Improvements" shall mean all improvements, additions, alterations, and fixtures installed in the Leased Premises by Tenant or at its expense which are not Trade Fixtures.

        E.    **Private Restrictions**: The term "Private Restrictions" shall mean all recorded covenants, conditions and restrictions, private agreements, and any other recorded instruments affecting the use of the Property, as they may exist from time to time.

        F.    **Trade Fixtures**: The term "Trade Fixtures" shall mean anything affixed to the Leased Premises by Tenant at its expense for purposes of trade, manufacture, or ornament (except where Tenant replaced similar work or material originally installed by Landlord) that is specifically unique to Tenant's business as opposed to being useful to Tenants of the Leased Premises generally, which can be removed without injury to the Leased Premises unless such thing has, by the manner in which it is affixed, become an integral part of the Leased Premises, provided, however, that all of Tenant's signs shall be Trade Fixtures regardless of how affixed to the Leased Premises.

16.10    **Miscellaneous**: Should any provision of this Lease prove to be invalid or illegal, such invalidity shall in no way affect, impair or invalidate any other provision hereof, and such remaining provisions shall remain in full force and effect. Time is of the essence with respect to the performance of every provision of this Lease in which time of performance is a factor. Any executed copy of this Lease shall be deemed an original for all purposes. This Lease shall, subject to the provisions regarding assignment, apply to and bind the respective heirs, successors, executors, administrators and assigns of Landlord and Tenant. If Tenant consists of more than one person or entity, then all members of Tenant shall be jointly and severally liable hereunder. This Lease shall be construed and enforced in accordance with the laws of the State of California. The language in all parts of this Lease shall in all cases be construed as a whole according to its fair meaning and not strictly for or against either Landlord or Tenant, regardless of which party caused the same to be prepared. The captions used in this Lease are for convenience only and shall not be considered in the construction or interpretation of any provision hereof. Where Tenant is obligated not to perform any act, Tenant is also obligated to restrain any others within its control from performing such act, including agents, invitees, contractors, subcontractors, and employees. Landlord shall not become or be deemed a partner or a joint venturer of Tenant by reason of this Lease.

This Lease may be executed in counterparts and faxes or emailed signatures shall be deemed originals for all purposes. This Lease shall be interpreted neutrally regardless of which party was responsible for drafting the same.

    16.11 **Limitation on Tenant's Recourse**: Without limiting anything to the contrary set forth in this Lease Agreement, Tenant expressly agrees that Tenant shall have recourse only to the Landlord's interest in the Building of which the Leased Premises are a part for the satisfaction of any monetary obligations hereunder and Tenant shall not have recourse against any other assets of Landlord whatsoever.

    16.12 **Entire Agreement**: The Lease and any addenda or amendments hereto which are executed by Landlord and Tenant concurrently with this Lease and are attached hereto (and by this reference incorporated herein), are the entire agreement between the parties, and there are no binding agreements or representations between the parties except as expressed herein. Tenant acknowledges that neither Landlord nor Landlord's agent(s) has made any representation or warranty as to (a) whether the Leased Premises may be used for the Permitted Use under existing Law or (b) the suitability of the Leased Premises or the Common Area for the conduct of Tenant's business, or (c) the condition of any improvements located upon the Leased Premises or Common Areas. There are no oral agreements between Landlord and Tenant affecting this Lease, and this Lease supersedes and cancels any and all previous negotiations, arrangements, brochures, agreements and understandings, if any, between Landlord and Tenant or displayed by Landlord to Tenant with respect to the subject matter of this Lease. There are no representations between Landlord and Tenant other than those contained in this Lease, and all reliance with respect to any representations is upon the representations contained herein. No subsequent change or addition to this Lease shall be binding unless in writing and signed by the parties hereto.

    16.13 **Waiver of Jury Trial**: Tenant hereby waives the right to have any dispute relating to this Agreement or, in any way relating to Tenant's occupancy of the Leased Premises, tried before a jury.

    16.14 **Brokers**: Except for the Brokers referenced on the Basic Lease Information Page, each party represents that no other Broker has represented such party with respect to this Lease transaction.

    16.15 **Energy Ratings Information**: Within fifteen (15) days of Landlord's written request, Tenant agrees to deliver to Landlord such information and/or documents as Landlord requires for Landlord to comply with California Public Resources Code Sections 25402.10 or successor statute(s), and related California Code of Regulations, relating to commercial building energy ratings.

    16.16 **California Disability Compliance**: The Leased Premises have not undergone inspection by a certified access specialist to evaluate compliance with the Americans With Disabilities Act of 1990 (as amended), California Senate Bill 1608 (known as the Construction-Related Accessibility Standards Compliance Act) or any related legal requirement.

    IN WITNESS WHEREOF, Landlord and Tenant hereafter execute this Lease as a binding agreement between them.

[SIGNATURES APPEAR ON FOLLOWING PAGE]