9

EXHIBIT D

HAZARDOUS MATERIALS DISCLOSURE

Leased Premises:   40 S. Second Street, San Jose, California 95113

Lease Date:   March 4, 2016

Landlord:   New Century Commons, LLC, a California limited liability company

Tenant:   TechShop San Jose LLC, a California limited liability company

Instructions: The following questionnaire is to be completed at the time of Lease execution by the Tenant representative with knowledge of the planned operations for the specified building/location.

## 1-0   PLANNED USE/OPERATIONS

1-1.   Describe planned use and include brief description of manufacturing processes employed.

TechShop is a playground for creativity. Part fabrication and prototyping studio, part hackerspace and part learning center, TechShop provides access to over $1 million worth of professional equipment and software. We offer comprehensive instruction and expert staff to ensure you have a safe, meaningful and rewarding experience. Most importantly, at TechShop you can explore the world of making in a collaborative and creative environment.

Each of our facilities includes laser cutters, plastics and electronics labs, a machine shop, a wood shop, a metal working shop, a textiles department, welding stations and a waterjet cutter.

## 2.0   HAZARDOUS MATERIALS

2-1.   Are Hazardous Materials as defined in the lease Agreement used, handled, or stored at the Leased Premises? If so, continue with the next question. If not, go to Section 3.0.
___ No          _X_ Yes

2-2.   Please attach a chemical inventory that identifies the type(s), use(s) and quantity of each chemical used or stored on the site and include Material Safety Data Sheets for each chemical. In addition, describe the proposed hazardous material storage area (preferably on a site plan or figure) and planned measures to manage potential releases to the environment (e.g., spill containment measures, Spill Response Plans, etc.).

All materials are stored in approved and certified storage space and/or cabinets as needed. We do not store any quantities of Hazardous Materials that require any special license, certification, or permit.

## 3.0   HAZARDOUS WASTES

3-1.   Are hazardous wastes generated? If so, continue with the next question. If not, skip this section and go to Section 4.0.          _X_ No          ___ Yes

3-2.   Are any wastes generated, handled, or disposed of (where applicable) on the property? If so, identify and describe on separate pages those wastes generated, handled or disposed of (disposition). Specify any wastes known to be regulated under the Resource Conservation and Recovery Act (RCRA) as "listed characteristic or statutory" wastes. Include total amounts generated

1

monthly. Please include name, location, and permit number (e.g. EPA ID No.) for transporter and disposal facility, if applicable.

3-3. Are pollution controls or monitoring employed in the process to prevent or minimize the release of wastes into the environment? If so, please describe on a separate page.

## 4.0 USTS/ASTS

4-1. Are underground storage tanks (USTs), aboveground storage tanks (ASTs), clarifiers, or associated pipelines required for planned operations? If not, continue with Section 5.0. If yes, please describe on separate page the capacity, contents, design and construction of USTs or ASTs and provide copies of appropriate regulatory permits. _X_ No ___ Yes

## 5.0 REGULATORY

5-1. Does the operation have or require any permits for Hazardous Materials or waste discharge including but limited to National Pollutant Discharge Elimination System (NPDES) or equivalent permit? If so, please provide a copy of this permit.

Not required.

5-2. Has a Hazardous Materials Business Plan been developed for the site? If so, please provide a copy.

We do not produce any amount of Hazardous Materials that requires a Hazardous Materials Business Plan.

## TENANT CERTIFICATION

I am familiar with the real property and facility operations described in this questionnaire, and I am authorized to sign on behalf of the Tenant. By signing below, I represent and warrant that the answers to the above questions are complete and accurate to the best of my knowledge. I also understand that the Landlord will rely on the completeness and accuracy of my answers in assessing any environmental liability risks associated with the property.

Signature: _[signature]_

Name: DANIEL B WOODS

Title: COO

Date: 3/23/16

Telephone: 415-577-7166

2

monthly. Please include name, location, and permit number (e.g. EPA ID No.) for transporter and disposal facility, if applicable.

