LANAK & HANNA, P.C.
Frank J. Lanak, Esq. (Bar No. 43487)
Michael K. Murray, Esq. (Bar No. 265785)
625 The City Drive South, Suite 190
Orange, CA 92868
Telephone:    (714) 620-2350
Facsimile:    (714) 703-1610
mkmurray@lanak-hanna.com

Attorneys for Plaintiff
RUSSELL COLE dba DELTA T MECHANICAL

ENDORSED FILED
2017 JUL 27 AM 10: 41
CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____DEPUTY



# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

RUSSELL COLE, an individual dba DELTA T MECHANICAL,

           Plaintiffs,

v.

NEW CENTURY COMMONS, LLC, a California limited liability company.
TECHSHOP LLC, a California limited liability company;
TECHSHOP SAN JOSE LLC., a California limited liability company; and
DOES 1 through 100, inclusive,

           Defendants.

Case No.  **17CV313613**

*Unlimited Jurisdiction*

**COMPLAINT FOR:**

1. **FORECLOSURE OF MECHANICS LIEN**



## AMOUNT OF COMPLAINT $425,642.64

Plaintiff alleges:

## GENERAL ALLEGATIONS

    1.    Plaintiff was at all times mentioned an individual doing business as Delta T. Mechanical, authorized to do business and is doing business in the State of California.

    2.    Plaintiff is, and at all times herein was, licensed by the California Contractors License Board to perform all the work set forth herein.

    3.    Plaintiff is informed and believes, and thereon alleges, that, at all times mentioned,

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 1 of 30

lanak&hanna

) Cal Recip
8.31.17

1  Defendants were residents of and/or doing business in the County of Santa Clara, State of California,

2  and within this judicial district; and further, that the activities complained of and/or obligations sued on

3  arose within this judicial district; and, that the Defendants are indebted to Plaintiff on the obligations

4  sued on.

5      4.    Plaintiff is informed and believes and thereon alleges that Defendant New Century

6  Commons, LLC is a California limited liability company and is hereinafter referred to as "New

7  Century."

8      5.    Plaintiff is informed and believes and thereon alleges that Defendant Techshop LLC is a

9  California limited liability company and is hereinafter referred to as "Techshop"

10     6.    Plaintiff is informed and believes and thereon alleges that Defendant Techshop San Jose

11 LLC is a California limited liability company and is hereinafter referred to as "Techshop San Jose."

12     7.    Plaintiff is ignorant of the true names and capacities of the Defendants sued as Does 1

13 through 100, inclusive. Therefore, Plaintiff sues these Defendants by such fictitious names. Plaintiff will

14 amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed

15 and believes, and thereon alleges, that each of the fictitiously named Defendants is indebted to Plaintiff

16 as alleged, and that Plaintiff's rights against such fictitiously named Defendants arises from such

17 indebtedness.

18                          **FIRST CAUSE OF ACTION**

19                   **FORECLOSURE OF MECHANICS LIEN**

20          **(As Against Defendants New Century, Techshop, Techshop San Jose and**
            **Does 1 through 75, inclusive)**
21

22     8.    Plaintiff refers to and incorporates herein by reference as though fully set forth below, its

23 allegations contained in paragraphs 1 through 7, inclusive, above herein.

24     9.    Plaintiff entered into a written subcontract with BHL Services, Inc. ("BHL") to provide

25 HVAC Installation and repairs on the work of improvement commonly known as Techshop – San Jose,

26 38/40 S. 2nd St., San Jose, California. ("Project").

27     10.   Plaintiff performed all of its work under the written subcontract but has not been paid by

28 BHL.

       11.   Plaintiff is informed and believes, and thereon alleges, that, at all times mentioned,

{2602 23993}                                    2

                                        **COMPLAINT**

1 Defendants New Century, Techshop and Techshop San Jose; and Does 1 through 75, inclusive, were and
2 now are the reputed owners and/or have a leasehold interest in the aforementioned Project.

3      12.    Plaintiff is further informed and believes and thereon alleges that Defendants, Does 76
4 through 100, inclusive, claim to have some right, title or interest in the above real property, the exact
5 nature of which claim or claims is unknown to Plaintiff which claim or claims are subordinate to the
6 claim of lien of Plaintiff. Said real property is located in the County of Santa Clara, State of California.

7      13.    Plaintiff is further informed and believes and thereon alleges that BHL entered into a
8 contract with Defendants Techshop and Techshop San Jose to construct and build out the Project.

9      14.    Within the time prescribed by law, and in the manner prescribed by law, Plaintiff served
10 Defendants with a California 20-day preliminary notice via certified mail pursuant to the provisions of
11 California Civil Code Section 8034(a), 8102, 8106-8118, 8200 et seq. Said notice contained a general
12 description of the materials and supplies furnished by Plaintiff, an estimate of the total price thereof,
13 Plaintiff's name and address, the name of the person who contracted for said materials and supplies, a
14 description of the jobsite sufficient for identification, and a statement that if bills were not paid, the
15 improved property might be subject to mechanic's liens.

16      15.    The materials furnished by Plaintiff for which payment remains outstanding were and are
17 reasonably worth the sum of $425,642.64. Within the time prescribed by law, Plaintiff recorded and
18 served a verified claim of lien, notice of mechanics lien and proof of service affidavit in the office of the
19 County Recorder of the County of Santa Clara, where said real property is located. The amount of
20 $425,642.64 is due, owing and unpaid for labor and materials provided by Plaintiff and intended to be
21 used on and which were actually used in the construction of the work of improvement constructed on the
22 real property referred to in this cause of action. The cost of verifying and recording the claim of lien was
23 $39.00, no part of which has been paid. Said lien was duly signed and verified and contained statements
24 of the following: amount of lien, name of the owner or reputed owner, a general statement of the kind of
25 work done or the materials furnished by Plaintiff, the name of the person by whom Plaintiff was
26 employed or to whom Plaintiff furnished its labor, services and/or materials, and a description of the
27 property sought to be charged with a lien sufficient for identification.

28      **WHEREFORE**, Plaintiff prays for judgment against the Defendants, as follows:

Case: 18-50398   Doc# 139   Filed: 07/26/18   Entered: 07/26/18 16:24:11   Page 3 of 30

lanak&hanna

**AS TO THE FIRST CAUSE OF ACTION:**

1.     For the sum of $425,642.64, together with interest at the legal rate from June 28, 2017, until paid, and Plaintiffs' costs of suit, to be adjudged and decreed to be a lien upon the real property described in this Complaint.

2.     That the demands of Plaintiff, and all persons having claims of lien or any interest in the real property sued upon herein, be ascertained and adjudged, and that the interest of the Defendants and the interests of any person claiming under them, be sold under the decree of this Court, according to law, to satisfy the amount of the lien so ascertained and adjudged, with costs of this action, including the sum paid for verifying and recording the lien of Plaintiff sued upon herein.

3.     That Defendants and all persons claiming under them, either as purchaser, encumbrances or otherwise, be barred and foreclosed of all rights, claims and equities of redemption in and to said property and every part thereof; and that the claim of lien of Plaintiff sued upon herein be adjudged a prior lien upon the lands and premises above mentioned; and that Plaintiff may be a purchaser at the sale of said premises prayed for as aforesaid, and that said purchaser be let into possession of said premises on production of a sheriff's deed.

**AS TO ALL CAUSES OF ACTION:**

4.     For costs of suit herein included;

5.     For such other and further relief as the court may deem proper.


DATED: July 14, 2017            LANAK & HANNA, P.C.


                               By: _____
                                   MICHAEL K. MURRAY
                                   Attorneys for Plaintiff
                                   RUSSELL COLE dba DELTA MECHANICAL

{2602 23993}                          4
                              **COMPLAINT**

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 4 of 30

ENDORSED FILED

2017 JUL 27 AM 11: 05

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ DEPUTY

1 LANAK & HANNA, P.C.
Frank J. Lanak, Esq. (Bar No. 43487)
2 Michael K. Murray, Esq. (Bar No. 265785)
625 The City Drive South, Suite 190
3 Orange, CA 92868
Telephone:    (714) 620-2350
4 Facsimile:    (714) 703-1610
mkmurray@lanak-hanna.com
5
Attorneys for Plaintiff
6 A&E ELECTRICAL COMPANY, INC.

