1  Gregg S. Kleiner, State Bar No. 141311
   RINCON LAW LLP
2  268 Bush Street, Suite 3335
   San Francisco, California 94104
3  Telephone No.:  415-672-5991
   Facsimile No.:   415-680-1712
4  Email: gkleiner@rinconlawllp.com

5
   Counsel for DORIS A. KAELIN,
6  Trustee in Bankruptcy

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11 In re                                Case No. 18-50398 MEH
                                        Chapter 7
12 TECHSHOP, INC.,
                                        **TRUSTEE'S OPPOSITION TO MOTION**
13                                      **FOR RELIEF FROM THE AUTOMATIC**
        Debtor.                         **STAY FILED BY DANIEL WOODS AND**
14                                      **MICHAEL HILBERMAN**

15
                                        Date:   August 24, 2018
16                                      Time:   10:00 a.m.
                                        Place:  280 South First Street
17                                              Hon. M. Elaine Hammond
                                                Courtroom 3020
18                                              San Jose, CA  95113

19

20         Doris A. Kaelin, the duly appointed and acting Chapter 7 Trustee ("Trustee") for the

21 bankruptcy estate of TechShop, Inc. ("Debtor") files this opposition to the relief from stay motion

22 filed by Dan Brown and Mike Hilberman seeking payments from the Debtor's D&O insurance

23 [Dockets 143, 144, 145 and 147] ("Motion").  As set forth in greater detail below, the D&O Policy

24 and its proceeds are Section 541 property of the estate.  Furthermore, the Trustee intends, in the very

25 near future, to engage special counsel to pursue her own claims against the Debtor's directors and

26 officers and submits that it is incumbent to preserve the value of the policy for the benefit of all

27 creditors of the Debtor's estate.

28 / / /

**Background**

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 26, 2018. Among the assets of the Debtor's bankruptcy estate is the D&O Policy that is identified in the Motion. Following the petition date, the Trustee has sought to obtain information with regard to the Debtor's pre-petition operations. The Trustee's efforts to administer the estate were impaired by the Debtor's inability to provide documents and information requested by the Trustee and her professionals.

With the hope of facilitating the Trustee's receipt of required documents and information, the Trustee filed a Section 542(e) motion for turnover of records and documents [Dockets 55-56]. The Section 542(e) motion resulted in the Trustee receiving needed information related to the Debtor's pre-petition operations. The Trustee and her professionals have been evaluating this and other information. The Trustee anticipates that, within the next 30 days, she will seek Bankruptcy Court authority to engage special counsel to pursue claims against the Debtor's former officers and directors.

**The State Court Action**

According to the Motion, on June 22, 2018, the Knight Foundation commenced a state court action against two of the Debtor's former officers and directors in the Santa Clara County Superior Court ("State Court Action"). Although the State Court Action was filed well before the July 26, 2018 claims bar date, the movants, Messrs. Brown and Hilberman, did not file claims against the Debtor's estate. The Trustee first learned of the existence of the State Court Action when the Motion was filed. Prior to filing the Motion, neither the Movants nor their counsel contacted the Trustee to alert her to the State Court Action or discuss the possibility of making a claim under the D&O Policy. The Motion fails to provide any evidence that the movants have tendered the claim to the carrier and, if tendered, the response they received from the carrier.

The plaintiffs in the State Court Action, the Knight Foundation, did not inform the Trustee of its intent to file the State Court Action, nor did it seek relief from the automatic stay to pursue the State Court Action. The Trustee is currently evaluating whether the estate needs to file a complaint to enjoin the State Court Action.

The Motion seeks a finding from the Bankruptcy Court that the movants may seek to pay their legal fees and costs arising out of the State Court Action from the D&O Policy. The movants assert that the D&O Policy is not property of the bankruptcy estate or, in the alternative, that the proceeds that may be paid from the D&O Policy are not property of the bankruptcy estate.

The movants' characterization of the D&O Policy is incorrect and the Motion should be denied.

**The D&O Policy**

The D&O Policy includes claims coverage for the directors and officers (Side A), indemnification of the Debtor (Side B), and direct coverage of claims made against the Debtor (Side C). The policy is a "wasting" policy – meaning payments made by the carrier for defense fees and costs reduce, dollar-for-dollar, the policy limits. Declaration of Doris Kaelin in Opposition to Relief from Stay Motion, ¶2. The movants seek a determination from the Court that they may seek unlimited sums under the D&O Policy to pay their legal fees and costs related to the State Court Action.

The D&O Policy is a "claims made policy," requiring claims against the Debtor and its officers to be made during the policy period in order to trigger potential coverage. Prior to the petition date, the Debtor purchased an extension of the reporting period on the policy. The extension runs through April 1, 2021. The Policy includes an express provision that the Trustee may pursue claims under the Policy. D&O Policy, ¶(C)(e)(v). Kaelin Declaration, Exhibit A.

