Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
Email: gkleiner@rinconlawllp.com

Counsel for DORIS A. KAELIN,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re

TECHSHOP, INC.,

Debtor.

Case No. 18-50398 MEH
Chapter 7
Hon. M. Elaine Hammond

**MOTION TO SELL PERSONAL PROPERTY**
**(Ford Sale)**

[No Hearing Required Unless Requested]

  Doris A. Kaelin, Trustee in Bankruptcy of the estate of the above-named Debtor, hereby moves the Court for an order authorizing her to sell personal property, on the terms more fully set forth in the Notice and Opportunity for Hearing on Motion to Sell Personal Property (Ford Sale) ("Notice") filed herewith.

  A copy of the Notice is attached hereto as **Exhibit 1** and is incorporated by reference. A copy of the Agreement to Purchase Personal Property is attached hereto as **Exhibit 2**.

DATED: July 3, 2019    RINCON LAW LLP

            By: */s/ Gregg S. Kleiner*
              GREGG S. KLEINER
              Counsel for DORIS A. KAELIN,
              Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

In re

TECHSHOP, INC.,

Debtor.

Case No. 18-50398 MEH
Chapter 7
Hon. M. Elaine Hammond

**NOTICE AND OPPORTUNITY FOR HEARING ON MOTION TO SELL PERSONAL PROPERTY (Ford Sale)**

[No Hearing Required Unless Requested]

**TO CREDITORS, THE UNITED STATES TRUSTEE AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT** Doris Kaelin, the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of TechShop, Inc. ("Debtor") has filed a motion seeking authority to enter into an "Agreement to Purchase Personal Assets" ("Agreement")[1] with Ford Motor Company or its assignee ("Buyer"). Under the provisions of the Agreement, the Buyer has agreed to pay to the Trustee $70,000 in exchange for the estate's right, title and interest, if any, in and to certain personal property located at Buyer's facilities. The sale is subject to overbid. The Trustee seeks Bankruptcy Court authorization to enter into the Agreement.

**Background**

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 26, 2018 ("Petition Date"). Soon after the Petition Date, the Trustee was appointed to administer the assets of the Debtor's estate. The Trustee is informed that: (i) prior to the Petition Date, the Debtor was the managing member of TechShop Detroit, LLC, and (ii) the liabilities of TechShop Detroit, LLC exceed its assets. TechShop Detroit, LLC is not a bankruptcy debtor.

According to the Buyer, prior to the Petition Date a subsidiary of the Buyer, Ford Motor Land Development Corporation, was the landlord with respect to a now terminated lease by TechShop Detroit, LLC as tenant of real property commonly referred to as 800 Republic Drive, Dearborn, Michigan, (the "Premises"). On account of defaults under the lease, the lease has been terminated. The Premises contain certain personal property that was owned or controlled by the Debtor and/or TechShop Detroit, LLC ("Assets"). To the extent that the Assets at the Premises were owned by the Debtor, the Assets may be subject to a security interest perfected by a financing statement in favor of AutoDesk, Inc. (or its successors in interest) ("AutoDesk") against the Debtor. The Trustee disputes the AutoDesk lien.

**Agreement**

Under the provisions of the Agreement, the Buyer has agreed to pay to the Trustee the sum of $70,000 ("Purchase Price") in exchange for (i) all Debtor's right, title and interest, if any, in and to the Assets and (ii) the Trustee's quit claim of any right, title or interest, if any, in and to the Assets owned by TechShop Detroit, LLC. The Agreement requires that the Purchase Price be delivered to the Trustee as follows: (i) $10,000 ("Deposit"); and (ii) the unpaid balance, $60,000, no later than 15 days after the Bankruptcy Court's order approving the Agreement is final and not stayed or subject to appeal. The Agreement expressly provides that the Purchase Price is being paid in consideration of the Assets owned by the Debtor's estate, only, and TechShop Detroit, LLC shall have no interest in the Purchase Price. The Agreement requires the Trustee to sell the Assets, free and clear of the Autodesk Lien. Autodesk and the Trustee have entered into a stipulation authorizing the sale of the Assets to the Buyer free and clear of the Lien, with the Lien to attach to the sale proceeds with the same right and priority that existed, if any, prior to the sale.

