GREENBERG TRAURIG, LLP
Howard J. Steinberg (SBN 89291)
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Email: steinbergh@gtlaw.com
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

Cindy Hamilton (SBN 217951)
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, California 94303
Telephone: (650) 328-8500
Facsimile: (650) 328-8508
Email: hamiltonc@gtlaw.com

*Attorneys for Creditor*
*John S. and James L. Knight Foundation*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>TechShop, Inc.,<br><br>    Debtor. | Bk. No. 5: 18-50398-MEH<br><br>Chapter 11<br><br>**NOTICE OF WITHDRAWAL OF CLAIM FILED BY CREDITOR JOHN S. AND JAMES L. KNIGHT FOUNDATION** |

**PLEASE TAKE NOTICE THAT** Creditor John S. and James L. Knight Foundation hereby withdraws its claim filed in the above-captioned case on July 25, 2018 as Claim No. 197, a copy of which is attached hereto as Exhibit A.

Dated: November 5, 2019   GREENBERG TRAURIG, LLP

By: */s/ Howard J. Steinberg*
Howard J. Steinberg

*Attorneys for Creditor*
*John S. and James L. Knight Foundation*

# EXHIBIT A

Fill in this information to identify the case:

Debtor 1   Techshop, Inc.

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the:   Northern District of California
                                                         (State)

Case number   5:18-bk-50398

# Official Form 410
# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

John S. and James L. Knight Foundation
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Howard J. Steinberg, Esq.
Name

1840 Century Park East, Suite 1900
Number    Street

Los Angeles        CA        90067
City               State     ZIP Code

Contact phone    310-586-7700

Contact email    steinbergh@gtlaw.com

Where should payments to the creditor be sent? (if different)

Howard J. Steinberg, Esq.
Name

1840 Century Park East, Suite 1900
Number    Street

Los Angeles        CA        90067
City               State     ZIP Code

Contact phone    310-586-7700

Contact email    steinbergh@gtlaw.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____
                                                                                MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**
☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____5049_____

**7. How much is the claim?** $ _____400,000_____ . Does this amount include interest or other charges?
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.
Grant funds given to TechShop SJ were commingled and/or distributed to debtor according to creditor committee testimony. Original grant to TechShop SJ was for San Jose State University (SJSU) student memberships and classes that were not claimed, distributed, taught, or otherwise utilized by SJSU students.

**9. Is all or part of the claim secured?**
☒ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ _____
Amount of the claim that is secured: $ _____
Amount of the claim that is unsecured: $ _____400,000_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ _____400,000_____

Annual Interest Rate (when case was filed) _____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

**11. Is this claim subject to a right of setoff?**
☒ No
☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No ☐ Yes. Check one: | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_____) that applies. | $ _____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date July 25, 2018
MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

Name: Juan _____ Martinez
First name | Middle name | Last name

Title: VP/CFO & Treasurer

Company: John S. and James L. Knight Foundation
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 200 S. Biscayne Blvd., Suite 3300
Number Street
Miami FL 33131
City State ZIP Code

Contact phone: 305-908-2626
Email: Juan.martinez@knightfoundation.org

DocuSign Envelope ID: 201A124F-3980-473C-9E3B-B66CE6AAC472

# JOHN S. AND JAMES L. KNIGHT FOUNDATION

# GRANT AGREEMENT

**ORGANIZATION:** TechShop San Jose, LLC

**FISCAL AGENT:** The Miami Foundation

**GRANT ID:** G-2016-52098

**PURPOSE:** To support the retention of TechShop, a collaborative makerspace, in downtown San Jose and develop a partnership between TechShop and San Jose State University focused on creating a vibrant public space that promotes community engagement through events, collaboration and learning.

**TERMS:** June 20, 2016 to June 17, 2019

**AMOUNT:** $484,000

## ACTIVITIES

Over the next three-years, TechShop will:

- Provide classroom and lab access, faculty offices, storage facilities and materials for upwards of four San Jose State University classes per semester.
- Provide membership and facility access to 900-plus students.
- Offer 650 training and safety courses necessary for usage of TechShop equipment.
- Partner with community groups, neighborhood associations and other groups to host monthly meetings and workshops at TechShop.
- Support community learning through the collection and distribution of lessons learned and best practices.

