1  Aram Ordubegian (SBN 185142)
   Annie Y. Stoops (SBN 286325)
2  **ARENT FOX LLP**
   55 Second Street, 21st Floor
3  San Francisco, CA 94105
   Telephone:  213.629.7400
4  Facsimile:  213.629.7401
   Email:      aram.ordubegian@arentfox.com
5              annie.stoops@arentfox.com

6  Counsel for Movants
   JIM NEWTON, MARK HATCH, DOUG BUSCH,
7  DANIEL WOODS and MIKE HILBERMAN

8              **UNITED STATES BANKRUPTCY COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                   **SAN JOSE DIVISION**

11 In re:                              | Case No. 18-50398

12                                     | Chapter: 7

13 **TECHSHOP, INC.,**                 | **NOTICE OF HEARING FOR:**

14            Debtor.                   | **MOTION FOR RELIEF FROM THE**
15                                      | **AUTOMATIC STAY, TO THE EXTENT**
                                        | **REQUIRED, FOR PAYMENT OF**
16                                      | **LIABILITY COVERAGE PROCEEDS**
                                        | **UNDER THE D&O POLICY**
17                                      | Date:     June 25, 2020
18                                      | Time:     1:30 p.m.

19                                      | Location: Courtroom 3020
                                        |           280 South First Street
20                                      |           San Jose, California

21      **PLEASE TAKE NOTICE** that on June 25, 2020, at 1:30 p.m., a preliminary hearing will

22 be conducted before the Honorable M. Elaine Hammond, United States Bankruptcy Judge, on Jim

23 Newton, Mark Hatch, Doug Busch, Daniel Woods and Mike Hilberman's (hereinafter

24 "Movants") *Motion for Relief from the Automatic Stay, to the Extent Required, for Payment of*

25 *Liability Coverage Proceeds Under the D&O Policy* (the "Motion"), attached hereto.  The basis

26 for the Motion are set forth in its concurrently filed Motion, which is brought pursuant to 11

27 U.S.C. section 362(d)(1) and Rule 4001-1 of the Local Rules of Practice for the United States

28 Bankruptcy Court, Northern District of California (the "Local Rules").

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

Pursuant to Local Rule 4001-1(f), any opposition to the Motion may be presented at the hearing on the Motion. Parties are not required, but may, file responsive pleadings, points and authorities, and declarations for the preliminary hearing.

**PLEASE TAKE FURTHER NOTICE** that as provided in the Court's Third Amended General Order 38, dated May 28, 2020, there will be no physical access to the courtroom and the hearing on the Motion shall be conducted telephonically only. The instructions for making a telephonic appearance may be found on the Court's website, located at http://www.canb.uscourts.gov/procedure/district-oakland-san-jose-san-francisco/policy-and-procedure-appearances-telephone.

**PLEASE TAKE FURTHER NOTICE** that as provided in the Court's Third Amended General Order 38, dated May 28, 2020, all interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.

Dated: June 11, 2020

Respectfully submitted,

**ARENT FOX LLP**

By: */s/ Aram Ordubegian*
    Aram Ordubegian
    Attorney for Movants

# MOTION

1   Aram Ordubegian (SBN 185142)
    Annie Y. Stoops (SBN 286325)
2   **ARENT FOX LLP**
    55 Second Street, 21st Floor
3   San Francisco, CA 94105
    Telephone:     213.629.7400
4   Facsimile:     213.629.7401
    Email:         aram.ordubegian@arentfox.com
5               annie.stoops@arentfox.com

6   Counsel for Movants
    JIM NEWTON, MARK HATCH, DOUG BUSCH,
7   DANIEL WOODS and MIKE HILBERMAN

8               **UNITED STATES BANKRUPTCY COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10                      **SAN JOSE DIVISION**

| | |
|---|---|
| 11  In re: | Case No. 18-50398 |
| 12 | Chapter: 7 |
| 13  **TECHSHOP, INC.,** | **MOTION FOR RELIEF FROM THE** |
| 14                   Debtor. | **AUTOMATIC STAY, TO THE EXTENT REQUIRED, FOR PAYMENT OF LIABILITY COVERAGE PROCEEDS UNDER THE D&O POLICY;** |
| 15 | |
| 16 | **MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF DANIEL WOODS AND ALLAN E. ANDERSON IN SUPPORT THEREOF** |
| 17 | |
| 18 | |
| 19 | Date:     June 25, 2020 |
|    | Time:     1:30 p.m. |
| 20 | |
| 21 | Location:  Courtroom 3020 |
|    |           280 South First Street |
|    |           San Jose, California |
| 22 | |

23          **TO    THE    HONORABLE    M.    ELAINE    HAMMOND,    UNITED    STATES**

24  **BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

25          By this motion (the "Motion"), movants in the above-captioned matter, Jim Newton, Mark

26  Hatch, Doug Busch, Dan Woods, and Mike Hilberman (collectively, the "Movants"), seek an order

27  (1) vacating the *Order Approving Stipulation to Grant Daniel Woods and Mike Hilberman's*

28  *Motion for Relief from the Automatic Stay, to the Extent Required, for Payment of D&O Insurance*

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

1     *Proceeds* entered on September 25, 2019 [Dkt. No. 233] (the "Stipulation Order"); (2) finding that

2     the liability coverage proceeds payable under the directors and officers coverage section of the

3     general business and management indemnity policy (the "D&O Policy") are not property of the

4     debtor TechShop Inc.'s ("Debtor") bankruptcy estate and thus not subject to the automatic stay, or

5     alternatively, if the insurance proceeds are considered estate property, finding that good cause exists

6     for the Court to modify the automatic stay to permit the Movants to obtain liability coverage under

7     the D&O Policy in connection with the various actions brought against them, including an action

8     brought by the Trustee; (3) granting any other and further relief as may be just and proper.

9         Pursuant to Local Rule 4000-1, respondent is hereby informed that it may appear personally

10     or by counsel at the preliminary hearing for this motion.

11         **WHEREFORE**, the Movants respectfully request that the Court enter an order (1) vacating

12     the Stipulation Order (defined below); (2) finding that the liability coverage proceeds under the

13     D&O Policy are not property of the Debtor's bankruptcy estate or alternatively, granting relief from

14     the automatic stay for the Movants to obtain liability coverage proceeds in accordance with the

15     terms of the D&O Policy, and (3) granting such other and further relief the Court deems just and

16     proper.

17

18     Dated: June 11, 2020                     Respectfully submitted,

19                                  **ARENT FOX LLP**

20

21                             By: */s/ Aram Ordubegian*

22                                Aram Ordubegian
                                     Attorney for Movants

23

24

25

26

27

28

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | Introduction | 5 |
| II. | Background | 5 |
| | A. Prior Relief from Stay Motion | 5 |
| | B. The Trustee's Action | 6 |
| | C. The Rasure Action | 7 |
| | D. The Stipulation as an Interim Resolution to the Prior RFS Motion | 8 |
| | E. The D&O Policy | 10 |
| III. | Argument | 12 |
| | A. Given the Trustee's Continual Attempts to Improperly Restrict the Movant's Ability to Defend Against the Trustee Action, the Court Should Set Aside the Stipulation and Vacate the Stipulation Order | 12 |
| | B. The Liability Coverage Proceeds Are Not Estate Property and Therefore Not Subject to the Automatic Stay | 12 |
| | C. Even if the Liability Coverage Proceeds of the D&O Policy Are Considered Estate Property, the Court Should Modify the Automatic Stay to Permit the Movants to Receive Payment of Liability Coverage According to the Terms of the D&O Policy | 16 |
| IV. | Conclusion | 17 |

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 3 -

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

A & A Sign Co. v. Maughan,
    419 F.2d 1152 (9th Cir. 1969)...................................................................................12

In re Adelphia Communications Corp.,
    285 B.R. 580 (Bankr. S.D.N.Y. 2002) ........................................................................15

In re Allied Digital Technologies, Corp.,
    306 B.R. 505 (Bankr. D. Del. 2004) ...........................................................15, 16, 17

In re CyberMedica, Inc.,
    280 B.R. 12 (Bankr. D. Mass. 2002)...........................................................................16

In re Daisy Systems Securities Litigation,
    132 B.R. 752 (Bankr. N.D. Cal. 1991)........................................................................13

In re Flashcom, Inc.,
    2014 WL 4923073 (9th Cir. BAP Oct. 1, 2014) .........................................................12

In re Imperial Corp. of America,
    144 B.R. 115 (Bankr. S.D. Cal. 1992) ........................................................................13

La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.),
    832 F.2d 1391 (5th Cir. 1987).....................................................................................13

In re Mila, Inc.,
    423 B.R. 537 (9th Cir. BAP 2010)..................................................................12, 14, 16

In re Sfuzzi, Inc.,
    191 B.R. 664 (Bankr. N.D. Tex. 1996) .......................................................................13

In re Youngstown Osteopathic Hosp. Ass'n,
    271 B.R. 544 (Bankr. N.D. Ohio 2002) ................................................................14, 15

**Statutes**

11 U.S.C. § 362(a) ..............................................................................................................16

11 U.S.C. § 362(d)(1)......................................................................................................6, 16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

With this Motion, the Movants seek a ruling from the Court on whether the liability coverage proceeds payable to the directors and officers under the D&O Policy qualify as property of the Debtor's bankruptcy estate, and if so, whether "cause" exists for relief from the automatic stay.[1] The Movants previously agreed to an interim resolution of this issue by way of a stipulation. However, litigation between the Movants and Trustee has progressed to a point that the terms of the stipulation have become too onerous and are actually being used by the Trustee to improperly restrict the Movants' ability to conduct a meaningful defense against the Trustee's claims. Thus, the Movants additionally seek to vacate the *Order Approving Stipulation to Grant Daniel Woods and Mike Hilberman's Motion for Relief from the Automatic Stay, to the Extent Required, for Payment of D&O Insurance Proceeds* entered on September 25, 2019.

In filing an action against the Movants, the Trustee is no different than any other plaintiff suing defendants covered by a wasting insurance policy and should not be allowed to wield her position as the bankruptcy trustee to gain an improper advantage over the Movants *via* controlling Movant's access to the liability proceeds under the D&O Policy. As a plaintiff seeking to recover from the D&O Policy, the Trustee is not entitled to limit the Movants' contractual rights to liability coverage under the guise of "protecting estate property."

## II.

## BACKGROUND

Debtor operated a chain of membership-based, open-access, "do-it-yourself" workshops that supplied machines and tools to its customers. On February 26, 2018, Debtor filed its voluntary petition for chapter 7 relief.

### A. Prior Relief from Stay Motion

On August 3, 2018, Movants Mike Hilberman and Daniel Woods filed the prior motion for

---

[1] A true and correct copy of the D&O Policy, is attached as **Exhibit 1** to the accompanying declaration of Daniel Woods (the "Woods Declaration").

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

relief from the automatic stay [Dkt. No. 232] ("Prior RFS Motion"). In that motion – at the request of the D&O insurance carrier – Mr. Hilberman and Mr. Woods sought a comfort order confirming that the D&O proceeds were not property of the Debtor's estate and that the payments of liability coverage for Mr. Hilberman and Mr. Woods' defense in the state court action filed by the John S. and James L. Knight Foundation ("Knight Foundation"), entitled <u>John S. and James L. Knight Foundation v. TechShop San Jose, LLC, et al.</u>, Case No. 18CV330565 ("Knight Foundation Action") were not subject to the automatic stay.[2] Alternatively, Mr. Hilberman and Mr. Woods argued that even if the insurance proceeds were estate property, "cause" existed under § 362(d)(1) for relief from stay because, among other reasons, Debtor's interests in the insurance proceeds were remote and speculative. The Debtor was not a named defendant in the Knight Foundation Action. And, at the time the Prior RFS Motion was filed, there were no demands or actions against the Debtor that triggered liability coverage for the bankruptcy estate's benefit under the D&O Policy.

Regardless, the Trustee opposed the Prior RFS Motion on the grounds that the estate anticipated employing special counsel to pursue claims against the Debtor's former officers and directors [Dkt. No. 163]. The Trustee argued that allowing payment of the movant's legal fees would jeopardize the estate's ability to receive payments from the D&O Policy if the estate was successful in its litigation.

On August 24, 2018, the Court conducted the preliminary hearing on the Prior RFS Motion. Ultimately, the Court agreed to continue the hearing to, among other reasons, give the Trustee time to engage special counsel to bring claims against the Debtor's former officers and directors. The Court noted that if the parties were not able to reach a resolution, then further briefing would be required on whether the Debtor is entitled to receive insurance proceeds under the D&O Policy.

**B.    <u>The Trustee's Action</u>**

On February 19, 2019, the Trustee threatened action against the Movants as well as co-defendant Early Growth Financial Services ("EGFS") and provided a draft complaint that the Trustee intended to file if the parties were not able to settle the dispute. The threatened action

---

[2] The Knight Foundation Action was settled at a mediation held on May 21, 2019. The Trustee filed a motion requesting an order approving the settlement [Dkt. No. 213], which was granted by order entered on June 21, 2019 [Dkt. No. 217].

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

triggered liability coverage for the Movants.[3]

In an attempt to settle the matter, the Movants, the Trustee, and EGFS participated in mediations on May 21, 2019, and again on January 21, 2020. A settlement on the Trustee's Action could not be reached at either.

As a result, on January 29, 2020, the Trustee filed her complaint ("Complaint") against the Movants and EGFS. The Complaint brought claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, accounting, and corporate waste.

In a continued effort to resolve the matter, the parties participated in another mediation on March 10, 2020. The parties were still unable to reach a settlement.

Following mediation, Movants filed a motion to dismiss the Complaint in its entirety on the basis that the Trustee did not have standing to bring the claims asserted in the Complaint and failed to allege a claim against the Movants. [Adv. Dkt. Nos. 21, 22]. EGFS also filed its own motion to dismiss the Complaint. [Adv. Dkt. No. 17-19, 23].

Under the auspices that the Trustee would address the issues raised in the motions to dismiss, the Trustee requested that the parties stipulate to allow the Trustee to file an amended complaint. The parties agreed but only to the extent that the Trustee amended the complaint to address the issues raised in the motions to dismiss. The Court approved the stipulation for leave to amend on May 6, 2020 [Adv. Dkt. No. 33].

On May 18, 2020, the Trustee filed the amended complaint ("Amended Complaint") [Adv. Dkt. No. 34]. The Amended Complaint asserts claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and negligence against the Movants. Under the auspice of the negligence claim, the Amended Complaint brings – for the first time – claims for gross negligence and conscious disregard and contains nearly a dozen additional pages of allegations than were not previously disclosed in the Complaint.

C.    **The Rasure Action**

On February 16, 2018, before the filing of this chapter 7 case, Debtor commenced an action

_____

[3] At the time, Arent Fox LLP ("Arent Fox") only represented Daniel Woods and Mike Hilberman. At the urging of the insurer and with the consent of Trustee's counsel, Arent Fox was retained to represent the additional directors and officers: Jim Newton, Mark Hatch and Doug Busch.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -

1  in United States District Court, Northern District of California for trademark infringement against

2  Dan Rasure in an action entitled TechShop, Inc. v. Dan Rasure, et. al., Case No: 4:18-cv-01044-

3  HSG ("Rasure Action"). The Rasure Action had to do with allegations that Mr. Rasure improperly

4  used the Debtor's trademarks during and following the Debtor's negotiations with the Rasure

5  Parties that, if successful, would have allowed TechShop locations to re-open. A deal was never

6  finalized, and as a result, the Debtor filed this bankruptcy case. Thereafter, the Trustee took over

7  the Rasure Action on behalf of the Debtor.

8      On July 26, 2018, Mr. Rasure, along with other related entities, filed a counter-claim against

9  Debtor, the Trustee, Mr. Newton and Mr. Woods. The counter-claim alleged that the counter-

10 defendants made certain misrepresentations to Mr. Rasure. Additionally, the counter-claim sought

11 to terminate the Debtor's trademarks.

12     To ensure that the Trustee would not misuse the Rasure Action as a fishing-expedition for

13 information to build her own case against Movants, the insurer authorized Arent Fox to represent

14 Movants in the Rasure Action. The Rasure Action proceeded to a jury trial on June 3, 2019. Prior

15 to trial, Movants Mr. Woods, Mr. Busch, Mr. Hilberman and Mr. Newton were identified as

16 witnesses and subpoenaed by the Rasure parties to testify at trial. In preparing for trial, the

17 Trustee's counsel, which was the same counsel retained by Debtor before the bankruptcy filing,

18 met with Mr. Woods, Mr. Busch, Mr. Hilberman and Mr. Newton to discuss the Debtor's claims

19 in the Rasure Action. Arent Fox attorneys represented the Movants at the trial preparation meetings

20 and at trial to protect the Movants' and Trustee's interests.

21 **D.   The Stipulation as an Interim Resolution to the Prior RFS Motion**

22     After many months of discussions, the Trustee and Movants agreed to an interim resolution

23 to the Prior RFS Motion by way of the stipulation entered on September 25, 2019 [Dkt. No. 232]

24 (the "Stipulation"). The Stipulation was approved by the Court's order entered that same day [Dkt.

