Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
Email: gkleiner@rinconlawllp.com

Counsel for DORIS A. KAELIN,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re

TECHSHOP, INC.,

Debtor.

Case No. 18-50398 MEH
Chapter 7
Hon. M. Elaine Hammond

**MOTION TO: (A) COMPROMISE LITIGATION CLAIMS WITH EARLY GROWTH FINANCIAL SERVICES, INC. AND EXCHANGE GENERAL RELEASES; (B) COMPROMISE LITIGATION CLAIMS WITH INDIVIDUAL D&O DEFENDANTS AND EXCHANGE GENERAL RELEASES; AND; (C) AUTHORIZATION TO COMPENSATE CONTINGENCY FEE COUNSEL AND REIMBURSE ITS EXPENSES**

Date: November 19, 2020
Time: 11:00 a.m.
Place: Via Court Call or
Zoom Videoconference

Doris A. Kaelin, Trustee in Bankruptcy of the estate of the above-named Debtor, hereby moves the Court for an order authorizing her to: (A) enter into a "Settlement Agreement, Release and Covenant Not to Sue" ("Agreement") with (i) Early Growth Financial Services, Inc. ("EGFS") and (ii) all Individual D&O Defendants; and (B) and to compensate the Trustee's special litigation

counsel, Steyer Lowenthal and Browne George Ross LLP (collectively, "Special Counsel") for its services and to reimburse out of pocket expenses, on the terms more fully set forth in the Notice of Hearing on: (I) Motion to Compromise Litigation Claims With Early Growth Financial Services, Inc. and Exchange General Releases; (II) Motion to Compromise Litigation Claims With Individual D&O Defendants and Exchange General Releases; and (III) Motion For Authorization to Compensate Contingency Fee Counsel and Reimburse its Expenses ("Notice") filed herewith.

A copy of the Notice is attached hereto as **Exhibit A** and is incorporated by reference. A copy of the summary of costs the Trustee seeks to reimburse Special Counsel is attached hereto as **Exhibit B**.

As set forth in greater detail in the Notice, the Trustee is seeking authority to enter into the Agreement pursuant to: Federal Rule of Bankruptcy Procedure 9019 as applied by *In re A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986); and as an asset sale under 11 U.S.C. Section 363(b)(1). *In re Lahijani*, 325 B.R. 282 (9th Cir. BAP 2005) and *In re Mickey Thompson*, 292 B.R. 415 (9th Cir. BAP 2003).

DATED: October 27, 2020             RINCON LAW LLP

By: */s/ Gregg S. Kleiner*
GREGG S. KLEINER
Counsel for DORIS A. KAELIN,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>TECHSHOP, INC.,<br><br>Debtor. | Case No. 18-50398 MEH<br>Chapter 7<br>Hon. M. Elaine Hammond<br><br>Date: November 19, 2020<br>Time: 11:00 a.m.<br>Place: Via Court Call or Zoom Videoconference |

**NOTICE OF HEARING ON:**
**(I) MOTION TO COMPROMISE LITIGATION CLAIMS**
**WITH EARLY GROWTH FINANCIAL SERVICES, INC. AND EXCHANGE GENERAL RELEASES;**
**(II) MOTION TO COMPROMISE LITIGATION CLAIMS**
**WITH INDIVIDUAL D&O DEFENDANTS AND EXCHANGE GENERAL RELEASES; AND**
**(III) MOTION FOR AUTHORIZATION TO COMPENSATE CONTINGENCY FEE COUNSEL**
**AND REIMBURSE ITS EXPENSES**

**TO CREDITORS, THE UNITED STATES TRUSTEE AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT** on **November 19, 2020 at 11:00 a.m.**, a hearing will be conducted before the Honorable M. Elaine Hammond, United States Bankruptcy Judge, to consider the motion of Doris Kaelin, the Chapter 7 Trustee ("**Trustee**") of the bankruptcy estate of TechShop, Inc. ("**Debtor**") seeking authorization to:
(A) enter into a "Settlement Agreement, Release and Covenant Not to Sue" ("**Agreement**")[1] with (i) Early Growth Financial Services, Inc. ("**EGFS**") and (ii) all Individual D&O Defendants (defined below); and (B) and to compensate the Trustee's special litigation counsel, Steyer Lowenthal and Browne George Ross LLP (collectively, "**Special Counsel**") for its services and to reimburse out of pocket expenses.[2]

