1  Gregg S. Kleiner, State Bar No. 141311
   RINCON LAW LLP
2  268 Bush Street, Suite 3335
   San Francisco, California 94104
3  Telephone No.: 415-672-5991
   Facsimile No.: 415-680-1712
4  Email: gkleiner@rinconlawllp.com

5  Counsel for DORIS A. KAELIN,
6  Trustee in Bankruptcy

7

8                UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11  In re                              Case No. 18-50398 MEH
                                       Chapter 7
12  TECHSHOP, INC.,                    Hon. M. Elaine Hammond

13          Debtor.                    **DECLARATION OF DORIS KAELIN IN
                                       SUPPORT OF MOTION: (A) TO
14                                     COMPROMISE LITIGATION CLAIMS
                                       WITH EARLY GROWTH FINANCIAL
15                                     SERVICES, INC. AND EXCHANGE
                                       GENERAL RELEASES; (B) TO
16                                     COMPROMISE LITIGATION CLAIMS
                                       WITH INDIVIDUAL D&O DEFENDANTS
17                                     AND EXCHANGE GENERAL RELEASES;
                                       AND
18                                     (C) FOR AUTHORIZATION TO
                                       COMPENSATE CONTINGENCY FEE
19                                     COUNSEL AND REIMBURSE ITS
                                       EXPENSES**
20
21
                                       Date:    November 19, 2020
22                                     Time:    11:00 a.m.
                                       Place:   Via Court Call or
23                                              Zoom Videoconference
24
25
26
27          I, Doris A. Kaelin, declare:

28          1.      I am serving as the Chapter 7 Trustee of the estate of the above Debtor.

2. Attached as **Exhibit A** is an authentic copy of the "Settlement Agreement, Release and Covenant Not to Sue" ("Agreement") with (i) Early Growth Financial Services, Inc. ("EGFS") and (ii) James Newton; Mark Hatch; Dan Woods; Douglas Busch; and Michael Hilberman (collectively, the "Individual D&O Defendants").[1]

3. Through the concurrently filed motion, I am seeking authority to enter into the Agreement which is comprised of two (2) settlements with different groups of defendants. If the Agreement is approved and consummated as it relates to EGFS, it will result in a complete release of claims that the estate has against EGFS and defendant Michael Hilberman, solely in his capacity as an alleged employee and/or agent of defendant EGFS, but not as an officer of TechShop, Inc. (collectively, the "EGFS Settling Parties"), with regard to all claims that the estate has against the EGFS Settling Parties, which are generally described in the first amended complaint entitled Kaelin v. Busch, et al., Adversary Proceeding No. 5:20-05003 MEH ("Action"). Provided the Bankruptcy Court authorizes me to enter into the Agreement with regard to the EGFS Settling Parties, the EGFS Settling Parties shall pay to the estate the sum of $1,000,000 in full and final settlement of the Action, the Action shall be dismissed, with prejudice, as to EGFS, and the parties shall be bound to a general release of claims as provided in the Agreement.

4. Under the provisions of the Agreement as it relates to the Individual D&O Defendants, the estate shall receive an additional payment of $950,000 from the Individual D&O Defendants, in full and final settlement of the Action, the Action shall be dismissed, with prejudice, as to the Individual D&O Defendants, and the parties shall be bound to a general release of claims as provided in the Agreement. Provided the Agreement is approved as to both groups of defendants named in the Action, the estate shall receive total payments of $1,950,000 to settle the Action.

5. The amended complaint sets out the following claims for relief with regard to EGFS: breach of fiduciary duty (or alternatively) aiding and abetting breach of fiduciary duty, negligence, breach of contract and violation of California's Unfair Competition Law (Cal. Bus. & Prof Code § 17200, et seq. (collectively the "EGFS Claims"). I am informed and believe and on that basis state

---

[1] Capitalized terms not defined in this declaration shall have the meanings ascribed to them in the concurrently filed notice.

1    that EGFS disputes the EGFS Claims.

2        6.    As to the Individual D&O Defendants, the amended complaint asserts that Debtor's

3    management breached its fiduciary duties by, among other things, carrying out a false and

4    misleading debt-raising scheme that saddled the Debtor with additional debt that the defendants

5    knew could not realistically be repaid in order to prolong the life of the Debtor which allowed the

6    individual defendants to dissipate, divert and unduly risk the Debtor's assets for their own benefit

7    and to the detriment of the Debtor and its creditors (collectively the "D&O Claims"). I am informed

8    and believe and on that basis state that Individual D&O Defendants dispute the D&O Claims.

