1 Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
2 268 Bush Street, Suite 3335
San Francisco, CA 94104
3 Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
4 Email: gkleiner@rinconlawllp.com

5 Counsel for DORIS A. KAELIN,
6 Trustee in Bankruptcy

7

8                UNITED STATES BANKRUPTCY COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11 | In re | Case No. 18-50398 MEH
   |       | Chapter 7
12 |       | Hon. M. Elaine Hammond
   | TECHSHOP, INC., |
13 |       | **OBJECTION TO CLAIM 196**
14 |       Debtor. | **(Mark A. Pizarek)**

15                          [No Hearing Required Unless Requested]

16

17 **TO:    MARK A. PIZAREK**

18

19        **PLEASE TAKE NOTICE THAT** Doris Kaelin, Chapter 7 Trustee ("Trustee") of the estate

20 of TechShop, Inc. ("Debtor"), files this objection to Claim 196 filed by Mark A. Pizarek

21 ("Claimant") on July 25, 2018 as a general unsecured claim in the amount of $30,833.33 ("Claim").

22 A true and correct copy of the Claim is attached hereto as **Exhibit A**. If the Trustee's objection to

23 your Claim is sustained, the Claim will be reduced by $857.98 and allowed as a general unsecured

24 claim in the amount of $29,974.35.

25        The Trustee has reviewed the Claim. The Claim concerns a promissory note issued by the

26 Debtor to Claimant on or about September 1, 2015, in the original principal amount of $25,000

27 ("Note"). The Trustee does not object to the principal portion of the Note, $25,000, or to interest

28 payable on the Note from September 1, 2015, through the date of the Debtor's bankruptcy petition,

February 28, 2018. The Claim, however, seeks the payment of interest on and after the petition date in the amount of $857.98. Because creditors with allowed unsecured claims will not be paid in full by the Trustee, post-petition interest cannot be paid on unsecured claims. 11 U.S.C. §726(a)(5).

Based on the attachments to the Claim, the Trustee calculates that accrued but unpaid pre-petition interest totals $4,975.35 for a total claim of $29,975.35.[1]

WHEREFORE, the Trustee prays for an order, as follows:

1.      Reducing Claim 196 filed by Mark A. Pizarek to an allowed general unsecured claim not to exceed $29,975.35; and

2.      For such other relief as the Court deems just and appropriate.


DATED:  March 30, 2021            RINCON LAW LLP



By: */s/ Gregg S. Kleiner*
GREGG S. KLEINER
Counsel for DORIS A. KAELIN,
Trustee in Bankruptcy

---

[1] $25,000 principal loan, plus two years interest at 8% per year - $4,000, plus 178 days x 8% interest = $29,975.35.



**Fill in this information to identify the case:**

Debtor 1 _Tech Shop_

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _18-50398 MEH_

FILED
JUL 2 5 2018
CLERK
United States Bankruptcy Court
San Jose, California

## Official Form 410
# Proof of Claim
04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Name of the current creditor (the person or entity to be paid for this claim)
_MARK A PIZAREK_

Other names the creditor used with the debtor _MARK A PIZAREK CPA 401K Safe Harbor Profit Sharing Plan, FBO Mark A Pizarek_

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Name _MARK A PIZAREK_
Number Street _525 W Remington Dr #98_
City State ZIP Code _Sunnyvale CA 94087_

Contact phone _408-865-1040_
Contact email _mapizcpa@yahoo.com_

Where should payments to the creditor be sent? (if different)

Name _____
Number Street _____
City State ZIP Code _____

Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____ Filed on ___/___/____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Case 18-50398    Claim 196    Filed 07/25/18    Desc Main Document    Page 1 of 19

EXHIBIT A

Case: 18-50398    Doc# 317    Filed: 03/30/21    Entered: 03/30/21 10:16:58    Page 3 of 21

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _2  1  6  5_

**7. How much is the claim?** $ _30,833.33_ . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_money loaned_

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**EXHIBIT A**

Case: 18-50398   Doc# 317   Filed: 03/30/21   Entered: 03/30/21 10:16:58   Page 4 of 21

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☑ No

☐ Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.