3-3. Are pollution controls or monitoring employed in the process to prevent or minimize the release of wastes into the environment? If so, please describe on a separate page.

## 4.0 USTS/ASTS

4-1. Are underground storage tanks (USTs), aboveground storage tanks (ASTs), clarifiers, or associated pipelines required for planned operations? If not, continue with Section 5.0. If yes, please describe on separate page the capacity, contents, design and construction of USTs or ASTs and provide copies of appropriate regulatory permits.   _X_ No   ___ Yes

## 5.0 REGULATORY

5-1. Does the operation have or require any permits for Hazardous Materials or waste discharge including but limited to National Pollutant Discharge Elimination System (NPDES) or equivalent permit? If so, please provide a copy of this permit.

Not required.

5-2. Has a Hazardous Materials Business Plan been developed for the site? If so, please provide a copy.

We do not produce any amount of Hazardous Materials that requires a Hazardous Materials Business Plan.

## TENANT CERTIFICATION

I am familiar with the real property and facility operations described in this questionnaire, and I am authorized to sign on behalf of the Tenant. By signing below, I represent and warrant that the answers to the above questions are complete and accurate to the best of my knowledge. I also understand that the Landlord will rely on the completeness and accuracy of my answers in assessing any environmental liability risks associated with the property.

Signature: _[signed]_

Name: DANIEL B. WOOD

Title: COO

Date: 3/8/16

Telephone: 415-577-7166

Case: 18-50398   Doc# 137   Filed: 07/26/18   Entered: 07/26/18 16:22:35   Page 4 of 12

## Hazardous Gases - San Jose

| Call Out # | Gas | MSDS | Flammable | Qty Indoor | Qty Outdoor | Tank Size | Unit Conversion | Total | Storage | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 002 | Argon | yes | no | 4 | 0 | 155 SCF | 155 SCF | 775 SCF | chained to a secure rack or cart | |
| 003 | Argon CO2 mix | yes | no | 4 | 0 | 162 SCF | 162 SCF | 810 SCF | chained to a secure rack or cart | |
| 004 | Propane | yes | yes | 2 | 0 | 15 lb. | 130 SCF | 780 SCF | locked in a ventilated cabinet indoors | standard tanks for grills, used to fuel hot head torches in glass bead class, taught indoors |
| 005 | Propane | yes | yes | 1 | 1 | 35 lb. | 300 SCF | 600 SCF | 1 locked in a ventilated closet indoors, one chained to a truck outdoors | |
| 006 | Propane | yes | yes | 2 | 0 | 14.1 oz | 15 SCF | 15 SCF | stored in a fire cabinet | small canister for utility propane torch |
| 007 | Compressed Air | yes | no | 1 | 0 | 100gal | 127 SCF | 127 SCF | bolted to the basement floor | pressurized througout the shop, between 80 and 120 PSI |

## Hazardous Liquids - San Jose

| Call Out # | Liquid | MSDS | Qty | Container Size | Storage | Notes |
|---|---|---|---|---|---|---|
| 001 | Thinner | yes | 1 gallon | 1 gallon | stored in fire cabinet | |
| 002 | Acetone | yes | 1 gallon | 1 quart | stored in fire cabinet and office | |
| 003 | Spray cans | yes | 20 | 11.5 oz | stored in fire cabinet | |
| 004 | Paint | yes | 100 gallons | 1-5 gallon | stored in basement and fire cabinet | Latex-based |
| 005 | Resins | yes | 2 gallons | 16 oz | stored in fire cabinet and storge carts | Resins for classes |
| 006 | Resin hardener | yes | 2 gallons | 16 oz | stored in fire cabient and storage carts | Hardener for classes |
| 007 | Photoreactive resin | yes | 2 gallons | 16 oz | stored in a locked and ventilated unit | resin for SLS 3D printer |