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SANTA CLARA

10

11 A&E ELECTRICAL COMPANY, INC. a        Case No.    **17CV313621**
California corporation,
12                                       *Unlimited Jurisdiction*
            Plaintiffs,
13                                       COMPLAINT FOR:
v.
14                                       1. FORECLOSURE OF MECHANICS
NEW CENTURY COMMONS, LLC, a California         LIEN
15 limited liability company.
TECHSHOP LLC, a California limited liability
16 company;
TECHSHOP SAN JOSE LLC., a California      **BY FAX**
17 limited liability company; and
DOES 1 through 100, inclusive,
18
            Defendants.
19

20

21            AMOUNT OF COMPLAINT $223,957.95

22    Plaintiff alleges:

23            GENERAL ALLEGATIONS

24    1.    Plaintiff was at all times mentioned a California corporation authorized to do business

25 and doing business in the State of California.

26    2.    Plaintiff is, and at all times herein was, licensed by the California Contractors License

27 Board to perform all the work set forth herein.

28    3.    Plaintiff is informed and believes, and thereon alleges, that, at all times mentioned,

(2603 23994)                        1
                                COMPLAINT

1  Defendants were residents of and/or doing business in the County of Santa Clara, State of California,
2  and within this judicial district; and further, that the activities complained of and/or obligations sued on
3  arose within this judicial district; and, that the Defendants are indebted to Plaintiff on the obligations
4  sued on.

5        4.      Plaintiff is informed and believes and thereon alleges that Defendant New Century
6  Commons, LLC is a California limited liability company and is hereinafter referred to as "New
7  Century."

8        5.      Plaintiff is informed and believes and thereon alleges that Defendant Techshop LLC is a
9  California limited liability company and is hereinafter referred to as "Techshop"

10       6.      Plaintiff is informed and believes and thereon alleges that Defendant Techshop San Jose
11 LLC is a California limited liability company and is hereinafter referred to as "Techshop San Jose."

12       7.      Plaintiff is ignorant of the true names and capacities of the Defendants sued as Does 1
13 through 100, inclusive. Therefore, Plaintiff sues these Defendants by such fictitious names. Plaintiff will
14 amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed
15 and believes, and thereon alleges, that each of the fictitiously named Defendants is indebted to Plaintiff
16 as alleged, and that Plaintiff's rights against such fictitiously named Defendants arises from such
17 indebtedness.

### FIRST CAUSE OF ACTION

### FORECLOSURE OF MECHANICS LIEN

**(As Against Defendants New Century, Techshop, Techshop San Jose and
Does 1 through 75, inclusive)**

8.      Plaintiff refers to and incorporates herein by reference as though fully set forth below, its
allegations contained in paragraphs 1 through 7, inclusive, above herein.

9.      Plaintiff entered into a written subcontract with BHL Services, Inc. ("BHL") to provide
electrical services and materials on the work of improvement commonly known as Techshop – San Jose,
40 S. 2nd St., San Jose, California. ("Project").

10.     Plaintiff performed all of its work under the written subcontract but has not been paid by
BHL.

11.     Plaintiff is informed and believes, and thereon alleges, that, at all times mentioned,

(2603 23994)

2

COMPLAINT

lanak&hanna

1  Defendants New Century, Techshop and Techshop San Jose; and Does 1 through 75, inclusive, were and
2  now are the reputed owners and/or have a leasehold interest in the aforementioned Project.

3      12.      Plaintiff is further informed and believes and thereon alleges that Defendants, Does 76
4  through 100, inclusive, claim to have some right, title or interest in the above real property, the exact
5  nature of which claim or claims is unknown to Plaintiff which claim or claims are subordinate to the
6  claim of lien of Plaintiff.  Said real property is located in the County of Santa Clara, State of California.

7      13.      Plaintiff is further informed and believes and thereon alleges that BHL entered into a
8  contract with Defendants Techshop and Techshop San Jose to construct and build out the Project.

9      14.      Within the time prescribed by law, and in the manner prescribed by law, Plaintiff served
10  Defendants with a California 20-day preliminary notice via certified mail pursuant to the provisions of
11  California Civil Code Section 8034(a), 8102, 8106-8118, 8200 et seq.  Said notice contained a general
12  description of the materials and supplies furnished by Plaintiff, an estimate of the total price thereof,
13  Plaintiff's name and address, the name of the person who contracted for said materials and supplies, a
14  description of the jobsite sufficient for identification, and a statement that if bills were not paid, the
15  improved property might be subject to mechanic's liens.

16      15.      The materials furnished by Plaintiff for which payment remains outstanding were and are
17  reasonably worth the sum of $223,957.95. Within the time prescribed by law, Plaintiff recorded and
18  served a verified claim of lien, notice of mechanics lien and proof of service affidavit in the office of the
19  County Recorder of the County of Santa Clara, where said real property is located.  The amount of
20  $223,957.95 is due, owing and unpaid for labor and materials provided by Plaintiff and intended to be
21  used on and which were actually used in the construction of the work of improvement constructed on the
22  real property referred to in this cause of action. The cost of verifying and recording the claim of lien was
23  $39.00, no part of which has been paid. Said lien was duly signed and verified and contained statements
24  of the following:  amount of lien, name of the owner or reputed owner, a general statement of the kind of
25  work done or the materials furnished by Plaintiff, the name of the person by whom Plaintiff was
26  employed or to whom Plaintiff furnished its labor, services and/or materials, and a description of the
27  property sought to be charged with a lien sufficient for identification.

28      **WHEREFORE**, Plaintiff prays for judgment against the Defendants, as follows:

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 7 of
30

lanak&hanna

**AS TO THE FIRST CAUSE OF ACTION:**

1.     For the sum of $223,957.95, together with interest at the legal rate from May 10, 2017, until paid, and Plaintiffs' costs of suit, to be adjudged and decreed to be a lien upon the real property described in this Complaint.

2.     That the demands of Plaintiff, and all persons having claims of lien or any interest in the real property sued upon herein, be ascertained and adjudged, and that the interest of the Defendants and the interests of any person claiming under them, be sold under the decree of this Court, according to law, to satisfy the amount of the lien so ascertained and adjudged, with costs of this action, including the sum paid for verifying and recording the lien of Plaintiff sued upon herein.

3.     That Defendants and all persons claiming under them, either as purchaser, encumbrances or otherwise, be barred and foreclosed of all rights, claims and equities of redemption in and to said property and every part thereof; and that the claim of lien of Plaintiff sued upon herein be adjudged a prior lien upon the lands and premises above mentioned; and that Plaintiff may be a purchaser at the sale of said premises prayed for as aforesaid, and that said purchaser be let into possession of said premises on production of a sheriff's deed.

**AS TO ALL CAUSES OF ACTION:**

4.     For costs of suit herein included;

5.     For such other and further relief as the court may deem proper.

DATED:  July 2ᵗ, 2017          LANAK & HANNA, P.C.


By: _____
        MICHAEL K. MURRAY
        Attorneys for Plaintiff
        A&E ELECTRICAL COMPANY, INC.

{2603 23994}                                    4
                              **COMPLAINT**

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 8 of 30

1   LANAK & HANNA, P.C.
    Craig P. Bronstein, Esq. (Bar No. 174124)
2   Michael K. Murray, Esq. (Bar No. 265785)
    625 The City Drive South, Suite 190
3   Orange, CA 92868
    Telephone:   (714) 620-2350
4   Facsimile:    (714) 703-1610
    mkmurray@lanak-hanna.com
5

6   Attorneys for Plaintiff
    BHL SERVICES, INCORPORATED

ENDORSED

2017 OCT 23 A 8:44

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY: _____ DEPUTY
V. Taylor



7

8         SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF SANTA CLARA

10

11   BHL SERVICES, INCORPORATED, a       Case No.   **17CV317886**
    Minnesota corporation
12                             *Unlimited Jurisdiction*
        Plaintiffs,
13                        COMPLAINT FOR:
    v.
14                          1.   **BREACH OF CONTRACT**
    TECHSHOP SAN JOSE LLC., a California     2.   **WORK, LABOR AND**
15   limited liability company,                     **MATERIALS/AGREED PRICE**
    NEW CENTURY COMMONS, LLC, a California   3.   **OPEN BOOK ACCOUNT**
16   limited liability company,                     4.   **ACCOUNT STATED**
    TECHSHOP LLC, a California limited liability   5.   **FORECLOSURE OF MECHANICS**
17   company; and                            **LIEN**
    DOES 1 through 100, inclusive,
18

19         Defendants.                 # By Fax

20

21         AMOUNT OF COMPLAINT $688,622.57

22     Plaintiff BHL SERVICES INCORPORATED, a Minnesota corporation (hereinafter "Plaintiff")

23   hereby alleges:

24                 GENERAL ALLEGATIONS

25     1.    Plaintiff was at all times mentioned, and now is, a Minnesota corporation authorized to

26   do business and is doing business in the State of California.