**Analysis**

The Motion asserts that the D&O Policy is not property of the bankruptcy estate. This assertion ignores binding Ninth Circuit precedent which provides that directors and officer liability policies are property of the estate under Section 541(a) of the Bankruptcy Code and, as such, are subject to the automatic stay. *In re Minoco Group of Companies, Ltd.,* 799 F 2d. 517, 518 (9th Cir. 1986). Relying on the Fifth Circuit's decision in *Louisiana World Exposition,*[1] the Motion asserts that the estate's ownership interest in the policy should be disregarded and that the Court should

---

[1] *Louisiana World Exposition, Inc. v. Federal Insurance Company (In re Louisiana World Exposition, Inc.,* 832 F 2d. 1391, 1401 (5th Cir. 1987) ("World Expo").

conclude that the proceeds payable under the policies belong to the movants. The Ninth Circuit has expressly declined, to date, to adopt the reasoning in *In re Louisiana World Exposition*. *In re Pintlar Corporation*, 124 F 3d. 1310, 1314 (9th Cir. 1997).

While it is without dispute that the D&O Policy is property of the bankruptcy estate, the Motion argues, in the alternative, that the Policy proceeds are not property of the bankruptcy estate. The case authorities relied upon in the Motion are distinguishable.

*In re Daisy Sys. Sec. Litig.*, 132 B.R. 752 (N.D. Cal. 1991) concerned the settlement of a five-year-old class action and derivative litigation pending in the district court. On the eve of settlement, the debtor filed chapter 11 and its chapter 11 trustee filed a complaint to require the insurers to deliver the D&O proceeds to the trustee for "safekeeping" and future distribution. The plaintiffs and defendants in the class action filed a motion to withdraw the reference and to have the court deny the requested turnover. The court granted the motion to withdraw, and denied the turnover request concluding that (i) the district court was in the best position to "effectuate a fair distribution of the insurance proceeds" and (ii) the trustee could always object to any proposed future distribution. *Id* at 756. Unlike the situation in *Daisy,* the State Court Action is less than two months old, the litigation may have been filed in violation of the automatic stay, the Trustee is in the process of engaging special litigation counsel to pursue claims against the Debtor's officers and directors, and it is premature to determine the interests the movants may have, if any, in the D&O policies and proceeds in relation to the State Court Action.

*World Expo* involved a dispute over D&O policy proceeds related to coverage for *only* the debtor's officers and directors, meaning it was not possible for the debtor to file its own claims against its officers and directors. *World Expo,* at 1399. Because the debtor was not covered by the policy, court in *World Expo* concluded the debtor had no interest in the proceeds. Unlike *World Expo*, the Debtor is a named insured and therefore has an interest in the D&O Policy and the proceeds. "In such cases, the estate owns not only the policies, but also the proceeds designated to cover corporate losses or liability." *World Expo,* at 1399-1400, cites omitted; Accord, *In re Allied Digital Technologies, Corp*., 306 BR 505, 511 (Bankr. DE 2004) ("A debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers.")

1   At this juncture, the Trustee submits that it is premature to make a determination of what

2   interests, if any, the movants have or could assert in the Policy proceeds. This is particularly true

3   in light of the fact that the Trustee intends to commence litigation on behalf of estate and that

4   litigation is likely to include claims against other officers and directors in addition to the movants.[2]

5   Kaelin Declaration ¶5.

6       The estate's potential damages from litigation it will pursue are likely to be significantly

7   greater (by many factors) than the maximum Policy limits. *Id.* Because the Policy is a wasting

8   policy, any payments that movants seek to pay their counsel for defending them in the State Court

9   Action will diminish the value of the Policy and could greatly reduce and, possibly exhaust, the

10  Policy proceeds. Allowing payment of the movants legal fees and costs related to the State Court

11  Action could jeopardize the estate's ability to receive payments from the D&O Policy if the estate

12  is successful in its litigation. *In re MILA, Inc.*, 423 B.R. 537, 543-544 (9th Cir. BAP 2010)

13  (evaluating the impact of a "wasting" policy and noting that this is a concern when there are

14  "multiple parties trying to access the proceeds, not just one officer and one trustee.")

15      The Motion does not identify the amount or amounts that the movants intend to seek from

16  the carrier nor does the Motion provide a budget. The Motion effectively seeks Court approval for

17  a blank check to pay movants' fees and costs from the D&O Policy. If the Motion is granted as

18  prayed for, the movant's unregulated and unchecked demands on the policy will very likely result

19  in a material reduction of the Policy's value which will prejudice the Trustee and the estate in its

20  planned claims.

21      WHEREFORE, the Trustee prays for an order denying the Motion.

22  DATED: August 23, 2018            RINCON LAW LLP

23

24                                   By:  */s/ Gregg S. Kleiner*
                                     GREGG S. KLEINER
25                                   Counsel for DORIS A. KAELIN,
                                     Trustee in Bankruptcy
26

27  _____
    [2] In the event that the Court agrees to modify the stay, it is imperative that the Court place a meaningful limit on
28  payments that can be made for defense costs and that those payments must be subject to periodic review and approval
    by the Trustee and the Court.