The Agreement further provides that the Buyer (i) is acquiring the Assets "as is, where is," with no representations or warranties whatsoever, (ii) all representations and warranties are expressly disclaimed, and, (iii) except for the Autodesk Lien asserted against the Debtor's interest in the Assets, the Buyer takes the Assets subject to any and all other liens, claims and interests. Other than delivering to the Buyer an order from the Bankruptcy Court approving the Agreement, the Trustee shall have no duties or obligations to deliver anything else to the Buyer at closing. The Buyer is solely responsible for payment of all fees, sums or costs related to or concerning obtaining possession and control of the Assets and payment of any sales tax or transfer taxes that may arise under the Agreement. Finally, the Buyer has requested and the Trustee seek, herein, a finding that the Buyer is a good faith purchaser pursuant to 11 U.S.C. § 363(m). The Buyer is solely responsible for filing any declaration and/or other pleadings necessary for the Bankruptcy Court to make a Section 363(m) finding.

The Trustee requests that the order approving the proposed sale of the Assets include the following provision, "This order is effective upon entry and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

**Overbid Terms**

The sale of the Assets (a list of which can be obtained by sending an email request to: gkleiner@rinconlawllp.com) is subject to overbid on the following conditions:

---

[1] The summary of the Agreement set forth in this Notice is for informational purposes only. In all instances, the terms of the Agreement shall control. A copy of the Agreement is attached as Exhibit 2 to the motion filed concurrently with this Notice.

1

**EXHIBIT 1**

1. The first overbid must be in an amount of at least $75,000 ($5,000 over Ford's offer);
2. Further overbids will be in increments of not less than $500;
3. On or before **Friday, July 19, 2019, 1:00 pm PDT**, bidders must: (i) provide evidence to the Trustee at dktrustee@gmail.com (with a copy to Trustee's counsel – gkleiner@rinconlawllp.com), that they can close and pay the purchase price in cash; (ii) deliver to the Trustee, a $15,000 deposit ("Deposit") paid by cashier's check or wire transfer (wire information will be provided upon request); and (iii) agree to be bound by the terms of the Agreement (except the amount of the purchase price, which amount will be the amount of a party's highest offer). The Deposit, if paid by cashier's check, must be delivered to and received by the Trustee at: Doris Kaelin, Bankruptcy Trustee, PO Box 1582, Santa Cruz, CA 95061.
4. In the event that a qualified bidder is not the successful bidder, it may act as a back-up bidder at its last highest offer. The Deposit will be promptly returned to bidders who do not want to act as back-up bidders.
5. Bids may not contain any contingencies, whatsoever, including, but not limited to, any loan contingencies and inspection contingencies. The bidders must agree and acknowledge that they are purchasing the Assets, "as is, where is" with all faults and defects and with no representations or warranties. All bids are cash only offers.
6. In the event there is an overbid, the overbid auction will occur by telephone, on **July 24, 2019, at 11:00 a.m. PDT**. All qualified bidders will be provided dial-in information so they can participate in the Auction. Prior to the start of the auction, the Trustee will: (i) identify any party or parties that have made a qualified bid for the Assets; and (ii) set forth the auction rules on the record, and may amend, modify or alter any bid procedure, rule or provision as the Trustee deems necessary, just or appropriate. The Trustee reserves the right, in her sole and absolute discretion, to refuse bids that do not, in her sole opinion, conform with the terms of the sale, to modify the terms and conditions of the sale or auction, to continue the sale from time to time. Only qualified bid participants may attend the overbid auction. All disputes with regard to the sale or auction will be resolved by the U.S. Bankruptcy Court. At the conclusion of the auction, the Trustee, in her sole discretion, will determine the highest and best bid and make a recommendation to the Bankruptcy Court to approve the sale of the Assets.
7. The successful bidder for the Assets must close by tendering the entire purchase price to the Trustee, less a credit for any deposit held by escrow, not later than ten (10) days after the sale order is entered. The successful bidder is required to take possession of the Assets within 15 calendar days of closing and is solely responsible for all cost related to or associated with removing the Assets from the Premises ("Removal Deadline"). Any Assets that remain at the Premises after the Removal Deadline shall be deemed forfeited to Ford. As provided in the Agreement, the Trustee shall have no duties or obligations to deliver anything to a buyer at closing other than the Bankruptcy Court's sale order. The successful bidder is solely responsible for payment of all fees, sums or costs related to or concerning obtaining possession and control of the Assets and payment of any sales tax or transfer taxes that may arise under the Agreement.
8. If the successful bidder fails to timely close, it will forfeit its deposit to the estate for all purposes. In the event of such a default, the Trustee will, without further order of the Court, be free to sell the Assets to another party at the back-up bidder's last highest offer. The back-up bidder shall have seven (7) business days, from the date that his/her/its counsel/agent has been notified by email by Trustee's counsel of the default by the original successful bidder, to close escrow. Should the back-up bidder fail to timely tender the purchase price for any reason, they shall be in default, and the deposit that they have tendered to the Trustee shall be forfeited to the estate for all purposes.