## OUTCOMES

This grant will help retain an important business and hub for entrepreneurship, job training and small business growth. Moreover, it will help expand the business through building a partnership with San Jose State University focused on developing new programs to directly drive urban innovation in San Jose.

The description of your organization's activities and your expectations for the outcomes of the funded project are listed above. Your organization agrees that the results described are achievable and represent the terms against which your organization will judge the success of the project.

## EVALUATION

DocuSign Envelope ID: 201A124F-3980-473C-9E3B-B66CE6AAC472

- Any evaluation reports relating to this grant will be submitted to the Knight Foundation.

- TechShop and San Jose State University will measure community involvement, continued community engagement, and impact of learning, coursework and events on bringing temporary and permanent change to San Jose's neighborhoods.

## COMMUNICATIONS

You agree to follow the communications guidelines at http://knightcommunications.org and to clear with communicationsdirector@knightfoundation.org any relevant content that mentions the foundation. Please also follow us on Twitter at @knightfdn.

## BASIC GRANT CONDITIONS

1. Grantee will use the funds for the purposes described in this Agreement. Any alternative use of funds must be authorized in advance in writing by Knight Foundation. If the funds are not used in accordance with the terms outlined in the Agreement, the Grantee must repay those funds to the Foundation.

2. Changes to any specific line item in the enclosed budget greater than 5% should be approved in writing by Knight Foundation prior to making the change.

3. Significant changes in project or organizational leadership should be reported to Knight Foundation within 30 days of the change.

4. As required by IRS rules, Knight Foundation funds will not be used: a) to carry on propaganda or otherwise attempt to influence specific legislation; b) to influence the outcome of any specific public election or to carry on, directly or indirectly, any voter registration drive; c) to make a grant to any individual for travel, study or other similar purposes or to make a sub-grant to any other organization unless the grant complies with Section 4945(d)(3) or 4945(d)(4) of the Internal Revenue Code, as applicable, and the grant has has been detailed in the approved grant plan and budget; or (d) to undertake any activity for any purpose other than the charitable and educational purposes specified in Section 170(c)(2)(B) of the Internal Revenue Code.

5. Capital equipment and facilities purchased using Knight Foundation grant funds must be used for solely charitable purposes during and after the Grant term. The Grant budget and budget narrative must detail: a) capital equipment/facilities purchased, b) its cost and use and c) what will happen to the equipment/facilities once the grant term is complete.

6. All travel paid for with Foundation funds can only be for the charitable purposes of the grant and should be reasonable and necessary, and not excessive.

7. The Grantee must disclose any potential conflicts of interest including transactions with related parties. The Grantee will specifically note if they propose to use grant funds to engage an organization or individual with which they have a related party relationship. In no event should the Grantee pay more than fair market value for any services with a related party.

8. Overhead expenses charged to the grant must be specified in the approved grant budget and must be supported by appropriate documentation. Overhead may not include a general percentage of costs.

9. The Miami Foundation has agreed to serve as fiscal agent for TechShop San Jose, LLC and will be responsible for ensuring that grant funds are expended in accordance with the approved project budget.

   They may also provide administrative assistance for contracts, payments to the grantees, payments to subcontractors, accounting requirements and other administration as necessary. The Miami Foundation will retain 4 percent of the grant amount as an administration fee. The $19,360 cost of the fiscal agency will come from grant funds.

## REPORTS AND PAYMENTS

1. The first payment of $418,000 will be mailed within 60 days of Knight Foundation receiving this signed grant agreement. The Miami Foundation will disburse the payments to TechShop San Jose, LLC according to the terms of the Fiscal Agency Agreement between Grantee and The Miami Foundation.