25 No. 233] (the "Stipulation Order"). Under the Stipulation, Movants could utilize the D&O policy

26 proceeds subject to certain restrictions and conditions. These restrictions were largely arbitrary

27 caps on the Movants' ability to collect defense fees for the various actions.[4] The Trustee further

28

---

[4] The Trustee refused to agree to payment of fees in the amount of $62,913.79 arising from Arent

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

conditioned the Movants' rights to the insurance proceeds on the Trustee's ability to review the billing statements from Movants' counsel. This requirement has been particularly onerous and prejudicial as it requires Movant's counsel to spend additional time and incur additional fees to redact privileged or confidential information from the billing statements so the Trustee can conduct her review without Movants' counsel disclosing privileged litigation strategy. Far more alarming, the Trustee now is using her power of the purse to inhibit Movants from conducting even the most basic litigation task – discovery; on June 5, 2020, in response to receiving written discovery from Movants aimed at uncovering the factual bases for Trustee's legal claims, Trustee's counsel threatened, "Unless you plan on filing an answer, I cannot recommend the Trustee approve time for the propounded discovery."[5] The Trustee's act to limit the Movant's ability to defend against her claims – by dictating the type of responsive pleading Movants file – is an abuse of the Trustee's authority and a flagrant example of misconduct.

Initially the Movants believed that an interim resolution of the Prior RFS Motion would give the parties more bandwidth to focus on settling the Trustee Action and the claims therein. However, after attending numerous mediations in good faith, the Movants have come to realize that the Trustee is under the misimpression that the D&O Policy is akin to a bank account for the Debtor to both control and benefit from, and refuses to consider any arguments and evidence showing the weaknesses in her claims against the Movants. Indeed, the Trustee's counsel believes it is reasonable to act as auditor of Movants' counsel's invoices. Thus, as litigation between the Trustee and Movants escalates, and as the Trustee's counsel's threats make abundantly clear, the Trustee's control over the policy proceeds (via the Stipulation) prejudices the Movants' due process and their ability to fully and freely defend themselves in the Trustee Action. Accordingly, the Movants request that the Court set aside the Stipulation Order as contemplated therein and request that the Court proceed with ruling on whether the liability proceeds payable to the Movants under the D&O Policy and its proceeds should be considered property of the bankruptcy estate and subject to the estate's exclusive control.

Fox's representation in the Knight Foundation action and the Rasure Action, though rights were reserved.
[5] *See* Paragraph 3 of the Declaration of Allan Anderson attached herein.

Arent Fox LLP
Attorneys At Law
San Francisco

- 9 -

**E.**     <u>The D&O Policy</u>

The Debtor purchased the D&O Policy for the benefit of the officers and directors of Debtor and its subsidiaries. Coverage under the D&O Policy is for "claims made" during the one-year policy period, April 1, 2017 through April 1, 2018. Additionally, pursuant to Endorsement No. 37, Debtor purchased a three-year Discovery Period from April 1, 2018 to April 1, 2021 with respect to the D&O Coverage Section (the "Extended Period").

The D&O Policy provides for three (3) insuring clauses:

    A.     **INSURING CLAUSES**

        1.     The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

        2.     The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**

        3.     The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** or, if applicable, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period.**[6]

Insuring Clause A.1. provides liability coverage for the Debtor's directors and officers, including the Movants, whereby the insurer is obligated to pay the loss (e.g. defense fees and any judgments or settlements) of any directors and officers of the Debtor that has not been indemnified by the Debtor. Insuring Clause A.2. provides for indemnification coverage for the Debtor and obligates the insurer to pay any loss of the Debtor for which the company indemnified the directors and officers and which the directors and officers are legally obligated to pay. Lastly, Insuring Clause A.3. provides liability coverage for the Debtor itself and entitles the Debtor to coverage benefits if it becomes legally obligated to pay a loss as a result of having a claim or action filed

---

[6] Section A of the D&O Policy, Page 42 of the Motion.

against it.

The D&O Policy further provides in pertinent part:

H.   **PAYMENT PRIORITY**

1.   If the amount of any **Loss** which is otherwise due and owing by the **Insurer** exceeds the then remaining Limit of Liability applicable to the **Loss**, the **Insurer** shall pay the **Loss**, subject to such Limit of Liability, in the following priority.

a.   First, the **Insurer** shall pay any **Loss** covered under Insuring Clause A.1. in excess of any applicable Retention shown in Item 3. of the Declarations; and

b.   Second, only if and to the extent the payment under subsection 1. above does not exhaust the applicable Limit of Liability, the **Insurer** shall pay any **Loss** in excess of the Retention shown in Item 3. of the Declarations covered under any other applicable Insuring Clause.[7]

In accordance with the D&O Policy, the Movants, as former directors and officers of Debtor, are the primary beneficiaries of the liability coverage proceeds under Insuring Clause A.1. The Payment Priority provision makes clear that the insurer is obligated to pay liability coverage proceeds for the losses sustained by Movants first.  "[O]nly if and to the extent the payment under [Insuring Clause A.1.] does not exhaust the applicable Limit of Liability," can the insurer pay insurance proceeds to cover the Debtor's losses under Insuring Clause A.2 and A.3.  Moreover, no claim has been made against the Company (Debtor) such that would trigger liability coverage under Insuring Clause A.3.

The Movants submitted their demand to Nationwide Mutual Insurance Company for payment of defense costs that they have incurred and are continuing to incur in defending against the claims asserted in the Knight Foundation Action, Rasure Action, and the Trustee Action.  The insurer has indicated it is anxious to fulfill its legal obligations under the D&O Policy to pay the losses of the Movants.

As discussed further below, the liability coverage proceeds payable only to the Movants under Insuring Clause A.1. of the D&O Policy are not subject to the automatic stay because they are not property of Debtor's bankruptcy estate.  But, even if the proceeds are the estate's property,

---

[7] Section H of the D&O Policy, Page 49 of the Motion.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -

1  good cause exists for this Court to modify the automatic stay to allow the Movants to obtain liability

2  coverage under the D&O Policy.

3                                         **III.**

4                                    **ARGUMENT**

5  **A.    Given the Trustee's Continual Attempts to Improperly Restrict the Movant's Ability**

6          **to Defend Against the Trustee Action, the Court Should Set Aside the Stipulation**

7          **and Vacate the Stipulation Order.**

8          Bankruptcy courts can set aside a stipulation if the interests of justice so require and if the

9  parties can be restored to the positions they occupied before they entered into the stipulation.  A &

10 A Sign Co. v. Maughan, 419 F.2d 1152, 1155 (9th Cir. 1969) ("In the exercise of its inherent

11 equitable powers, the bankruptcy court has authority to modify or vacate its own interlocutory

12 orders."); In re Flashcom, Inc., 2014 WL 4923073, at *8 (9th Cir. BAP Oct. 1, 2014) (noting that

13 Maughan is binding Ninth Circuit law).

14         Here, the Stipulation Order – approving the Stipulation and the provision therein to allow

15 the Trustee to review and approve Movant's defense fees and costs – is an interlocutory order and

16 should be vacated.  The Trustee's blatant attempt to leverage the terms of the Stipulation to her

17 advantage by threatening to limit Movant's ability to recoup defense fees and costs under the D&O

18 Policy should the Movants challenge her Amended Complaint with a Motion to Dismiss is but one

19 example of her abuse of her authority.  Allowing the Stipulation Order to stand in light of the

20 Trustee's clear misconduct prejudices the Movants' due process and their ability to fully and freely

21 defend themselves in the Trustee Action.  Because the interest of justice requires it and the parties

22 can be restored to their prior positions before the Stipulation, the Movants respectfully requests the

23 Court exercise its discretion to set aside the Stipulation and vacate the Stipulation Order.

24 **B.    The Liability Coverage Proceeds Are Not Estate Property and Therefore Not Subject**

25        **to the Automatic Stay.**

26         The question of whether the underlying insurance proceeds qualify as estate property is

27 unsettled and requires a fact-specific analysis.  In re Mila, Inc., 423 B.R. 537, 543 (9th Cir. BAP

28 2010) (noting that whether D&O policy proceeds are an estate asset has not been decided in the

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 15 of
101

14

Ninth Circuit); In re Sfuzzi, Inc., 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996) ("[T]he question of whether the proceeds are property of the estate must be analyzed in light of the facts of each case.").

Courts consistently hold that if a debtor does not have a direct interest in the proceeds of the insurance policy, the insurance proceeds are not considered property of the debtor's estate. La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.), 832 F.2d 1391, 1394 (5th Cir. 1987). The courts look to whether the contractual obligation of the insurance company would be payable to the debtor or the directors and officers in the event liability coverage is triggered. In re Imperial Corp. of America, 144 B.R. 115, 118 (Bankr. S.D. Cal. 1992) (following the Fifth Circuit's way of determining ownership of liability proceeds in Louisiana World Exposition); In re Daisy Systems Securities Litigation, 132 B.R. 752, 755 (Bankr. N.D. Cal. 1991) (following Louisiana World Exposition to find that the insurance proceeds were not part of the debtor's bankruptcy estate and that the automatic stay did not apply because the directors and officers, not the debtor, were the primary beneficiaries of the policies).

In Louisiana World Exposition, the Fifth Circuit distinguished between ownership of the policy and ownership of the proceeds: "The question is not who owns the policy, but who owns the liability proceeds." Id. at 1399. The debtor purchased D&O policies providing (a) liability coverage for its directors and officers for liabilities and related legal expenses they personally might incur in connection with their positions and (b) indemnification coverage for the debtor to the extent it might reimburse its directors and officers for such legal expense or liability. Id. at 1393. The policies were considered "wasting" policies; in which, each policy had a single total amount of coverage which was applicable to both the indemnification and the liability protections jointly, so that payment under either reduced the amount of coverage remaining available under both. Id. at 1398.

The Fifth Circuit held that the debtor had no ownership interest in the proceeds from the liability coverage. Id. at 1399. The court further held that the Debtor's rights to the indemnification proceeds did not affect its determination that the liability proceeds belonged to the directors and officers and were not property of the debtor's bankruptcy estate. Id.

More importantly, the courts must considered whether a debtor's rights to the insurance

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

1   proceeds are real and actual or whether the likelihood of any such claims are hypothetical or

2   speculative.  In re Mila, Inc., 423 B.R. 537, 544–45 (9th Cir. BAP 2010) (finding no real or actual

3   coverage claims belonging to the debtor where the defending director/officer has not asked the

4   debtor for indemnification payments; the debtor has not made and would likely never make any

5   indemnification payments; and no other claims were filed against the debtor or its officers); In re

6   Youngstown Osteopathic Hosp. Ass'n, 271 B.R. 544, 550 (Bankr. N.D. Ohio 2002) (concluding

7   that the debtor's pecuniary interests in the insurance proceeds were not enough to turn the proceeds

8   into estate property because there was no claim made by the debtor for the indemnity coverage).

9          Here – the Debtor does not have any claims for liability coverage under the D&O Policy.

10  Insuring Clause A.3. provides that the insurer will pay a loss for which the Debtor "becomes legally

11  obligated to pay by reason of a Claim first made against the [Debtor] during the Policy Period."[8]

12  The policy is a "claims made" policy – meaning any claims or actions filed against the Debtor must

13  have been filed within the policy period, which ended on April 1, 2018.[9]  As no actions or claims

14  have been made against Debtor that would trigger liability coverage for the company under Insuring

15  Clause A.3., the Debtor does not have any rights to the D&O Policy's liability coverage proceeds.

16         Likewise, the Debtor's rights to any indemnification proceeds are purely hypothetical and

17  entirely speculative at this point.  Under Insuring Clause A.2. of the D&O Policy, the insurer has

18  no obligation to disburse proceeds to the Debtor until the Debtor has indemnified the directors and

19  officers for a loss that the directors and officers have become legally obligated to pay.[10]  To date,

20  the Movants have not and will not be indemnified by the Debtor for the settlement of the Knight

21  Foundation Action and any of their defense fees incurred in the various actions.  Further, Movants

22  have not been found liable for any claims brought by the Trustee, nor have any of those claims been

23  settled.  Accordingly, the Trustee cannot establish that any indemnification proceeds are properly

24  payable to the Trustee on behalf of the bankruptcy estate.

25         Moreover, the Debtor's (hypothetical) rights to any insurance proceeds are contractually

26  subordinate to the Movant's rights to the liability coverage proceeds.  The plain-language of the

27  _____
    [8] Section A.3 of the D&O Policy, Page 42 of the Motion.
28  [9] The "Extended Period" Debtor purchased solely applies to the D&O Coverage Section.
    [10] Section A.2 of the D&O Policy, Page 42 of the Motion.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

policy makes clear that the insurance carrier must first pay liability coverage proceeds for any loss (e.g. defense fees, judgments, or settlements) sustained by the directors and officers under Insuring Clause A.1. before any payments under the other Insuring Clauses. Payment for the Debtor's indemnification claims or the Debtor's liability coverage under Insuring Clause A.2 and A.3, respectively would be made "only if and to the extent the payment under [Insuring Clause A.1.] does not exhaust the applicable Limit of Liability."[11] Because courts may not deviate from the contractual provisions within the policy, the Movants' direct contractual rights for liability coverage under the D&O Policy cannot be subordinated to the Debtor's secondary and non-existent claims for indemnification or liability coverage. In re Adelphia Communications Corp., 285 B.R. 580, 600 (Bankr. S.D.N.Y. 2002) ("[I]t is unlikely that [the court] ever could properly conclude that the entity coverage needs of the estates wholly take priority over the direct contractual rights of the D&O polices' insureds."); In re Youngstown Osteopathic Hosp. Ass'n, 271 B.R. 544, 550 (Bankr. N.D. Ohio 2002) ("Debtor's right to turnover of the insurance policy's proceeds . . . is limited by the contractual provisions within the policy.") (citations omitted).

To the extent the Trustee believes that the Debtor has an interest in the liability coverage proceeds because said proceeds may go towards payment of a judgment or settlement in the Trustee Action, this belief is misplaced. In In re Allied Digital Technologies, Corp., 306 B.R. 505, 512-13 (Bankr. D. Del. 2004), the bankruptcy trustee brought an action against the directors and officers and argued that the insurance proceeds, which would be payable to the debtor on account a judgment or settlement in the trustee's action, were property of the estate. The court disagreed with the trustee's argument and noted that the trustee's "real concern is that payment of defense costs may affect his rights as a plaintiff seeking to *recover from* the D&O Policy rather than as a potential defendant seeking to be *protected by* the D&O Policy." Id. at 513 (emphasis in original). The court found that where the trustee was unable to make a "credible showing" that the policy provided direct coverage to the debtor, the policy proceeds would not be considered estate property.

Because the Debtor does not have any interest whether legal or equitable in the liability proceeds under the D&O Policy, the liability proceeds are not property of the bankruptcy estate.

---

[11] Section H.1.b of the D&O, Page 49 of the Motion.

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Thus, any payments of liability proceeds to the Movants for their defense fees and any judgments or settlements resulting from the various actions are not subject to the automatic stay.

**C.**     **Even if the Liability Coverage Proceeds of the D&O Policy Are Considered Estate Property, the Court Should Modify the Automatic Stay to Permit the Movants to Receive Payment of Liability Coverage According to the Terms of the D&O Policy.**

Section 362(d)(1) gives the bankruptcy court broad discretion to grant relief from the automatic stay imposed under § 362(a) for "cause." In re Mila, Inc., 423 B.R. 537, 542 (9th Cir. BAP 2010). In cases where the D&O policy proceeds were considered property of the estate, the bankruptcy court must balance the harm to the debtor if the stay is modified with the harm to the directors and officers if they are prevented from executing their contractual rights to defense costs. Id. at 543-44 (citing In re Allied Digital Technologies, Corp., 306 B.R. 505, 513 (Bankr. D. Del. 2004) and In re CyberMedica, Inc., 280 B.R. 12, 18 (Bankr. D. Mass. 2002)).

Even if the proceeds are somehow the bankruptcy estate's property and subject to the automatic stay, "[i]t is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary." In re Allied Digital Technologies, Corp., 306 B.R. 505, 513 (Bankr. D. Del. 2004); In re CyberMedica, Inc., 280 B.R. 12, 18 (Bankr. D. Mass. 2002).

The situation at bar directly aligns with the circumstances presented in Allied Digital Technologies, 306 B.R. at 513. As here, the bankruptcy trustee in Allied Digitial Technologies sought to limit the directors' and officers' rights to reimbursement of their defense costs by arguing that payment of defense costs under a wasting policy harms the debtor's ability to recover from said policy. The court categorically rejected the trustee's position:

> The bottom line is that the [t]rustee seeks to protect the amount he may receive in his suit against the directors and officers while limiting coverage for the defense costs of the directors and officers. This is not what the directors and officers bargained for. In bringing the action against the directors and officers, the Trustee knew that the proceeds could be depleted by legal fees and he took that chance. The law does not support the Trustee's request to regulate defense costs.

Id. (emphasis added).

The Allied Digital Technologies court also found that even if the proceeds were estate

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    property, the automatic stay should be lifted.  The court noted that without funding from the

2    insurance proceeds, the directors and officers would be "prevented from conducting a meaningful

3    defense to the [t]rustee's claims and may suffer substantial and irreparable harm" and found that

4    this harm greatly outweighed the trustee's attempt to protect his rights as plaintiff seeking to recover

5    from the D&O policy.  Id. at 514.

6           Here, "cause" exists for the Court to modify the relief from stay to allow Movants full access

7    liability coverage under the terms of the D&O Policy.  The certain harm suffered by the Movants

8    should they be foreclosed from exercising their contractual rights to the liability coverage under

9    the D&O Policy greatly outweighs the hypothetical harm to the Debtor.  The Trustee believes that

10   allowing Movants to receive liability coverage may limit her ability to recover under the D&O

11   Policy as a plaintiff.  In this way, the Trustee is no different than any other plaintiff suing defendants

12   covered by a wasting policy.  There is no justification for giving the Trustee an advantage over the

13   Movants by allowing the Trustee to limit or regulate Movants' defense costs.  Further, it is highly

14   unlikely that the Movants' defense fees would exhaust the D&O Policy's limit of $4 million.  While

15   the harm to Debtor is remote, the Movants will be substantially and irreparably harmed if they are

16   precluded from accessing the liability coverage proceeds for their defense of the Trustee Action.