The Trustee is seeking authority to enter into the Agreement and compensate her Special Counsel. This request is made by this Notice, and the concurrently-filed: Motion to Compromise Litigation Claims and Exchange General Releases, and Motion for Authorization to Compensate Contingency Fee Counsel and Reimburse its Expenses ("**Motion**"); and the Declaration of Doris Kaelin in support of the Motion, pleadings on file in the case, arguments of counsel and such other evidence as might be presented to the Court prior to or during the hearing on the Motion. Parties seeking copies of the Motion and/or declaration should send an e-mail to aworthing@rinconlawllp.com. Parties with questions should contact the undersigned at gkleiner@rinconlawllp.com.

**Summary of Relief Requested**

The Trustee is seeking authority to enter into the Agreement which is comprised of two (2) settlements with different groups of defendants. The Settlement with EGFS is discussed in **Part I** of this notice. The Settlement with the Individual D&O Defendants is discussed in **Part II** of this notice. If the Agreement is approved and consummated as it relates to EGFS, it will result in a complete release of claims that the estate has against EGFS and defendant Michael Hilberman, *solely in his capacity as an alleged employee and/or agent of defendant EGFS, but not as an officer of*

---

[1] The summary set forth in this Notice is provided for illustrative purposes only and is qualified in its entirety by reference to the Agreement. In the event of any inconsistencies between this summary and the Agreement, the Agreement controls in all respects. A true and correct copy of the Agreement is attached as **Exhibit A** to the Declaration of Doris A. Kaelin in support of Motion to Compromise Litigation Claims and Exchange General Releases; and Motion for Authorization to Compensate Contingency Fee Counsel and Reimburse its Expenses.

[2] On October 3. 2018, the Bankruptcy Court authorized the Trustee to employ both Steyer Lowenthal and Browne George Ross LLP as Special Counsel. The compensation sought to be paid to Special Counsel under this notice will be paid to Steyer Lowenthal, who will allocate the amount owing to Browne George Ross LLP.

*TechShop, Inc*. (collectively, the "**EGFS Settling Parties**"), with regard to all claims that the Trustee and the estate have against the EGFS Settling Parties, which are generally described in the Trustee's first amended complaint entitled *Kaelin v. Busch, et al.*, Adversary Proceeding No. 5:20-05003 MEH ("**Action**"). Provided the Bankruptcy Court authorizes the Trustee to enter into the Agreement with regard to the EGFS Settling Parties, the EGFS Settling Parties shall pay to the estate the sum of $1,000,000 in full and final settlement of the Action, the Action shall be dismissed, with prejudice, as to EGFS, and the parties shall be bound to a general release of claims as provided in the Agreement.

As discussed in Part II of this Notice, under the provisions of the Agreement as it relates to the Individual D&O Defendants, the Trustee shall receive an additional payment of $950,000 from the Individual D&O Defendants, in full and final settlement of the Action, the Action shall be dismissed, with prejudice, as to the Individual D&O Defendants, and the parties shall be bound to a general release of claims as provided in the Agreement. Provided the Agreement is approved as to both groups of defendants named in the Action, the Trustee shall receive, for the benefit of the estate, total payments of $1,950,000 to settle the Action.

As to the Agreement with EGFS, pursuant to the estate's engagement agreement with Special Counsel, the Trustee seeks authority herein to compensate Special Counsel the sum of $343,974.47 ($1,000,000 - $17,215.80 (costs) = $986,269.30 x 35% of the net recovery) *plus* reimbursement of expenses totaling $17,215.80 as compensation for their services related to the settlement with EGFS.[3]

As to the Agreement with the Individual D&O Defendants, pursuant to the estate's engagement agreement with Special Counsel, the Trustee seeks authority herein to compensate Special Counsel the sum of $332,500 ($950,000 x 35% of the net recovery) related to the settlement with the Individual D&O Defendants.