9        7.    Before and after the Action was filed, I, along with the estate's special counsel and

10   general bankruptcy, along with counsel for the defendants in the Action counsel participated in three

11   formal mediations. These mediations did not result in a resolution of the Action.

12       8.    In June 2020, EGFS filed a motion to dismiss the Action. On the eve of the Court's

13   announcement of its ruling on the EGFS motion to dismiss, I reached a settlement with the EGFS

14   Settling Parties, by which they have agreed to pay the estate $1 million. The settlement is

15   memorialized in the Agreement. At the request of counsel for EGFS and estate's special counsel,

16   the Bankruptcy Court did not issue a ruling on EGFS' motion to dismiss the Action.

17       9.    In June 2020, the Individual D&O Defendants filed a motion to strike material

18   portions of the claims set forth in the Actions. After the defendants' motions were fully briefed, a

19   hearing was conducted by the bankruptcy judge, who took the matters under submission. While the

20   motions were under Court advisement, settlement negotiations continued but a settlement was not

21   reached with the Individual D&O Defendants. The Court denied the Individual D&O Defendants'

22   motion to strike. After the motion to strike was denied, a joint request was made and an order was

23   issued by the Bankruptcy Court setting a mandatory settlement conference before the Hon. Roger

24   L. Efremsky, U.S. Bankruptcy Judge, Oakland Division. Over the course of approximately 2 weeks,

25   Judge Efremsky conducted Zoom and telephonic settlement negotiations. Ultimately, under Judge

26   Efremsky's supervision, the Individual D&O Defendants and I agreed to settle the D&O Claims for

27   $950,000, as provided in the Agreement.

28       10.    I believe that the settlement is in the best interest of the Estate and meets the standards

1  of *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986); *cert. den. sub nom*

2  *Martin v. Robinson* 479 U.S. 854 (1986) ("A&C").

3  <u>**Application of the A&C Factors to the EGFS Settlement**</u>

4        11.    Critical to the viability of the estate's claims against EGFS is which EGFS Claims,

5  if any, the estate could establish at trial and the damages the Debtor incurred. Because EGFS and

6  I reached the basic terms of our settlement before the Bankruptcy Court ruled on EGFS motion to

7  dismiss, it is difficult to gauge what EGFS Claims would be the subject of a trial. I am informed

8  and believe and on that basis state that it is the estate's burden to demonstrate EGFS was culpable

9  of facilitating the losses the Debtor suffered and that EGFS' alleged breaches of its fiduciary duties,

10  prolonged the existence of the Debtor by driving it deeper into insolvency and by diverting,

11  dissipating and unduly risking the Debtor's assets. Based on my investigation of the Debtor's

12  financial affairs, I am confident that the estate will be able to demonstrate that EGFS may well be

13  directly responsible for some of the Debtor's losses. I am informed and believe and on that basis

14  state that: the case will be tried primarily on the testimony of expert witnesses in the field of audits,

15  former investors, shareholders and employees and the Individual D&O Defendants; and that trial

16  will likely be in the District Court, either in front of a judge at a bench trial or with a jury. Based

17  on information presently available, I estimate the probability of success at trial as better than

18  average, but subject to taking depositions of dozens (if not hundreds) of investors and document

19  discovery.

20        12.    If the estate obtained a judgment against EGFS, I am confident the estate would

21  succeed in collecting any judgment up to $2 million (the insurance policy limits), but anticipate that

22  appeals could delay collection. If the estate was to obtain a judgment in excess of $2 million, I

23  expect I could encounter collection and enforcement difficulties.

24        13.    I am informed and believe and on that basis state that issues involved in proving the

25  EGFS Claims are complex and will involve well over a year for discovery to be completed and

26  require resolution by a trial, and a judgment adverse to the EGFS Settling Parties would likely be

27  appealed thereby resulting in significant delay in collecting a judgment. Although Special Counsel

28  is to be paid its fees on a contingency basis (which fees would go up to 40% after the matter is set

1    for trial), I am informed that expenses could be significant as experts will need to be engaged, expert

2    reports will need to be drafted and there will likely be dozens of depositions.