Amount entitled to priority

$ _____

$ _____

$ _____

$ _____

$ _____

$ _____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  *07-23-2018*
                  MM / DD / YYYY

Signature  *Mark A Pizarek*

Print the name of the person who is completing and signing this claim:

Name     *MARK        A        PIZAREK*
         First name    Middle name    Last name

Title    _____

Company  _____
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  *525  W Remington Drive #98*
         Number        Street
         *Sunnyvale          CA      94087*
         City              State    ZIP Code

Contact phone  *408-865-1040*   Email  *Mapizepac yahoo.com*

---

**EXHIBIT A**





# TechShop, Inc.

## UP TO $3,000,000

### PROMISSORY NOTES

### SUBSCRIPTION AGREEMENT

**This document should be read and responded to in its entirety. (Please Type or Print in Ink)**

**Subscriber**

**Full Name:** *Mark A Pizarek CPA 401k Safe Harbor Profit Sharing Plan, FBO Mark A Pizarek*

**Residence Address:** *216 Rodonovan Drive Santa Clara CA 95051*

**Mailing Address (if different):** *525 W. Remington Dr #98 Sunnyvale CA 94087-2459*

**Telephone Number:** *408-865-1040*

**Email Address:** *mapizcpa@yahoo.com*

**Subscription Amount:** $ *25000.00*

## GENERAL INSTRUCTIONS FOR SUBSCRIBERS

IF, AFTER YOU HAVE CAREFULLY REVIEWED COMPANY'S CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM (THE "PPM") AND ALL OTHER MATERIALS PROVIDED TO YOU BY TECHSHOP, INC., (THE "COMPANY"), YOU WISH TO SUBSCRIBE TO PURCHASE THE COMPANY'S PROMISSORY NOTE (THE "NOTE"), PLEASE FOLLOW CAREFULLY THE INSTRUCTIONS BELOW.

THE INFORMATION REQUESTED IN THIS SUBSCRIPTION AGREEMENT IS REQUIRED IN CONNECTION WITH THE COMPANY'S INTENDED RELIANCE UPON CERTAIN EXEMPTIONS FROM THE REGISTRATION AND QUALIFICATION REQUIREMENTS OF FEDERAL AND STATE SECURITIES LAWS. SUBSCRIPTION AGREEMENTS THAT ARE MISSING REQUESTED INFORMATION AND/OR SIGNATURES CANNOT AND WILL NOT BE ACCEPTED UNLESS AND UNTIL SUCH INFORMATION AND/OR SIGNATURES ARE PROVIDED. SUCH INFORMATION IS CONFIDENTIAL AND WILL NOT BE REVIEWED BY ANYONE OTHER THAN THE COMPANY AND ITS ADVISORS.

1



**ALL SUBSCRIBERS:**

Carefully read this Subscription Agreement, which contains important notices, understandings as to certain matters, subscriber representations and warranties, and registration information. These sections pertain to <u>ALL SUBSCRIBERS</u>.

One copy of the Subscription Agreement must be filled out completely and signed by <u>each Subscriber</u>. All parties involved in reviewing and evaluating your Subscription Agreement will be relying on the representations and warranties you make and on the information you supply.

When used herein, the terms "I", "you", "your" and "the undersigned" shall mean the Subscriber executing this Agreement below.

**I.     IMPORTANT NOTICES CONCERNING THE OFFERING**

The total Offering, if fully subscribed, is for Three Million Dollars ($3,000,000). The minimum investment by any one subscriber is $25,000.