## Hazardous Solids - San Jose

| Call Out # | Solids | Qty Indoor | Qty Outdoor | Size | Storage | Notes |
|---|---|---|---|---|---|---|
| 001 | Wood, sheets, 4'x8' | ~10 | | 4'x8' | Stored in the wood shop or basement | plywood 1/4"-1" |
| 002 | Wood chips, loose | ~5 lbs | | 1/2" or smaller | n/a | swept into open trash can, emptied to dumpster daily |
| 003 | Wood chips, collected | ~20 lbs | | 1/2" or smaller | n/a | collected in cyclone dust collection system, emptied to dumpster 3 times weekly |
| 004 | Wood sawdust, loose | ~5 lbs | | 30-600 microns | n/a | swept into open trash can, emptied to dumpster daily |
| 005 | Wood sawdust, collected | ~35 lbs | | 30-600 microns | n/a | collected in dust collection system, emptied to dumpster 3 times weekly |
| 006 | Wood, offcuts | 10 to 15 | | 5' sq to 3' sq | Stored in racks or disposed of to dumpster | Scraps. Not to exceed 100 lbs of scrap wood/MDF and not to overflow from designated storage area |
| 007 | Acrylic, sheets | 30 | | 18"x24" | Stored against wall or on racks in retail store | 1/8" to 1/4" |
| 008 | Acrylic offcuts | ~10 lbs. | | 5" sq to 25" sq | Minimal amounts. Scrap stored in a bin in Laser Studio | |
| 09 | Vinyl Rolls | 25 | | 24" x 100' | Stored against wall or on racks in retail store | |
| 010 | Injection polypropylene b | 50 lbs | | 10 lb bags | Stored in the basement | Thermoplastic for the injection molder |
| 011 | MDF sheets, 4'x8' | ~4 | | 4'x8' | Stored in basement or woodshop | 1/2" and 3/4" thickness |
| 012 | MDF blanks, 12"x12" | ~20 | | 12"x12" | Stored on racks in Instructor Storage | Blanks used as consumables for class |
| 013 | PET-G | ~30 | | 24"x24" | Stored on racks in retail am Instructor Storage | .06" food safe plastic sheets for vacuum forming |
| 014 | Powder coat paint | 10 lbs | | 4 oz | Stored on racks in retail and Instructor Storage | Powder used with the powder coating gun |

3

# Exhibit E

## Approved Signage Plan

The follow styles of signage are approved by the Landlord for usage by the Tenant. Additional styles may be submitted by the Tenant for approval by the Landlord per section 4.5.










1

Case: 18-50398    Doc# 137    Filed: 07/26/18    Entered: 07/26/18 16:22:35    Page 6 of 12






Case: 18-50398    Doc# 137    Filed: 07/26/18    Entered: 07/26/18 16:22:35    Page 7 of 12

EXHIBIT F

RULES AND REGULATIONS

This exhibit, entitled "Rules and Regulations", is and shall constitute Exhibit E to that certain Lease Agreement dated March 4, 2016 (the "**Lease**"), by and between New Century Commons, LLC, a California limited liability company ("**Landlord**") and TechShop San Jose LLC, a California limited liability company ("**Tenant**") for the leasing of certain premises commonly referred to by the parties as 40 S. Second Street, San Jose, California 95113 (the "**Leased Premises**"). The terms, conditions and provisions of this Exhibit E are hereby incorporated into and are made a part of the Lease. Any capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to such terms as set forth in the Lease.

1. Except for signs approved under Section 4.5 of the Lease and signs within the Leased Premises conforming to the Landlord approved template style for Tenants signage as described in Section 4.5, Tenant shall not place on any portion of the Property other than the Leased Premises any sign, placard, lettering, banner, displays, or other advertising or communicative material.

2. The sidewalk, exits, entrances, fire lanes, shall not be obstructed by any of the Tenants, or used by them for any purpose other than for ingress and egress from their respective Premises.