27     2.    At all relevant times herein Plaintiff was a licensed contractor licensed by the California

28   Contractors License Board to perform all the work set forth herein.

{260023982}                       1
                        COMPLAINT

3. Plaintiff is informed and believes, and thereon alleges, that, at all times mentioned, Defendants were residents of and/or doing business in the County of Santa Clara, State of California, and within this judicial district; and further, that the activities complained of and/or obligations sued on arose within this judicial district; and, that the Defendants are indebted to Plaintiff on the obligations sued on.

4. Plaintiff is informed and believes and thereon alleges that Defendant Techshop San Jose LLC is a California limited liability company and is hereinafter referred to as "Techshop San Jose."

5. Plaintiff is informed and believes and thereon alleges that Defendant New Century Commons, LLC is a California limited liability company and is hereinafter referred to as "New Century."

6. Plaintiff is informed and believes and thereon alleges that Defendant Techshop LLC is a California limited liability company and is hereinafter referred to as "Techshop"

7. Plaintiff is ignorant of the true names and capacities of the Defendants sued as Does 1 through 100, inclusive. Therefore, Plaintiff sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is indebted to Plaintiff as alleged, and that Plaintiff's rights against such fictitiously named Defendants arises from such indebtedness.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

**(As Against Defendants TECHSHOP SAN JOSE, and Does 1 through 25, inclusive)**

8. Plaintiff refers to and incorporates herein by reference, as though fully set forth below, its allegations contained in Paragraphs 1 through 7 herein.

9. On or about May 10, 2016, Plaintiff and Defendants· Techshop San Jose, and Does 1 through 25, inclusive, entered into a written credit agreement ("Agreement") under which Plaintiff would perform certain work at the work of improvement commonly known as Techshop – San Jose, 40 S. 2nd St., San Jose, California. ("Project"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1** and incorporated herein by reference.

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 10 of 30

10.     Plaintiff has performed all its requirements under the Agreement and completed all of its work required under its Agreement with Defendants Techshop San Jose, and Does 1 through 25.

11.     Defendants Techshop San Jose, and Does 1 through 25, inclusive, have breached the Agreement by failing to pay the sum of $688,622.57 due and owing to Plaintiff for work performed by Plaintiff under the Agreement.

12.     By reason of the foregoing and of the failure and refusal of Defendants Techshop San Jose, and Does 1 through 25, inclusive, and each of them, to perform their obligations under the Agreement and as a result of their breach of the same, Plaintiff has been damaged in the principal sum of $688,622.57 plus interest at the maximum legal rate from the date payment became due until paid, plus attorneys' fees and costs of suit.

## SECOND CAUSE OF ACTION

### WORK, LABOR AND MATERIALS/AGREED PRICE

**(As Against Defendants TECHSHOP SAN JOSE, and Does 1 through 25, inclusive)**

13.     Plaintiff refers to and incorporates herein by reference, as though fully set forth below, its allegations contained in Paragraphs 1 through 7 herein.

14.     Within the last four years Defendants Techshop San Jose, and Does 1 through 25, inclusive, became indebted to Plaintiff in the agreed principal sum of $688,622.57 for construction related goods and materials, delivered by Plaintiff to Defendants Techshop San Jose, and Does 1 through 25, inclusive, for use on the Project, and Defendants Techshop San Jose, and Does 1 through 25, inclusive, then and there agreed to pay the amount.

15.     Neither the whole nor any part of the above sum has been paid, although demand therefore has been made, and there is now due, owing and unpaid, from Defendants Techshop San Jose, and Does 1 through 25, inclusive, to Plaintiff, the principal sum of $688,622.57, plus interest at the agreed rate of 10% per annum from the date payment became due, until paid.

## THIRD CAUSE OF ACTION

### OPEN BOOK ACCOUNT

**(As Against Defendants TECHSHOP SAN JOSE, and Does 1 through 25, inclusive)**

16.     Plaintiff refers to and incorporates herein by reference, as though fully set forth below, its

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 11 of 30

lanak&hanna

allegations contained in Paragraphs 1 through 7 herein.

17.     Within the last four years, Defendants Techshop San Jose, and Does 1 through 25, inclusive, became indebted to Plaintiff on an open-book account for money due in the principal sum of $688,622.57 for construction related goods and materials delivered by Plaintiff to Defendants Techshop San Jose, and Does 1 through 25, inclusive, and at Defendants Techshop San Jose, and Does 1 through 25, inclusive's special insistence and request, and for which Defendants Techshop San Jose, and Does 1 through 25, inclusive, agreed to pay the above sum.

18.     Neither the whole nor any part of the above sum has been paid, although demand therefore has been made, and there is now due, owing and unpaid the principal sum of $688,622.57 plus interest at rate of 10% per annum from the date payment became due until paid, plus statutory attorneys' fees and costs of suit.

## FOURTH CAUSE OF ACTION

## ACCOUNT STATED

**(As Against Defendants TECHSHOP SAN JOSE, and Does 1 through 25, inclusive)**

19.     Plaintiff refers to and incorporates herein by reference, as though fully set forth below, its allegations contained in Paragraphs 1 through 7 herein.

20.     Within the last four years an account was stated in writing by and between Plaintiff and Defendants Techshop San Jose, and Does 1 through 25, inclusive, wherein it was agreed that Defendants Techshop San Jose, and Does 1 through 25, inclusive, were indebted to Plaintiff in the principal sum of $688,622.57.

21.     Neither the whole nor any part of the above sum has been paid, although demand therefore has been made, and there is now due, owing and unpaid the principal sum of $688,622.57 together with interest at the rate of 10% per annum from the date each invoice became due, until paid, plus attorneys' fees and costs of suit.

## FIFTH CAUSE OF ACTION

## FORECLOSURE OF MECHANICS LIEN

**(As Against Defendants YSHRE; and Does 26 through 50, inclusive)**

22.     Plaintiff refers to and incorporates herein by reference as though fully set forth below, its

Case: 18-50398     Doc# 139     Filed: 07/26/18     Entered: 07/26/18 16:24:11     Page 12 of 30

1  allegations contained in paragraphs 1 through 11, inclusive, above herein.

2      23.    Plaintiff is informed and believes, and thereon alleges, that, at all times mentioned,

3  Defendants New Century, Techshop and Techshop San Jose; and Does 1 through 75, inclusive, were and

4  now are the reputed owners and/or have a leasehold interest in the aforementioned Project.

5      24.    Plaintiff is further informed and believes and thereon alleges that Defendants, Does 76

6  through 100, inclusive, claim to have some right, title or interest in the above real property, the exact

7  nature of which claim or claims is unknown to Plaintiff which claim or claims are subordinate to the

8  claim of lien of Plaintiff. Said real property is located in the County of Santa Clara, State of California.

9      25.    Although not legally required, within the time prescribed by law, and in the manner

10 prescribed by law, Plaintiff served Defendants with a California 20-day preliminary notice via certified

11 mail pursuant to the provisions of California Civil Code Section 8034(a), 8102, 8106-8118, 8200 et seq.

12 Said notice contained a general description of the materials and supplies furnished by Plaintiff, an

13 estimate of the total price thereof, Plaintiff's name and address, the name of the person who contracted

14 for said materials and supplies, a description of the jobsite sufficient for identification, and a statement

15 that if bills were not paid, the improved property might be subject to mechanic's liens.

16     26.    The work, labor and materials furnished by Plaintiff for which payment remains

17 outstanding were and are reasonably worth the sum of $688,622.57. Within the time prescribed by law,

18 Plaintiff recorded and served a verified claim of lien, notice of mechanics lien and proof of service

19 affidavit in the office of the County Recorder of the County of Santa Clara, where said real property is

20 located. The amount of $688,622.57 is due, owing and unpaid for labor and materials provided by

21 Plaintiff and intended to be used on and which were actually used in the construction of the Project. The

22 cost of verifying and recording the claim of lien was $36.00, no part of which has been paid. Said lien

23 was duly signed and verified and contained statements of the following:  amount of lien, name of the

24 owner or reputed owner, a general statement of the kind of work done or the materials furnished by

25 Plaintiff, the name of the person by whom Plaintiff was employed or to whom Plaintiff furnished its

26 labor, services and/or materials, and a description of the property sought to be charged with a lien

27 sufficient for identification.