**PLEASE TAKE FURTHER NOTICE THAT** Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the proposed relief described above or any request for hearing thereon.

**Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;**

**Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;**

**If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default; and**

**In the event of a timely objection or request for hearing, the initiating party will give at least seven days' written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.**

**PLEASE TAKE FURTHER NOTICE THAT** as of January 1, 2005, the United States Bankruptcy Court for the Northern District of California has adopted mandatory electronic filing. If you are not currently qualified to file papers with the Court electronically, you should consult the Court's website (www.canb.uscourts.gov).

DATED: July 3, 2019     RINCON LAW LLP

By:  */s/Gregg S. Kleiner*
GREGG S. KLEINER
Counsel for DORIS A. KAELIN, Trustee in Bankruptcy

Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP, 268 Bush Street, Suite 3335, San Francisco, California 94104
Telephone No.: 415-672-5991 / Facsimile No.: 415-680-1712 / Email: gkleiner@rinconlawllp.com

2

**EXHIBIT 1**

## AGREEMENT TO PURCHASE PERSONAL PROPERTY

This Agreement to Purchase Personal Property ("Agreement") is dated June 24, 2019, and is by and between: (i) Doris Kaelin, solely in her capacity as the duly appointed and acting Chapter 7 Trustee ("Trustee") for the bankruptcy estate of TechShop, Inc. ("Debtor"), Case No. 18-50398 MEH pending before the United States Bankruptcy Court, Northern District of California, San Jose Division ("Bankruptcy Court"); and (ii) from Ford Motor Company or its assignee ("Buyer"). The Trustee and the Buyer are each a "Party" and collectively the "Parties."

### RECITALS

A.  The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 26, 2018 ("Petition Date"). Soon after the Petition Date, the Trustee was appointed to administer the assets of the Debtor's estate.

B.  The Trustee is informed that (i) prior to the Petition Date, the Debtor was the managing member of TechShop Detroit, LLC, and (ii) the liabilities of TechShop Detroit, LLC exceed its assets. TechShop Detroit, LLC is not a bankruptcy debtor.

C.  According to the Buyer, prior to the Petition Date a subsidiary of the Buyer, Ford Motor Land Development Corporation, was the landlord with respect to a now terminated lease by TechShop Detroit, LLC as tenant of real property commonly referred to as 800 Republic Drive, Dearborn, Michigan, (the "Premises"). On account of defaults under the lease, the lease has been terminated.

D.  The Premises contain certain personal property that was owned or controlled by the Debtor and/or TechShop Detroit, LLC ("Assets"). To the extent that the Assets at the Premises were owned by the Debtor, the Assets may be subject to a security interest perfected by a financing statement in favor of AutoDesk, Inc. (or its successors in interest) ("AutoDesk") against the Debtor. The Trustee disputes the AutoDesk lien.

E.  Subject to the provisions of this Agreement, the Buyer seeks to purchase the Assets. A summary of the Assets that the Buyer seeks to acquire is attached hereto as Exhibit A.