2. A grant expenditure monitoring (GEM) review will be conducted in 2017 and 2018 of this grant. Knight Foundation is responsible for securing the consultant to complete the GEM and will withhold $8,000 for each review from the total grant amount approved.

3. A progress report, both narrative and financial, is due June 19, 2017. In addition, as fiscal agent, The Miami Foundation, must also report at that time on the use and disbursement of the funds. The second payment of $25,000 will be released within 60 days of receiving a progress report deemed satisfactory solely at the Foundation's discretion.

4. A progress report, both narrative and financial, is due June 18, 2018. In addition, as fiscal agent,The Miami Foundation, must also report at that time on the use and disbursement of the funds. The final payment of $25,000 will be released within 60 days of receiving a progress report deemed satisfactory solely at the Foundation's discretion.

5. A final report, both narrative and financial, is due June 17, 2019. In addition, as fiscal agent, The Miami Foundation, must also report at that time on the use and disbursement of the funds.

6. Grantee must provide annual progress reports, both narrative and financial until all grant funds have been expended. Annual progress reports shall be provided, to Knight Foundation and The Miami Foundation, within 60 days after the close of the Grantee's annual accounting period during which grant funds have been received and annually thereafter until all grant funds have been expended. In addition, within 60 days after the close of the annual accounting period during which all grant funds have been expended, Grantee must provide a final narrative and financial report with respect to all expenditures made by the Grantee throughout the term of the grant. For grants involving capital equipment and facilities, grant funds shall be deemed expended upon the end of the "useful life" of the equipment or facilities in accordance with generally recognized accounting principles and U.S. law regarding how long such equipment must be depreciated. The narrative report shall describe the Grantee's use of the grant funds, compliance with the terms of the grant, and progress made toward achieving the purposes of the grant throughout the term of the grant. As fiscal agent, The Miami Foundation, must provide simultaneous reports on the use and disbursement of the funds.

7. Login to the Fluxx Grants Portal at https://knight.fluxx.io to submit your reports. Click on the green "+" sign to upload your report. Then click on the Submit Link to let Knight know you have submitted your requirement. These reports include both financial and program information using online forms. The program report must include a narrative account of the use of grant funds and progress in achieving the purposes of the grant, including the grant outcomes. The online report forms are available on Knight's Grantee Portal. Copies of the reports will be provided to your Program Director by Grants Administration. The Director will review your report and provide feedback. Any questions about the grant should be

    directed to the Program Director.

8. During the term of the grant, organizations audited by an independent auditing firm should submit the audit results including the management letter within 90 days of completion of the audit report.

9. Upon the Foundation's request the Grantee will provide all information relating to or developed under the grant.

10. The Foundation may withhold future payments at the Foundation's sole discretion if it has not received all required reports and/or the reports do not meet the Foundation's reporting requirements or the grant fails to achieve satisfactory progress.

**RETURN OF GRANT FUNDS ON CHANGE IN PURPOSE:**

If there is a "Change in Purpose" (as hereinafter defined), upon the written request of Knight Foundation, Grantee shall (and shall cause the Fiscal Agent, if applicable, to), at Knight Foundation's sole discretion, promptly either (i) reassign to another charitable organization acceptable to Knight Foundation, or (ii) return to Knight Foundation, all grant funds that were not properly expended (in accordance with the approved project budget) prior to the first Change in Purpose subsequent to the date hereof. For purposes of this grant agreement, the term "Change in Purpose" means (i) at the sole discretion of Knight Foundation, any change required to be reported to Knight Foundation pursuant to item 3 of "Basic Grant Conditions," above, and/or in circumstances as contemplated by "Purpose" above, (ii) any winding up of the Grantee's activities or operations, (iii) any combination of the Grantee with any other charitable or other organization, whether by means of merger, transfer of assets or other reorganization event, and/or (iv) any public announcement by Grantee or any of its affiliates with respect to any of the foregoing events. Grantee shall promptly notify Knight Foundation, in writing, upon the occurrence of any circumstance, event or development that could reasonably be expected to result in a potential Change in Purpose.