17   Accordingly, good cause exists for the Court to modify the automatic stay to permit the Movants

18   to obtain liability coverage under the terms of the D&O Policy.

19                                                    **IV.**

20                                              **CONCLUSION**

21          For the foregoing reasons, Movants respectfully request the Court enter an order (1)

22   vacating the Stipulation Order; (2) finding that the liability coverage proceeds under the D&O

23   Policy are not property of the Debtor's bankruptcy estate or alternatively, granting relief from the

24   automatic stay for the Movants to obtain liability coverage proceeds directly in accordance with

25   the terms of the D&O Policy, and (3) granting such other and further relief the Court deems just

26   and proper.

27

28

Dated: June 11, 2020

Respectfully submitted,

**ARENT FOX LLP**

By: */s/ Aram Ordubegian*
Aram Ordubegian
Attorney for Movants

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 18 -

**DECLARATION OF DANIEL WOODS**

I, Daniel Woods, declare that:

1.        I am the former Chief Executive Officer of the chapter 7 debtor, TechShop, Inc. ("Debtor").  If called as a witness, I could and would competently testify with respect to the matters set forth in this declaration from my own personal knowledge.  I submit this declaration in support of the *Motion for Relief from the Automatic Stay, to the Extent Required, for Payment of Liability Coverage Proceeds Under the D&O Policy*.

2.        A true and correct copy of the D&O Policy is attached as **Exhibit 1**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11ᵗʰ  day of June 2020 in Los Angeles, California.

_____
DANIEL WOODS

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 19 -

**DECLARATION OF ALLAN ANDERSON**

I, Allan Anderson, declare that:

1.     I am a partner of the firm Arent Fox LLP ("Arent Fox" or the "Firm"), a law firm

that employs approximately 450 attorneys and maintains an office for the practice of law at 555

W. Fifth St., 48th Floor, Los Angeles, CA 90013 as well as offices in San Francisco, CA,

Washington, DC, Boston, MA, and New York, NY.

2.     I am fully familiar with the facts hereinafter stated, and if called as a witness, I

could and would testify to the matters set forth in this declaration. I submit this declaration in

support of the *Motion for Relief from the Automatic Stay, to the Extent Required, for Payment of*

*Liability Coverage Proceeds Under the D&O Policy*.

3.     On June 5, 2020, in response to receiving written discovery from Movants aimed

at uncovering the factual bases for Trustee's legal claims, Trustee's counsel stated, "Unless you

plan on filing an answer, I cannot recommend the Trustee approve time for the propounded

discovery."

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this 11th day of June 2020 in Los Angeles, California.

_____

ALLAN ANDERSON

ARENT FOX LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHIBIT 1



5/2/2017

Alison Flemming
Cooper & McCloskey, Inc.- San Francisco
111 Pine Street
Suite 915
San Francisco, CA 94111


**RE: TechShop, Inc.**
     **PolicyNo.: EKS3217615**

Dear Alison:

Attached please find the following items for the policy for the above mentioned account. Included you will also find the policy for the insured. It is located in the packet following a separator page that reads INSURED POLICY. Review and report any discrepancies to our office right away.

- o **Declarations** EKS-D-1 (04/08)
- o **California Policyholder Notice** NOTX0015CA (02/00)
- o **California Surplus Lines Notice** NOTS0021CA (07/11)
- o **General Terms and Conditions** EKS-1 (04/08)
- o **Employment Practices Coverage Section** EKS-P-2 (04/08)
- o **Directors & Officers and Company Coverage Section** EKS-P-1 (04/08)
- o **Additional Named Insureds with Continuity Date** EKS-75 (04/08)
- o **Allocation Provision** EKS-782 (01/09)
- o **Amend Discovery Election-90 Days** EKS-787 (01/09)
- o **Amend Notice of Circumstances** EKS-6 (04/08)
- o **Amend Notice of Circumstances** EKS-7 (04/08)
- o **Amend Notice Provision - D&O** EKS-8 (04/08)
- o **Amend Notice Provision - EPL** EKS-9 (04/08)
- o **Amend Notice Provision 60 Days - EPL** EKS-832 (05/09)
- o **Amend Other Insurance - EPL** EKS-810 (01/09)
- o **Amend Other Insurance to be Primary - D&O** EKS-199 (04/08)
- o **Amend Outside Services Exclusion** EKS-14 (01/09)
- o **Amend Pollution Exclusion - Side A** EKS-846 (11/09)
- o **Amend Subrogation Provision - Final Judgment** EKS-784 (01/09)
- o **Amend Third Party** EKS-15 (04/08)
- o **Amend Warranty Provision Non-Rescindable Coverage** EKS-16 (04/09)
- o **Amendatory Endorsement - California** UTS-253-CA (01/97)
- o **Amended Definition of Directors & Officers - Leased / Contracted Employees** EKS-202 (04/08)
- o **Amended Insured Versus Insured Exclusion** EKS-17 (03/10)
- o **Amended Insured Versus Insured Exclusion - Foreign Jurisdiction** EKS-845 (05/09)

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 25 of 101

24

- **Amended Insured Versus Insured Exclusion with Creditor Committee Carveback** EKS-783 (01/09)
- **Cost of Investigations Coverage** EKS-781 (01/09)
- **Delete Paragraph iii. from Exclusion n.** EKS-775 (01/09)
- **Employed Lawyers Extension** EKS-21 (04/08)
- **Employee Privacy Coverage with Sub-Limit** EKS-929 (02/11)
- **Exclusion of Certified Acts of Terrorism** EKS-271 (06/08)
- **Extradition Coverage Endorsement** EKS-788 (01/09)
- **Immigration Claim Endorsement** EKS-785 (01/09)
- **PPACA Civil Money Penalties Extension** EKS-1562 (0614)
- **Removal of Alternative Dispute Resolution Provision** EKS-37 (04/08)
- **Scientific And Advisory Board Extension** EKS-19 (04/08)
- **Separate Costs, Charges and Expenses Limit** EKS-952 (06/11)
- **Service of Suit Clause** UTS-9g (05/96)
- **Tolling or Waiving the Statute of Limitations** EKS-786 (01/09)
- **Wage and Hour Claim Costs, Charges and Expenses Only Endorsement** EKS-1144 (12/12)
- **Policyholder Disclosure Notice of Terrorism Insurance Coverage** NOTX0423CW (02/15)

Thank you.

*Lisa Danna*

**Lisa Danna**

5/2/2017 — Page 2 of 2

22
25

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 26 of
101



# SCOTTSDALE INSURANCE COMPANY®

A Stock Insurance Company, herein called the **Insurer**
Home Office:
One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675

## BUSINESS AND MANAGEMENT INDEMNITY POLICY DECLARATIONS

THE EMPLOYMENT PRACTICES, DIRECTORS AND OFFICERS AND COMPANY, FIDUCIARY, BUSINESSOWNERS, PRIVACY PLUS, TECHNOLOGY, MEDIA AND PROFESSIONAL SERVICES AND MISCELLANEOUS PROFESSIONAL SERVICES COVERAGE SECTIONS OF THIS POLICY, WHICHEVER ARE APPLICABLE, COVER ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR, IF ELECTED, THE EXTENDED PERIOD AND REPORTED TO THE INSURER PURSUANT TO THE TERMS OF THE RELEVANT COVERAGE SECTION. THE CRIME COVERAGE SECTION, IF APPLICABLE, APPLIES ONLY TO LOSS DISCOVERED DURING THE POLICY PERIOD. PLEASE READ THIS POLICY CAREFULLY.

THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED LOSS SHALL BE REDUCED BY AMOUNTS INCURRED FOR COSTS, CHARGES AND EXPENSES, UNLESS OTHERWISE PROVIDED HEREIN. AMOUNTS INCURRED FOR COSTS, CHARGES AND EXPENSES AND LOSS SHALL ALSO BE APPLIED AGAINST THE RETENTION AND DEDUCTIBLE AMOUNTS.

TERMS THAT APPEAR IN BOLDFACE TYPE HAVE SPECIAL MEANING. PLEASE REFER TO THE APPROPRIATE DEFINITIONS SECTIONS OF THIS POLICY.

| Item 1. | **Parent Company** & Mailing Address: | TechShop, Inc. 405 El Camino Real, Box 606 Menlo Park, CA 94025 | **Policy** No: Agent No: Renewal No: Agent Name & Mailing Address: | EKS3217615 29406 EKS3185596 E-Risk Services, LLC Northwest Professional Center 227 US Hwy 206 Suite 302 Flanders, NJ 07836-9174 |
|---|---|---|---|---|

Principal Address, if different from mailing address:

**Item 2.** **Policy Period:** From 4/1/2017 to 4/1/2018
12:01 A.M. local time at Principal Address shown above.

**Item 3.** Coverage Sections and Limit of Liability

Employment Practices Coverage Section

1. Limit of Liability:
   a. $1,000,000    aggregate for all **Loss**, subject to 1.b. and 1.c. immediately below.
   b. $1,000,000    additional aggregate for all **Costs, Charges and Expenses**, subject to 1.c. immediately below.
   c. $2,000,000    maximum aggregate for this Coverage Section
2. Retention:
   a. $50,000    each **Employment Practices Claim**
   b. $50,000    each **Third-Party Claim**
3. **Continuity Date:** 9/1/11
4. **Third Party** Coverage: Yes **X**    No ____

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 27 of 101

Directors and Officers and Company Coverage Section

1. Limit of Liability:
   a. $3,000,000 aggregate for all **Loss**, subject to 1.b. and 1.c. immediately below.
   b. $1,000,000 additional aggregate for all **Loss** under Insuring Clause A.1., subject to 1.c, immediately below.
   c. $4,000,000 maximum aggregate for this Coverage Section
2. Retention:
   a. $0 each **Claim** under Insuring Clause 1.
   b. $5,000 each **Claim** under Insuring Clause 2.
   c. $5,000 each **Claim** under Insuring Clause 3.
3. **Continuity Date:** 9/1/2010

| | | |
|---|---|---|
| Item 4. | Premium: | $45,412 |

**Item 5.**   **Discovery Period** options:

1. One (1) year =    100%   of the premium
2. Two (2) years =    125%   of the premium
3. Three (3) years =    150%   of the premium

As provided in Section H. of the General Terms and Conditions, only one of the above **Discovery Period** options may be elected and purchased.

**Item 6.**   **Run-Off Period**:

1. One (1) year =    110%   of the premium
2. Two (2) years =    112%   of the premium
3. Three (3) years =    115%   of the premium
4. Four (4) years =    120%   of the premium
5. Five (5) years =    122%   of the premium
6. Six (6) years =    125%   of the premium

As provided in Section I. of the General Terms and Conditions, only one of the above **Run-Off Period** options may be elected and purchased.

**Item 7.**   Forms and Endorsements Effective at Inception of **Policy:**

EKS-D-1 (04/08), NOTX0015CA (02/00), NOTS0021CA (07/11), EKS-1 (04/08), EKS-P-2 (04/08), EKS-P-1 (04/08), EKS-75 (04/08), EKS-782 (01/09), EKS-787 (01/09), EKS-6 (04/08), EKS-7 (04/08), EKS-8 (04/08), EKS-9 (04/08), EKS-832 (05/09), EKS-810 (01/09), EKS-199 (04/08), EKS-14 (01/09), EKS-846 (11/09), EKS-784 (01/09), EKS-15 (04/08), EKS-16 (04/09), UTS-253-CA (01/97), EKS-202 (04/08), EKS-17 (03/10), EKS-845 (05/09), EKS-783 (01/09), EKS-781 (01/09), EKS-775 (01/09), EKS-21 (04/08), EKS-929 (02/11), EKS-271 (06/08), EKS-788 (01/09), EKS-785 (01/09), EKS-1562 (0614), EKS-37 (04/08), EKS-19 (04/08), EKS-952 (06/11), UTS-9g (05/96), EKS-786 (01/09), EKS-1144 (12/12), NOTX0423CW (02/15)

**Item 8.**   Notices to Company:

| Notice of Claims to: | Other Notices to: |
|---|---|
| Scottsdale Indemnity Company | Scottsdale Indemnity Company |
| Attention: Claims Manager | Attention: Claims Manager |
| 7 World Trade Center, 37th Floor | 7 World Trade Center, 37th Floor |
| 250 Greenwich Street | 250 Greenwich Street |
| New York, NY 10007 | New York, NY 10007 |
| FSReportALoss@freedomspecialtyins.com | FSReportALoss@freedomspecialtyins.com |

These Declarations, together with the **Application**, Coverage Sections, General Terms and Conditions, and any written endorsement(s) attached thereto, shall constitute the contract between the **Insured** and the **Insurer**.

24

27

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 28 of 101



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive •Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                         President

The information contained herein replaces any similar information contained elsewhere in the policy.

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 29 of
101


**SCOTTSDALE INSURANCE COMPANY** ®

**CALIFORNIA POLICYHOLDER NOTICE**

**IMPORTANT INFORMATION FOR CALIFORNIA POLICYHOLDERS**

In the event you need to contact someone about this policy for any reason, please contact your agent first. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

**8877 North Gainey Center Drive**
**Scottsdale, Arizona 85258**
**Telephone: 1-800-423-7675**

If you have been unable to contact or obtain satisfaction from the company or agent, you may contact the California Insurance Department at:

**California Department of Insurance**
**Consumer Affairs Unit**
**300 South Spring Street, 9th Floor, South Tower**
**Los Angeles, California 90013**
**Telephone: 1-800-927-4357 or 213-897-8921 (out of state)**

When contacting your agent, company or the Insurance Department, please have your policy number available.



## CALIFORNIA SURPLUS LINES NOTICE

**NOTICE TO CALIFORNIA INSURED**

1. **THE INSURANCE POLICY THAT YOU [HAVE PURCHASED] [ARE APPLYING TO PURCHASE] IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NON-ADMITTED" OR "SURPLUS LINE" INSURERS.**

2. **THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

3. **THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

4. **THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN)INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELE-PHONE NUMBER: 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**

NOTS0021CA (07/11)

5/2/2017 — Page 1 of 2

5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATES DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE IN-SURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEBSITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKERS FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

(California D-2)



SCOTTSDALE INSURANCE COMPANY®

A Stock Insurance Company, herein called the **Insurer**

## BUSINESS AND MANAGEMENT INDEMNITY POLICY

## GENERAL TERMS AND CONDITIONS

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows

A. **SEVERABILITY OF GENERAL TERMS AND CONDITIONS**

These General Terms and Conditions apply to each and every Coverage Section of this **Policy**. The terms and conditions of each Coverage Section apply only to that Coverage Section and shall not be construed to apply to any other Coverage Section.

B. **DEFINITIONS**

Whenever used in this **Policy**, the terms that appear below in **boldface** type shall have the meanings set forth in this Definitions subsection of the General Terms and Conditions. However, if a term also appears in **boldface** type in a particular Coverage Section and is defined in that Coverage Section, that definition shall apply for purposes of that particular Coverage Section. Terms that appear in **boldface** in the General Terms and Conditions but are not defined in this Definitions subsection and are defined in other Coverage Sections of the **Policy** shall have the meanings ascribed to them in those Coverage Sections.

1. **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any policy of which this **Policy** is a renewal or replacement. All such applications, attachments, information, materials and documents are deemed attached to and incorporated into this **Policy**.

2. **Company** means:

    a. the **Parent Company**; and

    b. any **Subsidiary**,

    and includes any such organization as a debtor-in-possession or the bankruptcy estate of such entity under United States bankruptcy law or an equivalent status under the law of any other jurisdiction.

3. **Discovery Period** means one of the periods described in Item 5. of the Declarations which is elected and purchased pursuant to Section H. below.

4. **Domestic Partner** means any natural person qualifying as a domestic partner under the provision of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

5. **Extended Period** means the **Discovery Period** or the **Run-Off Period,** if such provision is elected and purchased pursuant to Sections H. or I. respectively, below.

6. **Insurer** means the insurance company providing this insurance.

7. **Parent Company** means the entity first named in Item 1. of the Declarations.

29
32
Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 33 of 101

8. **Policy** means, collectively, the Declarations, the **Application**, this policy form and any endorsements.

9. **Policy Period** means the period from the effective date and hour of the inception of this **Policy** to the **Policy** expiration date and hour as set forth in Item 2. of the Declarations, or its earlier cancellation date and hour, if any.

10. **Run-Off Period** means one of the periods described in Item 6. of the Declarations, which is elected and purchased pursuant to Section I. below.

11. **Subsidiary** means:

    a. any entity of which more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by the **Parent Company**, directly or indirectly, if such entity:

        i. was so owned on or prior to the inception date of this **Policy**; or

        ii. becomes so owned after the inception date of this **Policy**; and

    b. any joint venture entity in which the **Parent Company**, or an entity described in a. above, has an exact fifty percent (50%) ownership of the interests of such joint venture entity and where, pursuant to a written joint venture agreement, the **Parent Company** or entity described in a. above solely controls the management and operations of such joint venture entity.

12. **Takeover** means:

    a. the acquisition by any person or entity of more than fifty percent (50%) of the outstanding securities of the **Parent Company** representing the present right to vote for the election of directors; or

    b. the merger or consolidation of the **Parent Company** into another entity such that the **Parent Company** is not the surviving entity.