In the Ninth Circuit, a settlement of claims against a defendant or potential defendant should be presented to the Court for approval under: (a) standards required for approval of a compromise; and (b) standards for approval of an asset sale. As explained below, the transaction the Trustee proposes meets both standards and should be approved. By her motion, the Trustee requests authorization to enter into the Agreement and to take all actions contemplated by the Agreement, including the execution of documents.

**Background Concerning all Defendants Named in the Action**
The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on February 26, 2018 ("**Petition Date**"). Prior to the filing of its bankruptcy petition, the Debtor, through certain wholly-owned limited liability companies, operated a chain of membership-based "maker shops" – open access, do-it-yourself workshop and fabrication facilities, which were commonly referred to as "stores" or "shops." Between 2010 and 2017, the Debtor operated its "DIY" shops at 11 locations in the United States.

According to the Debtor's books and records, from approximately 2014 until it ceased operations, it had a negative cash flow from operations and relied heavily on debt and equity financing to sustain its business operations. Notwithstanding the Debtor's consistent lack of positive revenue, the Debtor continued to expand its operations. Based on documents and information available to the Trustee, the Debtor consistently lost money. The Debtor's audited financial statements for calendar years 2014 and 2015, included going concern warnings. The Trustee submits that, notwithstanding the Debtor's negative cash flow, it continued its operations by soliciting members and potential members of the "shops" to loan money to the Debtor and to buy stock in the Debtor. The Trustee alleges that the Individual D&O Defendants were directly involved in loan and equity solicitations from these small investors.

The Debtor's management consisted of: James Newton; Mark Hatch; Dan Woods; Douglas Busch; and Michael Hilberman (collectively, the "**Individual D&O Defendants**"). Hilberman came to work with the Debtor through his relationship with EGFS. EGFS is an entity that offers a full suite of accounting services including outsourced CFOs to start-up companies like the Debtor. Hilberman was engaged by the Debtor through a finance and administrative services agreement with EGFS, which included accounting services, treasury management, accounts payable and

---

[3] A summary of the fees to be paid to Special Counsel and details related to its expenses are set forth in **Exhibit B** to the motion.

2

**EXHIBIT A**

receivable management, audit coordination and other accounting services. While engaged by the Debtor, EGFS was paid in excess of $2 million.

After the Petition Date, the Trustee began her investigation of the Debtor. In October of 2018, the Trustee was authorized by the Bankruptcy Court to employ Special Counsel to act as the estate's attorneys to assist in completing her investigation of the Debtor's former officers, directors and EGFS and, if appropriate, commence litigation.

Following entry of the Bankruptcy Court's order authorizing the Trustee to employ Special Counsel, Special Counsel commenced their investigation of the potential claims the estate had against the Individual D&O Defendants and EGFS. The Trustee and all of the defendants in the Action participated in three formal mediations, formal and informal discovery. In May 2020, Special Counsel filed an amended complaint in the Action. As to EGFS, the amended complaint sets out the following claims for relief: breach of fiduciary duty (or alternatively) aiding and abetting breach of fiduciary duty, negligence, breach of contract and violation of California's Unfair Competition Law (Cal. Bus. & Prof Code § 17200, et seq. (collectively the "**EGFS Claims**"). EGFS disputes the EGFS Claims set forth against it in the Action.

As to the Individual D&O Defendants, the amended complaint asserts that Debtor's management breached its fiduciary duties by, among other things, carrying out a false and misleading debt-raising scheme that saddled the Debtor with additional debt that the defendants knew could not realistically be repaid in order to prolong the life of the Debtor which allowed the individual defendants to dissipate, divert and unduly risk the Debtor's assets for their own benefit and to the detriment of the Debtor and its creditors (collectively the "**D&O Claims**"). Individual D&O Defendants dispute the D&O Claims set forth against them in the Action.