3         14.    The proposed settlement, in conjunction with the settlement with the Individual D&O

4    Defendants, brings in a substantial sum of money to the estate and will allow the estate to make a

5    distribution to creditors.

6    **Application of the A&C Factors to the Settlement with the Individual Defendants**

7         15.    Critical to the viability of the estate's claims against the Individual D&O Defendants

8    is which D&O Claims, if any, the estate could establish at trial and the damages the Debtor incurred.

9    As noted, above, the settlement with the Individual D&O Defendants was the subject of 3 formal

10   mediations and a roughly 2-week ZOOM video and telephonic settlement conference supervised by

11   Judge Efremsky.   During the settlement conference, Judge Efremsky was able to evaluate the

12   strengths and weaknesses of the D&O claims, the defenses available to the Individual D&O

13   Defendants, which allowed him to push the parties towards a settlement.  Had the dispute not been

14   settled, it would have been the estate's burden at a trial to demonstrate the Individual D&O

15   Defendants were culpable of facilitating the losses the Debtor suffered, that they breached their

16   fiduciary duties, and those breaches resulted in the Debtor suffering damages.   Based on my

17   investigation of the Debtor's financial affairs, I am confident that the estate will be able to

18   demonstrate that the Individual D&O Defendants may well be directly responsible for some of the

19   Debtor's losses.  I am informed and believe and on that basis state that: the case will be tried

20   primarily on the testimony of expert witnesses in the field of audits, former investors, shareholders

21   and employees and the Individual D&O Defendants; and that trial will likely be in the District Court,

22   either in front of a judge at a bench trial or with a jury.  Based on information presently available, I

23   estimate the probability of success at trial as better than average, but subject to taking depositions

24   of dozens (if not hundreds) of investors and document discovery.

25        16.    If the estate obtained a judgment against the Individual D&O Defendants, I am

26   confident the estate would succeed in collecting at least a portion of the judgment from the D&O

27   policy, but that amount would likely be limited because the policy is a "wasting" policy, which

28   means its value is consumed, first, by payments to counsel representing the Individual D&O

Defendants in the Action. I am informed and believe and on that basis state that, to date, counsel for the Individual D&O Defendants are seeking payment of roughly 25% of the policy limits and further litigation against the Individual D&O Defendants would certainly reduce funds payable to the estate on account of the D&O Claims. If the estate was to obtain a judgment in excess of the remaining portion of the policy, I expect I could encounter collection and enforcement difficulties.

17. The issues involved in proving that the D&O Claims are complex and will involve well over a year for discovery to be completed and require resolution by a trial. I am informed and believe and on that basis state that a judgment adverse to the Individual D&O Defendants would likely be appealed thereby resulting in significant delay in collecting a judgment. Although Special Counsel is to be paid its fees on a contingency basis (which fees would go up to 40% after the matter is set for trial), I am informed that expenses could be significant as experts will need to be engaged, expert reports will need to be drafted and there will likely be dozens of depositions. In addition, further litigation of the Action against the Individual D&O Defendants will reduce sums available under the insurance policy that could pay a judgment against them.

18. The proposed settlement, in conjunction with the settlement with the EGFS, brings in a substantial sum of money to the estate and will allow the estate to make a distribution to creditors.

I declare under penalty of perjury that, except for statements made on information and belief, that the foregoing statements are true and correct and if called as a witness I would testify thereto. This declaration is executed this 26th day of October 2020 at Santa Cruz, California.

DORIS A. KAELIN

<u>**SETTLEMENT AGREEMENT, RELEASE AND COVENANT NOT TO SUE**</u>

This Settlement Agreement, Release And Covenant Not to Sue is entered into as of this 26th day of October, 2020, by and between the RELEASOR (as identified and defined in Paragraph 1.2 below) and the RELEASEES (as identified and defined in Paragraph 1.10 below).

1.    **DEFINITIONS**

The following definitions shall apply in this Settlement Agreement, Release And Covenant Not to Sue:

1.1    "AGREEMENT" shall mean and refer to this Settlement Agreement, Release And Covenant Not to Sue.

1.2    "RELEASOR" shall mean and refer to Plaintiff Doris A. Kaelin, solely in her capacity as the duly appointed and acting Chapter 7 Trustee of the bankruptcy estate of TechShop, Inc., (sometimes the "Estate") on behalf of, TechShop, Inc., and their predecessors, successors, heirs, attorneys, assigns, insurers, partners, directors, officers, employees, former employees, principals and agents. Nothing herein shall be construed as applying to Ms. Kaelin in her personal capacity.