THE NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR ANY STATE "BLUE SKY" OR SECURITIES LAWS.    THE SECURITIES CANNOT BE SOLD, TRANSFERRED, ASSIGNED OR OTHERWISE DISPOSED OF EXCEPT IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE SECURITIES LAWS AND WILL NOT BE TRANSFERRED OF RECORD EXCEPT IN COMPLIANCE WITH SAID LAWS.  THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR BY ANY STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING.    ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.  PRIOR TO THE ISSUANCE OF ANY SECURITIES, SUBSCRIBERS SHALL BE GIVEN THE OPPORTUNITY TO ASK QUESTIONS AND RECEIVE ANSWERS CONCERNING ANY ASPECT OF THE INVESTMENT, AND TO OBTAIN ANY ADDITIONAL INFORMATION, TO THE EXTENT THE COMPANY POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE, NECESSARY TO VERIFY THE ACCURACY OF THE INFORMATION CONTAINED IN THE PRIVATE PLACEMENT MEMORANDUM OR IN ANY OTHER MATERIAL PROVIDED TO THE SUBSCRIBER BY THE COMPANY.

2

Case 18-50398    Claim 196    Filed 07/25/18    Desc Main Document    Page 5 of 19

EXHIBIT A



SUBSCRIBERS ARE NOT TO CONSTRUE THE CONTENTS OF THIS SUBSCRIPTION AGREEMENT AS LEGAL, TAX OR INVESTMENT ADVICE. EACH INVESTOR SHOULD CONSULT HIS, HER OR ITS OWN LEGAL COUNSEL, ACCOUNTANT OR BUSINESS ADVISOR AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING A POSSIBLE INVESTMENT IN THE SECURITIES OFFERED HEREBY. THE DELIVERY OF THIS SUBSCRIPTION AGREEMENT AT ANY TIME DOES NOT IMPLY THE INFORMATION CONTAINED HEREIN OR IN THE PPM IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF.

II.    **AGREEMENTS AND UNDERSTANDINGS**

I agree and understand as follows:

A.    <u>Purchase of Note</u>. Subject to all of the terms and conditions hereof, the Company agrees to issue and sell to me, and I agree to purchase, a promissory note in the form of Exhibit A hereto (the "Note") for the principal amount stated in the "Subscription Amount" on page one of this Agreement. Following my payment of the Subscription Amount, the Company will deliver to me the Note, against receipt by the Company of the corresponding Subscription Amount. I understand that the proceeds of the sale and issuance of the Note shall be used for working capital and other general corporate purposes.

B.    Except as may be provided under state and federal securities laws, this Subscription Agreement is irrevocable; provided, however, that the execution and delivery of this Subscription Agreement will not constitute an agreement between the Company and me until this Subscription Agreement is accepted by the Company. I understand that the Company may request any other information, whether or not specifically called for in this Subscription Agreement that it deems desirable in evaluating my subscription. Furthermore, I understand that the Company has the right to reject my subscription with or without cause, for any or no reason.

C.    Although I realize that the Company will make a good faith effort to sell the Note without undue delay, I understand that some time may pass after my execution and submission of this Subscription Agreement before any decision to accept or reject my subscription is made. I understand that a delay in deciding whether to accept or reject my subscription, even if such delay involves not including my subscription in any closing, can in no way be interpreted as limiting the discretion of the Company to accept or reject my subscription.

D.    I will make such representations and warranties and furnish such additional information as to my income or net worth as the Company may reasonably request to confirm that I am an accredited investor. If there should be any material change in the information set forth herein prior to the sale of the Note to me, I will immediately furnish such revised or corrected information to the Company.

E.    I understand that in the event that my Subscription Agreement is not accepted for whatever reason, my subscription funds will be returned to me without interest or escrow fee.

3



F.      I recognize that in accepting my subscription to purchase the Note, the Company will rely on the accuracy and completeness of my statements, representations and warranties set forth herein. I hereby agree to defend, to indemnify and to hold harmless the Company and each of its officers, directors, principals, or agents from and against any and all loss, damage, liability or expense, including reasonable attorneys' fees and costs, which they or any of them may incur or become liable for by reason of, or in any way connected with, any misrepresentation or omission of relevant information, whether negligent or intentional, made by me in this Subscription Agreement, any breach of my warranties or my failure to perform any of my covenants or agreements set forth in the Subscription Agreement, or arising out of any sale or distribution by me of the Note in violation of the Securities Act, or any other applicable securities or "Blue Sky" laws.