3. Tenant shall not alter any lock or install any new or additional locks or any bolts on any doors or windows of the Leased Premises, unless Tenant provides Landlord with a key or other means of access. Landlord understands that Tenant will (and agrees that Tenant may) install Tenant's electronic access system and re-key the entry into the Leased Premises in connection with the Tenant Improvements (and Landlord shall be provided with a means to access the same) and install locks on storage rooms or lockers to be rented pursuant to Permitted Subleases.

4. The toilets and sinks or any other apparatus in the restrooms of the Leased Premises shall not be used for any purpose other than that for which they were constructed and no foreign substance of any kind whatsoever shall be thrown herein. The expense of any breakage, stoppage or damage resulting from the violation of this rule shall be borne by the Tenant, who, or whose employee or invitees shall have caused it.

5. Tenant shall not in any way deface the Leased Premises or any part thereof.

6. Tenant shall not create any odors, noise and/or vibrations at levels which unreasonably disturb other tenants of the Building or occupants of any adjacent property, nor use, keep, or permit to be used any foul or noxious gas, any gasoline, kerosene or other flammable substance listed in any federal or state compilation of hazardous, toxic or radioactive materials other than as permitted under Section 4.1.A until such substance has been disclosed first to Landlord and its use and/or storage has received Landlord's approval, which approval may be withheld in Landlord's sole discretion. To the extent Landlord's approval is given, then Tenant shall fully comply with all provision of federal and California law regarding such substance, including without limiting the generality if foregoing, that section of the California Health and Safety code known as Chapter 6.95 "Hazardous Material Response Plans and Inventory", which requires the covered party to submit business plans to certain governmental agencies. Tenant shall copy to Landlord on all submittals to government agencies; specifically including those derived under the authority of this section of the law. Tenant and its members shall observe quiet hours within the courtyard between the hours of 10:00 p.m. and 8:00 a.m. (Tenant shall provide notice to its members of such

1

courtyard quiet hours, including providing notice by posting signs or notices).

7. At such time as Landlord adopts a compliance program with respect to asbestos-containing construction material ("ACM") or any other hazardous or toxic substance known or believed to be contained in the building, Tenant shall be fully bound by the provision of that program and agrees to comply with all notification and posting requirements as may be established by Landlord. Such compliance program, when, adopted, will be intended to fully comply with the provisions of California's Propositions 65 with respect to warning requirements necessary to be given to those persons exposed to hazardous or toxic material, the provisions of California's statutes commonly known as "AB 3713" which require certain employee notification, training and procedural requirements in an environment where hazardous or toxic materials are' contained. At the time such compliance program materials are delivered by Landlord or Tenant, any breach of Tenant's obligations set forth there under shall be a breach of this Lease. In order to fully implement the provisions of the laws of the state and federal government relating to hazardous, toxic and/or radioactive materials, Tenant shall permit Landlord at any reasonable time to inspect Tenant's premises and audit Tenant's operations to determine that no hazardous, toxic and/or radioactive material, other than those previously disclosed to Landlord are utilized in Tenant's business and to ensure that Tenant's business operations fully comply with the notice and report requirements of the law.

8. Landlord reserves the right to exclude or expel from the Leased Premises any person who, in the judgment of Landlord is intoxicated or under the influence of liquor or drugs, or who shall in any manner do any act in violation of any of the Rules and Regulations. Tenant shall not disturb the quiet enjoyment of any other tenants at the Property. No loud speakers, television, phonographs, radios or other devices shall be used in a manner so as to be heard or seen outside of the Leased Premises without the prior written consent of Landlord.

9. Tenant shall not be permitted to conduct any work activity outside the Leased Premises.

10. No Tenant shall permit any trash, oil, chemicals or any foreign materials to be deposited or disposed of in the landscape, parking or common areas of the project. Trash (not including oil, hazardous materials, chemicals, which shall not be disposed of on the project) shall be placed inside the bins, at a level not higher than the top of the bin and shall not be placed outside the bin or in the enclosure area. Tenant shall cooperate with Landlord and all other tenants of the development so that the common areas to be kept in a clean and orderly condition and free of obstruction. Landlord provides free, NORMAL use of waste containers and disposal service; however Tenant shall provide at Tenant's expense, waste containers and regular disposal service as may be required by Tenant in excess of the service made available by Landlord as provided above. This shall preclude abnormal trash pick-ups as determined by Landlord where trash generated by Tenant is considered excessive above average usage.