28     **WHEREFORE**, Plaintiff prays for judgment against the Defendants, as follows:

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 13 of
30

lanak&hanna

**AS TO THE FIRST, SECOND, THIRD AND FOURTH CAUSES OF ACTION:**

1.  For judgment against Defendant Techshop San Jose LLC, a California limited liability company, and Does 1 through 25, inclusive, for the principal sum of $688,622.57, plus interest at the rate of 10% per month, from the date payment became past due, until paid, plus reasonable attorneys' fees and costs of suit.

**AS TO THE FIFTH CAUSES OF ACTION:**

2.  For the sum of $688,622.57, together with interest at the legal rate from July 26, 2017, until paid, and Plaintiffs' costs of suit, to be adjudged and decreed to be a lien upon the real property described in this Complaint.

3.  That the demands of Plaintiff, and all persons having claims of lien or any interest in the real property sued upon herein, be ascertained and adjudged, and that the interest of the Defendants and the interests of any person claiming under them, be sold under the decree of this Court, according to law, to satisfy the amount of the lien so ascertained and adjudged, with costs of this action, including the sum paid for verifying and recording the lien of Plaintiff sued upon herein.

4.  That Defendants and all persons claiming under them, either as purchaser, encumbrances or otherwise, be barred and foreclosed of all rights, claims and equities of redemption in and to said property and every part thereof; and that the claim of lien of Plaintiff sued upon herein be adjudged a prior lien upon the lands and premises above mentioned; and that Plaintiff may be a purchaser at the sale of said premises prayed for as aforesaid, and that said purchaser be let into possession of said premises on production of a sheriff's deed.

**AS TO ALL CAUSES OF ACTION:**

5.  For costs of suit herein included;

6.  For reasonable attorneys' fees;

7.  For such other and further relief as the court may deem proper.

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 14 of 30

DATED: October 9, 2017          LANAK & HANNA, P.C.

By: _____
          MICHAEL K. MURRAY
          Attorneys for Plaintiff
          BHL SERVICES INCORPORATED

{2600 23982}

7

**COMPLAINT**

# EXHIBIT 1

# CONSTRUCTION CONTRACT

This Construction Contract (this "Agreement") is made and entered into as of May 10, 2016, by and between TECHSHOP San Jose, LLC, a California limited liability company (the "Owner"), and BHL Services, Inc. (the "Contractor") in connection with the construction of the Project described below.

### ARTICLE I

### GENERAL TERMS

**PROJECT:**  TechShop San Jose
40 S. Second Street
San Jose, CA 95113
1501-5

**OWNER:**  TECHSHOP LLC
C/o TechShop, Inc.
120 Independence Drive
Menlo Park, CA  94025

**ARCHITECT:**  Gibson, Mancini, Carmichael & Nelson, PA

**CONTRACTOR:**  BHL Services, Inc.
3939 Chandler Drive NE
Minneapolis, MN 55421
Attn: Bill Lloyd

**NOTICES:**  All notices given by either party to the other under this Agreement must be given in writing. Written notice shall be deemed to have been duly given if hand delivered, or if sent by certified mail, return receipt requested, or by recognized national overnight delivery service, to the last business address known to the party that gives the notice. The notice addresses of each of the parties shall be as set forth at the beginning of this Agreement, until changed by such party by subsequent notice given under the terms of this Agreement.

**CONTRACT PRICE:**  See Exhibit B attached hereto.

**RETAINAGE PERCENTAGE:**  10 Percent

**CONTRACT TIME:**  Contractor agrees to begin the Contractor's Work not later than 7 days after Owner issues to Contractor a written notice to proceed, and to achieve final completion of the Contractor's Work in accordance with this Agreement not later than May 1, 2017 (157) calendar days later.

**PAYMENT AND
PERFORMANCE BOND:** ☐ Required     X  Not Required

DB04/830929.0002/5147489.1

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 17 of 30

## ARTICLE 2

### SCOPE OF WORK

**2.1 CONTRACTOR'S WORK.** The Owner hereby engages the Contractor as an independent contractor, to perform the work described in Exhibit A (hereinafter called the "Contractor's Work") relating to construction of the Project. The Contractor agrees to perform the Contractor's Work under the general direction of the Owner and in accordance with this Agreement and the Contract Documents. If the Contractor's Work is only a portion of the work (the "Work") required to complete the Project, then Contractor acknowledges that Owner or other contractors will complete the remainder of the Work, and Contractor agrees to cooperate with Owner or such other contractors to facilitate completion of the entire Work in a timely manner.

**2.2 CONTRACT DOCUMENTS.** The Contract Documents are as set forth in Exhibit C. Upon the Contractor's request the Owner shall furnish a copy of any part of these documents.

**2.3 CONFLICTS.** In the event of a conflict between this Agreement and the Contract Documents, this Agreement shall govern.

### ARTICLE 3

### CONTRACT TIME

**3.1 TIME IS OF ESSENCE.** Time is of the essence for both parties, and they mutually agree to see to the performance of their respective work and the work of their contractors and subcontractors so that the entire Project may be completed in accordance with the Contract Documents and within the Contract Time specified on the first page hereof.

**3.2 PREPARATION/CHANGES.** The Contractor shall complete the Contractor's Work within the Contract Time. The Contractor shall provide the Owner with any requested scheduling information for the Contractor's Work. In the event of any Change Order or any delay described in Section 6.5, the Contract Time shall be revised as set forth herein.

### ARTICLE 4

### CONTRACT PRICE

The Owner agrees to pay to the Contractor for the satisfactory performance of the Contractor's Work the amount (the "Contract Price") stated in or determined in accordance with Exhibit B, subject to additions or deductions set forth in Article 6.

### ARTICLE 5

### PAYMENT

**5.1 GENERAL PROVISIONS.** Payments of the Contract Price shall be made to Contractor as set forth in Exhibit B. All of the following provisions apply, unless otherwise stated in Exhibit B:

**5.1.1 PAYMENT USE RESTRICTION.** Payments received by the Contractor shall be used to satisfy the indebtedness owed by the Contractor to any person furnishing labor or materials for use in performing the Contractor's Work on the Project before they are used in any other manner. The Owner shall have the right at all times to contact the Contractor's subcontractors and suppliers to ensure that the same are being paid promptly by the Contractor for labor or materials furnished for use in performing the Contractor's Work.

**5.1.2 PARTIAL LIEN WAIVERS AND AFFIDAVITS.** As a prerequisite for payment, the Contractor shall provide, in a form satisfactory to the Owner, partial lien or claim waivers and affidavits from the Contractor, and its subcontractors and suppliers for the completed Contractor's Work. Such waivers may be made conditional upon payment.

**5.1.3 CONTRACTOR PAYMENT FAILURE.** Contractor shall promptly pay its subcontractors and material suppliers the amounts to which they are entitled. In the event the Owner has reason to believe that such persons are not being paid, the Owner may give written notice thereof to the Contractor and may take any steps deemed necessary to assure that progress payments are utilized to pay such obligations including but not limited to the issuance of joint checks. If upon receipt of said notice, the Contractor does not (a) supply evidence to the satisfaction of the Owner that the moneys owing to the claimant(s) have been paid; or (b) post a bond indemnifying the Owner and the Owner's surety, if any, and the premises from such claim or lien, then the Owner shall have the right to withhold from any payments due or to become due to the Contractor a reasonable amount to protect the Owner from any and all loss, damage or expense including attorney's fees arising out of or relating to any such claim or lien until the claim or lien has been satisfied by the Contractor.

**5.1.4 CONTRACTOR ASSIGNMENT OF PAYMENTS.** The Contractor shall not assign its rights or delegate its duties under this Agreement or to any moneys due or to become due under this Agreement, or under any Change Order, without the written consent of Owner, except for a security interest to Contractor's lender within the scope of Article 9 of the Uniform Commercial Code. The rights of any assignee under any such assignment, whether or not permitted hereby, shall be subject to the claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the Work under this Agreement, any Change Orders, and any other claim by Owner.