### AGREEMENT

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1.  The foregoing recital paragraphs are incorporated herein by reference.

2.  This Agreement is subject to and conditioned upon approval by the Bankruptcy Court, which the Trustee will move to obtain. The sale of the Assets to the Buyer shall be subject to greater and higher offer.

3. Subject to Buyer's delivery to the Trustee of $70,000 ("Purchase Price") to be delivered as set forth in paragraph 4 below, the order approving this Agreement shall result in the sale of all of the Assets located at the Premises to the Buyer as follows: (i) all Debtor's right, title and interest, if any, in and to the Assets and (ii) the Trustee's quit claim of any right, title or interest, if any, in and to the Assets owned by TechShop Detroit, LLC.

4. The Buyer shall pay the Trustee the sum of $70,000 in cash for the Assets. The Purchase Price shall be delivered to the Trustee as follows: (i) $10,000 ("Deposit") upon execution of this Agreement; and (ii) the unpaid balance, $60,000, no later than 15 days after the Bankruptcy Court's order approving this Agreement is final and not stayed or subject to appeal. The Purchase Price shall be paid in consideration of the Assets owned by the Debtor's estate, only, and TechShop Detroit, LLC shall have no interest in the Purchase Price.

5. The Buyer agrees and acknowledges that (i) it is acquiring the Assets "as is, where is," with no representations or warranties whatsoever, (ii) all representations and warranties are expressly disclaimed, and, (iii) except for the lien asserted by Autodesk against the Debtor's interest in the Assets, the Buyer takes the Assets subject to any and all other liens, claims and interests. For purposes of clarification only, the sale of the Assets to the Buyer is conditioned upon the Debtor's interest in the Assets being conveyed to the Buyer free and clear of the AutoDesk lien.

6. Except upon a default on the part of the Buyer, if the Bankruptcy Court does not approve this Agreement, the Trustee shall return the Deposit to the Buyer.

7. Neither of the Parties have dealt with any broker or salesperson in connection with the proposed sale of the Assets.

8. Other than delivering to the Buyer an order from the Bankruptcy Court approving this Agreement, the Trustee shall have no duties or obligations to deliver anything else to the Buyer, its representatives or agents at closing. The Buyer is solely responsible for payment of all fees, sums or costs related to or concerning obtaining possession and control of the Assets and payment of any sales tax or transfer taxes that may arise under this Agreement.

9. The Trustee shall include in its motion seeking Bankruptcy Court approval of this Agreement a request for a finding from the Bankruptcy Court that the Buyer is proceeding in "good faith" as that term is used in Bankruptcy Code Section 363(m). The Buyer shall be solely responsible for filing any declaration and/or other pleadings necessary for the Bankruptcy Court to make a Section 363(m) finding.

10. Each person signing this Agreement represents and warrants that he/she/it has been duly authorized and has the requisite authority to execute and deliver this Agreement on behalf of such party and bind their respective Party(ies) to the terms and conditions of this Agreement. This Agreement shall be binding upon the Parties thereto, their successors and assigns.

11. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any dispute arising out of this Agreement, and, if necessary to effect the Bankruptcy Court's jurisdiction, by their signature to this Agreement, hereby stipulate to an order providing for such jurisdiction.

2

**EXHIBIT 2**

12. Neither this Agreement, nor any provision within it, shall be construed against any Party or its attorney because it was drafted in full or in part by such Party or its attorney. The Agreement shall be accordingly construed equally against all Parties. In this regard, the Parties waive any and all benefits and rights he, she, it, or they may have under California Civil Code § 1654, which provides as follows:

> IN CASES OF UNCERTAINTY NOT REMOVED BY THE PRECEDING RULES, THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST.

13. This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the matters described herein, and any and all prior and contemporaneous agreements, representations, discussions, negotiations, commitments, and understandings are merged into and superseded by this Agreement. No representations, verbal or otherwise, express or implied, other than those written and contained herein have been made or relied upon by any of the Parties.