**INTELLECTUAL PROPERTY:**

Grantee and the Foundation agree that all intellectual property (IP) rights (including copyright, patent, and any other rights) in materials arising out of or resulting from Grantee's use of the grant funds or any earning thereon (the "Public Materials") shall be owned by Grantee. Grantee acknowledges that the Foundation wishes to ensure the widest possible distribution of the Public Materials and ensure that they are and remain generally available to the public. Accordingly, Grantee hereby grants, and shall ensure that any individuals who have any IP rights in Public Materials shall grant, to the Foundation, under all IP rights of such party, a non-exclusive, transferable, perpetual, irrevocable, royalty-free, paid-up, worldwide, sublicenseable license to use or publish the Public Materials; provided, however, that the Foundation shall not exercise such rights except (a) in connection with the activities of the Foundation, and/or (b) in the event Grantee materially breaches the terms of this Agreement.

Grantee, at the Foundation's request, agrees to execute any additional documents required to affect such license. Upon Grantee's request in writing, the parties shall cooperate to identify whether any particular materials produced by Grantee constitute Public Materials; provided that Grantee and the Foundation acknowledge that Public Materials shall include all materials required to be developed as described in the applicable grant description.

In addition, upon completion of any Public Materials of a type identified in the table below under "Type of Public Material," Grantee shall make such Public Materials available free of charge to the public (such as via a public internet server with no subscription fees) under the terms of the "License for Public Availability" identified in the table. Grantee's distribution of such Public Materials shall also comply with any additional terms and conditions specified below.

**1. Content** - Any news articles, text, photographs, audiovisual materials, or similar content developed using funds provided by the Foundation.
**Type of Award of Specific KF Initiative & License for Public Availability:** Expenditure Responsibility Grant / CC BY Attribution license, version 3.0
**Additional Terms and Conditions:** None.

Exceptions to this clause must be approved by the Foundation in writing. Grantee shall not make available such Public Materials, or any derivative works of the Public Materials, under any other licensing terms, without the Foundation's prior written consent.

**TAX-EXEMPT STATUS:**

The Miami Foundation will maintain its tax-exempt status as a Section 501(c)(3) organizationand a public charity described in Sections 509(a)(1) or (2) current throughout the period of this grant and will comply with all applicable federal and state laws and regulations that govern the use of funds from private foundations. This includes but is not limited to the prohibition against activities described in Section 4945(d) of the Internal Revenue Code and limiting the use of the grant funds to the appropriate purposes as described in Section 170(c)(2)(B) of the Internal Revenue Code. Grantee will comply with all applicable federal and state laws and regulations that govern the use of funds from private foundations to the Grantee organization. This includes but is not limited to the prohibition against activities described in Section 4945(d) of the Internal Revenue Code.

**BOOKS AND RECORDS:**

Grantee shall maintain its book and records, including an accurate record of the grant received and all expenses incurred under this grant, and retain such books and records for at least four years after completion of the use of this grant. Those records include a general ledger with enough detail to allow tracking of the use of Foundation funds, original invoices, bank statements, copies of checks disbursing grant funds and documentation of the business purpose of each expense.

At the Foundation's request, the Grantee shall make its books and records available to the Foundation by permitting reasonable access to its files, records and personnel by the Foundation (or its designated representatives) for the purpose of making financial audits or other evaluations concerning this grant as the Foundation deems necessary. The fees and expenses of such designated representative shall be paid from the grant proceeds. The Foundation will withhold these fees and expenses from payments made to the Grantee under this Agreement.

**MANAGEMENT AND INVESTMENT OF FUNDS, EARNINGS, AND APPRECIATION:**

All Grant funds must be maintained in a separate account dedicated to charitable and education purposes under the following terms. Any interest earned on the investment of Grant funds must be tracked and reinvested in the separate grant account and used solely for the approved purpose of the Grant. All grant funds received, and earnings and appreciation on those funds, shall be invested in a designated account in a bank or investment firm that is a member of either the FDIC or SIPC. The investment will be in accordance with Grantee's governing documents and investment policies so long as they do not conflict with this Agreement, with the laws of the State of Florida, and with Federal laws. Earnings and appreciation on grant funds shall be used solely for the purpose of the Grant. Grantee may not assess an administrative or financial management fee unless agreed to in writing and in advance by the Foundation.