All definitions shall apply equally to the singular and plural forms of the respective words.

C. **LIMITS OF LIABILITY, RETENTIONS AND DEDUCTIBLES**

1. The Limits of Liability, Retentions and Deductibles for each Coverage Section are separate Limits of Liability, Retentions and Deductibles pertaining only to the Coverage Section for which they are shown. The application of a Retention or Deductible to **Loss** under one Coverage Section shall not reduce the Retention or Deductible under any other Coverage Section, and no reduction in the Limit of Liability applicable to one Coverage Section shall reduce the Limit of Liability under any other Coverage Section.

2. In the event that any **Claim** is covered, in whole or in part, under two or more Insuring Clauses or more than one Coverage Section, the total applicable Retention or Deductible shall not exceed the single largest applicable Retention or Deductible. The largest applicable Retention or Deductible shall apply only once to such **Claim**.

D. **WARRANTY**

It is warranted that the particulars and statements contained in the **Application** are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy** and each Coverage Section.

By acceptance of this **Policy**, the **Insureds** agree that:

1. the statements in the **Application** are their representations, that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by **Insurer** under this **Policy**, and that this **Policy** and each Coverage Section are issued in reliance upon the truth of such representations; and

2. in the event the **Application**, including materials submitted or required to be submitted therewith ,contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or

30

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 34 of 101

33

omission which materially affects either the acceptance of the risk or the hazard assumed by **Insurer** under this **Policy**, this **Policy**, including each and all Coverage Sections, shall be void ab initio with respect to any **Insureds** who had knowledge of such misrepresentation or omission.

E. **CANCELLATION**

1. By acceptance of this **Policy**, the **Insureds** hereby confer to the **Parent Company** the exclusive power and authority to cancel this **Policy** on their behalf. The **Parent Company** may cancel this **Policy** in its entirety or any of the applicable Coverage Sections individually by surrender thereof to the **Insurer**, or by mailing written notice to the **Insurer** stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the **Policy** or applicable Coverage Section. Delivery of such written notice shall be equivalent to mailing.

2. This **Policy** may be cancelled by the **Insurer** only for nonpayment of premium, by mailing written notice to the **Parent Company** stating when such cancellation shall be effective, such date to be not less than ten (10) days from the date of the written notice. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the **Insurer** shall be equivalent to mailing. If the foregoing notice period is in conflict with any governing law or regulation, then the notice period shall be deemed to be the minimum notice period permitted under the governing law or regulation.

3. If this **Policy** or any Coverage Section is cancelled, the **Insurer** shall retain the pro rata proportion of the premium therefore. Payment or tender of any unearned premium by **Insurer** shall not be a condition precedent to the effectiveness of cancellation.

F. **ESTATES, LEGAL REPRESENTATIVES, AND SPOUSES**

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of natural persons who are **Insureds** shall be considered **Insureds** under this **Policy**; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the natural person who is an **Insured** to the spouse or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All of the terms and conditions of this **Policy** including, without limitation, the Retentions and Deductibles applicable to **Loss** incurred by natural persons who are **Insureds** shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

G. **AUTHORIZATION CLAUSE**

By acceptance of this **Policy**, the **Parent Company** agrees to act on behalf of all **Insureds**, and the **Insureds** agree that the **Parent Company** will act on their behalf, with respect to the giving of all notices to **Insurer**, the receiving of notices from **Insurer**, the agreement to and acceptance of endorsements, the payment of the premium and the receipt of any return premium.

H. **DISCOVERY PERIOD**

1. If this **Policy** or any Coverage Section is cancelled or is not renewed by the **Insurer**, for reasons other than non-payment of premium or if the **Parent Company** elects to cancel or not to renew this **Policy** or a Coverage Section, then the **Parent Company** shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 5. of the Declarations of the total premium for this **Policy,** or the total premium for the cancelled or not renewed Coverage Section, whichever is applicable, to purchase an extension of the coverage granted by this **Policy** or the applicable cancelled or not renewed Coverage Section with respect to any **Claim** first made during the period of time set forth in Item 5. of the Declarations after the effective date of such cancellation or, in the event of a refusal to renew, after the **Policy** expiration date, but only with respect to any **Wrongful Act** committed before such date. The **Parent Company** shall have the right to elect only one of the **Discovery Periods** set forth in Item 5. of the Declarations.

2. As a condition precedent to the right to purchase the **Discovery Period** set forth in subsection H.1. above, the total premium for the **Policy** must have been paid. Such right to purchase the **Discovery Period** shall

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 35 of 101

terminate unless written notice, together with full payment of the premium for the **Discovery Period**, is received by **Insurer** within thirty (30) days after the effective date of cancellation, or, in the event of a refusal to renew, within thirty (30) days after the **Policy** expiration date. If such notice and premium payment is not so given to **Insurer**, there shall be no right to purchase the **Discovery Period**.

3. In the event of the purchase of the **Discovery Period**, the entire premium therefore shall be deemed earned at the commencement of the **Discovery Period**.

4. The exercise of the **Discovery Period** shall not in any way increase or reinstate the limit of **Insurer's** liability under any Coverage Section.

I. **RUN-OFF COVERAGE**

In the event of a **Takeover**:

1. The **Parent Company** shall have the right, upon payment of an additional premium calculated at the percentage of the total premium for this **Policy** set forth in Item 6. of the Declarations, to an extension of the coverage granted by this **Policy** with respect to any **Claim** first made during the **Run-Off Period**, as set forth in Item 6. of the Declarations, but only with respect to any **Wrongful Act** committed before the effective date of the **Takeover** (herein defined as "Run-Off Coverage"); provided, however, such additional premium shall be reduced by the amount of the unearned premium from the date of the **Takeover** or the date of notice of the election of the Run-Off Coverage, whichever is later, through the expiration date set forth in Item 2. of the Declarations.

2. The **Parent Company** shall have the right to elect only one of the periods designated in Item 6. of the Declarations. The election must be made prior to the expiration of the **Policy Period**. The right to purchase a **Run-Off Period** shall terminate on the expiration of the **Policy Period**.

3. If a **Run-off Period** is elected and purchased:

   a. Section E. above, is deleted in its entirety and neither the **Insureds** nor the **Insurer** may cancel this **Policy** or any Coverage Section thereof;

   b. Section H. above, is deleted in its entirety; and

   c. the maximum aggregate Limit of Liability of the **Insurer** for each Coverage Section purchased and set forth on the Declarations shall be twice the otherwise applicable maximum aggregate Limit of Liability set forth in Item 3. of the Declarations for such Coverage Section; provided, however, the maximum aggregate Limit of Liability of the **Insurer** in connection with any one **Claim** shall be amount originally shown as the maximum aggregate Limit of Liability for each Coverage Section purchased and set forth on the Declaration.

J. **ALTERNATIVE DISPUTE RESOLUTION**

The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process described in this subsection.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, and insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of mediation, either party shall have the right to commence arbitration in accordance with this section;

32

35

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 36 of 101

provided, however, that no such arbitration shall be commenced until at least sixty (60) days after the date the mediation shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in Item 1. of the Declarations as the principal address of the **Parent Company**. The **Parent Company** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

K. **TERRITORY**

Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made anywhere in the world.

L. **ASSISTANCE, COOPERATION AND SUBROGATION**

The **Insureds** agree to provide **Insurer** with such information, assistance and cooperation as **Insurer** reasonably may request, and they further agree that they shall not take any action which in any way increases **Insurer's** exposure under this **Policy**. In the event of any payments under this **Policy**, **Insurer** shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as are necessary to enable **Insurer** effectively to bring suit or otherwise pursue subrogation in the name of the **Insureds**, and shall provide all other assistance and cooperation which **Insurer** may reasonably require.

M. **ACTION AGAINST INSURER, ALTERATION AND ASSIGNMENT**

Except as provided in Section J. above, Alternative Dispute Resolution, no action shall lie against **Insurer** unless, as a condition precedent thereto, there shall have been compliance with all of the terms of this **Policy**. No person or organization shall have any right under this **Policy** to join **Insurer** as a party to any action against the **Insureds** to determine their liability, nor shall **Insurer** be impleaded by the **Insureds** or their legal representative. No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Insurer**.

N. **ENTIRE AGREEMENT**

By acceptance of this **Policy**, the **Insureds** agree that this **Policy** embodies all agreements existing between them and **Insurer** or any of their agents relating to this insurance. Notice to any agent or knowledge possessed by any agent or other person acting on behalf of **Insurer** shall not effect a waiver or a change in any part of this **Policy** or estop **Insurer** from asserting any right under the terms of this **Policy** or otherwise, nor shall the terms be deemed waived or changed except by written endorsement or rider issued by **Insurer** to form part of this **Policy**.

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 37 of
101

36



A Stock Insurance Company, herein called the **Insurer**

## BUSINESS AND MANAGEMENT INDEMNITY POLICY

## EMPLOYMENT PRACTICES COVERAGE SECTION

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows

A. **INSURING CLAUSES**

1. **Employee** Insuring Clause

   **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for an **Employment Practices Wrongful Act** taking place prior to the end of the **Policy Period**.

2. **Third-Party** Insuring Clause

   In the event **Third-Party** Coverage is affirmatively designated in Item 3. of the Declarations relating to this Coverage Section, the **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Third-Party Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period,** and reported to the **Insurer** pursuant to Section E.1. herein, for a **Third-Party Wrongful Act** taking place prior to the end of the **Policy Period**.

B. **DEFINITIONS**

1. **Claim** means any:

   a. **Employment Practices Claim**; or

   b. **Third-Party Claim**.

2. **Continuity Date** means the Continuity Date set forth in Item 3. of the Declarations relating to this Coverage Section.

3. **Costs, Charges and Expenses** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability. **Costs, Charges and Expenses** do not include salaries, wages, fees, overhead or benefit expenses of or associated with officers or employees of the **Company**.

4. **Employee** means any person who was, now is or shall become:

   a. a full-time or part-time employee of the **Company**, including voluntary, seasonal, and temporary employees;

   b. any individual who applies for employment with the **Company**; and

   c. any natural person who is a leased employee or is contracted to perform work for the **Company**, or is an independent contractor for the **Company**, but only to the extent such individual performs work or services for or on behalf of the **Company**.

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 38 of 101

5. **Employment Practices Claim** means:

    a. a written demand against an **Insured** for damages or other relief;

    b. a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom;

    c. a civil proceeding against an **Insured** before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by the filing of a notice of charges, investigative order or similar document; or

    d. a criminal proceeding brought for an **Employment Practices Wrongful Act** in a court outside of the United States against any **Insured,** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

brought by or on behalf of an **Employee** in their capacity as such. **Employment Practices Claim** does not include a labor or grievance proceeding, which is pursuant to a collective bargaining agreement.

6. **Employment Practices Wrongful Act** means any actual or alleged:

    a. violation of any common or statutory federal, state, or local law prohibiting any kind of employment-related discrimination;

    b. harassment, including any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment, or unlawful workplace harassment, including workplace harassment by any non-employee;

    c. abusive or hostile work environment;

    d. wrongful discharge or termination of employment, whether actual or constructive;

    e. breach of an actual or implied employment contract;

    f. wrongful deprivation of a career opportunity, wrongful failure or refusal to employ or promote, or wrongful demotion;

    g. employment-related defamation, libel, slander, disparagement, false imprisonment, misrepresentation, malicious prosecution, or invasion of privacy;

    h. wrongful failure or refusal to adopt or enforce workplace or employment practices, policies or procedures, solely as respects employment-related discrimination or harassment;

    i. wrongful discipline;

    j. employment-related wrongful infliction of emotional distress, mental anguish, or humiliation;

    k. **Retaliation**;

    l. negligent evaluation; or

    m. negligent hiring or negligent supervision of others in connection with a. through l. above, but only if employment-related and claimed by or on behalf of any **Employee** and only if committed or allegedly committed by any of the **Insureds** in their capacity as such.

7. **Insured Persons** means all persons who were, now are or shall become:

    a. a director or officer of the **Company**;

    b. any **Employee**; and

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 39 of 101

c. the functional equivalent of a director, officer or **Employee** in the event the **Company** is incorporated or domiciled outside the United States.

8. **Insureds** means the **Company** and any **Insured Persons**.

9. **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes.

10. **Loss** means the damages, judgments, settlements, front pay and back pay, pre-judgment or post judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by any of the **Insureds**. **Loss** does not include:

    a. taxes, fines or penalties;

    b. matters uninsurable under the laws pursuant to which this **Policy** is construed;

    c. punitive or exemplary damages, liquidated damages awarded by a court pursuant to a violation of the Equal Pay Act, the Age Discrimination in Employment Act or the Family Medical Leave Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state or local law, or the multiple portion of any multiplied damage award, except to the extent that such punitive, exemplary, or liquidated damages or the multiple portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the **Insureds**, **Insurer**, this **Policy** or the **Claim** giving rise to such damages;

    d. the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority;

    e. amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

    f. disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing benefit payments;

    g. the costs to modify or adapt any building or property to be accessible or accommodating, or to be more accessible or accommodating, to any disabled person;

    h. the cost of creating or reinstating employment;

    i. any amount owed as wages to any **Employee**, other than front pay or back pay; or

    j. any amount for which the **Insured** is not financially liable or legally obligated to pay.

11. **Retaliation** means any actual or alleged response of any of the **Insureds** to:

    a. the disclosure or threat of disclosure by an **Employee** to a superior or to any governmental agency of any act by any of the **Insureds** where such act is alleged to be a violation of any federal, state local or foreign law, whether common or statutory, or any rule or regulation promulgated thereunder;

    b. the actual or attempted exercise by an **Employee** of any right that such **Employee** has under law, including rights under any worker's compensation law, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

    c. the filing of any claim under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistleblower" provision of any law; or

    d. any legally-protected **Employee** work stoppage or slowdown.

12. **Third-Party** means any natural person who is a customer, vendor, service provider, client, or other business invitee of the **Company**; provided, however, **Third-Party** shall not include any **Employee**.

13. **Third-Party Claim** means:

    a. any written demand for damages or other relief against an **Insured**;

    b. a civil judicial, administrative or arbitration proceeding against an **Insured** seeking damages or other relief, including any appeal therefrom; or

    c. a criminal proceeding brought for an **Employment Practices Wrongful Act** in a court outside of the United States against any **Insured,** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

brought by or on behalf of a **Third-Party** in their capacity as such.

14. **Third-Party Wrongful Act** means any actual or alleged:

    a. harassment of a **Third-Party**, including but not limited to any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment; or

    b. discrimination against a **Third-Party**, including but not limited to any such discrimination on account of race, color, religion, age, disability or national origin.

15. **Wrongful Act** means:

    a. **Employment Practices Wrongful Act**; or

    b. **Third-Party Wrongful Act.**

C. **EXCLUSIONS**

**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:

1. for actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible or intangible property including loss of use thereof, whether or not such property is physically injured; provided, however, this exclusion shall not apply to mental anguish, emotional distress or humiliation;

2. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    a. any **Wrongful Act**, fact circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

    b. any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**;

3. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    a. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

    b. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

including without limitation any such **Claim** by or on behalf of the **Company**, its securities holders or creditors based upon, arising out of, or attributable to the matters described in this exclusion. Provided, however, this exclusion shall not apply to that part of any **Claim** under this Coverage Section where such

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 41 of 101

37

40

**Claim** is for **Retaliation**.

For purposes of this exclusion, **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous, biological, bacterial or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials (including materials to be reconditioned, recycled or reclaimed). **Pollutants** shall also mean any other air emission or particulate, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field;

4.  for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, all as amended, or any rules or regulations promulgated thereunder, or similar provisions of any common or statutory federal, state or local law; provided, however, this exclusion does not apply to any such **Claim** alleging violations of the Equal Pay Act or **Retaliation**;

5.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any dishonest, deliberately fraudulent or criminal act; provided, however this exclusion shall not apply unless and until there is a final judgment against such **Insured** as to such conduct. If such excluded conduct is established through a final judgment, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges and Expenses**;

6.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed subsequent to a **Takeover**;

7.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    a.  any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including without limitation any investigation by the United States Department of Labor or the United States Equal Employment Opportunity Commission, filed or pending on or before the **Continuity Date**; or

    b.  any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry, including any investigation by the United States Department of Labor or the United States Equal Employment Opportunity Commission;

8.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act**, fact, circumstance, or situation which any of the **Insured Persons** who were, now are, or shall be directors, officers, managers or supervisory employees, had knowledge of prior to the **Continuity Date** where such **Insured Persons** had reason to believe at the time that such known **Wrongful Act** could reasonably be expected to give rise to such **Claim**;

9.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any actual or alleged responsibility, obligation or duty of any **Insured** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or pension benefits or similar law; provided, however, this exclusion shall not apply to any such **Claim** alleging **Retaliation**; or

10. for that portion of **Loss** which is covered under any other Coverage Section of this **Policy**.

No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insureds** for the purpose of determining the applicability of any of the above exclusions.