In response to the filing of the amended complaint, EGFS filed a motion to dismiss the Action as to the EGFS Claims. After the defendants' motions were fully briefed, a hearing was conducted by the bankruptcy judge, who took the matters under submission. While the motions were under Court advisement, settlement negotiations continued between EGFS and the Trustee. On the eve of the Court's announcement of its ruling on the EGFS motion to dismiss, a settlement was reached between the EGFS Settling Parties, which settlement is memorialized in the Agreement. At the request of counsel for EGFS and the Trustee, the Bankruptcy Court did not issue a ruling on EGFS' motion to dismiss the Action.

In response to the filing of the amended complaint, the Individual D&O Defendants filed a motion to strike material portions of the claims set forth in the Actions. After the defendants' motions were fully briefed, a hearing was conducted by the bankruptcy judge, who took the matters under submission. While the motions were under Court advisement, settlement negotiations continued but a settlement was not reached with the Individual D&O Defendants. The Court denied the Individual D&O Defendants' motion to strike. After the motion to strike was denied, the Trustee and the Individual D&O Defendants requested and obtained an order from the Bankruptcy Court setting a mandatory settlement conference before the Hon. Roger L. Efremsky, U.S. Bankruptcy Judge, Oakland Division. Over the course of approximately 2 weeks, Judge Efremsky conducted Zoom and telephonic settlement negotiations. Ultimately, under Judge Efremsky's supervision, the Trustee and the Individual D&O Defendants agreed to settle the D&O Claims for $950,000, as provided in the Agreement.

## PART I

**Settlement as to the EGFS Settling Parties**
Under the provisions of the Agreement, EGFS and/or its insurance carrier have agreed to pay to the Trustee the sum of $1,000,000 ("**EGFS Settlement Payment**") in full and complete settlement of the allegations set forth in the complaint and any other claims the Trustee or Debtor could pursue against the EGFS Settling Parties. The Agreement includes a mutual general release of claims between the Trustee on the one hand, and the EGFS Settling Parties on the other hand. Additional details concerning the settlement with the Individual D&O Defendants is set forth in Part II of this notice.

### Approval of the Transaction as a Compromise
Approval or rejection of a compromise is within the Court's discretion. In considering the approval of a proposed compromise, the Court must take into account the following factors:
1. The probability of success in the litigation;
2. The difficulty, if any, to be encountered in collection;
3. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it;
4. The paramount interest of creditors and proper deference to their reasonable views.

*In re A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986).

### Probability of Success
Critical to the viability of the Trustee's claims against the EGFS Settling Parties is which EGFS Claims, if any, the Trustee could establish at trial and the damages the Debtor incurred. Because the Trustee and the EGFS Settling Parties reached the basic terms of their settlement before the Bankruptcy Court ruled on EGFS motion to dismiss, it is difficult to gauge what EGFS Claims would be the subject of a trial. It is the Trustee's burden to demonstrate EGFS was culpable of facilitating the losses the Debtor suffered and that EGFS' alleged breaches of its fiduciary duties, prolonged the existence of the Debtor by driving it deeper into insolvency and by diverting, dissipating and unduly risking the Debtor's assets. Based on her investigation of the Debtor's financial affairs, the Trustee is confident that she will be able to demonstrate that EGFS may well be directly responsible for some of the Debtor's losses. The case will be tried primarily on the testimony of expert witnesses in the field of audits, former investors, shareholders and employees and the Individual D&O Defendants. Trial will likely be in the District Court, either in front of a judge at a bench trial or with a jury. The Trustee estimates the probability of success at trial as better than average, but subject to taking depositions of dozens (if not hundreds) of investors and document discovery.

### Difficulty in Collection
If the Trustee obtained a judgment against EGFS, she is confident she would succeed in collecting any judgment up to $2 million (the insurance policy limits), but anticipates that appeals could delay collection. If the estate was to obtain a judgment in excess of $2 million, the Trustee expects she could encounter collection and enforcement difficulties.