1.3    "EGFS" shall mean and refer to Defendant Early Growth Financial Services, Inc.

1.4    "NEWTON" shall mean and refer to Defendant James Newton in his capacity as an alleged director and an alleged officer of TechShop, Inc.

1.5    "HATCH" shall mean and refer to Defendant Mark Hatch in his capacity as an alleged director and alleged officer of TechShop, Inc.

1.6    "WOODS" shall mean and refer to Defendant Daniel Woods in his capacity as an alleged director and alleged officer of TechShop, Inc.

1.7    "BUSCH" shall mean and refer to Defendant Doug Busch in his capacity as an alleged director of TechShop, Inc.

1.8    "HILBERMAN" shall mean and refer to Defendant Michael Hilberman in his capacity as both an alleged employee and/or agent of Defendant Early Growth Financial Services, Inc. and an alleged officer of TechShop, Inc.

1.9    "DIRECTORS AND OFFICERS" shall mean and collectively refer to each and every director or officer of TechShop, Inc., including but not limited to, NEWTON, HATCH, WOODS, and BUSCH.

1.10    "RELEASEES" shall mean and collectively refer to 1) EGFS, 2) HILBERMAN, and 3) the DIRECTORS AND OFFICERS.

1.11    "SETTLING PARTIES" shall mean and collectively refer to RELEASOR and RELEASEES.

**EXHIBIT A**

1.12    "CLAIM" or "CLAIMS" shall mean and refer to any and all past, present and future claims, demands, damages, losses, liabilities or causes of action of any kind, whether economic or non-economic, that have been or could be raised by the SETTLING PARTIES against the others, including but not limited to breach of fiduciary duties of loyalty, care, and good faith, aiding and abetting breach of fiduciary duties of loyalty, care, and good faith, negligence (including gross negligence) and conscious disregard, violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*, breach of contract, punitive or exemplary damages, attorney fees and costs, consultant and experts' fees and costs, and any other actionable omissions, claims, conduct, damages, or losses of any kind and nature whatsoever, whether subrogated or non-subrogated, whether in tort, contract or extra-contractual, at law or in equity, actual or contingent, foreseen or unforeseen, known or unknown including, but not limited to, those claims relating to, arising out of or resulting from any services provided by or on behalf of EGFS, HILBERMAN, and/or the DIRECTORS AND OFFICERS to TechShop, Inc., including but not limited to HATCH's alleged claim of breach by RELEASOR of a Corrective Action Plan and any past, present or future duties and obligations associated therewith, the facts, circumstances and matters set forth in the ACTION, as defined below, and any past, present or future claims or damages of any kind, known and unknown.

1.13    "ACTION" shall mean and refer collectively to all matters and claims described in or arising from the RELEASOR'S operative first amended complaint filed on May 18, 2020 in the United States Bankruptcy Court for the Northern District of California in the matter styled as *Kaelin v. Busch*, Adv. Proc. No. 5:20-ap-05003-MEH.

1.14    "SETTLEMENT PAYMENT" shall mean the total payment to RELEASOR of One Million Nine Hundred and Fifty Thousand Dollars and No Cents ($1,950,000.00) comprised of (a) the One Million Dollars and No Cents ($1,000,000.00) in total payment made by or on behalf of EGFS, HILBERMAN (solely in his capacity as an alleged employee and/or agent of EGFS and not as an alleged officer of TechShop, Inc.), and Philadelphia Indemnity Insurance Company; (b) the Nine Hundred and Twenty-Five Thousand Dollars and No Cents ($925,000.00) in total payment made by or on behalf of the DIRECTORS AND OFFICERS, HILBERMAN (in his sole capacity as an alleged officer of TechShop, Inc.), and Nationwide Mutual Insurance Company; and (c) the Twenty-Five Thousand Dollars and No Cents ($25,000) in total payment made by or on behalf of the DIRECTORS AND OFFICERS and HILBERMAN (in his sole capacity as an alleged officer of TechShop, Inc.), to RELEASOR in full and final settlement of the ACTION and in exchange for the releases as set forth in Paragraphs 3.2 and 3.3 of this AGREEMENT.