G.      Legend on Note. I acknowledge that a legend to the following effect will appear upon the Note:

> THIS NOTE HAS NOT BEEN REGISTERED UNDER THE FEDERAL SECURITIES ACT OF 1933, AS AMENDED ("THE ACT") OR ANY STATE SECURITIES LAW.  THE NOTE HAS BEEN ACQUIRED FOR INVESTMENT AND NEITHER SAID NOTE NOR ANY INTEREST THEREIN MAY BE TRANSFERRED, SOLD OR OFFERED FOR SALE UNLESS (1) THERE IS AN EFFECTIVE REGISTRATION STATEMENT FOR THE NOTE AS SECURITIES UNDER THE ACT AND QUALIFICATION UNDER ANY APPLICABLE STATE SECURITIES LAW, (2) SUCH TRANSFER IS MADE IN COMPLIANCE WITH RULE 144 UNDER THE ACT AND PURSUANT TO QUALIFICATION UNDER ANY APPLICABLE STATE SECURITIES LAW OR EXEMPTION THEREFROM, OR (3) THERE IS AN OPINION OF COUNSEL SATISFACTORY TO THE CORPORATION THAT SUCH REGISTRATION AND QUALIFICATION ARE NOT REQUIRED AS TO SAID TRANSFER, SALE OR OFFER.

I agree promptly to deliver the Note to the Company if and when the Company, in its discretion, decides to recall the Note and reissue the same bearing a new or different legend or legends reflecting appropriately any requirements of the exemptions from the state and federal securities laws pursuant to which Note has been sold to me.

III.     **REPRESENTATIONS AND WARRANTIES**

I represent and warrant to the Company that:

A.      I have received and reviewed the PPM and have been given full access to information appropriate to my determination of whether to invest in the Company, and I am familiar with the terms and provisions thereof. I have also reviewed the risk factors set forth herein and in the PPM, which should be considered when determining whether to invest in the Note.

4



B.        I have full legal capacity to enter into this Subscription Agreement and, if not an individual, have been duly authorized to proceed with this transaction and execute this Subscription Agreement.

C.        I understand that my investment in the Company is not liquid.  I have adequate means of providing for my current needs and personal contingencies and I have no need for liquidity in this investment.

D.        Except for the PPM and any other information that my advisors or I may have requested and received directly from the Company, neither my advisors nor I have been furnished any other offering material or literature upon which I have relied in connection with my determination of whether or not to purchase the Note.

E.        I understand that the Note has not been, and will not be, registered under the Securities Act, by reason of a specific exemption from the registration provisions of the Securities Act which depends upon, among other things, the bona fide nature of the investment intent and the accuracy of my representations as expressed herein.  I understand that the Note constitutes "restricted securities" under applicable United States federal and state securities laws and that, pursuant to these laws, I must hold the Note indefinitely unless they are registered with the Securities and Exchange Commission and qualified by state authorities or an exemption from such registration and qualification requirements is available.  I further acknowledge that if an exemption from registration or qualification is available, it may be conditioned on various requirements including, but not limited to, the time and manner of sale, the holding period for the Note, and on requirements relating to the Company which are outside my control, and which the Company is under no obligation and may not be able to satisfy.

F.        I am an accredited investor as defined in Rule 501(a) of Regulation D promulgated under the Securities Act.

G.        I have been advised that I and my advisors, if any, would have an opportunity to review all the pertinent facts, to ask questions, and to obtain any additional information, to the extent possessed or obtainable without unreasonable effort and expense, regarding the Company, its key employees, its business, the offering of the Note, the risks of investment in the Company and any other matters relating to any of the above or anything set forth in the PPM, and any additional information necessary to verify the accuracy of any representation or information set forth in the PPM.  The Company has supplied all material requested, if any, and has given complete and satisfactory answers to all inquiries, if any, that my advisors and I have put to it concerning the matters listed above.