11. Tenant shall be responsible for protecting the floors (including, without limitation, the structural portions of the floors and the subfloor materials) from damage by chemicals, paint, machinery, heavy equipment or other hazardous materials arising from Tenant's use of the Leased Premises. Landlord acknowledges that the plywood or similar top flooring material may be damaged by Tenant's activities. If in Landlord's opinion it shall be necessary, Tenant, at its own expense, shall provide appropriate protective floor covering or sealing over the subfloor as required preventing damage to the subfloor or structural portions of the floor arising from Tenant's use. Tenant shall satisfactorily, in the opinion of Landlord, repair any damage to subflooring materials upon vacating the Leased Premises.

12. Tenant shall not disturb, solicit, or canvass any occupant of the Building and shall cooperate to prevent the same.

13. No aerial or antenna (including satellite dishes, vent, stacks, etc.) shall be erected on the roof or exterior walls of the Leases Premises, or on the grounds, without in each instance, the written consent of Landlord first being obtained. Any of these items so installed without such written consent shall be subject to removal by Landlord at any time without notice. Any repair to the Leased Premises required, as a result of the installation or removal of these items will be paid in full by Tenant.

14. Except for use of the courtyard area as permitted by, and in accordance with the provisions of, Section 4.4 of the Lease, no storage shall be permitted outside the Leased Premises, including, without limitation, the storage of motor vehicles, trucks, boats, trailers, pallets, drums, or equipment of any kind of nature, without the permission in writing from Landlord.

15. Tenant shall not permit Tenant's employees, members, agents, contractors, servants, visitors, suppliers, or invitees to smoke in the exterior courtyard area.

# ADDENDUM 1

## COMMENCEMENT DATE CERTIFICATE

**Landlord:** New Century Commons, LLC, a California limited liability company

**Tenant:** TechShop San Jose LLC, a California limited liability company

**Lease Date:** March 4, 2016

**Leased Premises:** 40 S. Second Street, San Jose, California 95113

Tenant hereby accepts the Leased Premises as being in the condition required under the Lease.
The Delivery Date of the Lease is _____, 201__.
The Expiration Date of the Lease is _____, 20__.
The Base Monthly Rent for the initial Lease Term is as follows:

| Period | | Base Monthly Rent (NNN) |
|---|---|---|
| _____ - _____ | (Lease Years 1 – 2) | $33,884.50 |
| _____ - _____ | (Lease Year 3) | $34,562.19 |
| _____ - _____ | (Lease Year 4) | $35,253.43 |
| _____ - _____ | (Lease Year 5) | $35,958.50 |
| _____ - _____ | (Lease Year 6) | $36,677.67 |
| _____ - _____ | (Lease Year 7) | $37,411.23 |
| _____ - _____ | (Lease Year 8) | $38,533.56 |
| _____ - _____ | (Lease Year 9) | $39,689.57 |
| _____ - _____ | (Lease Year 10) | $40,880.26 |
| _____ - _____ | (Lease Year 11) | $42,106.66 |
| _____ - _____ | (Lease Year 12) | $43,369.86 |
| _____ - _____ | (Lease Year 13) | $44,670.96 |
| _____ - _____ | (Lease Year 14) | $46,011.09 |
| _____ - _____ | (Lease Year 15) | $47,391.42 |

**LANDLORD**

New Century Commons, LLC,
a California limited liability company

By: _____
Name: Kirk E. Kozlowski
Its: Managing Member

Dated: _____

**TENANT**

TechShop San Jose LLC,

1

a California limited liability company

By: TechShop, Inc.,
a California corporation,
its sole member

    By: _____
        Dan Woods
    Its: COO

Dated: _____