**5.1.5 PAYMENT/INSPECTION NOT ACCEPTANCE.** Neither payment to the Contractor nor inspection by Owner shall constitute or imply acceptance by the Owner of any portion of the Contractor's Work.

**5.2 PROGRESS PAYMENTS**

**5.2.1 APPLICATION.** Unless otherwise stated in Exhibit B, Contractor's application for payment shall be itemized and supported by substantiating data as required in the Contract Documents. The Contractor's progress payment application for work performed in the preceding payment period shall be sub-

DB04/830929.0002/5147489.1

Case: 18-50398     Doc# 139     Filed: 07/26/18     Entered: 07/26/18 16:24:11     Page 18 of 30

mitted to the Owner in accordance with this Agreement for approval of the Owner.

**5.2.2 TIME OF APPLICATION.** The Contractor shall submit progress payment applications to the Owner on a periodic basis a set forth in Exhibit B for work performed and, to the extent allowed under Subparagraph 5.2.3, materials suitably stored during such period.

**5.2.3 STORED MATERIALS.** Unless otherwise provided in the Contract Documents, and if approved in advance by the Owner, applications for payment may include materials and equipment not incorporated in the Contractor's Work but delivered to and suitably stored at the site or at some other location agreed upon in writing. Approval of payment applications for such stored items on or off the site shall be conditioned upon submission by the Contractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest therein, including transportation to the site.

**5.2.4 RETAINAGE/SECURITY.** Provided that the application for payment contains the information required under this Agreement, the Contractor has completed the Contractor's Work as indicated on the application and to the satisfaction of the Owner, Contractor has provided all lien releases and waivers as provided in this Agreement, and Owner is not otherwise entitled to withhold payment, then Owner shall approve the application and pay the progress payment to the Contractor no later than fifteen (15) days after receipt by the Owner of the application and all supporting documentation. Owner may retain from each periodic progress payment an amount equal to the Retainage Percentage multiplied by the amount of the requested payment set forth in the related application. Such amount shall be retained by the Owner pending final completion of the Contractor's Work in accordance with this Agreement and to the satisfaction of the Owner.

**5.3 FINAL PAYMENT**

**5.3.1 APPLICATION.** Upon acceptance of the Contractor's Work by the Owner; and upon the Contractor having performed in full the Contractor's obligations in accordance with the Contract Documents (other than Contractor's responsibility to correct Contractor's Work after substantial completion of the Contractor's Work as provided herein, and to satisfy other requirements, if any, which extend beyond final payment) and Subparagraph 5.3.2, the Owner shall forward the final payment without delay, including all amounts retained by the Owner pursuant to Section 5.2.4.

**5.3.2 REQUIREMENTS.** Before the Contractor shall forward application for final payment to the Owner, the Contractor shall submit to the Owner:

(a) an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Contractor's Work for which the Owner or its property or the Contractor or the Contractor's surety might in any way be liable, have been paid or otherwise satisfied;

(b) A Certificate of Occupancy;

(c) A Punch List approved by Owner and Contractor;

(c) Final lien waivers from all subcontractors;

(d) Warranty letters from all subcontractors;

(e) A complete list of Subcontractors used to complete the Contractor's Work; and

(f) Other data if required by the Owner, such as receipts, releases, and waivers of liens to the extent and in such form as may be designated by the Owner.

Final payment shall constitute a waiver of all claims by the Contractor relating to the Contractor's Work, but shall in no way relieve the Contractor of liability for the obligations assumed under Paragraph 9.4, or for faulty or defective work appearing after final payment

**5.3.3 TIME OF FINAL PAYMENT.** Final payment of the balance due of the Contract Price shall be made to the Contractor no later than fifteen (15) days after receipt by the Owner of the application for final payment, all supporting documentation required by the Owner, and completion by the Contractor of the requirements listed in Section 5.3.2.

## ARTICLE 6

### CHANGES, CLAIMS AND DELAYS

**6.1 CHANGES.** When the Owner orders in writing, the Contractor, without nullifying this Agreement, shall make any and all changes in the Contractor's Work which are within the general scope of this Agreement. Adjustments in the Contract Price or Contract Time, if any, resulting from such changes shall be set forth in a Change Order pursuant to the Contract Documents. No such adjustments shall be made for any changes performed by the Contractor that have not been ordered by the Owner. A Change Order is a written instrument prepared by the Owner and signed by the Contractor stating their agreement upon the change in the scope of the Work, adjustment in the Contract Price or Contract Time.

**6.2 CLAIMS RELATING TO OWNER.** The Contractor shall give the Owner written notice of all claims against Owner within thirty (30) days of the occurrence of the event for which claim is made; otherwise, such claims shall be deemed waived. All unresolved claims, disputes and other matters in question between the Contractor and the Owner shall be resolved in the manner provided in Article 14.

**6.3 ADJUSTMENT IN CONTRACT PRICE.** If a Change Order requires an adjustment in the Contract Price, the adjustment shall be established by one of the following methods:

1. mutual agreement on a lump sum with sufficient information to substantiate the amount;

2. unit prices already established in the Contract Documents or if not established by the Contract Documents then established by mutual agreement for this adjustment; or

3. A mutually determined cost plus a jointly acceptable allowance for overhead and profit.

**6.5 SUBSTANTIATION OF ADJUSTMENT.** If the Contractor does not respond promptly or disputes the method of adjustment, the method and the adjustment shall be determined by the Owner on the basis of reasonable expenditures and savings of those performing the Contractor's Work attributable to the change, including, in the case of an increase in the Contract Price, an allowance for overhead and profit based on Contract Documents. The Contractor shall maintain for the Owner's review and approval an appropriately itemized and

Page 3

DB04/830929.0002/5147489.1

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 19 of 30

substantiated accounting of the following items attributable to the Change Order:

1. labor costs, including Social Security, health, welfare, retirement and other fringe benefits as normally required, and state workers' compensation insurance;
2. Costs of materials, supplies and equipment, whether incorporated in the Work or consumed, including transportation costs;
3. Costs of renting of machinery and equipment other than hand tools;
4. Costs of bond and insurance premiums, permit fees and taxes attributable to the change; and
5. Costs of additional supervision and field office personnel services necessitated by the change.

**6.5 DELAY.** If the progress of the Contractor's Work is substantially delayed without the fault or responsibility of the Contractor, then the time for the Contractor's Work shall be extended by Change Order and the Contract Time shall be revised accordingly.

## ARTICLE 7

### OWNER'S OBLIGATIONS

**7.1 AUTHORIZED REPRESENTATIVE.** The Owner shall designate one or more persons who shall be the Owner's authorized representative(s) on-site and off-site.

**7.2 PROJECT COORDINATION.** The Owner shall arrange for all Work, if any, other than Contractor's Work to be performed in a manner so as to permit Contractor to fulfill its obligations hereunder and shall coordinate all Work to be performed with respect to the Project.

## ARTICLE 8

### CONTRACTOR'S OBLIGATIONS

**8.1 PERFORMANCE OF WORK.** The Contractor binds itself to the Owner to perform the Contractor's Work in accordance with this Agreement and the Contract Documents. The Contractor shall make available to its subcontractors the Contract Documents which are binding on the subcontractors. Prior to executing this Agreement, the Contractor shall review the Contract Documents which are binding on the Contractor as set forth in Exhibit C.

**8.2 RESPONSIBILITIES.** The Contractor shall furnish all of the labor, materials, equipment, and services including, but not limited to, competent supervision, shop drawings, samples, tools, and scaffolding as are necessary for the proper performance of the Contractor's Work in strict accordance with and reasonably inferable from the Contract Documents. The Contractor shall provide a list of proposed subcontractors and suppliers, and shall be responsible for taking field dimensions, providing tests, ordering of materials and all other actions as required to complete the Contractor's Work within the Contract Time.

**8.3 SHOP DRAWINGS.** The Contractor shall be responsible to the Owner for the accuracy and conformity with the Contract Documents and other submittals that pertain to Contractor's

Work. Shop drawings, or their approval by the Owner, shall not be deemed to authorize deviations or substitutions from the requirements of the Contract Documents.

**8.4 AUTHORIZED REPRESENTATIVE.** The Contractor shall designate one or more persons who shall be the Contractor's authorized representative(s) on-site and off-site.