14. The Parties to this Agreement shall bear their own costs and attorney fees related to negotiation and drafting of this Agreement. In the event of any breach of this Agreement, the non-breaching party shall be entitled to, in addition to any other amounts due or rights granted under this Agreement, an award of all reasonable costs and attorney fees incurred in pursuing the enforcement, appeal and/or collection of this Agreement. The decision of the Bankruptcy Court not to approve this Agreement shall not be deemed a breach of this Agreement.

15. The Agreement may not be modified except by a writing signed by all Parties, with specific written reference to this Agreement, and with approval of the Bankruptcy Court.

16. This Agreement shall be construed under the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws.

**BALANCE OF PAGE LEFT INTENTIONALLY BLANK**

17. This Agreement may be executed in counterparts, and the signature pages of such counterparts may be collected. A copy of this Agreement with all collected counterparts and signature pages shall have the full force and effect of an original. A scanned image of a signature or a signature delivered by facsimile shall be effective as an original "wet ink" signature.

DATED: ~~June~~ July 1, 2019

By: _____
DORIS KAELIN, Solely In Her Capacity As
Chapter 7 Trustee of TechShop, Inc.

DATED: ~~June~~ July 1, 2019

Ford Motor Company

By: _____
Corey MacGillivray
Assistant Secretary, Ford Motor Company

4

**EXHIBIT 2**

Asset List 2019-03-20

| | A |
|---|---|
| 1 | |
| 2 | Item |
| 3 | Welding Masks |
| 4 | birmingham est-1300x1.5 electric slip roll |
| 5 | jet 45" english wheel wh-45T |
| 6 | jet 24" planishing hammer ph-24 |
| 7 | lincoln electric precision TIG |
| 8 | lincoln electric power MIG |
| 9 | lincoln electric dual welding fume extractor |
| 10 | welding table |
| 11 | wedling roller dividers |
| 12 | welding table |
| 13 | misc welding supplies cabinet |
| 14 | lincoln electric power mig |
| 15 | lincoln electric precision TIG |
| 16 | skat blast dry blast cabinet |
| 17 | rigid shop vac |
| 18 | bench grinder |
| 19 | bench grinder |
| 20 | Central Machinery 1"x36(?) belt sander |
| 21 | lincoln electric spot welder(?) |
| 22 | jet cold saw |
| 23 | jet ~12" disk sander |
| 24 | bench vise |
| 25 | metal bench |
| 26 | metal waste recepticles |
| 27 | kalamazoo industrices 486-021 1" belt sander |
| 28 | jet horizontal bandsaw 1"x.035x135" blade "10x16 horizontal mitering band saw" j-7040m |
| 29 | anvil |
| 30 | metal bench |
| 31 | jet vertical bandsaw vbs-1610 |
| 32 | jet drill press "step pulley drill press" jdp-20mf |
| 33 | jet bench model hand brake bp-1648h |
| 34 | 0.3 Ton? Press |
| 35 | metal bench |
| 36 | central machinery 96008 shrinker stretcher stand for 95062 shrinker strecher |
| 37 | jet corner notcher |
| 38 | central machinery 20 ton hydraulic bottle jack |
| 39 | metal punch "tin knocker number 12 turret punch" |
| 40 | hand tools assortment |
| 41 | edwards 55 ton bender? |
| 42 | us general small rolling tool cabinet |