**UNEXPENDED FUNDS:**

The Foundation reserves the right, in its sole discretion, to discontinue funding if it is not satisfied with the progress of the grant or the content of any required written report. In the event of discontinuation or at the close of the grant, any unexpended funds shall immediately be returned to the Foundation, except where the Foundation has agreed in writing to an alternative use of the unused funds.

**ROYALTIES:**

Any materials produced by this grant and earnings thereon shall not provide royalties or otherwise inure to the personal benefit of individuals connected with this grant. Grantee shall not engage in any sales of such materials unless it has determined that such sales are substantially related to the charitable and educational purposes of the grant. Any revenues realized by Grantee or any sub-grantee from any such sales must be used exclusively for this project.

**NO-COST EXTENSION:**

If needed, Grantee should submit a request for a no-cost extension to the program officer before the end of the grant period. The request should contain the reason for the extension, its length and detail how any unexpended funds would be used.

**NO GUARANTEE OF FUTURE FUNDING:**

The Grantee acknowledges that the receipt of this grant does not imply a commitment on behalf of Knight Foundation to continue funding beyond the terms listed in this grant agreement.

If you agree to the terms and conditions of this grant agreement, please sign and return this document to Knight Foundation. Please keep a copy of the signed document for your grant files. Grant payment according to the terms above will be released within 60 days of receiving this signed agreement. G-2016-52098

**Grantee Authorized Signatory:**

| Dan Woods | |
|---|---|
| Type or print name of person signing Agreement | CEO |
| | Title |

*Signed: Dan Woods* — 11/28/2016

Signature of person signing Agreement / Date

**Fiscal Agent Authorized Signatory:**

| Javier Alberto Soto | |
|---|---|
| Type or print name of Fiscal Agent signing Agreement | President & CEO |
| | Title |

*Signed: Javier Alberto Soto* — 11/16/2016

Signature of Fiscal Agent signing Agreement / Date

DocuSign Envelope ID: 201A124F-3980-473C-9E3B-B66CE6AAC472

All future correspondence regarding this grant should refer to grant # G-2016-52098. Please sign and return this document via DocuSign or by emailing it to grants@knightfoundation.org.

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I, Kathy Lai, am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **1840 Century Park East, Suite 1900, Los Angeles, California 90067.**

On November 5, 2019, I served the **NOTICE OF WITHDRAWAL OF CLAIM FILED BY CREDITOR JOHN S. AND JAMES L. KNIGHT FOUNDATION** on the interested parties in this action as follows:

| | |
|---|---|
| Matthew D. Metzger<br>Belvedere Legal, PC<br>1777 Borel Pl. #314<br>San Mateo, CA 94402 | Andrew A. August<br>Browne George Ross, LLP<br>101 California St, Ste 1225<br>San Francisco, CA 94111-5870 |
| Doris A. Kaelin<br>P.O. Box 1582<br>Santa Cruz, CA 95061 | Gregg S. Kleiner<br>Rincon Law LLP<br>268 Bush St. #3335<br>San Francisco, CA 94104 |
| U.S. Trustee<br>Office of the U.S. Trustee / SJ<br>U.S. Federal Bldg.<br>280 S 1st St. #268<br>San Jose, CA 95113-3004 | Gregg Kleiner<br>Rincon Law LLP<br>268 Bush Street, Suite 3335<br>San Francisco, CA 94104 |

☒ **(BY MAIL)**

☐ I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☒ I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐ **(BY ELECTRONIC MAIL)**

I served the above-mentioned document electronically on the parties listed at the email addresses above and, to the best of my knowledge, the transmission was complete and without error in that I did not receive an electronic notification to the contrary.

☒ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 5, 2019, at Los Angeles, California.

_____
Kathy Lai