D.  **LIMIT OF LIABILITY AND RETENTIONS**

1.  The liability of the **Insurer** shall apply only to that part of **Loss** which is excess of the Retention amount applicable to this Coverage Section, as shown in Item 3. of the Declarations. Such Retention shall be borne

38

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 42 of 101

41

uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions under this Coverage Section, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

2. As shown in Item 3.1. of the Declarations relating to this Coverage Section, the following Limits of Liability of the **Insurer** shall apply:

   a. The amount set forth in Item 3.1.a. relating to this Coverage Section shall be the aggregate limit of liability for the payment of **Loss**, subject to additional payments for **Costs, Charges and Expenses** as further described in subsection b. immediately below.

   b. The amount set forth in Item 3.1.b. relating to this Coverage Section shall be the aggregate limit of liability for the payment of **Costs, Charges and Expenses** in addition to the limit described in subsection a. immediately above; provided, all payments for **Costs, Charges and Expenses** under the additional limits described in this subsection b. shall be excess of the limit described in subsection a. above, and excess of any other available insurance that is specifically excess to this **Policy**. Such excess insurance must be completely and fully exhausted through the payment of loss, including but not limited to defense costs thereunder, before the **Insurer** shall have any obligations to make any payments under the additional limits described in this subsection b.

   c. The amount set forth in Item 3.1.c. of the Declarations relating to this Coverage Section shall be the maximum aggregate limit of liability under this Coverage Section and the Limit of Liability set forth in 3.1.a. and 3.1.b. relating to this Coverage Section shall be a part of and not in addition to the maximum aggregate limit of liability set forth in Item 3.1.c. for this Coverage Section.

3. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to be a single **Claim,** and such **Claim** shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:

   a. the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

   b. the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Section E.2. below.

4. Payments of **Loss** by **Insurer** shall reduce the Limit(s) of Liability under this Coverage Section. **Costs, Charges and Expenses** are part of, and not in addition to, the Limit(s) of Liability, and payment of **Costs, Charges and Expenses** reduce the Limit(s) of Liability. If such Limit(s) of Liability are exhausted by payment of **Loss**, the obligations of the **Insurer** under this Coverage Section are completely fulfilled and extinguished.

E. **NOTIFICATION**

1. The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give to **Insurer** written notice of any **Claim** made against the **Insureds** as soon as practicable, but in no event later than sixty (60) days after such **Claim** is first made against the **Insureds**, or the expiration of the **Policy Period**, whichever is later. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after such **Claim** is first made against the **Insureds**, or the end of the **Extended Period**, whichever is later.

2. If, during the **Policy Period** or the **Discovery Period**, any of the **Insureds** first becomes aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the **Wrongful Act** allegations anticipated;

   b. the identity of the potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

d. the identity of the **Insureds** allegedly involved;

e. the consequences which have resulted or may result; and

f. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Coverage Section to have been made at the time such written notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

3. Notice to **Insurer** shall be given to the address specified in Item 8. of the Declarations for this **Policy**.

F. **SETTLEMENT AND DEFENSE**

1. It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any **Claim** shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs, Charges and Expenses.**

2. The **Insurer** may make any investigation it deems necessary and shall have the right to settle any **Claim**; provided, however, no settlement shall be made without the consent of the **Parent Company**, such consent not to be unreasonably withheld.

3. Notwithstanding subsection 1. above, in the event that any **Claim** is brought as a class action, and all or any part of such **Claim** involves any actual or alleged violation of the Fair Labor Standards Act of 1938, as amended, or any similar state law, regulation or code, then it shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend any such **Claim**.

4. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The **Insurer** shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s).

5. If the **Insurer** does not have the duty to defend a **Claim**, then the **Insurer** shall have the right and shall be given the opportunity to effectively associate with, and shall be consulted in advance by, the **Insureds** regarding the defense and negotiation of any settlement of any **Claim**.

6. The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim,** the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery.

7. If the Insurer does not have the duty to defend a **Claim** , the **Insurer** shall, on a quarterly basis, advance on behalf of the **Insureds** covered **Costs, Charges and Expenses**, which the **Insureds** have incurred in connection with **Claims** made against them, prior to disposition of such **Claims**. Any advancement of **Costs, Charges and Expenses** shall be subject to the condition that such advanced amounts shall be repaid to the **Insurer** by the **Insureds** severally according to their respective interests if and to the extent the **Insureds** shall not be entitled to coverage for such **Costs, Charges and Expenses** under the terms and conditions of this **Policy**.

G. **OTHER INSURANCE**

1. For any **Employment Practices Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance; provided that with respect to that portion of an **Employment Practice Claim** made against any leased, temporary or independently contracted **Employee**, **Loss**, including **Costs, Charges and Expenses**, payable on behalf of such **Employee** under this Coverage Section will be specifically excess of and will not contribute with such other insurance, including but not limited to any such other insurance under which there is a duty to defend, unless such insurance is specifically stated to be in excess over the Limit of Liability of this Coverage

Section.

2. For any **Third-Party Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be specifically excess of and will not contribute with such other insurance, including but not limited to any such other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be excess over the Limit of Liability of this Coverage Section.

H. **ALLOCATION**

If the **Insurer** does not have the duty to defend a **Claim**, then the following subsections shall apply to such **Claim**.

1. If, in any **Claim** covered in whole or in part under this Coverage Section, the **Insureds** who are afforded coverage for such **Claim** incur **Loss** jointly with others, or incur an amount consisting of both **Loss** covered by this **Policy** and loss not covered by this **Policy** because such **Claim** includes both covered and uncovered matters, then the **Insureds** and the **Insurer** shall allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained by the parties to covered and uncovered matters.

2. If there can be an agreement between **Insureds** and the **Insurer** on an allocation of **Costs, Charges and Expenses**, the **Insurer** shall advance on a current basis covered **Costs, Charges and Expenses**. If there can be no agreement on allocation of **Costs, Charges and Expenses**, the **Insurer** shall advance on a current basis **Costs, Charges and Expenses** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated or arbitrated.

3. Any negotiated or arbitrated allocation of **Costs, Charges and Expenses** on account of a **Claim** shall be applied retroactively to all **Costs, Charges and Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Costs, Charges and Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim** or any other **Claim**.

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 45 of
101

44



SCOTTSDALE INSURANCE COMPANY®

A Stock Insurance Company, herein called the **Insurer**

**BUSINESS AND MANAGEMENT INDEMNITY POLICY**

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

In consideration of the payment of premium, in reliance on the **Application** and subject to the Declarations, and terms and conditions of this **Policy**, the **Insurer** and the **Insureds** agree as follows

### A. INSURING CLAUSES

1. The **Insurer** shall pay the **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

2. The **Insurer** shall pay the **Loss** of the **Company** for which the **Company** has indemnified the **Directors and Officers** and which the **Directors and Officers** have become legally obligated to pay by reason of a **Claim** first made against the **Directors and Officers** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

3. The **Insurer** shall pay the **Loss** of the **Company** which the **Company** becomes legally obligated to pay by reason of a **Claim** first made against the **Company** during the **Policy Period** or, if applicable, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

### B. DEFINITIONS

1. **Claim** means:

   a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

   b. a written demand by one or more of the securities holders of the **Company** upon the board of directors or the management board of the **Company** to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**;

   c. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

   d. a criminal proceeding against any **Insured** commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges;

   e. an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief; or

   f. a civil, administrative or regulatory proceeding, or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document.

2. **Continuity Date** means the date set forth in Item 3. of the Declarations relating to this Coverage Section.

3. **Costs, Charges and Expenses** means:

   a. reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds**

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 46 of
101

in defending **Claims** and the premium for appeal, attachment or similar bonds arising out of covered judgments, but with no obligation to furnish such bonds and only for the amount of such judgment that is up to the applicable Limit of Liability; and

    b.  reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in investigating a written demand, by one or more of the securities holders of the **Company** upon the board of directors or the management board of the **Company,** to bring a civil proceeding against any of the **Directors and Officers** on behalf of the **Company**.

**Costs, Charges and Expenses** do not include salaries, wages, fees, overhead or benefit expenses of or associated with officers or employees of the **Company.**

4.  **Directors and Officers** means any person who was, now is, or shall become:

    a.  a duly elected or appointed director, officer, or similar executive of the **Company**, or any member of the management board of the **Company**;

    b.  a person who was, is or shall become a full-time or part-time employee of the **Company**; and

    c.  the functional equivalent of directors or officers of a **Company** incorporated or domiciled outside the United States of America.

5.  **Insured** means the **Company** and the **Directors and Officers**.

6.  **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes.

7.  **Loss** means damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by **Directors and Officers** under Insuring Clauses 1. or 2. or the **Company** under Insuring Clause 3. **Loss** does not include:

    a.  taxes, fines or penalties;

    b.  matters uninsurable under the laws pursuant to which this **Policy** is construed;

    c.  punitive or exemplary damages, or the multiple portion of any multiplied damage award, except to the extent that such punitive or exemplary damages, or multiplied portion of any multiplied damage award are insurable under the internal laws of any jurisdiction which most favors coverage for such damages and which has a substantial relationship to the **Insureds**, **Insurer**, this **Policy** or the **Claim** giving rise to such damages;

    d.  the cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority;

    e.  any amount for which the **Insured** is not financially liable or legally obligated to pay;

    f.  the costs to modify or adapt any building or property to be accessible or accommodating, or more accessible or accommodating, to any disabled person; or

    g.  any amounts owed or paid to one or more securities holders of the **Company** under any written or express contract or agreement.

8.  **Outside Entity** means:

    a.  any non-profit company which is exempt from taxation under the Internal Revenue Code, as amended, in which any of the **Directors and Officers** is a director, officer, trustee, governor, executive director or similar position of such non-profit company; and

    b.  any other company specifically identified by endorsement to this **Policy**.

9. **Wrongful Act** means any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by:

   a. any of the **Directors and Officers**, while acting in their capacity as such, or any matter claimed against any **Director and Officer** solely by reason of his or her serving in such capacity;

   b. any of the **Directors and Officers**, while acting in their capacity as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Company**; and

   c. the **Company**, but only with respect to Insuring Clause 3. of this Coverage Section.

C. **EXCLUSIONS**

   1. Exclusions Applicable to All Insuring Clauses

      **Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim**:

      a. for actual or alleged bodily injury, sickness, disease, death, false imprisonment, assault, battery, mental anguish, emotional distress, invasion of privacy of any person, or damage to or destruction of any tangible or intangible property including loss of use thereof, whether or not such property is physically injured;

      b. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

         i. any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

         ii. any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** which has been the subject of such prior notice, would constitute **Interrelated Wrongful Acts**;

      c. Alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

         i. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

         ii. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

      provided, however, this exclusion shall not apply to any **Claim** brought directly, derivatively or otherwise by one or more securities holders of the **Company** in their capacity as such.

      For purposes of this exclusion, **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous, biological, bacterial or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials (including materials to be reconditioned, recycled or reclaimed). **Pollutants** shall also mean any other air emission or particulate, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field;

      d. for any actual or alleged violation of the responsibilities, obligations or duties imposed by Employee Retirement Income Security Act of 1974, as amended, or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local statutory or common law;

44

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 48 of 101

47

e. brought or maintained by, on behalf of, in the right of, or at the direction of any **Insured** in any capacity, any **Outside Entity** or any person or entity that is an owner of or joint venture participant in any **Subsidiary** in any respect and whether or not collusive, unless such **Claim**:

    i. is brought derivatively by a securities holder of the **Parent Company** and is instigated and continued totally independent of, and totally without the solicitation, assistance, active participation of, or intervention of, any **Insured**;

    ii. is brought or maintained by any **Insured** in the form of a cross-claim, third-party claim or other proceeding for contribution or indemnity which is part of, and directly results from a **Claim** that is covered by this Coverage Section;

    iii. is brought or maintained by an employee of the **Company** who is not or was not a director or officer of the **Company**;

    iv. is brought or maintained by any former director or officer of the **Company** solely in their capacity as a securities holder of the **Company** and where such **Claim** is solely based upon and arising out of **Wrongful Acts** committed subsequent to the date such director or officer ceased to be a director or officer of the **Company** and where such **Claim** is first made two (2) years subsequent to the date such director or officer ceased to be a director or officer of the **Company**; or

    v. is brought or maintained by any bankruptcy trustee or bankruptcy appointed representative of the **Company**;

f. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    i. any dishonest, deliberately fraudulent or criminal act of an **Insured**; provided, however this exclusion f.i. shall not apply unless and until there is a final judgment against such **Insured** as to such conduct; or

    ii. the gaining of any profit, remuneration or financial advantage to which any **Directors and Officers** were not legally entitled; provided, however this exclusion f.ii. shall not apply unless and until there is a final judgment against such **Directors and Officers** as to such conduct.

    When f.i. or ii. apply, the **Insured** shall reimburse the **Insurer** for any **Costs, Charges or Expenses**;

g. for the return by any of the **Directors and Officers** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Company** or **Outside Entity**, which payment without such previous approval shall be held to be in violation of law;

h. against any of the **Directors and Officers** of any **Subsidiary** or against any **Subsidiary** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed or attempted by a **Subsidiary** or **Directors and Officers** thereof:

    i. before the date such entity became a **Subsidiary** or after the date such entity ceased to be a **Subsidiary**; or

    ii. occurring while such entity was a **Subsidiary** which, together with a **Wrongful Act** occurring before the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**;

i. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any **Wrongful Act** actually or allegedly committed subsequent to a **Takeover**;

j. for a **Wrongful Act** actually or allegedly committed or attempted by any of the **Directors and Officers** in his or her capacity as a director, officer, trustee, manager, member of the board of managers or equivalent executive of a limited liability company or employee of, or independent contractor for or in any other capacity or position with any entity other than the **Company**; provided,

45

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 49 of 101

48

however, that this exclusion shall not apply to **Loss** resulting from any such **Claim** to the extent that:

    i.  such **Claim** is based on the service of any of the **Directors and Officers** as a director, officer, trustee, governor, executive director or similar position of any **Outside Entity** where such service is with the knowledge and consent of the **Company**; and

    ii.  such **Outside Entity** is not permitted or required by law to provide indemnification to such **Directors and Officers**; and

    iii.  such **Loss** is not covered by insurance provided by any of the **Outside Entity's** insurer(s);

k.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    i.  any prior or pending litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry filed or pending on or before the **Continuity Date**; or

    ii.  any fact, circumstance, situation, transaction or event underlying or alleged in such litigation or administrative or regulatory proceeding, demand letter or formal or informal governmental investigation or inquiry;

l.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any **Wrongful Act**, fact, circumstance or situation which any of the **Insureds** had knowledge of prior to the **Continuity Date** where such **Insureds** had reason to believe at the time that such known **Wrongful Act** could reasonably be expected to give rise to such **Claim**;

m.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment-related matters brought by or on behalf of or on the right of an applicant for employment with the **Company,** or any of the **Directors and Officers**, including any voluntary, seasonal, temporary, leased or independently-contracted employee of the **Company**;

n.  alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

    i.  any initial public offering of securities undertaken and consummated by the **Company**, including all activities in connection therewith;

    ii.  the actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any rules or regulations of the Securities Exchange Commission adopted thereunder, any federal, state or provincial statute or common law regulating securities similar to the foregoing, including any amendments thereto, any rules or regulations adopted pursuant thereto in connection with any **Wrongful Act** actually or allegedly committed subsequent to the consummation of an initial public offering of securities of the **Company**; or

    iii.  any equity or debt offering, solicitation, sale, distribution or issuance of securities of the **Company** in excess of $50 million where such issuance takes place during the **Policy Period** and is exempt from the registration requirements of the Securities and Exchange Commission pursuant to Section 3.b. of the Securities Act of 1933 and rules and regulations promulgated thereunder, or any activities or transactions dealing in any way with such issuance of securities of the **Company**; provided, however, this exclusion shall not apply if the **Insurer** agrees in writing to extend coverage for **Wrongful Acts** in connection with such issuance of securities and the **Insureds** have paid the premium required by the **Insurer** for such coverage extension; or

o.  for that portion of **Loss** which is covered under any other Coverage Section of this **Policy**.

2.  Exclusions Applicable Only to Insuring Clause A.3.

46

49

**Insurer** shall not be liable for **Loss** on account of any **Claim**:

    a. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the actual or alleged breach of any contract or agreement; except and to the extent the **Company** would have been liable in the absence of such contract or agreement; or

    b. alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

        i. any actual or alleged infringement, misappropriation, or violation of copyright, patent, service marks, trademarks, trade secrets, title or other proprietary or licensing rights or intellectual property of any products, technologies or services; or

        ii. any goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, advertised or developed by the **Company**.

Provided, however, the exclusions in 2.a. and 2.b. above shall not apply to any such **Claim** brought or maintained, directly or indirectly, by one or more securities holders of the **Company** in their capacity as such.


No **Wrongful Act** of one or more **Insureds** shall be imputed to any other **Insureds** for the purpose of determining the applicability of any of the above exclusions.

D. **LIMIT OF LIABILITY AND RETENTIONS**

    1. The liability of the **Insurer** shall apply only to that part of **Loss** which is excess of the Retention amounts applicable to this Coverage Section, as shown in Item 3. of the Declarations. Such Retentions shall be borne uninsured by the **Insureds** and at their own risk. If different parts of a single **Claim** are subject to different applicable Retentions under this Coverage Section, the applicable Retentions will be applied separately to each part of such **Loss**, but the sum of such Retentions shall not exceed the largest applicable Retention.