### Complexity, Expense, and Delay
The issues involved in proving that the EGFS Claims are complex and will involve well over a year for discovery to be completed and require resolution by a trial. A judgment adverse to the EGFS Settling Parties would likely be appealed thereby resulting in significant delay in collecting a judgment. Although Special Counsel is to be paid its fees on a contingency basis (which fees would go up to 40% after the matter is set for trial), the Trustee anticipates that expenses could be significant as experts will need to be engaged, expert reports will need to be drafted and there will likely be dozens of depositions.

### Paramount Interest of Creditors
The proposed settlement, in conjunction with the settlement with the Individual D&O Defendants, brings in a substantial sum of money to the estate and will allow the Trustee to make a distribution to creditors.

## PART II

### Settlement as to the Individual D&O Defendants
Under the provisions of the Agreement, the Individual D&O Defendants and their insurance carrier have agreed to pay to the Trustee the sum of $950,000 ("**D&O Settlement Payment**") in full and complete settlement of the allegations set forth in the complaint and any other claims the Trustee or Debtor could pursue against the Individual D&O Defendants. The Agreement includes a mutual general release of claims between the Trustee on the one hand, and the Individual D&O Defendants on the other hand. Approval or rejection of the compromise with the Individual D&O Defendants is subject to the same *A&C Properties* factors discussed in Part I of this notice and applied, below, to the Individual D&O Defendants.

**Probability of Success**
Critical to the viability of the Trustee's claims against the Individual D&O Defendants is which D&O Claims, if any, the Trustee could establish at trial and the damages the Debtor incurred. As noted, above, the Trustee's settlement with the Individual D&O Defendants was the subject of 3 formal mediations and a roughly 2-week settlement conference supervised by Judge Efremsky. During the settlement conference, Judge Efremsky was able to evaluate the strengths and weaknesses of the D&O claims, the defenses available to the Individual D&O Defendants, which allowed him to push the parties towards a settlement. Had the dispute not been settled, it would have been the Trustee's burden at a trial to demonstrate the Individual D&O Defendants were culpable of facilitating the losses the Debtor suffered, that they breached their fiduciary duties, and those breaches resulted in the Debtor suffering damages. Based on her investigation of the Debtor's financial affairs, the Trustee is confident that she will be able to demonstrate that the Individual D&O Defendants may well be directly responsible for some of the Debtor's losses. The case will be tried primarily on the testimony of expert witnesses in the field of audits, former investors, shareholders and employees and the Individual D&O Defendants. Trial will likely be in the District Court, either in front of a judge at a bench trial or with a jury. The Trustee estimates the probability of success at trial as better than average, but subject to taking depositions of dozens (if not hundreds) of investors and document discovery.

**Difficulty in Collection**
If the Trustee obtained a judgment against the Individual D&O Defendants, she is confident she would succeed in collecting at least a portion of her judgment from the D&O policy, but that amount would likely be limited because the policy is a "wasting" policy, which means its value is consumed, first, by payments to counsel representing the Individual D&O Defendants in the Action. The Trustee understands that to date, counsel for the Individual D&O Defendants are seeking payment of roughly 25% of the policy limits and further litigation against the Individual D&O Defendants would certainly reduce funds payable to the estate on account of the D&O Claims. If the estate was to obtain a judgment in excess of the remaining portion of the policy, the Trustee expects she could encounter collection and enforcement difficulties.

**Complexity, Expense, and Delay**
The issues involved in proving that the D&O Claims are complex and will involve well over a year for discovery to be completed and require resolution by a trial. A judgment adverse to the Individual D&O Defendants would likely be appealed thereby resulting in significant delay in collecting a judgment. Although Special Counsel is to be paid its fees on a contingency basis (which fees would go up to 40% after the matter is set for trial), the Trustee anticipates that expenses could be significant as experts will need to be engaged, expert reports will need to be drafted and there will likely be dozens of depositions. In addition, as noted in the prior section, further litigation of the action against the Individual D&O Defendants will reduce sums available under the insurance policy that could pay a judgment against them.

**Paramount Interest of Creditors**
The proposed settlement, in conjunction with the settlement with the EGFS, brings in a substantial sum of money to the estate and will allow the Trustee to make a distribution to creditors.