2.    **RECITALS**

2.1    WHEREAS, certain disputes have arisen between RELEASOR and the RELEASEES; and

2.2    WHEREAS, the SETTLING PARTIES to this AGREEMENT, without in any way conceding the validity or sufficiency of RELEASOR'S ACTION, now desire to settle the CLAIMS as defined herein under the terms and conditions set forth below.

NOW THEREFORE, in consideration of the mutual covenants, agreements,

Settlement Agreement, Release And Covenant Not To Sue

AFDOCS/23017404.2

EXHIBIT A

representations, and recitals contained in this AGREEMENT, which are incorporated into the following terms of this AGREEMENT, and other valuable consideration, the sufficiency of which is hereby acknowledged, the SETTLING PARTIES agree as follows:

3. **SETTLEMENT TERMS**

    3.1    **Payment and Assignment**. The checks for the SETTLEMENT PAYMENT shall be made payable to "Estate of TechShop, Inc. c/o Doris Kaelin, Trustee, Case # 18-50398" and delivered by overnight mail to the address provided to counsel for the RELEASEES, within five (5) business days of the latest of the following: (1) receipt of the AGREEMENT fully executed by the SETTLING PARTIES and their counsel and RELEASOR'S W9 form; and (2) entry of a final, non-appealable order approving compromise by the United States Bankruptcy Court for the Northern District of California with the motion for such order approving compromise filed by RELEASOR within five (5) court days of RELEASOR'S receipt of signatures from EGFS, the DIRECTORS AND OFFICERS and HILBERMAN to this AGREEMENT.

    3.2    **Full and Complete Release**. For and in consideration of the SETTLEMENT PAYMENT described in Paragraph 3.1 of this AGREEMENT, and the other representations and promises contained herein, the SETTLING PARTIES do hereby fully and finally settle, release, acquit and forever discharge each other as well as Philadelphia Indemnity Insurance Company and Nationwide Mutual Insurance Company, and any and all of their past, present, and/or future employees, persons, firms, corporations, parent companies, subsidiaries, divisions, joint ventures, subsidiaries, partnerships, related entities, employees, officers, directors, shareholders, members, partners, representatives, attorneys, insurers, and/or future acquired entities or affiliated companies that in some manner may come into privity with the RELEASEES, or have some connection to the underlying dispute, management companies, administrators, agents, contractors, subcontractors, design professionals, insurers, affiliates, experts, consultants, attorneys, who are or can ever in any way be liable to RELEASOR, of and from any and all claims, including the CLAIMS. Conditioned upon fulfillment of the promises made herein, this AGREEMENT may be pled as a full and complete defense to any action or other proceeding involving the CLAIMS as released in this AGREEMENT.

    3.3    **Limited Release**. For and in consideration of the SETTLEMENT PAYMENT described in Paragraph 3.1 of this AGREEMENT, and the other representations and promises contained herein, the RELEASOR does hereby fully and finally settle, release, acquit and forever discharge each and every employee of TechShop, Inc. from any and all claims relating to, arising out of or resulting from the facts, circumstances and matters set forth in the ACTION. Conditioned upon fulfillment of the promises made herein, this AGREEMENT may be pled as a full and complete defense to any action or other proceeding involving such claims as released in this Paragraph 3.3 of this AGREEMENT. Notwithstanding the foregoing, nothing herein is intended, nor shall it be construed as, limiting or restricting the RELEASOR'S right or ability to object to any claim filed in the TechShop bankruptcy by any TechShop employee.

    3.4    **1542 Waiver**. This is a general release and the provisions of §1542 of the Civil Code of the State of California are hereby expressly waived, and the SETTLING PARTIES understand that said section provides:

EXHIBIT A

Case: 18-50398    Doc# 251-1    Filed: 10/27/20    Entered: 10/27/20 06:06:34    Page 9 of 22

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The SETTLING PARTIES have been fully advised and understand that the damages sustained are of such character that the full extent and type of injuries are not known at the date hereof, and it is further understood that said damages, whether known or unknown at the date hereof, might possibly become progressively worse and that as a result thereof further damages may be sustained by the SETTLING PARTIES . Nevertheless, SETTLING PARTIES desire to and do forever and fully release and discharge each other as provided herein.

3.5     **Representations.**  The SETTLING PARTIES make the following material representations with the understanding that each of them enters into this AGREEMENT in reliance upon each of these representations and that, without these representations, none of them would enter into this AGREEMENT:

(a)     The SETTLING PARTIES intend that the terms and conditions of this AGREEMENT, and the AGREEMENT, shall be binding upon SETTLING PARTIES.