H.        All financial and other data that I have supplied in the investor questionnaire (and subscription agreement) are true, accurate, and complete and fairly reflects my financial condition to the best of my knowledge and belief.

I.        I have been advised to consult with my own attorney regarding legal matters concerning an investment in the Company and regarding tax and other financial consequences of

5



investing in the Company. I understand that the information provided to me by the Company in connection with my purchase of the Note does not constitute legal, investment, tax or other advice.

J. I understand and acknowledge that the PPM contains certain statements of anticipated or expected financial results and certain projected financial statement information which constitute "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act. Such forward-looking statements are subject to various risks and uncertainties. I understand and further acknowledge that those forward-looking statements depend on certain assumptions about the Company, its market, the competition it faces, and its revenue model, and I acknowledge that those assumptions may prove to be inaccurate and, as a result, the projected financial statement information and related information may not prove to be accurate statements of the actual financial results or the financial condition of the Company. I have had an opportunity to discuss those projected financial statements, and the assumptions underlying such projected financial statements, with the Company's management.

K. This Agreement is made with me in reliance upon my representation to the Company, which by my execution of this Agreement, I hereby confirm, that the Note to be acquired by me will be acquired for investment for my own account, not as a nominee or agent, and not with a view to the resale or distribution of any part thereof, and that I have no present intention of selling, granting any participation in, or otherwise distributing the same. By executing this Agreement, I further represent that I do not presently have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participations to such person or to any third person, with respect to the Note. If the undersigned Subscriber is an entity, I represent that the entity has not been formed for the specific purpose of acquiring the Note.

## IV.  NOTICE AND CONSENT REGARDING ELECTRONIC SIGNATURES & COMMUNICATIONS.

A. Electronic Signature Agreement.  The parties agree that any electronic signature in connection with any documents and instruments relating this Agreement is the legal equivalent of a manual handwritten signature (hereafter referred to as "E-Signature"). The parties also agree that no certification authority or other third party verification is necessary to validate any E-Signature and that the lack of such certification or third party verification will not in any way affect the enforceability of any E-Signature or any resulting contract between the parties.

B. Consent to Electronic Delivery.  I specifically agree to receive and/or obtain any and all Company related "Electronic Communications" (defined below) via email. The term "Electronic Communications" includes, but is not limited to, any and all current and future notices and/or disclosures that various federal and/or state laws or regulations require that Company provide to me, as well as such other documents, statements, data, records and any other communications regarding my investment with Company. I understand it is my

6

Case 18-50398    Claim 196    Filed 07/25/18    Desc Main Document    Page 9 of 19

**EXHIBIT A**

Case: 18-50398    Doc# 317    Filed: 03/30/21    Entered: 03/30/21 10:16:58    Page 11 of 21



responsibility to regularly check my email for Electronic Communications. I also acknowledge that, for my records, I am able to retain Electronic Communications by printing and/or downloading and saving any other agreements and Electronic Communications, documents, or records. I accept Electronic Communications provided via email as reasonable and proper notice, for the purpose of any and all laws, rules, and regulations, and agree that such electronic form fully satisfies any requirement that such communications be provided to me in writing or in a form that I may keep.

C. Paper version of Electronic Communications. I may request a paper version of an Electronic Communication by submitting a written request to Company through email. I have the right to withdraw my consent to receive/obtain Electronic Communications via email at any time. I agree to keep Company informed of any changes to my email address. I understand it is my responsibility to regularly check my email for Electronic Communications.

[SIGNATURE PAGE TO FOLLOW]

7

EXHIBIT A



IN WITNESS WHEREOF, the undersigned has executed this Subscription Agreement as of the date indicated below.

**INDIVIDUAL SUBSCRIBERS:**

Dated: _9/29/_, 2015

_Mark A Przarek_
_Mark A Przarek_
(Print Name Here)

Accepted as of _____, 2015

TechShop, Inc.