**8.5 PROVISION FOR INSPECTION.** The Contractor shall notify the Owner when portions of the Contractor's Work are ready for inspection. The Contractor shall at all times furnish the Owner and its representatives adequate facilities for inspecting materials at the site or any place where materials under this Agreement may be in the course of preparation, process, manufacture or treatment.

**8.6 CLEANUP.** The Contractor shall follow the Owner's cleanup and safety directions, and
   (a) At all times keep the buildings and premises free from debris and unsafe conditions resulting from the Contractor's Work; and
   (b) If applicable, leave each area affected by Contractor's Work in broom clean condition prior to discontinuing work in the same.
If the Contractor fails to immediately commence compliance with cleanup duties within twenty-four (24) hours after written notification from the Owner of noncompliance, the Owner may implement such cleanup measures without further notice and deduct the cost thereof from any amounts due or to become due the Contractor.

**8.7 SAFETY.** The prevention of accidents on or in the vicinity of Contractor's Work is the Contractor's responsibility, even if, the Owner establishes a safety program for the entire Project. Contractor shall establish a safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by the Owner, including, but not limited to, requirements imposed by the Contract Documents. Contractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project, and shall stop any part of the Work which Owner deems unsafe until corrective measures satisfactory to Owner shall have been taken. Owner's failure to stop Contractor's unsafe practices shall not relieve Contractor of the responsibility therefor. Contractor shall notify Owner immediately following any accident and promptly confirm the notice in writing. A detailed written report shall be furnished if requested by the Owner. Contractor shall indemnify Owner for fines, damages or expenses incurred by the Owner because of the Contractor's failure to comply with safety requirements.

**8.8 PROTECTION OF THE WORK.** The Contractor shall take necessary precautions to properly protect the Contractor's Work and the work of others from damage caused by the Contractor's operations. Should the Contractor cause damage to the Work or property of the Owner, or others, the Contractor shall promptly remedy such damage to the satisfaction of the Owner, or the Owner may so remedy and deduct the cost thereof from any amounts due or to become due the Contractor.

**8.9 PERMITS, FEES AND LICENSES.** The Contractor shall give adequate notices to authorities pertaining to the Contractor's Work and secure and pay for all permits, fees, licenses,

DB04/830929.0002/5147489.1

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 20 of 30

assessments, inspections and taxes necessary to complete the Contractor's Work in accordance with the Contract Documents.

**8.10 CONTRACTOR DELEGATION OF WORK.** The Contractor shall not delegate the whole or any part of the Contractor's Work without prior written approval of the Owner. The Owner's approval shall not be unreasonably withheld.

**8.11 NON-CONTRACTED SERVICES.** The Contractor agrees, except as otherwise provided in this Agreement, that no claim for non-contracted construction services rendered or materials furnished shall be valid unless the Contractor provides the Owner notice:
  (a) Prior to furnishing of the services and materials, except in an emergency affecting the safety of persons or property;
  (b) In writing of such claim within three days of first furnishing such services or materials; and
  (c) The written charges for such services or materials no later than the fifteenth (15th) day of the calendar month following that in which the claim originated.

## ARTICLE 9

### ADDITIONAL CONTRACT PROVISIONS

**9.1 WORKMANSHIP** Every part of the Contractor's Work shall be executed in strict accordance with the Contract Documents in a good and workmanlike manner in accordance with best industry practices. All materials used in the Contractor's Work shall be furnished in ample quantities to facilitate the proper and expeditious execution of the work, and shall be new except such materials as may be expressly provided in the Contract Documents to be otherwise.

**9.2 MATERIALS FURNISHED BY OTHERS.** In the event the scope of the Contractor's Work includes installation of materials or equipment furnished by others, it shall be the responsibility of the Contractor to examine the items so provided and thereupon handle, store and install the items with such skill and care as to ensure a satisfactory and proper installation. Loss or damage due to acts of the Contractor shall be deducted from any amounts due or to become due the Contractor.

**9.3 CONTRACT BOND.** If a Performance and Payment Bond is not initially required of the Contractor, then within the duration of this Agreement, the Owner may require such bonds before work is started and the Contractor shall provide the same. Said bonds shall be in the full amount of this Agreement in a form and by a surety satisfactory to the Owner. The Contractor shall be reimbursed without retainage for cost of same simultaneously with the first progress payment hereunder. The reimbursement amount for the bonds shall not exceed the manual rate for such Contractor's Work. In the event the Contractor shall fail to promptly provide such requested bonds, the Owner may terminate this Agreement and re-let the work to another contractor and all Owners' costs and expenses incurred thereby shall be paid by the Contractor.

**9.4 WARRANTY.** The Contractor warrants its work against all deficiencies and defects in materials and/or workmanship for the period of one year from the date(s) of substantial completion of all or a designated portion of the Contractor's Work or acceptance or use by the Owner of designated equipment,

whichever is sooner. The Contractor further agrees to execute any special warranties that shall be required for the Contractor's Work prior to final payment. The Contractor agrees to satisfy such warranty obligations which appear within the warranty period established in the Contract Documents without cost to the Owner.

## ARTICLE 10

### RECOURSE BY OWNER

#### 10.1 FAILURE OF PERFORMANCE

**10.1.1 NOTICE TO CURE.** If the Contractor refuses or fails to supply enough properly skilled workers, proper materials, or to progress with the Contractor's Work in a manner sufficient to result in completion within the Contract Time, or it fails to make prompt payment for its workers, subcontractors or suppliers, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach of a provision of this Agreement, the Contractor shall be deemed in default of this Agreement. If the Contractor fails within three (3) working days after written notification to commence and continue satisfactory correction of such default with diligence and promptness, then the Owner without prejudice to any rights or remedies shall have the right to any or all of the following remedies:
  (a) supply such number of workers and quantity of materials, equipment and other facilities as the Owner deems necessary for the completion of the Contractor's Work; or any part thereof which the Contractor has failed to complete or perform after the aforesaid notice, and charge the cost thereof to the Contractor, who shall be liable for the payment of same including reasonable overhead, profit and attorney's fees;
  (b) contract with one or more additional contractors, to perform such part of the Contractor's Work as the Owner shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to the Contractor; and
  (c) Withhold payment of any moneys due the Contractor pending corrective action in amounts sufficient to cover losses and compel performance to the extent required by and to the satisfaction of the Owner.
In the event of an emergency affecting the safety of persons or property, the Owner may proceed as above without notice.

**10.1.2 TERMINATION BY OWNER.** If the Contractor fails to commence and satisfactorily continue correction of a default within three (3) working days after written notification issued under Subparagraph 10.1.1, then the Owner may, in lieu of or in addition to Subparagraph 10.1.1, issue a second written notification, to the Contractor and its surety, if any. Such notice shall state that if the Contractor fails to commence and continue correction of a default within seven (7) working days of the written notification, the Agreement will be deemed terminated and the Owner may use any materials, implements, equipment, appliances or tools furnished by or belonging to the Contractor to complete the Contractor's Work.
  The Owner also may furnish those materials, equipment and/or employ such workers or contractors as the Owner deems necessary to maintain the orderly progress of the Work.

DB04/830929.0002/5147489.1

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 21 of 30

All costs incurred by the Owner in re-letting the Contractor's Work, including reasonable overhead, profit and attorney's fees, shall be deducted from any moneys due or to become due the Contractor. The Contractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

**10.1.3 USE OF CONTRACTOR'S EQUIPMENT.** If the Owner performs work under this Article or re-lets such work to be so performed, the Owner and/or the persons to whom work has been re-let shall have the right to take and use any materials, implements, equipment, appliances or tools furnished by, belonging or delivered to the Contractor and located at the Project.

**10.2 BANKRUPTCY**

**10.2.1 TERMINATION ABSENT CURE.** If Contractor files a petition under the Bankruptcy Code, this Agreement shall terminate if the Contractor or the Contractor's trustee rejects this Agreement or, if there has been a default, the Contractor is unable to give adequate assurance that the Contractor will perform as required by this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions of the Bankruptcy Code.