MCPS 029983.00005 ID: 2843

EXHIBIT A    1

**EXHIBIT 2**

| | A |
|---|---|
| 43 | flamables / paint cabinet |
| 44 | sheet metal shear accord |
| 45 | spray booth |
| 46 | spray booth |
| 47 | chicago electric power tools #46300 oven for powder coating |
| 48 | shop vac |
| 49 | large oven |
| 50 | Morgan-press injection molding machine |
| 51 | wood bench |
| 52 | wood bench |
| 53 | formech 686 vacuum former mitsubishi GOT1000 |
| 54 | misc cabinet |
| 55 | |
| 56 | classroom |
| 57 | large bench |
| 58 | large bench |
| 59 | misc cabinet |
| 60 | paragon sentry xpress 4.0 small enamel oven |
| 61 | large bench |
| 62 | large bench |
| 63 | large bench |
| 64 | sparkfun 303D rework station |
| 65 | cheap weller soldering iron |
| 66 | barska stereomicroscope |
| 67 | electronics hand tools |
| 68 | electronics bench |
| 69 | rigol dg1022 function generator |
| 70 | rigol ds1052e oscilliscope |
| 71 | rigol dm3058 digital multimeter |
| 72 | gw instek gps-3303 laboratory dc power supply |
| 73 | cheap weller soldering iron |
| 74 | national instruments virtualbench |
| 75 | formlabs form 1+ |
| 76 | stratasys mojo |
| 77 | large bench |
| 78 | large bench |
| 79 | hand tools assortment |
| 80 | ryobi drills and drivers |
| 81 | misc cabinet |
| 82 | misc power tools |
| 83 | us general large rolling tool chest |
| 84 | plotter iPF650 |

MCPS 029983.00005 ID: 2843

EXHIBIT A  2

**EXHIBIT 2**

| | A |
|---|---|
| 85 | vinyl cutter |
| 86 | silk screen press |
| 87 | rethink robotics baxter |
| 88 | juki industrial walking foot sewing machine DNU-1541S |
| 89 | Juki industrial straight stitch DDL-5550N |
| 90 | cutting bench |
| 91 | janome sewing machine |
| 92 | janome sewing machine |
| 93 | ironing board |
| 94 | janome memory craft 350e |
| 95 | misc small tools |
| 96 | bench vise |
| 97 | |
| 98 | wood workbench |
| 99 | shopbot cnc router v1000? Large format |
| 100 | powermatic model 4224 wood lathe |
| 101 | bench grinder |
| 102 | misc cabinet |
| 103 | jet drill press |
| 104 | bosch miter saw 503 |
| 105 | dewalt scroll saw |
| 106 | wood dust extractor |
| 107 | shopvac |
| 108 | wood bench |
| 109 | wood bench |
| 110 | jet 18" woodworking bandsaw jwbs-18qt-3 |
| 111 | jet belt sander / disc grinder |
| 112 | small delta drill press |
| 113 | shopbot buddy (inoperative) |
| 114 | |
| 115 | plastic top bench |
| 116 | jet step pully drill press jdp-20mf |
| 117 | misc cabinet |
| 118 | plastic top bench |
| 119 | jet geared head engine lathe gh-1440w-3 w/ acu-rite dro |
| 120 | jet geared head engine lathe gh-1440w-3 w/ acu-rite dro |
| 121 | misc cabinet |
| 122 | rigid shopvac |
| 123 | tormach personal cnc 1100 |
| 124 | jet manual mill w/ dro |
| 125 | misc cabinet |
| 126 | jet manual mill w/ dro |

MCPS 029983.00005 ID: 2843

EXHIBIT A  3

**EXHIBIT 2**

Asset List 2019-03-20

| | A |
|---|---|
| 127 | |
| 128 | epilog laser helix 60w |
| 129 | shopvac |
| 130 | epilog laser helix 60w |
| 131 | epilog laser helix 60w |
| 132 | universal laser systems |
| 133 | wooden bench |
| 134 | |
| 135 | store setup |
| 136 | front desk |
| 137 | |
| 138 | powermatic large sheet saw |
| 139 | hand tool assortment |
| 140 | yale lift truck glc030cenuae083 |
| 141 | pallet jack |
| 142 | wooden bench |
| 143 | wooden bench |
| 144 | flow mach2 203lb waterjet |
| 145 | misc cabinet |
| 146 | |
| 147 | rigol dg1022 function generator |
| 148 | rigol ds1052d oscilliscope |
| 149 | cheap weller soldering iron |
| 150 | misc cabinet |
| 151 | wooden bench |
| 152 | old epilog helix 45 watt (inoperative) |
| 153 | scantek 2000 aerodynamics module |
| 154 | misc cabinet |
| 155 | classroom |

MCPS 029983.00005 ID: 2843

EXHIBIT A    4

**EXHIBIT 2**

Case: 18-50398    Doc# 218    Filed: 07/03/19    Entered: 07/03/19 11:02:38    Page 11 of 11