    2. As shown in Item 3. of the Declarations relating to this Coverage Section, the following Limits of Liability of the **Insurer** shall apply:

        a. The amount set forth in Item 3.1.a. relating to this Coverage Section shall be the aggregate limit of liability for the payment of **Loss** under all Insuring Clauses for this Coverage Section, subject to additional payments for **Loss** under Insuring Clause A.1. as further described in subsection b. immediately below.

        b. The amount set forth in Item 3.1.b. relating to this Coverage Section shall be an aggregate limit of liability for the payment of **Loss** under Insuring Clause A.1. in addition to the limit described in subsection a. immediately above; provided, all payments for **Loss** under the additional limits described in this subsection b. shall be excess of the limit described in subsection a. above, and excess of any other available insurance that is specifically excess to this **Policy**. Such excess insurance must be completely and fully exhausted through the payment of loss, including but not limited to defense costs thereunder, before the **Insurer** shall have any obligations to make any payments under the additional limits described in this subsection b.

        c. The amount set forth in Item 3.1.c. of the Declarations relating to this Coverage Section shall be the maximum aggregate limit of liability for the payment of **Loss** under all Insuring Clauses for this Coverage Section. The Limit of Liability set forth in Items 3.1.a. and 3.1.b. relating to this Coverage Section shall be a part of and not in addition to the maximum aggregate limit of liability set forth in Item 3.1.c. for this Coverage Section.

    3. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times, regardless of whether such date is before or during the **Policy Period**:

        a. the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Act**

47

50

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 51 of 101

is first made; or

    b. the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Section E.2. below.

4. The Retention applicable to Insuring Clause 2. shall apply to **Loss** resulting from any **Claim** if indemnification for the **Claim** by the **Company** is required or permitted by applicable law, to the fullest extent so required or permitted, regardless of whether or not such actual indemnification by the **Company** is made, except and to the extent such indemnification is not made by the **Company** solely by reason of the **Company's** financial insolvency.

5. Payments of **Loss** by **Insurer** shall reduce the Limit(s) of Liability under this Coverage Section. **Costs, Charges and Expenses** are part of, and not in addition to, the Limits of Liability and payment of **Costs, Charges and Expenses** reduce the Limits of Liability. If such Limit(s) of Liability are exhausted by payment of **Loss**, the obligations of the **Insurer** under this Coverage Section are completely fulfilled and extinguished.

E. **NOTIFICATION**

1. The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after the end of the **Extended Period.**

2. If, during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first becomes aware of a specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy,** and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

    a. a description of the **Wrongful Act** allegations anticipated;

    b. the identity of the potential claimants;

    c. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

    d. the identity of the **Insureds** allegedly involved;

    e. the consequences which have resulted or may result; and

    f. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

3. Notice to **Insurer** shall be given to the address shown under Item 8. of the Declarations for this **Policy**.

F. **SETTLEMENT AND DEFENSE**

1. It shall be the duty of the **Insurer** and not the duty of the **Insureds** to defend any **Claim**. Such duty shall exist even if any of the allegations are groundless, false or fraudulent. The **Insurer's** duty to defend any **Claim** shall cease when the Limits of Liability have been exhausted by the payment of **Loss** including **Costs, Charges and Expenses.**

2. The **Insurer** may make any investigation it deems necessary, and shall have the right to settle any **Claim**; provided, however, no settlement shall be made without the consent of the **Parent Company**, such consent not to be unreasonably withheld.

3. The **Insureds** agree not to settle or offer to settle any **Claim**, incur any **Costs, Charges and Expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. The **Insurer** shall not be

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 52 of 101

liable for any settlement, **Costs, Charges and Expenses**, assumed obligation or admission to which it has not consented. The **Insureds** shall promptly send to the **Insurer** all settlement demands or offers received by any **Insured** from the claimant(s).

4. The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim,** the **Insureds** will do nothing that shall prejudice the position of the **Insurer** or its potential or actual rights of recovery.

G. **OTHER INSURANCE**

If any **Loss** covered under this Coverage Section is covered under any other valid and collectible insurance, then this **Policy** shall cover the **Loss**, subject to its terms and conditions, only to the extent that the amount of the **Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability for this Coverage Section.

H. **PAYMENT PRIORITY**

1. If the amount of any **Loss** which is otherwise due and owing by the **Insurer** exceeds the then remaining Limit of Liability applicable to the **Loss**, the **Insurer** shall pay the **Loss,** subject to such Limit of Liability, in the following priority:

   a. First, the **Insurer** shall pay any **Loss** covered under Insuring Clause A.1. in excess of any applicable Retention shown in Item 3. of the Declarations; and

   b. Second, only if and to the extent the payment under subsection 1. above does not exhaust the applicable Limit of Liability, the **Insurer** shall pay any **Loss** in excess of the Retention shown in Item 3. of the Declarations covered under any other applicable Insuring Clause.

   c. Subject to the foregoing subsection, the **Insurer** shall, upon receipt of a written request from the Chief Executive Officer of the **Parent Company**, delay any payment of **Loss** otherwise due and owing to or on behalf of the **Company** until such time as the Chief Executive Officer of the **Parent Company** designates, provided the liability of the **Insurer** with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 53 of
101

52

| | ENDORSEMENT NO. 1 |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY** ® | |

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ADDITIONAL NAMED INSUREDS WITH CONTINUITY DATE

Item 1., **Parent Company**, of the Declarations page is amended to include the following:

TechShop Pittsburgh, LLC

With respect to the coverage solely extended by this endorsement, the **Continuity Date** set forth in Item 3. of the **Declarations** for the Employment Practices Coverage and Directors and Officers Coverage Section is amended to read as follows:

3.  **Continuity Date:** 11/5/2012

All other terms and conditions of this **Policy** remain unchanged.

| | | | |
|---|---|---|---|
| ![Scottsdale logo] SCOTTSDALE INSURANCE COMPANY ® | | | ENDORSEMENT NO. 2 |

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ALLOCATION PROVISION**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

The following Section O., **ALLOCATION**, is added to the General Terms and Conditions Section.

O. **ALLOCATION**

1.  In the event the **Insurer** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then:

    a.  this **Policy** shall pay one hundred percent (100%) of **Costs, Charges and Expenses** incurred by such **Insured** on account of such **Claim**; and

    b.  there shall be a fair and equitable allocation of any remaining loss incurred by such **Insured** on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained.

2.  In the event the **Insured** has the duty to defend a **Claim** under any Coverage Section in which both **Loss** that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then the **Insured** and the **Insurer** shall use their best efforts to determine a fair and proper allocation as between such insured and uninsured loss, taking into account the relative legal and financial exposures and the relative benefits obtained.

All other terms and conditions of this **Policy** remain unchanged.

51

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 55 of 101

54

| | SCOTTSDALE INSURANCE COMPANY ® | | ENDORSEMENT NO. 3 |
|---|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND DISCOVERY ELECTION-90 DAYS**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section H., **DISCOVERY PERIOD**, subsection 2., is replaced by:

2.  As a condition precedent to the right to purchase the **Discovery Period** set forth in subsection H.1. above, the total premium for the **Policy** must have been paid. Such right to purchase the **Discovery Period** shall terminate unless written notice, together with full payment of the premium for the **Discovery Period**, is received by **Insurer** within ninety (90) days after the effective date of cancellation, or, in the event of a refusal to renew, within ninety (90) days after the **Policy** expiration date. If such notice and premium payment is not so given to **Insurer**, there shall be no right to purchase the **Discovery Period**.

All other terms and conditions of this **Policy** remain unchanged.

52

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 56 of
101

55

| | | SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 4 |
|---|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND NOTICE OF CIRCUMSTANCES**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

Section **E. NOTIFICATION**, subsection **2.** is replaced by:

2. If during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first become aware of specific facts or circumstances which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

   a. a description of the facts, circumstances, or allegations anticipated;

   b. the identity of potential claimants;

   c. the circumstances by which the **Insureds** first became aware of the facts or circumstances;

   d. the identity of the **Insureds** allegedly involved;

   e. the consequences which have resulted or may result; and

   f. the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such facts or circumstances shall be deemed for the purposes of this Coverage Section to have been made at the time such notices was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such facts or circumstances results in a **Claim**.

**All other terms and conditions of this Policy remain unchanged.**

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 57 of 101

53

56

| | | ENDORSEMENT NO. 5 |
|---|---|---|
| ![Scottsdale logo] SCOTTSDALE INSURANCE COMPANY ® | | |

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND NOTICE OF CIRCUMSTANCES**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section **E. NOTIFICATION**, subsection **2.** is replaced by:

2.  If during the **Policy Period** or the **Discovery Period**, if purchased, any of the **Insureds** first become aware of specific facts or circumstances which may reasonably give rise to a future **Claim** covered under this **Policy** and if the **Insureds**, during the **Policy Period** or the **Discovery Period**, if purchased, give written notice to **Insurer** as soon as practicable of:

    a.  a description of the facts, circumstances, or allegations anticipated;

    b.  the identity of the potential claimants;

    c.  the circumstances by which the **Insureds** first became aware of the facts or circumstances;

    d.  the identity of the **Insureds** allegedly involved;

    e.  the consequences which have resulted or may result; and

    f.  the nature of the potential monetary damages and non-monetary relief;

then any **Claim** made subsequently arising out of such facts or circumstances shall be deemed for the purposes of this Coverage Section to have been made at the time such notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such facts or circumstances results in a **Claim**.

**All other terms and conditions of this Policy remain unchanged.**

54

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 58 of
101

57

| | | | |
|---|---|---|---|
| **SCOTTSDALE INSURANCE COMPANY** ® | | | **ENDORSEMENT NO. 6** |
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND NOTICE PROVISION - D&O

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

The following is added to Section E. **NOTIFICATION**, subsection 1.:

A **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, director or general counsel becomes aware of such **Claim**.

All other terms and conditions of this **Policy** remain unchanged.

55

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 59 of 101

58

| | | SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 7 |
|---|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND NOTICE PROVISION - EPL**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

The following is added to Section E. **NOTIFICATION**, subsection 1.:

A **Claim** shall be deemed to have been first made against the **Insureds** on the date an **Insured** who is an executive officer, director or general counsel becomes aware of such **Claim**.

All other terms and conditions of this **Policy** remain unchanged.

| | SCOTTSDALE INSURANCE COMPANY ® | | ENDORSEMENT NO. 8 |
|---|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND NOTICE PROVISION 60 DAYS - EPL**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section E., **NOTIFICATION**, subsection 1. is replaced by:

The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the end of the **Policy Period**. If any **Claim** is first made against the **Insureds** during the **Extended Period**, if purchased, written notice to **Insurer** must be given as soon as practicable, but in no event later than sixty (60) days after the end of the **Extended Period**.

All other terms and conditions of this **Policy** remain unchanged.

| | SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 9 |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND OTHER INSURANCE - EPL**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section G., **OTHER INSURANCE**, is replaced by:

G. **OTHER INSURANCE**

For any **Employment Practices Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance.

All other terms and conditions of this **Policy** remain unchanged.

58

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 62 of 101

61

| SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 10 |
|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND OTHER INSURANCE TO BE PRIMARY - D&O

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

Section G., **OTHER INSURANCE**, is replaced by:

G. **OTHER INSURANCE**

For any **Claim**, if any **Loss** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance, unless expressly written to be excess over other applicable insurance.

All other terms and conditions of this **Policy** remain unchanged.

59

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 63 of 101

62

| | | | ENDORSEMENT |
|---|---|---|---|
| SCOTTSDALE INSURANCE COMPANY ® | | | NO. 11 |

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMEND OUTSIDE SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

Section C., **EXCLUSIONS**, subsection 1., paragraph j., subparagraph ii. is replaced by:

    ii.  such **Outside Entity** is not permitted or required by law to provide indemnification to such **Directors and Officers**, or is unable to indemnify such **Directors and Officers** as a result of **Financial Impairment**; and

For the purposes of this endorsement **Financial Impairment** means the status of the **Outside Entity** resulting from (1) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Outside Entity**, or (2) in the event a bankruptcy proceeding shall be instituted by or against the **Outside Entity**, the **Outside Entity** becoming a debtor-in-possession.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY ® | | | ENDORSEMENT NO. 12 |
|---|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND POLLUTION EXCLUSION - SIDE A**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

It is agreed that Section C., **EXCLUSIONS**, subsection 1.c., is deleted in its entirety and replaced by the following:

c. Alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

   i. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

   ii. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so;

   provided, however, this exclusion shall not apply to:

   - **Loss** of the **Directors and Officers** for which the **Directors and Officers** are not indemnified by the **Company**; or

   - any **Claim** brought directly, derivatively or otherwise by one or more securities holders of the **Company** in their capacity as such.

For purposes of this exclusion, **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous, biological, bacterial or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials (including materials to be reconditioned, recycled or reclaimed). **Pollutants** shall also mean any other air emission or particulate, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field.

All other terms and conditions of this **Policy** remain unchanged.

61
64
Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 65 of 101

| | SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 13 |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND SUBROGATION PROVISION - FINAL JUDGMENT**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section L., **ASSISTANCE, COOPERATION AND SUBROGATION**, is deleted in its entirety and replaced by the following:

L. **ASSISTANCE, COOPERATION AND SUBROGATION**

The **Insureds** agree to provide **Insurer** with such information, assistance and cooperation as **Insurer** reasonably may request, and they further agree that they shall not take any action which in any way increases **Insurer's** exposure under this **Policy**. In the event of any payments under this **Policy, Insurer** shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery against any person or entity. The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as are necessary to enable **Insurer** effectively to bring suit or otherwise pursue subrogation in the name of the **Insureds**, and shall provide all other assistance and cooperation which **Insurer** may reasonably require. In no event, however, shall the **Insurer** exercise its right of subrogation against an **Insured** under this **Policy** unless such **Insured** has been convicted of a deliberate criminal act; or has committed a deliberate fraudulent act, if a final judgment establishes that such deliberate fraudulent act was committed; or has obtained any profit or advantage to which a final judgment establishes the **Insured** was not legally entitled.

All other terms and conditions of this **Policy** remain unchanged.

62

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 66 of 101

65

| SCOTTSDALE INSURANCE COMPANY ® | | | |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND THIRD PARTY**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

Section **B. DEFINITIONS**, subsection **12**, is replaced by:

12. **Third Party** means any customer, client, or other group or natural person other than an **Employee** or applicant for employment with the **Company**.

**All other terms and conditions of this Policy remain unchanged.**

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 67 of
101

66

| SCOTTSDALE INSURANCE COMPANY ® | | ENDORSEMENT NO. 15 |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMEND WARRANTY PROVISION NON-RESCINDABLE COVERAGE**

This endorsement modifies insurance provided under the following:

**GENERAL TERMS AND CONDITIONS**

Section D., **WARRANTY**, subsection 2. is replaced by:

2.  In the event the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, this **Policy**, including each and all Coverage Sections, shall not afford coverage to the following **Insureds** for any **Claim** alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any untruthful or inaccurate statements, representations or information:

    a.  any **Insured** who is a natural person and who knew the facts misrepresented or the omissions, whether or not such individual knew of the **Application**, such materials, or this **Policy**;

    b.  any **Company** or **Sponsor Company** to the extent it indemnifies any **Insured** referred to in subsection a. above; and

    c.  any **Company**, **Sponsor Company**, **Plan**, **Employee Benefit Plan**, or any other entity that is an **Insured**, if any past or present chief executive officer, chief financial officer, general counsel, risk manager or human resources director (or equivalent positions) of the **Parent Company** knew the facts misrepresented or the omissions, whether or not such individual knew of the **Application**, such materials, or this **Policy**.

    With respect to any statement, representation or information contained in the **Application**, or in the materials submitted or required to be submitted therewith, and solely with respect to the above exclusion, no knowledge possessed by any **Insured** who is a natural person shall be imputed to any other **Insured** who is a natural person.

The following condition is added:

**NON-RESCINDABLE**

The **Insurer** shall not be entitled under any circumstances to rescind any Coverage Section of the **Policy** with respect to any **Insured**. Nothing contained in this section shall limit or waive any other rights or remedies available to the **Insurer**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms and conditions of this **Policy** remain unchanged.

64
67
Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 68 of 101

| | ENDORSEMENT NO. 16 |
|---|---|
| **SCOTTSDALE INSURANCE COMPANY** ® | |

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDATORY ENDORSEMENT - CALIFORNIA

Whenever the term AUTHORIZED REPRESENTATIVE appears beneath a signature line in this policy, it is removed and replaced by the term COUNTERSIGNATURE.

For example:

| | |
|---|---|
| _____ | _____ |
| DATE | AUTHORIZED REPRESENTATIVE |

is replaced by:

| | |
|---|---|
| _____ | _____ |
| DATE | COUNTERSIGNATURE |

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 69 of 101

| | | SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 17 |
|---|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED DEFINITION OF DIRECTORS & OFFICERS - LEASED / CONTRACTED EMPLOYEES**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

The following is added to Section **B. DEFINITIONS**, subsection **4.**:

**Directors and/or Officers** means any person who was, now is, or shall become:

any natural person who is a leased employee or is contracted to perform work for the **Company**, or is an independent contractor for the **Company**, but only to the extent such individual performs work or services for or on behalf of the **Company**.

**All other terms and conditions of this Policy remain unchanged.**

| SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 18 |
|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDED INSURED VERSUS INSURED EXCLUSION

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

Section C., **EXCLUSIONS**, subsection 1., paragraph e., subparagraph iii. is replaced by:

iii.  is brought or maintained by an employee of the **Company** who is not or was not a director or officer of the **Company**, including any such **Claim** brought or maintained under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistle-blower" provision of any law.

All other terms and conditions of this **Policy** remain unchanged.

## SCOTTSDALE INSURANCE COMPANY ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDED INSURED VERSUS INSURED EXCLUSION - FOREIGN JURISDICTION**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

Section C., **EXCLUSIONS**, subsection 1. is amended by adding the following to paragraph e.:

is brought or maintained in a jurisdiction outside the United States of America, Canada or Australia by any **Insured** of the **Company** solely where such **Company** is domiciled or chartered in such foreign jurisdiction;

All other terms and conditions of this **Policy** remain unchanged.