**Approval of the Transaction as a Sale**
A compromise of claims against a defendant in a bankruptcy case in the Ninth Circuit generally must be considered as a sale of assets also. The proper standard for a Court to use when considering a proposed motion to sell assets is the business judgment test. *Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F. 2d 1063 (2nd Cir. 1983). It is this standard that has been adopted by the vast majority of Courts. *In re Gulf States Steel, Inc. of Ala.,* 285 B.R. 497, 515 (Bankr. N.D. Ala. 2002).

The proper standard for a Court to use when considering a proposed motion to sell assets is the business judgment test. *Equity Sec. Holders v. Lionel Corp.* (*In re Lionel*), 722 F. 2d 1063 (2nd Cir. 1983). It is this standard that has been adopted by the vast majority of Courts. *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 515 (Bankr. N.D. Ala. 2002).

> Under this standard, the Trustee has the burden to establish sound business reasons for the terms of a proposed sale. Factors for the Court to consider in whether to approve the sale include: (1) any improper or bad faith motive, (2) price is fair and the negotiations or bidding occurred at arms-length, (3) adequate procedure, including proper exposure to the market and accurate and reasonable notice to all parties in interest. The Trustee is responsible for the administration of the estate and his or her judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met. *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (noting discretion accorded to trustee with regard to sale of assets).

285 B.R. at 514.

The transaction must make good business sense and the creditors as a whole should benefit. *In re UAL Corp.*, 443 F. 3d 565, 571 (7th Cir. 2006).

> The "business judgment" test, as it is sometimes called, differs from the business judgment rule under corporate law. *3 Collier in Bankruptcy* ¶ 363.02[4] at 363-18 (*Alan and Resnick and Henry J. Sommer, eds.*, 16th ed. 2012). The bankruptcy court reviews the trustee's business judgment "to determine independently whether the judgment is a reasonable one." Id. At the same time, the court "should not substitute its judgment for the trustee's." Id. A trustee has considerable discretion when it comes to the sale of estate assets, and that discretion is entitled to "great judicial deference" as long as a sound business reason is given. *In re State Park Bldg. Grp. Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Murphy*, 28 B.R. 1, 5 (Bankr. D. Me. 2002); *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).

*In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012).

The Bankruptcy Appellate Panel dealt with a sale/compromise in *In re Lahijani*, 325 B.R. 282 (9th Cir. BAP 2005). In that case, the Chapter 7 trustee proposed to sell avoidance claims to a defendant or potential defendant. The Bankruptcy Appellate Panel reversed the Court order authorizing the sale and ruled that the Bankruptcy Court should have considered the sale as a compromise, and was required to find that the standards required of a compromise were met, as in *In re Mickey Thompson*, 292 B.R. 415 (9th Cir. BAP 2003). In its opinion, the BAP noted that it rejected "appellants' argument that the avoiding power causes of action should not have been sold to one who would not exercise the powers for the benefit of all creditors." 325 B.R. at 288.

Certain types of claims are not assignable. The Trustee is making no representation of any kind whether the claims described in this notice against the EGFS Settling Parties or the Individual D&O Defendants are assignable. Therefore, anyone who intends to submit an overbid must conduct its own legal analysis and must accept that the assignment will be made without any representation or warranty about the validity of the assignment.

The Trustee submits that her decision to enter into the Agreement satisfies the business judgment standard, and should be approved by the Bankruptcy Court. *See, Equity Sec. Holders v. Lionel Corp.* (*In re Lionel*), 722 F. 2d 1063 (2nd Cir. 1983).

**Overbids**
Given the $1 million EGFS settlement payment, the Trustee is setting the minimum overbid at $1,050,000.

Given the $950,000 settlement payment from the Individual D&O Defendants, the Trustee is setting the minimum overbid at $1,000,000.