(b)     RELEASOR represents that she has standing as a Chapter 7 Trustee of the Estate to assert the CLAIMS at issue herein and that with the exception of the Court's order approving this AGREEMENT and compromise of claim no other signature to this AGREEMENT is required to fully bind said RELEASOR to the terms set forth herein.

(c)     RELEASOR represents and warrants that at the time of the execution of this release, she is the sole and exclusive owner of the claims, demands, actions, and causes of action ("Claims") held by the Estate which she is releasing, or purport to be releasing. RELEASOR is not releasing any Claims not owned or controlled by the Estate. RELEASOR further represents and warrants she has not sold, assigned, conveyed, or transferred to any other person or entity, any of the claims, demands, actions, or causes of action which they are releasing, or purporting to release. RELEASOR further represents and warrants that in the future, she will not sell, assign, convey, or transfer to any other person or entity any of the claims, demands, actions, or causes of action which she is releasing or purporting to release.

(d)     RELEASEES represent and warrant that at the time of the execution of this release, they are the sole and exclusive owner of any claims, demands, actions, and causes of action they may have against the RELEASOR or the Estate ("Claims") which they are releasing, or purporting to be releasing. RELEASEES are not releasing any Claims not owned or controlled by the ESTATE. RELEASEES further represent and warrant they have not sold, assigned, conveyed, or transferred to any other person or entity, any of the claims, demands, actions, or causes of action which they are releasing, or purporting to release.

**EXHIBIT A**

Case: 18-50398    Doc# 251-1    Filed: 10/27/20    Entered: 10/27/20 06:06:34    Page 10 of 22

RELEASEES further represent and warrant that in the future, they will not sell, assign, convey, or transfer to any other person or entity any of the claims, demands, actions, or causes of action which they are releasing or purporting to release by this AGREEMENT.

(e)     SETTLING PARTIES understand and confirm that they are providing this release of their own free will and on the advice and recommendation of counsel of their choosing. SETTLING PARTIES further confirm that in providing this release and forever discharging any and all CLAIMS against each other, SETTLING PARTIES are not in any way relying on any representation or warranties made by or on behalf of the other SETTLING PARTIES.

(f)     Subject to the Court orders contemplated by section 3.1 above, each of the signatories hereto warrant and represent that he or she is competent and authorized to enter in this AGREEMENT on behalf of the SETTLING PARTIES for whom he or she purports to sign.

3.6     **Cooperation.** WOODS and HILBERMAN shall use their reasonable best efforts to assist RELEASOR and her counsel in the claims administration process regarding claims by TechShop employees, if and as requested by RELEASOR. RELEASOR and her counsel shall use reasonable best efforts to provide as much advance notice to WOODS and HILBERMAN of RELEASOR'S need for such assistance.

3.7     **Dismissal.** Within ten (10) days after receipt of the SETTLEMENT PAYMENT, RELEASOR shall execute and deliver to RELEASEES a request for dismissal with prejudice of the ACTION. RELEASOR authorizes and irrevocably instructs her counsel to execute this dismissal on her behalf and hereby authorizes her counsel and/or counsel for RELEASEES to file the dismissal with the Court and enter it as a matter of record.

3.8     **Extra-Judicial Non-Disparagement.** The SETTLING PARTIES agree that each party will not, either orally or in writing outside the judicial process, make or solicit, or cause to be made or solicited, any defamatory or otherwise disparaging statements or remarks (including online posts to social media, and online reviews) regarding the ACTION, the CLAIMS, any action or dispute leading up to this AGREEMENT, or anything related thereto. It is understood and agreed by the SETTLING PARTIES that nothing herein shall be construed as limiting or restricting the right or ability of the SETTLING PARTIES to file with the Court such documentation that describes the allegations in First Amended Complaint or refutes such allegations as may be necessary to obtain the Court's approval of this Agreement and the compromise of RELEASOR'S claims or in connection with the administration of the Estate.

3.9     **Good Faith.** The SETTLING PARTIES agree that the settlement terms set forth herein are made in good faith in accordance with any applicable California state and federal law.

3.10    **Governing Law.** This AGREEMENT shall be construed and enforced in accordance with the laws of the State of California. The United States Bankruptcy Court for the Northern District of California shall be the appropriate venue for the resolution of any disputes in connection with this AGREEMENT.