By _____
    Mark Hatch
    Chief Executive Officer

8

Case 18-50398    Claim 196    Filed 07/25/18    Desc Main Document    Page 11 of 19

EXHIBIT A

Case: 18-50398    Doc# 317    Filed: 03/30/21    Entered: 03/30/21 10:16:58    Page 13 of 21



ENTITY SUBSCRIBERS:

Dated: ___9/29/___, 2015

_Mark A Pirareh CPA 401k Safe_
_Harbor Profit Sharing Plan, FB_
(Name of Entity)

By: _Mark A Pirareh_

_Mark A Pirareh_
(Print Name Here)

Its: _____
(Print Capacity Here)

Accepted as of _____, 2015

TechShop, Inc.

By _____
      Mark Hatch
      Chief Executive Officer

9



EXHIBIT A

Form of Note

10



## TECHSHOP, INC. PROMISSORY NOTE

| | |
|---|---|
| Holder Name: | Mark A Pizarek |
| Holder Address: | 216 Rodonovan Drive |
| Holder City, State, ZIP: | Santa Clara, CA 95051 |
| Loan Amount: | $ 25,000.00 |
| Executed At: | San Jose, California |
| Execution Date: | 9/28/15 |
| Funds Transfer Date: | 9/1/15 |

THE SECURITIES REPRESENTED BY THIS INSTRUMENT HAVE NOT BEEN REGISTERED
UNDER THE FEDERAL SECURITIES ACT OF 1933, AS AMENDED (THE "ACT") OR ANY
STATE SECURITIES LAW. THE SECURITIES HAVE BEEN ACQUIRED FOR INVESTMENT
AND NEITHER SAID SECURITIES NOR ANY INTEREST THEREIN MAY BE TRANSFERRED,
SOLD OR OFFERED FOR SALE UNLESS (1) THERE IS AN EFFECTIVE REGISTRATION
STATEMENT FOR THE SECURITIES AS A SECURITY UNDER THE ACT AND
QUALIFICATION UNDER ANY APPLICABLE STATE SECURITIES LAW, (2) SUCH TRANSFER
IS MADE IN COMPLIANCE WITH RULE 144 UNDER THE ACT AND PURSUANT TO
QUALIFICATION UNDER ANY APPLICABLE STATE SECURITIES LAW OR EXEMPTION
THEREFROM, OR (3) THERE IS AN OPINION OF COUNSEL SATISFACTORY TO THE
CORPORATION THAT SUCH REGISTRATION AND QUALIFICATION ARE NOT REQUIRED
AS TO SAID TRANSFER, SALE OR OFFER.

FOR VALUE RECEIVED

Conditioned on its receipt of the funds for the loan described in the Subscription Agreement, TechShop, Inc. (hereafter, referred to as "Company"), a California corporation, with its executive office located at 300 S Second St, San Jose, CA 95113, promises to pay Mark A Pizarek (hereafter referred to as 'Holder'), at the address above, or at such other place as Holder hereof may from time to time designate in writing, the principal sum of $25,000.00, with simple interest accruing on the unpaid principal at the rate of eight percent (8%) per annum starting on the Funds Transfer Date until paid in full.

Principal and interest are payable in annual installments pursuant to the attached LOAN PAYMENT CALCULATION AND SCHEDULE, with the first installment payment due on the one year anniversary of the Funds Transfer Date. The first five (5) annual installment payments will be interest only
payments of $2,000.00 each, and the subsequent five (5) annual installment payments will be amortized payments of principal and interest equal to $6,261.41 each installment.

Company anticipates that each annual payment will be made on or about the first day of the month of each anniversary of the Funds Transfer Date (or the first business day of the month, if the first day falls on a weekend or holiday).

Case 18-50398    Claim 196    Filed 07/25/18    Desc Main Document    Page 14 of 19

EXHIBIT A

**REPAYMENT**

The balance of this Promissory Note may, in whole or in part, be prepaid by the Company at any time before the maturity date without penalty.