**10.2.2 INTERIM REMEDIES.** If the Contractor is not performing in accordance with the Contract Documents at the time a petition in bankruptcy is filed, or at any subsequent time, the Owner, while awaiting the decision of the Contractor or its trustee to reject or to assume this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Article as are reasonably necessary to complete the Contractor's Work within the Contract Time. The Owner may offset against any sums due or to become due the Contractor all costs incurred in pursuing any of the remedies provided hereunder, including, but not limited to, reasonable overhead, profit and attorney's fees. The Contractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

**10.3 SUSPENSION BY OWNER.** The Owner may order the Contractor in writing to suspend, delay, or interrupt all or any part of the Contractor's Work for such period of time as may be determined to be appropriate for the convenience of the Owner. Phased or interrupted Work when required shall not be deemed a suspension of Work. The Contractor shall notify the Owner in writing within ten (10) working days after receipt of the Owner's order of the effect of such order upon the Contractor's Work. The Contract Price or contract time shall be adjusted by Change Order for any increase in the time or cost of performance of this Agreement caused by such suspension, delay, or interruption. No claim under this Article shall be allowed for any costs incurred more than ten (10) working days prior to the Contractor's notice to the Owner. Neither the Contract Price nor the contract time shall be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been so suspended, delayed, or interrupted by the fault or negligence of the Contractor or by a cause for which Contractor would have been responsible. The Contract Price shall not be adjusted under this Article for any suspension, delay or interruption to the extent that performance would have been suspended, de-

layed or interrupted by a cause for which the Contractor would have been entitled only to a time extension under this Agreement.

### ARTICLE 11

### LABOR RELATIONS

Contractor shall comply with all federal, state and local laws, regulations and ordinances relating to labor standards, wages and related matters.

### ARTICLE 12

### INDEMNIFICATION

**12.1 CONTRACTOR'S PERFORMANCE.** To the fullest extent permitted by law, the Contractor shall defend, indemnify and hold harmless, the Owner (including the affiliates, parents and subsidiaries, their agents and employees) and other contractors and subcontractors and all of their agents and employees from and against all claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Agreement provided that:

   (a) any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Contractor's Work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in part by any negligent act or omission of the Contractor or anyone directly or indirectly employed by the Contractor or for anyone for whose acts the Contractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder;

   (b) Such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Article 12.

**12.2 NO LIMITATION UPON LIABILITY.** In any and all claims against the Owner (including its affiliates, parents and subsidiaries), by any employee of the Contractor, anyone directly or indirectly employed by the Contractor or anyone for whose acts the Contractor may be liable, the indemnification obligation under this Article 12 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

**12.3 ARCHITECT EXCLUSION.** The obligation of the Contractor under this Article 12 shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them, arising out of

   (a) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or

   (b) the giving of or the failure to give directions or instructions by the Architect, the Architect's Consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

DB04/830929.0002/5147489.1

**12.4 COMPLIANCE WITH LAWS.** The Contractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances and regulations (hereinafter collectively referred to as "laws") applicable to the Contractor's Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply in performing the Contractor's Work. The Contractor shall be liable to the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Contractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures.

**12.5 PATENTS.** Except as otherwise provided by the Contract Documents, the Contractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Contractor's Work. The Contractor shall defend all suits for claims for infringement of any patent rights arising out of the Contractor's Work, which may be brought against the Owner, and shall be liable to the Owner for all loss, including all costs, expenses, and attorney's fees.

**12.6 OWNER INDEMNIFICATION.** Owner agrees to indemnify and hold Contractor harmless from and against any and all liabilities, damages, costs and expenses (including reasonable attorneys' fees and legal expenses) which Contractor may suffer or incur relating to or arising, directly or indirectly, out of negligent or intentional acts or omissions of Owner or its employees. Contractor shall promptly notify Owner of any third party claim made against it if such Contractor intends to seek indemnity with respect to such claim under this subparagraph. Owner shall have the right to undertake, conduct and control, through counsel of its own choosing, the defense and settlement of any such claim, so long as such settlement does not impose any obligations on Contractor, except for any obligations to which Contractor has consented in writing. Contractor shall have the right to be represented by counsel of its own choosing, but at its own expense. So long as Owner is contesting any such claim in good faith, Contractor shall not pay or settle any claim.

## ARTICLE 13

## INSURANCE

**13.1 CONTRACTOR'S INSURANCE.** Prior to start of the Contractor's Work, the Contractor shall procure and maintain in force Workers' Compensation Insurance, Employer's Liability Insurance, and Comprehensive or Commercial General Liability Insurance (including automobile coverage) on an occurrence basis. The Owner and other parties as designated in the Contract Documents shall be named as additional insureds on each of these policies except for Workers' Compensation. This insurance shall include contractual liability insurance covering the Contractor's obligations under Article 12.

**13.2 MINIMUM LIMITS OF LIABILITY.** The Contractor's Comprehensive or Commercial General Liability Insurance, as required by Paragraph 13.1, shall be written with, limits of liability not less than $1,000,000 for harm (including death) from any one occurrence to any one individual, $5,000,000 in aggregate for harm to persons, including death, from any one occurrence, and $1,000,000 property damage for any one occurrence.

**13.3 NUMBER OF POLICIES.** Comprehensive or Commercial General Liability Insurance and other liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability Policy.

**13.4 CANCELLATION, RENEWAL OR MODIFICATION.** The Contractor shall maintain in effect all insurance coverage required under this Agreement at the Contractor's sole expense and with insurance companies acceptable to the Owner.

All insurance policies shall contain a provision that the coverages afforded thereunder shall not be cancelled or neither renewed, nor restrictive modifications added, until at least thirty (30) days prior written notice has been given to the Owner unless otherwise specifically required in the Contract Documents.

Certificate of Insurance, or certified copies of policies acceptable to the Owner, shall be filed with the Owner prior to the commencement of the Contractor's Work.

In the event the Contractor fails to obtain or maintain any insurance coverage required under this Agreement, the Owner may purchase such coverage and charge the expense thereof to the Contractor, or terminate this Agreement.

The Contractor shall continue to carry completed operations liability insurance for at least two years after final payment. The Contractor shall furnish the Owner evidence of such insurance at final payment and one year thereafter.

**13.5 WAIVER OF RIGHTS.** The Contractor waives all rights against the Owner for loss or damage to the extent covered by Builder's Risk or any other property or equipment insurance, except such rights as they may have to the proceeds of such insurance.

If the Owner has not purchased Builder's Risk Insurance for the full insurable value of the Contractor's Work less a reasonable deductible, then the Contractor may procure such insurance as will protect the interests of the Contractor, its subcontractors and their subcontractors in the Work, and, by appropriate Change Order, the cost of such additional insurance shall be reimbursed to the Contractor.

If not covered under the Builder's Risk policy of insurance or any other property or equipment insurance required by the Contract Documents, the Contractor shall procure and maintain at the Contractor's own expense property and equipment insurance for portions of the Contractor's Work stored off the site or in transit, when such portions of the Contractor's Work are to be included in an application for payment under Article 5.

**13.6 ENDORSEMENT.** If the policies of insurance referred to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

## ARTICLE 14

## ARBITRATION/DISPUTE RESOLUTION

**14.1 AGREEMENT TO ARBITRATE.** All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, and the claims described in Paragraph 14.2, shall be decided by arbitration in accordance with the Construction Industry Arbitration

DB04/830929.0002/5147489.1

Case: 18-50398     Doc# 139     Filed: 07/26/18     Entered: 07/26/18 16:24:11     Page 23 of 30

Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act.

**14.2 EXCEPTIONS.** The agreement to arbitrate shall not apply to any claim:

    (a) of contribution or indemnity asserted by one party to this Agreement against the other party and arising out of an action brought in a state or federal court or in arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either of the parties hereto or does not consent to such arbitration or

    (b) asserted by any subcontractor against the Contractor or the Owner if the Contractor asserts said claim, either in whole or part against the Owner, or asserted by the Owner against the Contractor, when the contract with the subcontractor does not provide for binding arbitration, or does so provide but the two arbitration proceedings are not consolidated, or the subcontractor has not subsequently agreed to arbitrate said claim. In either case the parties hereto shall notify each other either before or after demand for arbitration is made.

In any dispute arising over the application of this Paragraph 14.2, the question of arbitrability shall be decided by the appropriate court and not by arbitration.

**14.3 NOTICE OF DEMAND.** Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The demand for arbitration shall be made as required in the Contract Documents or within a reasonable time after written notice of the claim, dispute or other matter in question has been given, but in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitation, whichever shall first occur. The location of the arbitration proceedings shall be the location of the Project.