68

71

| SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 20 |
|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AMENDED INSURED VERSUS INSURED EXCLUSION WITH CREDITOR COMMITTEE CARVEBACK

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

Section C., **EXCLUSIONS**, subsection 1., paragraph e., subparagraph v. is deleted in its entirety and replaced by the following:

v. is brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator or rehabilitator for, or creditors' committee of, the **Company**, or any assignee thereof;

All other terms and conditions of this **Policy** remain unchanged.

69

72

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 73 of 101

| SCOTTSDALE INSURANCE COMPANY ® | | | | ENDORSEMENT NO. 21 |
|---|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | | AGENT NO. |
| EKS3217615 | 4/1/2017 | TechShop, Inc. | | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### COST OF INVESTIGATIONS COVERAGE

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

It is agreed that:

The following is added to Section B., **DEFINITIONS**:

**Cost of Investigation** means reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** in investigating a written demand, by one or more of the securities holders of the **Company** upon the board of directors, the management board of the **Company** or the **Company**, to bring a civil proceeding, including any derivative action, against any of the **Directors and Officers** on behalf of the **Company**.

Section B., **DEFINITIONS**, subsection 1., paragraph b. is deleted in its entirety and is replaced by:

b.  a written demand, by one or more of the securities holders of the **Company** upon the board of directors, the management board of the **Company** or the **Company**, to bring a civil proceeding, including any derivative action, against any of the **Directors and Officers** on behalf of the **Company**;

Section B., **DEFINITIONS**, subsection 3., paragraph b. is deleted in its entirety and is replaced by:

b.  **Cost of Investigation**.

All other terms and conditions of this **Policy** remain unchanged.

| | SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 22 |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**DELETE PARAGRAPH III. FROM EXCLUSION N.**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

It is agreed that Section C., **EXCLUSIONS**, subsection 1., paragraph n. iii. is deleted in its entirety.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY ® | | ENDORSEMENT NO. 23 |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EMPLOYED LAWYERS EXTENSION**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

The following is added to Section B.4.:

**Employed Lawyers** of the **Company**

The following definition is added to Section **B.**:

**Employed Lawyers** means:

employees of the **Company** who:

1. are admitted to practice law in one or more jurisdictions in the United States of America; and

2. are employed within the **Company's** office of the general counsel or its functional equivalent; and

3. acting solely in the capacity of providing professional legal services to the **Company**.

An individual shall not be deemed to be an **Employed Lawyer** to the extent such individual renders or rendered professional legal services to persons or entities other than the **Insureds**.

72

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 76 of 101

75

| SCOTTSDALE INSURANCE COMPANY ® | | | ENDORSEMENT NO. 24 |
|---|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EMPLOYEE PRIVACY COVERAGE WITH SUB-LIMIT

This endorsement modifies insurance provided under the following:

### EMPLOYMENT PRACTICES COVERAGE SECTION

It is agreed that the Employment Practices Coverage Section is amended as follows:

1. Section A., **INSURING CLAUSES**, is amended by adding the following:

    **Employee Privacy** Insuring Clause

    **Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employee Privacy Claim** first made against the **Insureds** during the **Policy Period** and reported to the **Insurer** pursuant to subsection E.1. herein, for a **Privacy Wrongful Act** taking place prior to the end of the **Policy Period**.

    **Cost of Employee Notification** Insuring Clause

    **Insurer** shall pay the **Cost of Employee Notification** of the **Insureds** resulting from an **Employee Personal Information Breach** first discovered during the **Policy Period** and reported to the **Insurer** pursuant to subsection E.4. added below.

2. Section B., **DEFINITIONS**, subsection 1. is amended by adding the following:

    **Employee Privacy Claim**

3. Section B., **DEFINITIONS**, subsection 10. is amended by adding the following:

    ◦ **Loss** also includes **Cost of Employee Notification**

4. Section B., **DEFINITIONS**, subsection 15. is amended by adding the following:

    **Privacy Wrongful Act**.

5. Section B., **DEFINITIONS**, is amended by adding the following:

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 77 of 101

73

76

**Cost of Employee Notification** means:

    a. any reasonable and necessary cost or expense of the **Company** to notify any **Employee** of any **Employee Personal Information Breach** as required under any **Privacy Act**; and

    b. the cost to notify and monitor the credit reports of any **Employee** who has been the subject of an **Employee Personal Information Breach** for the length of time as set forth under any **Privacy Act**.

**Employee Personal Information** means any personal information not available to the general public of any **Employee** where such non-public personal information can be used to identify such natural person and where such non-public information is solely in the custody, care or control of the **Company** or another entity at the direction and consent of the **Company**. Such **Personal Information** shall include, but not be limited to a natural person's name, address, telephone number, date of birth, social security number, account number, history of account transactions, account balance, account relationships, credit card number, medical records, medical history and any other non-public personal information as set forth in any **Privacy Act**.

**Employee Personal Information Breach** means:

    a. the unauthorized acquisition, access, use, physical taking, identity theft, mysterious disappearance, release, distribution or disclosure of **Employee Personal Information** which compromises the security or privacy of such **Employee Personal Information**, including, but not limited to:

        i. the unauthorized and fraudulent taking of **Employee Personal Information** by reason of a breach or failure of any hardware, software, or firmware the **Company** owns, leases or controls on premises or elsewhere or the similar technology of another entity that controls, maintains or stores **Employee Personal Information** at the direction and consent of the **Company**; or

        ii. the actual unauthorized taking of physical **Employee Personal Information** by any person, employee or entity.

**Employee Privacy Claim** means:

    a. a written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

    b. a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

    c. an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief;

    d. a civil, administrative or regulatory proceeding, or a formal governmental investigation against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document; or

    e. a written request to toll or waive any statute of limitations

brought by or on behalf of an **Employee** in their capacity as such and solely alleging a **Privacy Wrongful Act**.

**Privacy Act** means any federal, state or local statutory or common law relating solely to **Employee Personal Information** or any rules or regulations promulgated thereunder, including, but not limited to The Financial Modernization Act of 1999 ("Gramm-Leach-Bliley Act"), the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and Section 1798 of the California Civil Code.

**Privacy Policy** means the internal or publicly accessible written documents that set forth the policies, standards and procedures of the **Company** for collection, use, disclosure, sharing, dissemination and correction or supplementation of, and access to, **Employee Personal Information**.

**Privacy Wrongful Act** means:

    a. the failure of the **Company** to timely disclose an incident or event triggering a violation of a **Privacy Act**; or

    b. failure by the **Insureds** to comply with that part of a **Privacy Policy** that specifically:

        i. prohibits or restricts the disclosure, sharing or selling of an **Employee's Personal Information**;

        ii. requires the **Company** to provide access to **Employee Personal Information** or to correct incomplete or inaccurate **Employee Personal Information** after a request is made by an **Employee**; or

        iii. mandates procedures and requirements to prevent the loss of **Employee Personal Information**.

6. Section E., **NOTIFICATION**, is amended by adding the following subsection:

    ◦ The **Insureds** shall, as a condition precedent to their rights to payment for the **Cost of Employee Notification** under this endorsement, give the **Insurer** written notice of any **Employee Personal Information Breach** as soon as practicable after the **Insured** discovers such **Employee Personal Information Breach**, but in no event later than sixty (60) days after such discovery. The **Insurer** will pay for the **Cost of Employee Notification** sustained by the **Insured** resulting from an **Employee Personal Information Breach** occurring at any time and discovered by the **Insured** during the **Policy Period**. Discovery of the **Employee Personal Information Breach** occurs when an officer, director, Insurance Manager or Risk Manager first becomes aware of facts which would cause a reasonable person to assume that an **Employee Personal Information Breach** covered by this Coverage Section has occurred, even though the exact amount or details of any **Cost of Employee Notification** may not then be known. Discovery also occurs when the **Insured** receives notice of an actual or a potential **Claim** against it alleging facts that, if true, would constitute a covered **Employee Privacy Claim** for a **Privacy Wrongful Act**.

7. The following Section is added to the Employment Practices Coverage Section:

    I. **DUTIES IN THE EVENT OF AN EMPLOYEE PERSONAL INFORMATION BREACH**

    After the **Insured** discovers an **Employee Personal Information Breach** or a situation that may result in an **Employee Personal Information Breach** that may be covered under this Endorsement, the **Insured** must:

        1. submit to an examination under oath at the **Insurers** request and give the **Insurer** a sworn statement

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 79 of 101

78

of the answers of the **Insured**;

    2.   provide the **Insurer** with a sworn proof of loss within forty-five (45) days after discovery which shall provide, at a minimum:

        a.   the date and circumstances surrounding discovery, including the name(s) of the person(s) making the discovery;

        b.   details of how the **Employee Personal Information Breach** occurred or will occur;

        c.   the amount of actual loss known and an estimate of the total loss expected to result; and

        d.   a description of all known sources of recovery to reduce the **Cost of Employee Notification**;

    3.   provide the **Insurer** with all information, assistance and cooperation as the **Insurer** may reasonably request in the investigation of the **Employee Personal Information Breach** and corresponding **Cost of Employee Notification**;

    4.   not incur any **Cost of Employee Notification** without the written consent of the **Insurer**; and

    5.   notify the police or other appropriate law enforcement authority(ies) if the **Insured** has reason to believe that the **Employee Personal Information Breach** involves a violation of law.

8.   Notwithstanding, Section G., **OTHER INSURANCE**, If any coverage under this endorsement is also covered under any other valid and collectable insurance, then the coverage provided by this endorsement shall be specifically excess of, and will not contribute with, such other insurance, including but not limited to any such other insurance under which there is a duty to defend.

9.   The maximum aggregate Limit of Liability as a result of coverage provided by this endorsement for all **Loss** as a result of all **Employee Privacy Claims** and **Cost of Employee Notification** shall be $10,000, which sum shall be part of and not in addition to the Limit of Liability identified in Item 3.1.a. of the Declarations relating to the Employment Practices Coverage Section, and Item 3.1.b., additional aggregate for **Costs, Charges and Expenses**, shall not be applicable to, nor available for, the coverage provided by this endorsement.

10.  The Retention listed in Item 3.2.a. of the Declarations relating to the Employment Practices Coverage Section for **Employment Practices Claims** applies to each **Employee Privacy Claim** under this **Employee Privacy** Insuring Clause. The Retention amount applicable to the **Cost of Employee Notification** is an amount equal to twenty percent (20%) of the Retention listed in Item 3.2.a. of the Declarations relating to the Employment Practices Coverage Section for **Employment Practices Claims**. The Retention for the **Cost of Employee Notification** shall be applied only once for each discovery of an **Employee Personal Information Breach**.

All other terms and conditions of this **Policy** remain unchanged.

| | | ENDORSEMENT NO. 25 |
|---|---|---|

# SCOTTSDALE INSURANCE COMPANY ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXCLUSION OF CERTIFIED ACTS OF TERRORISM

Any other provision of this **Policy** notwithstanding, this insurance does not cover **Loss**, damage, injury, expense, cost, liability or legal obligation directly or indirectly resulting from or arising out of or in any way related to a **"Certified Act Of Terrorism".**

The following definition is added:

**"Certified Act Of Terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **"Certified Act Of Terrorism"** include the following:

    a.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

EKS-271 (06/08)

5/2/2017 — Page 1 of 1

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 81 of 101

| | | | ENDORSEMENT NO. 26 |
|---|---|---|---|
| **SCOTTSDALE INSURANCE COMPANY**® | | | |
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EXTRADITION COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION**

The following is added to Section B., **DEFINITIONS**, subsection 1.:

**Claim** means:

◦ an official request for **Extradition** of any of the **Directors and Officers**; or the execution of a warrant for the arrest of any of the **Directors and Officers** where such execution is an element of **Extradition**.

The following is added to Section B., **DEFINITIONS**, subsection 3.:

**Costs, Charges and Expenses** means:

◦ reasonable and necessary legal costs, charges, fees and expenses incurred by any of the **Insureds** resulting from any of the **Directors and Officers** lawfully:

i. opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of any of such **Directors and Officers**; or

ii. appealing any order or other grant of **Extradition** of any of such **Directors and Officers**.

The following is added to Section B., **DEFINITIONS**:

**Extradition** means any formal process by which any of the **Directors and Officers** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

All other terms and conditions of this **Policy** remain unchanged.

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 82 of 101

81

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**IMMIGRATION CLAIM ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

I.  It is agreed that the Employment Practices Coverage Section is amended as follows:

The following is added to Section A., **INSURING CLAUSES:**

**Immigration Claim** Insuring Clause

**Insurer** shall pay the **Costs, Charges and Expenses** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Immigration Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to subsection E.1. herein, for an **Immigration Wrongful Act** taking place prior to the end of the **Policy Period**.

The following is added to Section B., **DEFINITIONS**, subsection 1.:

**Immigration Claim**.

The following is added to Section B., **DEFINITIONS**, subsection 15.:

**Immigration Wrongful Act**.

The following is added to Section B., **DEFINITIONS**:

**Immigration Wrongful Act** means any actual or alleged violation(s) of the Immigration Control Act of 1986 or any other similar federal or state laws or regulations.

**Immigration Claim** means any criminal investigation of any of the **Insureds** by any governmental agency for actually or allegedly hiring or harboring illegal aliens.

The following is added to Section G., **OTHER INSURANCE**:

For any **Immigration Claim**, if any **Costs, Charges and Expenses** covered under this Coverage Section are covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance.

II.  It is agreed that the DECLARATIONS is amended as follows:

The maximum aggregate Limit of Liability for all **Costs, Charges and Expenses** as a result of all **Immigration Claims** shall be $100,000, which sum shall be part of and not in addition to the Limit of Liability identified in Item 3.1.a. of the Declarations relating to the Employment Practices Coverage Section, and the Limit of Liability identified in Item 3.1.b. of the Declarations relating to the Employment Practices Coverage Section, additional aggregate for **Costs, Charges and Expenses**, shall not be applicable to or

79

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 83 of
101

82

available for any **Immigration Claim**.

The following is added to Item 3., Employment Practices Coverage Section, section 2., **Retention**, of the Declarations:

$50,000 each **Immigration Claim**

All other terms and conditions of this **Policy** remain unchanged.

| | SCOTTSDALE INSURANCE COMPANY ® | ENDORSEMENT NO. 28 |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**PPACA CIVIL MONEY PENALTIES EXTENSION**

This endorsement modifies insurance provided under the following:

**FIDUCIARY COVERAGE SECTION**

It is agreed that the Fiduciary Coverage Section is amended as follows

1. Section B., **DEFINITIONS**, subsection 10.a. is deleted and replaced by the following:

    a. taxes, fines or penalties, other than civil money penalties imposed upon **Insureds** for a **PPACA Violation**;

2. Section B., **DEFINITIONS**, is amended to include the following:

    ◦ **PPACA Violation** means an inadvertent violation of the Patient Protection and Affordable Care Act, as amended (PPACA), and any rules or regulations promulgated thereunder.

3. Section D., **LIMIT OF LIABILITY AND RETENTION**, subsection 2. is amended to include the following:

    ▪ The amount set forth in Item 3.1. relating to this coverage section shall be amended to include the below listed sub-limit amounts. Such sub-limit amounts shall be a part of and not in addition to the limit of liability set forth in Item 3.1.of the Declarations.

    $50,000 sub-limit aggregate for all **PPACA Violation Loss**

4. No Retention shall apply to a **PPACA Violation Loss**.

All other terms and conditions of this **Policy** remain unchanged.

EKS-1562 (0614)



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### REMOVAL OF ALTERNATIVE DISPUTE RESOLUTION PROVISION

This endorsement modifies insurance provided under the following:

### GENERAL TERMS AND CONDITIONS

Section **J. ALTERNATIVE DISPUTE RESOLUTION** is deleted in its entirety.

**All other terms and conditions of this Policy remain unchanged.**

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 86 of 101

| SCOTTSDALE INSURANCE COMPANY ® | | ENDORSEMENT NO. 30 |
|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SCIENTIFIC AND ADVISORY BOARD EXTENSION

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

The following is added to Section **B. DEFINITIONS**, subsection **4.**:

**Directors and/or Officers** means any person who was, now is, or shall become:

a natural person member of the Scientific or Advisory Board of the **Company** (collectively "**Advisory Board Members**") that is indemnified by the **Company** pursuant to a written indemnification agreement. The **Company** agrees to indemnify the **Advisory Board Members** to the fullest extent permitted by law, taking all steps necessary or advisable in furtherance thereof, including the making in good faith of any application for court approval, the passing of any resolution by the board of directors or shareholders of the **Company**, the amendment of any charter, bylaws, operating agreement or similar documents of the **Company** or the execution of any contract. The **Company** further agrees to advance **Costs, Charges and Expenses** actually and reasonably incurred by any **Advisory Board Member** in defending any threatened, pending or contemplated action, suit or proceeding prior to a final disposition of any such action, suit or proceeding and shall not require any determination or adjudication, interim or final, of the entitlement of the **Advisory Board Member** to indemnification, where permitted by law to do so. The financial ability of any **Advisory Board Member** to make repayment shall not be a prerequisite to the making of such an advance, and the right to receive advancement of **Costs, Charges and Expenses** herein is a contractual right. The agreements contained in this paragraph are binding upon the **Company** and enforceable by the **Insurer** or the **Advisory Board Member**.