Overbids must be submitted to the Trustee in care of her counsel at the address below within 14 days of the date of this notice and must be accompanied by satisfactory proof of the overbidder's ability to pay the overbid purchase price. Any overbid must be a cash offer payable to the Trustee within 15 days of entry of an order approving a sale of the respective litigation claims. If a qualifying overbid is received by the deadline, the Trustee will schedule an auction on notice to the overbidders and the settling defendants. After the auction, the Trustee will submit the highest and best bid (as determined in her sole discretion) to the Bankruptcy Court for approval. If there are no overbids and no objections to the compromise described above, the Trustee will submit an order for approval of the compromise described above to the Bankruptcy Court.

## PART III

**Payment of Special Counsel's Fees and Costs**
On October 3, 2018, the Bankruptcy Court authorized the Trustee to engage Special Counsel on a contingency fee basis. The fee agreement with Special Counsel provides, in part, that they will be compensated on a sliding scale based off of the "Net Recovery" received by the Trustee. The term "Net Recovery" means: "(1) the total of all amounts received by settlement, arbitration award or judgment, including any award of attorney's fees, (2) minus all costs and disbursements paid by the Estate."

**Proposed Payment to Special Counsel– EGFS Settlement**
Under the provisions of the engagement agreement, Special Counsel is entitled to be paid thirty-five percent (35%) of the $1 million to be paid from the EGFS Settlement Payment, less costs. Total costs related to the Action are $17,215.80. The Trustee seeks authority to pay Special Counsel, from the EGFS Settlement Payment, for its services related to the litigation against EGFS: fees of $343,974.47 ($1,000,000 - $17,215.80 (costs) = $986,269.30 x 35% of the net recovery); *plus* reimbursement of expenses totaling $17,215.80. The aggregate fees and costs to be paid to Special Counsel for its fees and costs related to the EGFS Settling Parties is **$361,190.27**.

**Proposed Payment to Special Counsel– Individual D&O Settlement**
Under the provisions of the engagement agreement, Special Counsel is entitled to be paid thirty-five percent (35%) of the $950,000 to be paid from the D&O Settlement Payment, less costs. (There are no additional costs as they are all covered in the prior section). The Trustee seeks authority to pay Special Counsel, from the D&O Settlement Payment, for its services related to the litigation against Individual D&O Defendants fees of $332,500 ($950,000 x 35% of the net recovery). The aggregate fees and costs to be paid to Special Counsel for its fees and costs related to the Individual D&O Defendants is **$332,500**.

**PLEASE TAKE FURTHER NOTICE THAT** should you oppose the relief sought in the Motion and as set forth in this Notice, Rule 9014-1 of the Bankruptcy Rules requires you to file and serve written response consisting of legal memoranda and evidence submitted by declaration on or before the 7th day before the scheduled hearing date.

**PLEASE TAKE FURTHER NOTICE THAT** due to the shelter in place requirements caused by the COVID 19 pandemic, all appearances will be by telephone, or, in the Court's sole discretion, by video conference. Due to Covid-19, a Fourth Amended General Order 38 is in place providing the following procedures for filing a document, including opposition, with the Court: "ECF Registered Participants must file all documents electronically. All other parties may submit documents for filing by mail, email, or drop-box."

Filing by Email. Objections may be submitted by email to CANB-EMERGENCY-FILINGS@canb.uscourts.gov Any document to be filed by email should be in PDF format and include the case name, case number, title of pleading, statement of relief requested, and be signed.

Filings by Mail. Opposition submitted for filing by mail should be sent by U.S. Mail to United States Bankruptcy Court, 450 Golden Gate Avenue, Mail Box 36099, San Francisco, CA 94102. Any document to be filed by mail should include the case name, case number, title of pleading, statement of relief requested, and be signed.

Filings by Drop-Box. Opposition may be submitted for filing by drop-box in two locations: 1) at the San Francisco Federal Courthouse, located at 450 Golden Gate Ave., San Francisco, CA. Access to the building and the drop box is through the Turk Street entrance between 6 a.m. to 6 p.m. Monday through Friday (excluding Federal holidays). Individuals must present valid government issued identification to enter the building; and
2) at the San Jose Federal Courthouse, which is located at 280 South First Street, San Jose, CA. Access to the building and the drop-box is between 7:30 a.m. to 5:00 p.m. Monday through Friday (excluding federal holidays). As to either location: (a) Individuals must present valid government issued identification to enter the building, (b) a date stamp machine is provided next to the drop-box; and (c) documents will be retrieved and processed twice a week.

All interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.

Additional information about how to file documents and/or appear by phone or video are provided at the Court's website: https://www.canb.uscourts.gov/content/page/court-operations-during-covid-19-outbreak
and further described contained in the Court's Fourth Amended General Order 38:
https://www.canb.uscourts.gov/sites/default/files/general-orders/FourthAmendedGO38_1.pdf

**PLEASE TAKE FURTHER NOTICE THAT** if you fail to timely file written opposition to the Motion, the Court may enter an order authorizing the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE THAT** as of January 1, 2005, the United States Bankruptcy Court for the Northern District of California has adopted mandatory electronic filing. If you are not currently qualified to file papers with the Court electronically, you should consult the Court's website (www.canb.uscourts.gov).

DATED: October 27, 2020      RINCON LAW LLP


By: /s/ Gregg S. Kleiner
    GREGG S. KLEINER
    Counsel for DORIS A. KAELIN, Trustee in Bankruptcy

Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, California 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
Email: gkleiner@rinconlawllp.com

8

**EXHIBIT A**

# Expense Details with Notes

Inception - 10/14/2020

| Client | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeepr |
|---|---|---|---|---|
| 7783 | Doris Kaelin, Chap. 7 Trustee | 0001 | In Re TechShop, Inc. | August, Andrew A |

| Type | Date | Narrative<br>Vendor Info | Amount |
|---|---|---|---|
| BW | 10/31/2018 | Black & White Reproduction | $450.40 |
| BW | 02/28/2019 | Black & White Reproduction | $47.40 |
| BW | 05/31/2019 | Black & White Reproduction | $63.20 |
| BW | 06/30/2019 | Black & White Reproduction | $81.60 |
| BW | 09/30/2019 | Black & White Reproduction | $10.20 |
| CLR | 09/30/2019 | Color Reproduction | $0.90 |
| E106 | 01/22/2019 | Pacer / online research<br>PACER, Pacer Service Center Invoice # 4409192-Q42018 | $5.10 |
| E108 | 09/13/2019 | Postage | $1.30 |
| E121 | 05/14/2019 | JAMS / Mediation Fees<br>JAMSOVERNM, JAMS Invoice # 0004814872-100 | $2,825.00 |

| | Expense Amount | Expense Billed | Expense Not Billed |
|---|---|---|---|
| **Matter Totals** | $3,485.10 | $0.00 | $3,485.10 |

# BROWNE GEORGE ROSS LLP
## Expense Details with Notes

Inception - 10/14/2020

| Report Totals | Expense Amount | Expense Billed | Expense Not Billed |
|---|---|---|---|
| | $3,485.10 | $0.00 | $3,485.10 |

STEYER LOWENTHAL BOODROOKAS  
**ALVAREZ & SMITH LLP ATTORNEYS**  
EXPENSE RECAP

Page 1

### Selection Criteria

| | |
|---|---|
| Slip.Classification | Open |
| Clie.Selection | Include: TECHSHOP.KAELIN |
| Slip.Transaction Date | Earliest - 8/31/2020 |
| Slip.Slip Type | Expense |

| Totals for | Billable Time Spent | Billed Slip Value | Unbillable Time Spent | Unbillable Slip Value |
|---|---|---|---|---|
| COURT FILING SERVICE | 0.00 | $350.00 | 0.00 | $25.00 |
| FEDERAL EXPRESS EXPENSE | 0.00 | $217.60 | 0.00 | $0.00 |
| MEDIATION FEES | 0.00 | $10,832.72 | 0.00 | $0.00 |
| ON-LINE COMPUTER RESEARCH | 0.00 | $2,289.18 | 0.00 | $0.00 |
| TELEPHONIC APPEARANCE FEES | 0.00 | $41.20 | 0.00 | $0.00 |
| Grand Total | 0.00 | $13,730.70 | 0.00 | $25.00 |

**EXHIBIT B**