EXHIBIT A

3.11 **Enforcement.** The SETTLING PARTIES hereby acknowledge, agree and stipulate that each has the right to enforce any provision of this AGREEMENT by filing any appropriate action, proceeding, or motion in the United States Bankruptcy Court for the Northern District of California. It is agreed that to enforce the terms of this AGREEMENT, the Court may issue such Orders, including sanctions for non-compliance, as it deems appropriate in its discretion. It is further agreed that any judgment rendered in connection with this Paragraph 3.11 shall not be construed as an indicator of or admission of liability as to the CLAIMS alleged in the ACTION against any of the SETTLING PARTIES.

In the event that legal action or any other proceeding (legal, equitable, administrative or otherwise) is instituted by any of the SETTLING PARTIES to enforce or interpret the provisions of this AGREEMENT, the prevailing party shall be entitled to recover reasonable costs and expenses, including reasonable attorneys' fees, from the non-prevailing party. In the event any of the SETTLING PARTIES issue an offer of judgment, the attorneys' fees and costs incurred by the other party to the proceedings shall not be considered in evaluating whether or not the SETTLING PARTY making the offer of judgment obtained a more favorable judgment or award.

3.12 **Attorneys' Fees and Costs.** The SETTLING PARTIES agree to bear their own attorneys' fees, expert fees, and costs incurred in connection with the ACTION and this AGREEMENT.

3.13 **No Admission of Liability.** It is understood that this AGREEMENT is a compromise of disputed claims and that the Settlement Payment provided for herein is not to be construed as an admission of liability and/or responsibility on the part of RELEASEES who continue to deny such liability and disclaim such responsibility. The terms of this AGREEMENT are not admissible for any purpose, apart from a motion to approve or enforce the terms of this AGREEMENT.

3.14 **No Construction Against Author.** This AGREEMENT is the result of arms-length negotiations. This AGREEMENT shall be construed without regard to the person or entity who drafted it and as if all SETTLING PARTIES had participated equally in its drafting. No provision, principle or other concept of law or equity wherein the terms and conditions of this AGREEMENT are interpreted against the party who drafted this AGREEMENT shall have any application to this AGREEMENT.

3.15 **Severability.** If any provision of this AGREEMENT is held by a court of competent jurisdiction to be invalid, void or unenforceable for whatever reason, the remaining provisions not so declared shall, nevertheless, continue in full force and effect, without being impaired in any manner whatsoever.

3.16 **Persons Bound and Benefitted.** Except as limited and/or excluded herein, this AGREEMENT shall be binding upon and inure to the benefit of the SETTLING PARTIES as that term is defined herein.

3.17 **Integration and Modification.** This AGREEMENT constitutes the entire AGREEMENT between the SETTLING PARTIES relating to the settlement of all CLAIMS and facts as set forth in the recitals to this AGREEMENT. All prior or contemporaneous agreements,

Settlement Agreement, Release And Covenant Not To Sue

AFDOCS/23017404.2

understandings, representations and statements, whether oral or written, and whether by a party or such party's legal counsel, are integrated into the AGREEMENT. There are no representations, warranties, agreements, arrangements, undertakings, oral or written, between or among the SETTLING PARTIES hereto relating to the subject matter of this AGREEMENT which are not fully expressed herein. No modification, waiver, amendment, discharge or change of this AGREEMENT shall be valid unless it is in writing and is signed by the party against whom enforcement of such modification, waiver, amendment, discharge, or change is, or may be, sought.

3.18 **Counterparts and Copies of this Agreement.** This AGREEMENT may be executed in counterparts electronically or via facsimile. THE SETTLING PARTIES agree that when the executed signature pages are taken together, they shall constitute the entire AGREEMENT. True photocopies of signatures shall be deemed as effective as original signatures. In any action or proceeding relating to this AGREEMENT, the SETTLING PARTIES stipulate that a copy of this AGREEMENT may be admissible to the same extent as the original AGREEMENT.

3.19 **Captions and Interpretations.** Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this AGREEMENT or any provision hereof.