Should the Company default under or otherwise breach this Promissory Note and not cure said default or breach on or before the tenth (10th) day after Holder gives Company written notice thereof, by personal delivery or certified mailing, all principal remaining unpaid and interest accruing thereon shall, at the option of Holder, become immediately due and payable to Holder.

Notice shall be deemed given on the date of personal delivery or 5 days following the date of mailing, whichever applies. No delay or failure in giving notice of said default or breach shall constitute a waiver of the right of Holder to exercise said right in the event of a subsequent or continuing default or breach.

Any claims or disputes concerning this Promissory Note shall be arbitrated, and be resolved by binding arbitration in Santa Clara County, California, as provided herein. Arbitration shall be conducted under and governed by the Arbitration Rules of the American Arbitration Association (the "AAA") and Title 9 of the U.S. Code.

This Note may not be transferred by Holder without the written consent of the Company. Any such transfer will require an opinion of counsel reasonably acceptable to the Company stating that such transfer is exempt from the registration requirements of the Securities Act of 1933, as amended. This Note may not be transferred by Holder unless and until the transferee has agreed in writing to be subject to the terms and conditions of this Note. No such transfer shall be effective as against the Company until this Note shall have been surrendered to the Company along with transfer instructions duly executed by Holder.

This Promissory Note has been entered into and shall be performed in Santa Clara County, California, and shall be construed to be in accordance with any and all applicable laws, statutes or regulations of the State of California and any applicable federal statutes or regulations of the United States of America.

Executed By the Holder and the Company:

HOLDER

_Mark A Pizarek_ (signature)

Mark A Pizarek

TECHSHOP, INC.

Mark Hatch, Chief Executive Officer

**EXHIBIT A**

**LOAN PAYMENT CALCULATION AND SCHEDULE**

**Loan Payment Calculation**

| | | |
|---|---|---|
| Principal Balance: | $ | 25,000.00 |
| Annual Interest Rate (%): | | 8% |
| Number of Payments per Year: | | 1 |
| Amortization Period in Years: | | 10 Years |
| Total Principal to be Repaid: | $ | 25,000.00 |
| Total Interest to be Repaid: | $ | 16,307.06 |
| Total to be Repaid: | $ | 41,307.06 |

**Loan Payment Schedule**

| PERIOD | PAYMENT | INTEREST | CUMULATIVE INTEREST | PRINCIPAL | CUMULATIVE PRINCIPAL PAID | BALANCE |
|---|---|---|---|---|---|---|
| 1 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ - | $ - | $ 25,000.00 |
| 2 | $ 2,000.00 | $ 2,000.00 | $ 4,000.00 | $ - | $ - | $ 25,000.00 |
| 3 | $ 2,000.00 | $ 2,000.00 | $ 6,000.00 | $ - | $ - | $ 25,000.00 |
| 4 | $ 2,000.00 | $ 2,000.00 | $ 8,000.00 | $ - | $ - | $ 25,000.00 |
| 5 | $ 2,000.00 | $ 2,000.00 | $ 10,000.00 | $ - | $ - | $ 25,000.00 |
| 6 | $ 6,261.41 | $ 2,000.00 | $ 12,000.00 | $ 4,261.41 | $ 4,261.41 | $ 20,738.59 |
| 7 | $ 6,261.41 | $ 1,659.09 | $ 13,659.09 | $ 4,602.32 | $ 8,863.74 | $ 16,136.26 |
| 8 | $ 6,261.41 | $ 1,290.90 | $ 14,949.99 | $ 4,970.51 | $ 13,834.25 | $ 11,165.75 |
| 9 | $ 6,261.41 | $ 893.26 | $ 15,843.25 | $ 5,368.15 | $ 19,202.40 | $ 5,797.60 |
| 10 | $ 6,261.41 | $ 463.81 | $ 16,307.06 | $ 5,797.60 | $ 25,000.00 | $ - |