**14.4 AWARD.** The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

**14.5 WORK CONTINUATION AND PAYMENT.** Unless otherwise agreed in writing, the Contractor shall carry on the Work in accordance with the Contract Documents pending arbitration. If the Contractor is continuing to perform, the Owner shall continue to make payments in accordance with this Agreement.

**14.6 SAME ARBITRATORS.** To the extent not prohibited by their contracts with others, the claims and disputes of the Owner, Contractor, and other subcontractors involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding.

**14.7 DISPUTE RESOLUTION.** Notwithstanding anything in this Article 14 to the contrary, prior to commencement of arbitration, the parties agree to meet and confer in good faith on all matters of common interest or all controversies, claims, or disputes ("Dispute") which materially affect the performance of either party under this Agreement. As soon as a Dispute is recognized by either party, it will communicate the substance of such Dispute to the other party's authorized representative.

Once a Dispute has been raised, the authorized representatives will make all reasonable efforts to reach a resolution within two (2) weeks after the Dispute has been identified. If the Dispute cannot be resolved between the parties' authorized representatives, then the parties will submit such matters to their respective executive management, who will make all reasonable efforts to reach a resolution within thirty (30) days after the Dispute has been referred to them. Contractor acknowledges that Owner may be irreparably harmed if Contractor's obligations under certain provisions of this Agreement are not met. Contractor recognizes that Owner would not have an adequate or timely remedy at law in the event of such nonperformance. Accordingly, Contractor agrees and consents that in addition to any other remedies at law or in equity that Owner may have, including attorney's fees and related costs, it shall be entitled to an injunction or any appropriate decree of specific performance for Contractor or Contractor personnel.

### ARTICLE 15

### CONTRACT INTERPRETATION

**15.1 INCONSISTENCIES AND OMISSIONS.** Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of the Contractor to so notify the Owner in writing within three (3) working days of the Contractor's discovery thereof. Upon receipt of said notice, the Owner shall instruct the Contractor as to the measures to be taken and the Contractor shall comply with the Owner's instructions.

**15.2 LAW AND EFFECT.** This Agreement shall be governed by the law of the State in which the Project is located.

**15.3 SEVERABILITY AND WAIVER.** The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

**15.4 ATTORNEY'S FEES.** Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, to collect damages for the breach of the Agreement, or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

**15.5 TITLES.** The titles given to the Articles of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purpose.

**15.6 ENTIRE AGREEMENT.** This Agreement is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral.

### ARTICLE 16

DB04/830929.0002/5147489.1

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 24 of 30

## EXHIBITS

**16.1 EXHIBITS.** It is understood the Contractor's Work to be performed under this Agreement, including the terms and conditions thereof, is as described in Articles 1 through 15 together with the Exhibits attached hereto, which are intended to complement same. However, in the event of any inconsistency, the Exhibits shall govern.

**Remainder of Page Intentionally Left Blank**

**Signature Page Follows**

DB04/830929.0002/5147489.1

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 25 of 30

**THIS AGREEMENT CONTAINS PROVISIONS FOR BINDING ARBITRATION**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, the day and year first above written.

OWNER:

TECHSHOP San Jose, LLC

By: _____

Name: Dan Woods

Title: _____CEO_____

CONTRACTOR:

BHL Services, Inc.

By: _____

Name: William Lloyd

Title: _____

DB04/830929.0002/5147489.1

Case: 18-50398    Doc# 139    Filed: 07/26/18    Entered: 07/26/18 16:24:11    Page 26 of 30

## EXHIBIT A

### [Scope of Work]

Perform all work for the completion of the tenant improvements for the Project as more specifically described in this agreement and the Drawings identified in Exhibit C.

Page 11

DB04/830929.0002/5147489.1

[Contract Price/Payment]

## OPTION 1

The Contract Price is a fixed price equal to Two million ninety nine thousand five hundred thirty three Dollars ($2,099,533.00). The Contract Price is the total amount payable by Owner to Contractor for the performance of the Contractor's Work, and includes all insurance and any sales, use, or other tax or charge now or hereafter imposed by any Federal, State, or Municipal law, ordinance or regulations on the sale, production, rental, or transportation of equipment and materials or services provided by Contractor.

No more than fifteen (15) days from the date of execution of this Agreement, the Contractor shall provide to Owner a schedule (the "Schedule of Values") allocating the Contract Price among the various portions or phases (each a "Phase") of the Contractor's Work, which schedule shall be satisfactory to the Owner. Progress payments for each payment period shall be made to Contractor based on the percentage of completion of each Phase during each payment period and the amount allocated to such Phase on the Schedule of Values. Contractor's periodic application for payment shall certify as to the percentage of completion of each Phase and the portion of the Contract Price due for each Phase based on such percentage of completion.

Upon request the Owner shall give the Contractor written authorization to obtain directly from the Architect the percentage of completion certified for the Contractor's Work.

Applications for payment shall be made as outlined in Exhibit B.

DB04/830929.0002/5147489.1

## EXHIBIT C

### [Contract Documents]

In addition to the Agreement, the following Drawings are included in the Contract Documents:

Drawings prepared by Gibson, Mancini, Carmichael & Nelson P.A. for TechShop project in San Jose, California dated 6/2/2016 including addendum 2.

Page 13

DB04/830929.0002/5147489.1

# BHL Services, Inc.
## Pricing for San Jose, CA
### TechShop

| Bid | Trade | Contractor | Contract Amount |
|---|---|---|---|
| 1 | Electrical - Phase 2 | A&E Electric | $ 487,805.00 |
| 2 | Electrical - Phase 1 | A&E Electric | $ 59,730.00 |
| 3 | PG&E ( Deposit) | A&E Electric | $ 2,850.00 |
| 4 | Low Voltage | A&E Electric | $ 31,617.00 |
| 5 | Fire Alarm | Howell Electric | $ 34,143.00 |
| 6 | HVAC | RJA Heating & Air | $ 561,802.00 |
| 7 | Framing/Drywall | B12 Drywall | $ 125,685.00 |
| 8 | Drywall on all pony walls | B12 Drywall | $ 15,645.00 |
| 9 | Backing, re patch, new wall | B12 Drywall | $ 6,531.00 |
| 10 | ACT Ceiling | Spacetone Acoustics, Inc. | $ 19,712.00 |
| 11 | FRP Material | BHL | $ 1,500.00 |
| 12 | Bollards | BHL | $ 2,000.00 |
| 13 | Cable Railing | Simmons Stairways | $ 15,321.00 |
| 14 | Misc. Carpentry | BHL Services | $ 10,000.00 |
| 15 | Focal Stairs | Coyne Stairs | $ 32,900.00 |
| 16 | 3/4" Plywood on Floor | BHL Services (Budget number) | $ 50,000.00 |
| 17 | Plumbing/Compressed Air | Castillos Plumbing | $ 82,703.00 |
| 18 | Fire Protection | AAA Fire Protection Services | $ 34,550.00 |
| 19 | Painting | Elizeys Painting | $ 47,800.00 |
| 20 | Interior Storefront | Bob Smith Glass & Aluminum | $ 18,600.00 |
| 21 | Vinyl Base | BHL Services | $ 5,000.00 |
| 22 | Millwork | Fromms | $ 24,184.00 |
| 23 | Doors/Hardware | Twin City Hardware | $ 19,745.00 |
| 24 | Overhead Doors | Chandler Garage Door Service | $ 10,088.00 |
| 25 | Coorigated Steel Panels | BHL Services | $ 2,500.00 |
| 26 | Aluminum Corner guards | BHL Services | $ 4,000.00 |
| 27 | Wheelchair Lift | Hankin Specialty Elevator | $ 39,000.00 |
| 28 | Fire Extinguishers | BHL Services | $ 2,000.00 |
| 29 | Permit | BHL Services | $ 35,379.00 |
| 30 | General Contractor | BHL Services General Conditions | $ 89,640.00 |
| 31 | General Contractor | BHL Services Fee | $ 188,193.00 |
| 32 | Sub Total | | $ 2,060,623.00 |
| 33 | Architectural | Architectural fees are not included | |
| 34 | | BHL Contract Total | $ 2,060,623.00 |
| | | | |
| | Pricing does not include PG&E cost | | |
| 35 | Work Stopage expense | BHL - Supervision- Lodging - overhead | $ 38,910.00 |
| 36 | | BHL Contract Total | $ 2,099,533.00 |