**All other terms and conditions of this Policy remain unchanged.**

83

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 87 of
101

86

| | | | ENDORSEMENT |
|---|---|---|---|
| ![SCOTTSDALE INSURANCE COMPANY®] | | | NO. 31 |

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SEPARATE COSTS, CHARGES AND EXPENSES LIMIT

This endorsement modifies insurance provided under the following:

### EMPLOYMENT PRACTICES COVERAGE SECTION

Section D., **LIMIT OF LIABILITY AND RETENTIONS**, subsection 2.b. is deleted in its entirety and replaced with the following.

 b. The amount set forth in Item 3.1.b. relating to this Coverage Section shall be the aggregate limit of liability for the payment of **Costs, Charges and Expenses** in addition to the limit described in subsection a. immediately above; provided, all payments for **Costs, Charges and Expenses** under the additional limit described in this subsection b. shall apply and be paid by the **Insurer** prior to any payment of **Costs, Charges and Expenses** under the limit described in subsection a. above.

All other terms and conditions of this **Policy** remain unchanged.

| | | ENDORSEMENT NO. 32 |
|---|---|---|

## SCOTTSDALE INSURANCE COMPANY®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SERVICE OF SUIT CLAUSE**

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

Commissioner of Insurance
45 Fremont Street
23rd Floor
San Francisco, CA 94105

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

c/o United States Corporation Company
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505

| | | ENDORSEMENT NO. 33 |
|---|---|---|

<table>
<tr><td>SCOTTSDALE INSURANCE COMPANY ®</td><td colspan="3">ENDORSEMENT NO. 33</td></tr>
<tr><td>ATTACHED TO AND FORMING A PART OF POLICY NUMBER</td><td>ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME)</td><td>NAMED INSURED</td><td>AGENT NO.</td></tr>
<tr><td>EKS3217615</td><td>4/1/2017</td><td>TechShop, Inc.</td><td>29406</td></tr>
</table>

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TOLLING OR WAIVING THE STATUTE OF LIMITATIONS

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS AND COMPANY COVERAGE SECTION

The following is added to Section B., **DEFINITIONS**, subsection 1.:

**Claim** means:

a written request received by the **Company** to toll or waive the statute of limitations regarding a potential **Claim**. Such **Claim** shall be commenced by the receipt of such request.

All other terms and conditions of this **Policy** remain unchanged.

| SCOTTSDALE INSURANCE COMPANY® | | | |
|---|---|---|---|
| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
| EKS3217615 | 4/1/2017 | TechShop, Inc. | 29406 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**WAGE AND HOUR CLAIM COSTS, CHARGES AND EXPENSES ONLY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES COVERAGE SECTION**

I.  It is agreed that the Employment Practices Coverage Section is amended as follows:

    Section A., **INSURING CLAUSES**, is amended by adding the following:

        3.  **Wage and Hour Claim** Insuring Clause

        **Insurer** shall pay the **Costs, Charges and Expenses** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Wage and Hour Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for a **Wage and Hour Wrongful Act** taking place prior to the end of the **Policy Period**.

    Section B., **DEFINITIONS**, subsection 1. is amended by adding the following:

        c.  **Wage and Hour Claim**.

    Section B., **DEFINITIONS**, subsection 15. is amended by adding the following:

        c.  **Wage and Hour Wrongful Act**.

    Section B., **DEFINITIONS**, is amended by adding the following:

    **Wage and Hour Wrongful Act** means any actual or alleged violation(s) of:

        a.  the Fair Labor Standards Act or any other federal, state or local laws, rules or regulations governing or relating to:

            i.  the classification of **Employees** for the purpose of determining **Employees'** eligibility for compensation; or

            ii.  the payment of wages, including but not limited to the payment of overtime, minimum wages, on-call time, the donning and doffing of uniforms, rest and meal periods, reimbursement of expenses, and any other earnings, tips, reimbursement or compensation of **Employees**;

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 91 of 101

      b. unfair business practices, unfair competition, conversion or public policy concerning, relating or arising out of any actual or alleged violations of those matters referenced in paragraph a.i. or a.ii. above.

However, **Wage and Hour Wrongful Act** shall not include actual or alleged violations of the Equal Pay Act of 1963, and any amendments thereto.

**Wage and Hour Claim** means:

      a. a written demand against an **Insured** for damages or other relief; or

      b. a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom;

brought by or on behalf of one or more **Employees** solely alleging any **Wage and Hour Wrongful Act**.

Solely as respects any **Wage and Hour Claim**, Section C., **EXCLUSIONS**, subsection 4. is amended by deleting the following words:

"provided, however, this exclusion does not apply to any such **Claim** alleging violations of the Equal Pay Act or **Retaliation**:"

Section F., **SETTLEMENT AND DEFENSE**, subsection 3. is deleted in its entirety solely as respects any **Wage and Hour Claim**.

Section G., **OTHER INSURANCE**, is amended by adding the following:

For any **Wage and Hour Claim**, if any **Costs, Charges and Expenses** covered under this Coverage Section is covered under any other valid and collectable insurance, then this **Policy** shall be primary insurance.

Section O., **ALLOCATION**, in the General Terms and Conditions Section and Section H., **ALLOCATION**, are deleted in their entirety solely as respects any **Wage and Hour Claim**.

II. It is agreed that the DECLARATIONS is amended as follows:

The maximum aggregate Limit of Liability for all **Costs, Charges and Expenses** as a result of all **Wage and Hour Claims** shall be $100,000, which sum shall be part of and not in addition to the Limit of Liability identified in Item 3.1.a. of the Declarations relating to the Employment Practices Coverage Section, and the Limit of Liability identified in Item 3.1.b. of the Declarations relating to the Employment Practices Coverage Section, additional aggregate for **Costs, Charges and Expenses**, shall not be applicable to or available for any **Wage and Hour Claim.**

Item 3., Employment Practices Coverage Section, section 2., **RETENTION**, of the Declarations is amended by adding the following:

$50,000 each **Wage and Hour Claim**

All other terms and conditions of this **Policy** remain unchanged.



SCOTTSDALE INSURANCE COMPANY®

### POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM
### INSURANCE COVERAGE

## TERRORISM RISK INSURANCE ACT

Under the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2015, effective January 1, 2015 (the "Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government agrees to reimburse eighty-five percent (85%) of covered terrorism losses in calendar year 2015 that exceed the statutorily established deductible paid by the insurance company providing the coverage. This percentage of United States Government reimbursement decreases by one percent (1%) every calendar year beginning in 2016 until it equals eighty percent (80%) in 2020. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the Act, as amended, contains a $100 Billion Cap that limits United States Government reimbursement as well as insurers' Liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

## CONDITIONAL TERRORISM COVERAGE

The federal Terrorism Risk Insurance Program Reauthorization Act of 2015 is scheduled to terminate at the end of December 31, 2020, unless renewed, extended or otherwise continued by the federal government. Should you select Terrorism Coverage provided under the Act and the Act is terminated December 31, 2020, any terrorism coverage as defined by the Act provided in the policy will also terminate.

## IN ACCORDANCE WITH THE ACT, YOU MUST CHOOSE TO SELECT OR REJECT COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" BELOW:

**The Note below applies for risks in these states:** California, Connecticut, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Virginia, Washington, West Virginia, Wisconsin.

**NOTE**: In this state, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism coverage for such fire losses will be provided in your policy.

Case: 18-50398    Doc# 244    Filed: 06/11/20    Entered: 06/11/20 17:15:12    Page 93 of 101

**If you do not respond to our offer and do not return this notice to the Company, you will have no Terrorism Coverage under this policy.**

| | |
|---|---|
| | I hereby elect to purchase certified terrorism coverage for a premium of $454.00. I understand that the federal Terrorism Risk Insurance Program Reauthorization Act of 2015 may terminate on December 31, 2020. Should that occur my coverage for terrorism as defined by the Act will also terminate. |
| X | I hereby reject the purchase of certified terrorism coverage. |

_____
Policyholder / Applicant's Signature*

_____
Print Name*

_____
Date*

TechShop, Inc.
_____
Named Insured / Firm

EKS3217615
_____
Policy Number, if available

*If rejected, signature required & completed form must be faxed to E-Risk Services @ (973) 252-5146. Please contact your broker with any questions.



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2018 | TechShop, Inc. | 29406 |

Additional Premium Amount: $16,341

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Discovery Period Election - Specific Coverage Section**

This endorsement modifies insurance provided under the following:

**BUSINESS AND MANAGEMENT INDEMNITY POLICY**

It is agreed that the **Parent Company** has elected and paid for the additional **Discovery Period** listed in Item 5. 1. of the Declarations, but solely as respects the Directors & Officers and Company Coverage Section(s), thereby complying with the requirements of Section H. of the General Terms and Conditions.

All other terms and conditions of this **Policy** remain unchanged.

*Lisa Danna*

Authorized Signature

2/26/2018

Date

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 95 of 101

94



| | | ENDORSEMENT NO. 36 | |
|---|---|---|---|

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2018 | TechShop, Inc. | 29406 |

Return Premium Amount: $16,341

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Endorsement Deletion**

It is agreed that the following endorsement numbers are deleted: <u>35</u>.

All other terms and conditions of this **Policy** remain unchanged.

*Lisa Danna*

Authorized Signature

<u>3/1/2018</u>

Date

Case: 18-50398   Doc# 244   Filed: 06/11/20   Entered: 06/11/20 17:15:12   Page 96 of 101

95



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| EKS3217615 | 4/1/2018 | TechShop, Inc. | 29406 |

Additional Premium Amount: $16,341

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Discovery Period Election - Specific Coverage Section**

This endorsement modifies insurance provided under the following:

**BUSINESS AND MANAGEMENT INDEMNITY POLICY**

It is agreed that the **Parent Company** has elected and paid for the additional **Discovery Period** listed in Item 5. 3. of the Declarations, but solely as respects the Directors & Officers and Company Coverage Section(s), thereby complying with the requirements of Section H. of the General Terms and Conditions.

All other terms and conditions of this **Policy** remain unchanged.

*Lisa Danna*

Authorized Signature

3/1/2018

Date

**File a Motion:**

18-50398 TechShop, Inc.

Type: bk                  Chapter: 7 v                 Office: 5 (San Jose)

Assets: y                 Judge: MEH               Case Flag: DeBN

**U.S. Bankruptcy Court**

**California Northern Bankruptcy Court**

Notice of Electronic Filing

The following transaction was received from Aram Ordubegian entered on 6/11/2020 at 4:30 PM PDT and filed on 6/11/2020

**Case Name:**         TechShop, Inc.

**Case Number:**     18-50398

**Document Number:** 242

**Docket Text:**

Motion for Relief from Stay Fee Amount $181, Filed by Interested Partys Doug Busch, Mark Hatch, Mike Hilberman, Daniel Woods, Responsible Ind James Newton (Ordubegian, Aram)

The following document(s) are associated with this transaction:

**Document description:** Main Document

**Original filename:** 2020 0611 - Techshop - Motion for Relief from Stay (D&O Insurance).pdf

**Electronic document Stamp:**

[STAMP bkecfStamp_ID=1017961465 [Date=6/11/2020] [FileNumber=36497726-0] [40ffeeb618f6710c696b3a67f5353c36e63fa6fc44fb541e432481207dd36ce56e cac0cb99ed39f4fa2a1ecc5028ea6001e94cde640f2a75fe170e2521fc8fce]]

**18-50398 Notice will be electronically mailed to:**

Michael C. Abel on behalf of Interested Party New York City Economic Development Corporation
mcabel@ml-sf.com, csnell@ml-sf.com

Andrew A. August on behalf of Plaintiff Doris A. Kaelin
aaugust@steyerlaw.com, mterry@steyerlaw.com

Andrew John Chan on behalf of Defendant Early Growth Financial Services, Inc.
achan@ericksenarbuthnot.com

Andrew J. Ditlevsen on behalf of Creditor New Century Commons, LLC
aditlevsen@hopkinscarley.com

Ann McFarland Draper on behalf of Interested Party TheShop dot Build LLC
ann.draper@gmail.com, ann@draperlaw.net

Jason Edward Goldstein on behalf of Creditor Wells Fargo Equipment Finance, Inc.
jgoldstein@buchalter.com, amelanson@buchalter.com

Doris A. Kaelin
dktrustee@gmail.com, C139@ecfcbis.com

Raffi Khatchadourian on behalf of Creditor HANMI BANK
raffi@Hemar-Rousso.com

Gregg S. Kleiner on behalf of Plaintiff Doris A. Kaelin
gkleiner@rinconlawllp.com, aworthing@rinconlawllp.com

Chris D. Kuhner on behalf of Creditor Wantin Living Trust dated March 2, 1999
g.michael@kornfieldlaw.com

Jessica Georgia McKinlay on behalf of Other Prof. La Frontera Village L.P.
mckinlay.jessica@dorsey.com, segovia.maria@dorsey.com

Matthew D. Metzger on behalf of Debtor TechShop, Inc.
belvederelegalecf@gmail.com

Vinod Nichani on behalf of Requestor David Bruce Curtis
vinod@nichanilawfirm.com, joanne@nichanilawfirm.com

Office of the U.S. Trustee / SJ
USTPRegion17.SJ.ECF@usdoj.gov

Matthew Jon Olson on behalf of Creditor Bakery Square Retail, L.P.
matt@macfern.com, stell.laura@dorsey.com

Aram Ordubegian on behalf of Interested Party Daniel Woods
Ordubegian.Aram@ArentFox.com

R. Gibson Pagter, Jr. on behalf of Requestor BHL Services, Inc.

gibson@ppilawyers.com

Richard L. Pierotti
Rpierotti@kpmd.com

Allan D. Sarver on behalf of Creditor M2 Lease Funds LLC
ADS@asarverlaw.com

Jeffrey L. Sklar on behalf of Creditor Arizona Board of Regents
jsklar@lrrc.com, bankruptcynotices@lrrc.com

Richard A. Solomon on behalf of Requestor Hitachi Capital America Corp.
richard@sgsslaw.com

Howard J. Steinberg on behalf of Creditor John S. and James L. Knight Foundation
steinbergh@gtlaw.com, pearsallt@gtlaw.com

Annie Yang Stoops on behalf of Defendant Dan Woods
annie.stoops@arentfox.com

Joseph M. Sweeney on behalf of Creditor New Century Commons, LLC
jsweeney@smwb.com, cmueller@smwb.com

**18-50398 Notice will not be electronically mailed to:**

American Express Travel Related Services Company,Inc.
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

c/o Marsha Sukach Autodesk, Inc.
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY 10019

Teresa T. Blevins
905 N. World Cup Lane
Eagle, ID 83616

Jared I. Bullock
2414 Oakland Ave.
St. Louis, MO 63114

Daniel G. Byrne on behalf of Requestor Ford Motor Company
Ford Motor Company
150 W. Jefferson, #2500
Detroit, MI 48226

Stephen Casner
1454 Revelstoke Way
Sunnyvale, CA 94087-4443

David Chau
3201 Loma Verde Dr., #87
San Jose, CA 95117

Donald J. Chesarek
,

Commonwealth of Pennsylvania
Department of Labor and Industry
,

Tom Connolly
1613 Anderson Rd
McLean, VA 22102

Benjamin J Corrie
,

Michael Erickson
195 Bendorf Dr., #4
San Jose, CA 95111

Robert Faull
,

Curtis Galloway
152 Castillion Ter
Santa Cruz, CA 95060

Miriam Gennari
2729 Fort Scott Drive
Arlington, VA 22202

Paul Gennari
2729 Fort Scott Drive
Arlington, VA 22202

IPFS Corporation
30 Montgomery Street
Suite 501
Jersey City, NJ 07302

Jeffrey Stabel
,

Babette Klaus
,

Gregg Kleiner
Rincon Law LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104

Adam Knight
1231 8th Ave., #4
San Francisco, CA 94122

Kokjer, Pierotti, Maiocco & Duck LLP
CERTIFIED PUBLIC ACCOUNTANTS
333 Pine Street, 5th Floor
San Francisco, CA 94104

Kent McKernan
2012 Coastland Ave.
San Jose, CA 95125

Sergei Menchenin
1718 Hillman AVe.
Belmont, CA 94002

Dean Merrifield
1199 Newell Lane
Medina, OH 44256

Joseph J. Minioza on behalf of Defendant Early Growth Financial Services, Inc.
Ericksen Arbuthnot
100 Bush St. #900
San Francisco, CA 94104

Toby Owen
7244 Cardinal Lane
Longmont, CO 80503

Parrish Law Office
224 Lexington Dr.
Menlo Park, CA 94025

Parrish Law Offices
224 Lexington Dr.
Menlo Park, CA 94025

Kathryn E. Pauli
2939 Albemarle St., NW
Washington, DC 20008

Katharine Petrashune
4519 Friendship Ave.
Bloomfield, PA 15224-1555

Julia Piehler
,

Jeff Porter
,

Emily Quesada
8345 NW 66 St #D2712
Miami, FL 33166-2696

Sean and Mary Echevarria

,

Christopher Segraves
6783 W Yearling Rd
Peoria, AZ 85383

Bryn H. Sherman on behalf of Requestor CESC Plaza Limited Partnership
Offit Kurman, P.A.
4800 Montgomery Ln., #900
Bethesda, MD 20814

Michael Sittner
13411 Reid Circle
Ft. Washington, MD 20744

John Stanec
10925 West River St Apt #1
Truckee, CA 96161

Aleksandra Vucinic
597 Lone Tree Rd
Hollister, CA 95023

Dejan Vucinic
597 Lone Tree Rd
Hollister, CA 95023

West Auctions, Inc.
,