3.20 **Right to Independent Counsel and Experts.** The SETTLING PARTIES acknowledge and represent that they have had the right to and benefit of consultation with independent legal counsel. The SETTLING PARTIES further acknowledge and represent that in evaluating, finalizing and executing this AGREEMENT, they are not relying on anything other than the advice of their legal counsel and/or expert consultants. The SETTLING PARTIES have read and understand the entirety of this AGREEMENT and have been advised as to the legal effects of this AGREEMENT, as to, for example, their rights and obligations hereunder, and hereby willingly and voluntarily agree to every single term of this AGREEMENT.

///

///

(SIGNATURES START ON NEXT PAGE)

EXHIBIT A

Case: 18-50398    Doc# 251-1    Filed: 10/27/20    Entered: 10/27/20 06:06:34    Page 13 of 22

**IN WITNESS WHEREOF**, the undersigned has signed this release on this 26th day of October, 2020.

_____
DORIS A. KAELIN, Chapter 7 Trustee of the bankruptcy
estate of TECHSHOP, INC., Plaintiff

**APPROVED AS TO FORM:**

_____
ANDREW A. AUGUST, ESQ., Plaintiff's counsel

(CONTINUES ON NEXT PAGE)

**EXHIBIT A**

**IN WITNESS WHEREOF**, the undersigned has signed this release on this _____ day of October, 2020.

_____
DORIS A. KAELIN, Chapter 7 Trustee of the bankruptcy
estate of TECHSHOP, INC., Plaintiff

**APPROVED AS TO FORM:**

_____
ANDREW A. AUGUST, ESQ., Plaintiff's counsel

(CONTINUES ON NEXT PAGE)

Settlement Agreement, Release And Covenant Not To Sue

Page **8** of **14**

AFDOCS/23017404.2

EXHIBIT A

Case: 18-50398    Doc# 251-1    Filed: 10/27/20    Entered: 10/27/20 06:06:34    Page 15
of 22

**IN WITNESS WHEREOF**, the undersigned has signed this release on this <u>23rd</u> day of October, 2020.

_____
JAMES NEWTON

**APPROVED AS TO FORM:**

_____
ALLAN E. ANDERSON, ESQ.,
JAMES NEWTON'S counsel

(CONTINUES ON NEXT PAGE)

**IN WITNESS WHEREOF,** the undersigned has signed this release on this ___23___ day of October, 2020.

_____
MARK HATCH

**APPROVED AS TO FORM:**

_____
ALLAN E. ANDERSON, ESQ.,
MARK HATCH'S counsel

(CONTINUES ON NEXT PAGE)

**EXHIBIT A**

Case: 18-50398    Doc# 251-1    Filed: 10/27/20    Entered: 10/27/20 06:06:34    Page 17 of 22

**IN WITNESS WHEREOF,** the undersigned has signed this release on this **23** day of October, 2020.

_____
DANIEL WOODS

**APPROVED AS TO FORM:**

_____
ALLAN E. ANDERSON, ESQ.,
DANIEL WOODS' counsel

(CONTINUES ON NEXT PAGE)

**IN WITNESS WHEREOF**, the undersigned has signed this release on this $\underline{23}$ day of October, 2020.

_____
DOUG BUSCH

**APPROVED AS TO FORM:**

_____
ALLAN E. ANDERSON, ESQ.,
DOUGLAS BUSCH'S counsel

(CONTINUES ON NEXT PAGE)

**EXHIBIT A**

**IN WITNESS WHEREOF**, the undersigned has signed this release on this __23rd__ day of October, 2020.

_[signature]_

MICHAEL HILBERMAN

**APPROVED AS TO FORM:**

_[signature]_

ALLAN E. ANDERSON, ESQ.,
MICHAEL HILBERMAN'S counsel

(CONTINUES ON NEXT PAGE)

EXHIBIT A

IN WITNESS WHEREOF, the undersigned has signed this release on this __23rd__ day of October, 2020.

EARLY GROWTH FINANCIAL SERVICES, INC.

Name: _Brian Young_

Title: __CFO__

**APPROVED AS TO FORM:**

JOSEPH J. MINIOZA, ESQ.,
EARLY GROWTH FINANCIAL SERVICES, INC.'S counsel

**EXHIBIT A**

**IN WITNESS WHEREOF**, the undersigned has signed this release on this ___23rd___ day of October, 2020.

EARLY GROWTH FINANCIAL SERVICES, INC.

Name: _Brian Young_

Title: ___CFO___

**APPROVED AS TO FORM:**

JOSEPH J. MINIOZA, ESQ.,
EARLY GROWTH FINANCIAL SERVICES, INC.'S counsel