*First five years interest only, second five years interest and principal payments.*

U.S. Bankruptcy Court
Northern District of Calfiornia
San Jose Division

Case No. 18-50398 MEH
Debtor: TechShop, Inc
Creditor: Mark A Pizarek

| | |
|---|---|
| Promissory Note Principal | $25,000.00 |
| | ------------------ |
| Unpaid Interest | |
| from 9/1/2015 thru 8/31/16 | $2,000.00 |
| from 9/1/16 thru 8/31/17 | $2,000.00 |
| from 9/1/17 thru 7/31/18 | $1,833.33 |
| | ------------------ |
| total unpaid interest | $5,833.33 |
| | ------------------ |
| **TOTAL DUE** | **$30,833.33** |
| | ============== |

Case 18-50398   Claim 196   Filed 07/25/18   Desc Main Document   Page 17 of 19

**EXHIBIT A**

Case: 18-50398   Doc# 317   Filed: 03/30/21   Entered: 03/30/21 10:16:58   Page 19 of 21

Form NPD

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

| | | |
|---|---|---|
| In Re: | TechShop, Inc. | Case No.: 18–50398 MEH 7 |
| | Debtor(s) | Chapter: 7 |

## NOTICE OF POSSIBLE DIVIDEND

TO THE DEBTOR AND ALL INTERESTED PARTIES:

Notice is given that the notice of meeting of creditors advised you that there were no assets in this case. It now appears that a payment of a dividend may be possible.

**Pursuant to Federal Rule of Bankruptcy Procedure 3002(c)(5), creditors may file proofs of claim on or before 7/26/18.**

A proof of claim form, in blank with instructions for completion, is available from the Court at the address listed below, or online at: http://www.uscourts.gov/FormsAndFees/Forms/BankruptcyForms.aspx *does NOT work*

In order to receive a copy of your proof of claim you must:

1. Enclose with your proof of claim one (1) original and one (1) copy of your proof of claim.

2. You must also enclose a self–addressed, postage paid envelope large enough to accommodate your conformed copy of the claim.

3. Please sign and print or type your name clearly underneath your signature.

Unless all of the above steps are completed, no return conformed copy of your claim will be sent out.

NO FEE FOR FILING CLAIMS

MAIL CLAIMS TO:

U.S. Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Dated: 4/27/18

For the Court:

Edward J. Emmons
Clerk of Court
United States Bankruptcy Court

Doc # 72



July 23, 2018

U.S. Bankruptcy Court
**Case No. 18-50398 MEH**
**Debtor: Tech Shop, Inc., et al.**

To Whom It May Concern:

First, I had a locker at the Mid-Peninsula location. I had been advised that I would be notified as to when I could claim my personal belongings. To date, I have not been contacted as to when I may retrieve my personal belongings. I still would like to retrieve my stuff!

Second, not only was I promissory note holder ($25,000) but a shareholder too! I purchased 14,000 shares of Series B Preferred Stock (total amount paid was $32,004.00) on August 4, 2015.

During my various visits (2015-2017) to the Mid-Peninsula and San Jose locations I meet several other promissory note holders. Only one person had said they received any interest payments, and it was only a partial payment. Obviously, the debtor was behind on all promissory note holders for quite some time.

I reviewed the private placement documents provided to me, again. These documents do NOT disclose that fact the corporation was in default of its debts. Nor did any financial statements provided, at the time and subsequently, disclose this important fact. I would not have purchased stock nor lent monies if I would have known this.

In addition, the financial statements did not include an accrual for anticipated future membership costs. Remember, stockholders and promissory note holders were given lifetime membership, i.e. free use of all facilities. The Company should have estimated this costs and shown it as a lability. As a CPA, these financial did not conform to GAAP and were misleading.

Sincerely,

Mark A. Pizarek

525 West Remington Drive • Suite 98 • Sunnyvale CA 94087-2469
408-865-7480 • 408-865-7488 • www.pizarekcpa.com

**EXHIBIT A**